1

The Honorable John H. Chun

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

10

11 STATE OF WASHINGTON; and
STATE OF OREGON,

12                              Plaintiffs,

13        v.

14 DONALD TRUMP, in his official
capacity as President of the United States
15 of America, et al.,

16                              Defendants.

NO.  2:25-CV-00602-JHC

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
JUNE 26, 2025

**ORAL ARGUMENT REQUESTED**

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

I.    INTRODUCTION...........................................................................................................1

II.   STATEMENT OF FACTS.........................................................................................1

    A.   The Executive Order Seeks to Radically Change
       Voter Registration Requirements..........................................................................1

    B.   The Executive Order Seeks to Impose an Election Day
       Ballot-Receipt Deadline, Disenfranchising Hundreds of
       Thousands of Voters in Washington and Oregon...................................3

    C.   The Executive Order Requires De-Certification of
       All Voting Systems in Use Across the United States..............................4

III.  ARGUMENT ...........................................................................................................5

    A.   Federal Courts Can and Do Invalidate *Ultra Vires* Acts
       by Executive Officials and Agencies....................................................5

    B.   The President's New Restrictions on Voter Registration are
       *Ultra Vires* and Unconstitutional.........................................................6

       1.   Plaintiff States have standing to challenge the
          DPOC requirement............................................................6

       2.   Plaintiff States' challenge to the DPOC requirement
          satisfies any prudential ripeness requirement...........................8

       3.   The President lacks authority to dictate requirements
          to register to vote.............................................................9

       4.   The President has no authority to direct the actions of the EAC .....11

    C.   The President's Attempt to Usurp Control Over State
       Ballot-Receipt Deadlines is *Ultra Vires* and Unconstitutional...............12

       1.   Plaintiff States' ballot-receipt deadline claims are justiciable .........13

          a.   Plaintiff States have standing...................................13

          b.   The Plaintiff States' declaratory judgment claim is ripe ...........14

       2.   The President has no authority to dictate ballot-receipt deadlines.................15

    D.   The President Has No Authority to Dictate Standards for
       Voting Systems or the Outcome of the Testing and Certification Process.............21

       1.   Plaintiff States have standing to challenge the
          voting systems requirements ...............................................21

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

       2.    The President has no authority to control voting systems ................................ 23

2    IV.    CONCLUSION ........................................................................................................... 24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR PARTIAL         ii        ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                         Complex Litigation Division
No. 2:25-cv-00602-JHC                       800 Fifth Avenue, Suite 2000
                                     Seattle, WA  98104-3188
                                     (206) 464-7744

**TABLE OF AUTHORITIES**

**<u>Cases</u>**

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967),
  *abrogated on other grounds by Califano v. Sanders*,
  430 U.S. 99 (1977).................................................................................................... 9

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez* (*Snapp*),
  458 U.S. 592 (1982)............................................................................................ 8, 13

*Arizona v. Inter Tribal Council of Arizona, Inc.* (*ITCA*),
  570 U.S. 1 (2013)............................................................................................. 11, 16

*Arizona v. Yellen*,
  34 F.4th 841 (9th Cir. 2022) .................................................................................. 13

*Bognet v. Sec'y Commonwealth of Pa.*,
  980 F.3d 336 (3d Cir. 2020),
  *cert. granted, judgment vacated as moot sub nom.*
  *Bognet v. Degraffenreid*,
  141 S. Ct. 2508 (2021)........................................................................................... 18

*Bost v. Ill. State Bd. of Elections*,
  684 F. Supp. 3d 720 (N.D. Ill. 2023)..................................................................... 18

*Chamber of Commerce of U.S. v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996)................................................................................. 5

*City & County of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018)............................................................................... 12

*City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*,
  981 F.3d 742 (9th Cir. 2020)................................................................................... 7

*Donald J. Trump for President v. Way*,
  492 F. Supp. 3d 354 (D.N.J. 2020)........................................................................ 18

*Fish v. Schwab*,
  957 F.3d 1105 (10th Cir. 2020).............................................................................. 11

*Haw. Newspaper Agency v. Bronster*,
  103 F.3d 742 (9th Cir. 1996)............................................................................. 9, 14

*Kentucky v. Biden*,
  23 F.4th 585 (6th Cir. 2022).................................................................................... 6

*Kobach v. U.S. Election Assistance Comm'n*,
  772 F.3d 1183 (10th Cir. 2014).......................................................................... 10, 11

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*League of United Latin Am. Citizens v. Exec. Off. of the President* (*LULAC*),
___ F. Supp. 3d ___, Civil Action No. 25-0946 (CKK),
2025 WL 1187730 (D.D.C. Apr. 24, 2025).................................................................... passim

*League of Women Voters of the U.S. v. Harrington*,
560 F. Supp. 3d 177 (D.D.C. 2021) .......................................................................... 11

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ...................................................................................... 10

*Maddox v. Bd. of State Canvassers*,
149 P.2d 112 (Mont. 1944) ........................................................................................ 20

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007).................................................................................................... 14

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025) ............................................................................. 10, 11

*Murphy Co. v. Biden*,
65 F.4th 1122 (9th Cir. 2023) ...................................................................................... 6

*Newberry v. United States*,
256 U.S. 232 (1921).................................................................................................... 20

*Pa. Democratic Party v. Boockvar*,
238 A.3d 345 (Pa. 2020)............................................................................................. 18

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
589 U.S. 423 (2020) (per curiam).............................................................................. 15

*Republican Nat'l Comm. v. Wetzel*,
132 F.4th 775 (5th Cir. 2025) ..................................................................................... 19

*Republican Nat'l Comm. v. Wetzel*,
742 F. Supp. 3d 587 (S.D. Miss.),
*rev'd in part, vacated in part*,
120 F.4th 200 (5th Cir. 2024) ..................................................................................... 19

*Republican Nat'l Comm. v. Wetzel*,
120 F.4th 200 (5th Cir. 2024) ............................................................................. 19, 20

*Reynolds v. Sims*,
377 U.S. 533 (1964).................................................................................................... 24

*Sierra Club v. Trump*,
963 F.3d 874 (9th Cir. 2020),
*judgment vacated on other grounds, sub nom.*
*Biden v. Sierra Club*,
142 S. Ct. 46 (2021)...................................................................................................... 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................................................ 6

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ............................................................................................ 8

*Thomas v. County of Humboldt*,
124 F.4th 1179 (9th Cir. 2024) ..................................................................... 8, 14

*Washington v. FDA*,
108 F.4th 1163 (9th Cir. 2024) ..................................................................... 6, 8

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ........................................................................................ 5, 9

**Constitutional Provisions**

U.S. Const. art. I, § 4 ............................................................... 7, 13, 15, 20

U.S. Const. art. I, § 4, cl. 1 ......................................................... 1, 9, 23

U.S. Const. art. II, § 1 ........................................................................... 7

U.S. Const. art. II, § 1, cl. 2 ............................................................ 9, 23

U.S. Const. art. III ................................................................................ 6

**Statutes**

Federal Statutes

2 U.S.C. § 1 ............................................................................................. 13

2 U.S.C. § 7 ................................................................................... passim

3 U.S.C. § 1 ................................................................................... passim

3 U.S.C. § 21(1) .............................................................................. 13, 17

8 U.S.C. § 1227(a)(3)(D)(i) ................................................................. 2

18 U.S.C. § 1015(f) ............................................................................. 2

52 U.S.C. § 20303(b) ......................................................................... 18

52 U.S.C. § 20501(b)(1) ...................................................................... 9

52 U.S.C. § 20502 ............................................................................... 17

52 U.S.C. § 20505 ................................................................................ 9

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

52 U.S.C. § 20508 .................................................................................................. 9

    52 U.S.C. § 20508(a) ..................................................................................... 11

    52 U.S.C. § 20508(b) ..................................................................................... 9

    52 U.S.C. § 20508(b)(1) ........................................................................... 10, 11

    52 U.S.C. § 20508(b)(2) ............................................................................. 1, 10

    52 U.S.C. § 20508(b)(3) ................................................................................ 10

52 U.S.C. § 20921 .................................................................................................. 12

52 U.S.C. § 20922(1) .............................................................................................. 23

52 U.S.C. § 20922(2) .............................................................................................. 23

52 U.S.C. § 20923(a) .............................................................................................. 11

52 U.S.C. § 20923(a)(1) .......................................................................................... 24

52 U.S.C. § 20923(a)(3) .......................................................................................... 24

52 U.S.C. § 20923(c) .............................................................................................. 11

52 U.S.C. § 20928 ............................................................................................. 11, 23

52 U.S.C. § 20943(a) .............................................................................................. 24

52 U.S.C. § 20944(a) .............................................................................................. 24

52 U.S.C. § 20944(b) .............................................................................................. 24

52 U.S.C. § 20961(b)(1) .......................................................................................... 23

52 U.S.C. § 20961(c) .............................................................................................. 24

52 U.S.C. § 20962 .................................................................................................. 23

    52 U.S.C. § 20962(a) ..................................................................................... 23

    52 U.S.C. § 20962(b) ..................................................................................... 23

    52 U.S.C. § 20962(b)(1) ................................................................................ 23

    52 U.S.C. § 20962(c) ..................................................................................... 23

    52 U.S.C. § 20962(d) ..................................................................................... 23

    52 U.S.C. § 20962(d)(2) ................................................................................ 23

52 U.S.C. § 20971 .................................................................................................. 23

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

52 U.S.C. § 21003 ........................................................................................................ 12

52 U.S.C. § 21083(a)(5)(A) ........................................................................................... 2

52 U.S.C. § 30101(1) ................................................................................................... 17

Consolidated Appropriations Act of 2023,
    Pub. L. No. 117-328, 136 Stat. 4459 (Dec. 29, 2022) ........................................... 17

Help America Vote Act,
    Pub. L. No. 107-252, 116 Stat. 1666 (2022) ............................................. 11, 12, 23

National Voter Registration Act,
    Pub. L. No. 103-31, 107 Stat. 77 (1993) .............................................................. passim

Uniformed and Overseas Citizens Absentee Voting Act,
    Pub. L. No. 99-410, 100 Stat. 924 (1986) ................................................. 15, 17, 18

### State Statutes

32 D.C. Reg. 3828 (July 5, 1985) ................................................................................ 18

1981 N.D. Laws 564 ..................................................................................................... 18

1984 N.Y. Laws 1784 ................................................................................................... 18

1984 Ohio Laws 137 ..................................................................................................... 18

1984 V.I. Sess. Laws 132 ............................................................................................. 18

1985 Mass. Acts 792 ..................................................................................................... 18

1985 Md. Laws 2768 ..................................................................................................... 18

1986 Ala. Sess. Laws, ch. 85 ....................................................................................... 18

Cal. Political Code § 1360 (Deering 1924) ................................................................. 17

Kans. Rev. Stat. § 25-1106 (Chester I. Long, et al., eds. 1923) ................................. 17

Or. Rev. Stat. § 246.550 ............................................................................................... 21

Or. Rev. Stat. § 247.171(3)(e) .................................................................................. 1, 8

Or. Rev. Stat. § 247.171(3)(f) .................................................................................. 1, 8

Or. Rev. Stat. § 247.945 ................................................................................................. 2

Or. Rev. Stat. § 254.470(6)(e)(B) ................................................................................. 3

1933 Wash. Sess. Laws 100-01 (Ex. Sess., ch. 41) ................................................... 17

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Wash. Rev. Code § 29A.08.010(1)(d) .................................................................. 1, 8

Wash. Rev. Code § 29A.08.010(1)(f) ................................................................... 1, 8

Wash. Rev. Code § 29A.08.720(3) ......................................................................... 2

Wash. Rev. Code § 29A.12.050 ........................................................................... 21

Wash. Rev. Code § 29A.40.110(4) ......................................................................... 3

Wash. Rev. Code § 29A.60.190 ............................................................................. 3

Wash. Rev. Code § 29A.84.130(2) ......................................................................... 2

### Regulations

11 C.F.R. § 9428.3(a) ......................................................................................... 10

11 C.F.R. § 9428.4 ............................................................................................. 10

    11 C.F.R. § 9428.4(b)(1) ................................................................................ 2
    11 C.F.R. § 9428.4(b)(2) ................................................................................ 2
    11 C.F.R. § 9428.4(b)(3) ................................................................................ 2

Or. Admin. R. 165-007-0350(1) ........................................................................ 21

### Other Authorities

139 Cong. Rec. S5746-03 (Daily Ed. May 11, 1993) ........................................... 10

42d Cong., 2d Sess. 141 (1871) ......................................................................... 16

H.R. Rep. No. 103-66 (Apr. 28, 1993) (Conf. Rep.) ........................................... 10

Josiah Henry Benton, *Voting in the Field: A Forgotten Chapter
    of the Civil War* (1915), https://perma.cc/5HGD-K5JC/ ............................... 17, 20

National Council of State Legislatures, *Table 11: Receipt and Postmark Deadlines
    for Absentee/Mail Ballots* (updated May 12, 2025), https://www.ncsl.org/
    elections-and-campaigns/table-11-receipt-and-postmark-deadlines-for-
    absentee-mail-ballots ................................................................................. 16

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

viii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# I.    INTRODUCTION

The Constitution is clear: States are responsible for regulating "[t]he Times, Places and Manner" of federal elections, subject only to alteration by Congress. U.S. Const. art. I, § 4, cl. 1. The President has no constitutional authority to interfere with state election laws. Nor has Congress given the President statutory authority to do so.

Disregarding the constitutional separation of powers and laws adopted by Congress, President Trump issued Executive Order 14,248. Among other things, this order purports to impose new restrictions on registering to vote, set aside longstanding and widespread state laws setting ballot-return deadlines, and dictate which voting machines can be federally certified. But the President has no authority to do any of this. And by attempting to assert unilateral control over elections, the President is threatening the foundation of our democracy. The Framers carefully divided power over elections between the States and Congress to prevent the accumulation of power in any one source. The President's illegal effort to consolidate his nonexistent power over elections flies in the face of that principle.

This Court should enter partial summary judgment in favor of Washington and Oregon, hold that sections 2(a), 4(a), 4(b), and 7 of the Executive Order are *ultra vires*, and permanently enjoin Defendants from implementing them. This Court should also enter a declaratory judgment that the federal election day statutes, 2 U.S.C. § 7 and 3 U.S.C. § 1, do not preempt Washington and Oregon's ballot-receipt deadline laws.

# II.    STATEMENT OF FACTS

## A.    The Executive Order Seeks to Radically Change Voter Registration Requirements

To register to vote in Washington and Oregon (Plaintiff States), applicants must verify that they are United States citizens, generally by attestation under penalty of perjury. Wash. Rev. Code § 29A.08.010(1)(d), (f); Or. Rev. Stat. § 247.171(3)(e)-(f). This is also the proof of citizenship that Congress requires on the national mail voter registration form (known as the Federal Form) in the National Voter Registration Act (NVRA). 52 U.S.C. § 20508(b)(2); *see*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*also* 11 C.F.R. § 9428.4(b)(1)-(3) (setting the contents of the Federal Form). A person who falsely claims to be a U.S. citizen when registering to vote can be criminally prosecuted and deported. 8 U.S.C. § 1227(a)(3)(D)(i) (deportation); 18 U.S.C. § 1015(f) (up to five years' imprisonment); Wash. Rev. Code § 29A.84.130(2) (same). Plaintiff States also confirm the applicant's identity, generally through a driver's license number or the last four digits of the person's social security number. *See* 52 U.S.C. § 21083(a)(5)(A). In addition, Plaintiff States' voter rolls are available for public review. Wash. Rev. Code § 29A.08.720(3); Or. Rev. Stat. § 247.945. Congress and Plaintiff States have adopted a system that makes voter registration easy and accessible for qualified citizens and that is secure against participation by noncitizens.

In March, President Trump issued Executive Order 14,248, which attempts to override the laws adopted by Congress and the Plaintiff States. Under section 2(a), the President attempts to replace the verification-by-sworn-attestation requirement with a "documentary proof of United States citizenship requirement" for applicants using the Federal Form. Dkt. 1-1. Specifically, section 2(a) directs the Election Assistance Commission (EAC) to "take appropriate action to require, in its" Federal Form, "documentary proof of United States citizenship" (DPOC), which it defines narrowly. *Id.* It also requires "a State or local official to record on the form" specific information about "the type of document that the applicant presented . . . while taking appropriate measures to ensure information security." *Id.*

The EAC has taken preliminary steps to implement the Executive Order's DPOC requirement. *League of United Latin Am. Citizens v. Exec. Off. of the President* (*LULAC*), __ F. Supp. 3d __, Civil Action No. 25-0946 (CKK), 2025 WL 1187730, at *29 (D.D.C. Apr. 24, 2025). In early April, the EAC sent a letter to state election officials "seeking consultation on development of the" Federal Form in light of the Executive Order and stating that its request was "[c]onsistent with 52 U.S.C. § 20508(a)(2)," which requires that the EAC consult with state election officials in developing the Federal Form. Declaration of Stuart Holmes, Ex. B. A later email from the EAC's executive director set a May 2, 2025 deadline for feedback. *Id.*, Ex. C.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

In late April, the United States District Court for the District of Columbia concluded that section 2(a) is likely unconstitutional and entered a preliminary injunction. *LULAC*, 2025 WL 1187730, at *41, 62. Less than a week later, the EAC's executive director sent an email stating that, "[p]ursuant to" the preliminary injunction, "the solicitation of communications in response to" the EAC's letter "regarding Section 2(a) of Executive Order 14248 is hereby paused." Holmes Decl., Ex. D.

## B.    The Executive Order Seeks to Impose an Election Day Ballot-Receipt Deadline, Disenfranchising Hundreds of Thousands of Voters in Washington and Oregon

Washington and Oregon—like approximately one-third of States—count ballots received after election day as long as the ballots were cast *on or before* election day. Wash. Rev. Code §§ 29A.40.110(4), 29A.60.190; Or. Rev. Stat. § 254.470(6)(e)(B). Voters who return a ballot by mail have no control over how long it takes USPS to deliver the ballot. Changes in USPS distribution are causing additional delivery delays, so even if a voter puts their ballot in the mail two or more days before election day, USPS may not deliver the ballot until after election day. Holmes Decl., ¶ 10; *see also* Declaration of Julie Wise, ¶ 35; Declaration of Mary Hall, ¶¶ 28, 30. Delays are particularly pronounced for rural voters, whose ballots must be taken to a distribution center (often in another county) before being returned to the county auditor. Holmes Decl., ¶ 10. Plaintiff States solve this problem and ensure that timely-cast ballots are counted by relying on the postmark or, if no postmark is present, the voter's sworn declaration. Wash. Rev. Code §§ 29A.40.110(4), 29A.60.190; Or. Rev. Stat. § 254.470(6)(e)(B). In the 2024 general election, Washington counted 119,755 timely cast ballots received after election day, Holmes Decl., ¶ 45, and Oregon counted 13,596 such ballots, Declaration of Dena Dawson, ¶ 14.

The Executive Order attempts to preempt state law. Relying on federal laws that establish the date for the election of federal officers, the Executive Order directs the EAC to "condition any available funding to a State" on the State excluding timely-cast ballots received after election day, with an exception for military and overseas voters. Dkt. 1-1, § 7(b). The Executive Order

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  also directs the Attorney General to "take all necessary action to enforce" the President's

2  interpretation of federal election day laws against States. *Id.* § 7(a). At a hearing in a different

3  proceeding, an attorney for the U.S. Department of Justice (DOJ) indicated that the Attorney

4  General could use "criminal prosecutions" to do so. Declaration of Kelly Paradis, Ex. A at 87.

5  **C.    The Executive Order Requires De-Certification of All Voting Systems in Use Across
   the United States**

6

7        Plaintiff States use a variety of voting systems from different manufacturers. Holmes

   Decl., ¶¶ 56-57; Dawson Decl., ¶ 18. All voting systems used in Plaintiff States have been
8
   certified to comply with the applicable version of the Voluntary Voting System Guidelines
9
   (VVSG) adopted by the EAC. Holmes Decl., ¶ 57; Dawson Decl., ¶ 18. These voting systems
10
   include tabulators, which scan ballots and count the votes for each race, and accessible voting
11
   units, which provide assistive technology for voters with disabilities. Holmes Decl., ¶¶ 53-54.
12
   Accessible voting units print out a completed ballot that voters submit. *Id.*, ¶ 53. In Washington,
13
   any voter may use an accessible voting unit. *Id.* At least one county in Washington uses
14
   accessible voting units that print a ballot containing a barcode that contains votes. Hall Decl.,
15
   ¶ 43.
16
        The Executive Order mandates changes to the EAC's voting system guidelines. It directs
17
   the EAC to issue amended guidelines "provid[ing] that voting systems should not use a ballot in
18
   which a vote is contained within a barcode or quick-response code in the vote counting process
19
   except where necessary to accommodate individuals with disabilities[.]" Dkt. 1-1, § 4(b)(i). The
20
   Executive Order further dictates that, "[w]ithin 180 days of the date of this order, the [EAC]
21
   shall take appropriate action to review and, if appropriate, re-certify voting systems under the
22
   new standards established under subsection (b)(i) of this section, and to rescind all previous
23
   certifications of voting equipment based on prior standards." *Id.* § 4(b)(ii).
24

25

26

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### III.   ARGUMENT

The Executive Order is unlawful in multiple ways. First, the President has no authority to impose new restrictions on voter registration, and so section 2(a)'s DPOC requirement and section 4(a)'s funding condition are *ultra vires* and violate the separation of powers. Second, the Constitution gives States primary authority to regulate federal elections; the President has no authority to set aside state ballot-receipt deadline laws. As a result, section 7 is *ultra vires*. Third, the President has no constitutional or statutory authority to determine which voting systems can be certified. As a result, section 4(b) is *ultra vires*. The Framers established a Constitution that prevents the consolidation of power; this Court should enforce the limits that they created and enter partial summary judgment for Plaintiff States on each of these issues.

In addition to enjoining enforcement of these unlawful provisions of the Executive Order, this Court should also enter declaratory judgment that Plaintiff States' ballot-receipt deadline laws do not violate federal election day statutes.

### A.   Federal Courts Can and Do Invalidate *Ultra Vires* Acts by Executive Officials and Agencies

It is axiomatic—but apparently bears repeating—that the President's powers are limited. "The President's power, if any, . . . must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).

When the President or any executive branch agency acts without constitutional or statutory authority, the action is *ultra vires*, and it falls to the federal courts to reestablish the proper division of federal power. *See id.* at 588-89 (invalidating President's encroachment upon legislative sphere); *id.* at 655 (Jackson, J., concurring) (stating that "it is the duty of the Court to be last, not first, to give" up legal institutions such as the separation of powers); *see also, e.g.*, *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("[w]hen an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority" (quoting *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988))); *cf. Murphy Co. v. Biden*,

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   65 F.4th 1122, 1130 (9th Cir. 2023) (holding that a claim "that the President violated separation

2   of powers by directing" a cabinet officer "to act in contravention of a duly enacted law" could

3   be justiciable). Federal courts appropriately invalidate such actions. *E.g.*, *Sierra Club v. Trump*,

4   963 F.3d 874, 890-93 (9th Cir. 2020), *judgment vacated on other grounds*, *sub nom. Biden v.*

5   *Sierra Club*, 142 S. Ct. 46 (2021); *LULAC*, 2025 WL 1187730, at *16.

6   **B.    The President's New Restrictions on Voter Registration are *Ultra Vires* and**
    **Unconstitutional**
7

8       **1.    Plaintiff States have standing to challenge the DPOC requirement**

9           Plaintiff States have Article III standing to challenge section 2(a) because it causes an

10  injury-in-fact that is "fairly traceable" to Defendants' conduct and "that is likely to be redressed

11  by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*

12  *v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The DPOC requirement directly injures

13  Plaintiff States in both their proprietary and sovereign interests. *See Kentucky v. Biden*, 23 F.4th

14  585, 601-02 (6th Cir. 2022) (concluding that plaintiff states likely had standing to sue federal

15  government based on proprietary and sovereign interests).

16          First, Plaintiff States have established an injury-in-fact based on direct harms to their

17  proprietary interests. The DPOC requirement—and the corresponding changes this would

18  require for state voter registration agencies—create the sort of classic "pocketbook injur[y]" that

19  readily constitutes an injury-in-fact. *Washington v. FDA*, 108 F.4th 1163, 1175 (9th Cir. 2024)

20  (quoting *California v. Texas*, 593 U.S. 659, 674 (2021)). State voter registration agencies will

21  have to make time-consuming and costly changes to their voter registration processes, and the

22  Executive Order will increase the time required to assist applicants for public assistance.

23  Declaration of Carla Reyes, ¶ 14-21. And Washington election officials will have to spend

24  approximately $237,000 to reprogram the State's voter registration database. Holmes Decl.,

25  ¶ 30.

26

State and local election officials will also have to spend considerable time addressing voter confusion and assisting voters. The DPOC requirement is already causing this injury, and the harm will only increase as election day draws nearer. Declaration of Greg Kimsey Decl., ¶ 7; Holmes Decl., ¶¶ 41-42; Declaration of Linda Farmer, ¶¶ 13, 15, 17, 20-21, 23; Wise Decl. ¶¶ 20-21; Hall Decl., ¶¶ 21, 23. This confusion is unsurprising and inevitable. Many legal voters in Washington do not have the types of documentary proof of citizenship required by the Executive Order. *See* Declaration of Alejandro Sanchez, ¶¶ 22-23. Because of the confusion caused by the Executive Order, election officials will also have to undertake costly voter education campaigns (which could easily cost $1 million to $5 million in King County alone) and trainings for staff. Wise Decl., ¶¶ 22, 24; Hall Decl. ¶¶ 22, 25; Farmer Decl., ¶ 23. This "increased demand" for government services establishes concrete injuries particularized to Plaintiff States. *City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 981 F.3d 742, 754 (9th Cir. 2020).

Though the changes to the Federal Form have not yet been implemented, Plaintiff States' proprietary injuries are imminent. *See LULAC*, 2025 WL 1187730, at *52. The Executive Order *mandates* that the Federal Form require DPOC. Dkt. 1-1, § 2(a); *see* Paradis Decl., Ex. A at 71-75 (DOJ taking position that EAC must require DPOC). The DPOC requirement itself injures Plaintiff States, regardless of the specific wording the EAC later adopts on the Federal Form. Implementing the DPOC requirement will require *extensive* administrative planning well in advance of an election. Dawson Decl, ¶ 7; Farmer Decl., ¶¶ 16-17; Kimsey Decl., ¶ 9; Hall Decl., ¶¶ 16-17. Because Plaintiff States must begin that planning soon, injury to their proprietary interests is imminent.

Second, Plaintiff States have established an injury to their sovereign interest in regulating elections. The Constitution expressly recognizes the States' sovereign interest in regulating "[t]he Times, Places and Manner" of holding elections for federal office. U.S. Const. art. I, § 4 (senators and representatives); *see also id.* art. II, § 1 (presidential electors). The Executive Order

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

directly interferes with that sovereign interest by regulating elections. Under Washington and Oregon law, a voter may verify citizenship by sworn attestation. Wash. Rev. Code § 29A.08.010(1)(d), (f); Or. Rev. Stat. § 247.171(3)(e)-(f). For voters using the Federal Form, the Executive Order purports to preempt these laws by requiring DPOC. Dkt. 1-1, § 2(a). Thus, interference with Plaintiff States' own laws and sovereign interests in regulating the manner of verifying citizenship suffices to establish standing. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez* (*Snapp*), 458 U.S. 592, 601 (1982) (recognizing sovereign interest that includes "the power to create and enforce a legal code, both civil and criminal"); *FDA*, 108 F.4th at 1176 (holding that injury to a sovereign interest "is sufficient to convey standing to . . . challenge a federal statute that preempts or nullifies state law").

The injuries to Plaintiff States' sovereign and proprietary interests are fairly traceable to the DPOC requirement of section 2(a) of the Executive Order.

Finally, summary judgment in Plaintiff States' favor, and a corresponding injunction, will redress these injuries by eliminating the need for Plaintiff States to change their voter registration systems, the conflict with Plaintiff States' laws, and this source of voter confusion.

### 2. Plaintiff States' challenge to the DPOC requirement satisfies any prudential ripeness requirement

Though the Supreme Court has called into question the prudential ripeness doctrine, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014), the doctrine's requirements are easily satisfied here. Because the "issues [raised by the Executive Order] are . . . purely legal" and "delay in adjudication will cause hardship[ to Plaintiff States,]" this case is ripe for adjudication. *Thomas v. County of Humboldt*, 124 F.4th 1179, 1190 (9th Cir. 2024).

Plaintiff States " 'do[ ] not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.' " *Id.* (citation omitted). The legality of section 2(a)'s DPOC requirement is fit for judicial decision because the issue—whether the Executive Order is *ultra vires* and violates the separation of powers—is purely legal

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

and does not require further factual development. *See Haw. Newspaper Agency v. Bronster*, 103 F.3d 742, 746 (9th Cir. 1996) (holding that purely legal issues that can be decided "without further factual development" are fit for judicial decision); *see also LULAC*, 2025 WL 1187730, at *28 ("Section 2(a) dictates a particular outcome and leaves no uncertainty[.]").

Withholding review also creates unnecessary hardship for Plaintiff States. A "direct effect on the day-to-day business" of the plaintiff establishes a hardship on the parties for prudential ripeness purposes. *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 152 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Here, election officials are already diverting resources to address the Executive Order and the confusion that it has created.

### 3.    The President lacks authority to dictate requirements to register to vote

The Constitution assigns authority for regulating federal elections to the States in the first instance and, second, to Congress. It assigns precisely *zero* authority to the President. U.S. Const. art. I, § 4, cl. 1; *see also* U.S. Const. art. II, § 1, cl. 2. Congress exercised its Elections Clause authority when it adopted the National Voter Registration Act, and the NVRA establishes that attestation is generally sufficient to establish voters' citizenship. 52 U.S.C. § 20508(b). Thus, not only does the President lack any independent authority to regulate elections, his demand that the EAC add a DPOC requirement to the Federal Form is contrary to federal law. As a result, it violates the separation of powers and is *ultra vires*. *See Youngstown*, 343 U.S. at 585. Plaintiff States are entitled to summary judgment.

The NVRA is designed to "increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501(b)(1). One way Congress accomplished this objective was by creating a consistent and simple process for voters to register to vote by mail using the Federal Form. *See* 52 U.S.C. §§ 20505, 20508. The NVRA establishes the process for creating the Federal Form and defines the Form's contents. The Federal Form consists of three components: (1) an application; (2) general instructions; and (3) state-specific instructions.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1 | 11 C.F.R. § 9428.3(a); *see also* Dkt. 1-2. An administrative regulation sets out the contents of

2 | the application. 11 C.F.R. § 9428.4.

3 |      With respect to citizenship, the Federal Form must require (a) "an attestation that the

4 | applicant" is a U.S. citizen and (b) "the signature of the applicant, under penalty of perjury." 52

5 | U.S.C. § 20508(b)(2). Congress specifically debated whether to include a requirement of further

6 | proof of citizenship on the Federal Form but rejected such a requirement as "not necessary or

7 | consistent with the purposes of this Act." Conference Report on the National Voter Registration

8 | Act of 1993, H.R. Rep. No. 103-66 (Apr. 28, 1993) (Conf. Rep.); *see also* 139 Cong.

9 | Rec. S5746-03 (Daily Ed. May 11, 1993) (Senate agreeing to Conference Report).[1] In fact, the

10 | NVRA specifically prohibits the Federal Form from requiring "notarization or other formal

11 | authentication." 52 U.S.C. § 20508(b)(3).

12 |      The Federal Form also contains additional state-specific requirements, but it may require

13 | "only such . . . information . . . as is necessary to enable the appropriate State elections official

14 | to assess the eligibility of the applicant and to administer voter registration and other parts of the

15 | election process." 52 U.S.C. § 20508(b)(1). As the Ninth Circuit recently held, "DPOC is not

16 | legitimately necessary for registration." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 719 (9th

17 | Cir. 2025). Accordingly, the NVRA precludes the Federal Form from requiring DPOC. *See* 52

18 | U.S.C. § 20508(b)(1). Yet the Executive Order tries to require just that. In doing so, it violates

19 | the NVRA and the separation of powers.

20 |      The Ninth Circuit's decision in *Mi Familia Vota* is not an outlier. Several States have

21 | unsuccessfully sought to add state-specific requirements for DPOC, but their efforts have been

22 | rejected by the EAC and/or federal courts. Paradis Decl., Ex. C; *see also League of Women*

23 | *Voters of U.S. v. Newby*, 838 F.3d 1, 9-12 (D.C. Cir. 2016) (reversing EAC's decision to add

24 | state-specific DPOC requirements); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183,

25 | 1194-99 (10th Cir. 2014) (rejecting challenge to EAC's denial of request to add state-specific

26 | 

---

[1] Excerpts are available in Exhibit B of the Declaration of Kelly Paradis.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

DPOC requirements); *League of Women Voters of the U.S. v. Harrington*, 560 F. Supp. 3d 177, 186 (D.D.C. 2021) (reversing EAC's decision to add state-specific DPOC requirements). Courts have uniformly concluded that States have not shown that DPOC is "necessary" for purposes of the NVRA. *Mi Familia Vota*, 129 F.4th at 719; *Fish v. Schwab*, 957 F.3d 1105, 1142 (10th Cir. 2020) ("[T]he Secretary has failed to rebut the presumption that the attestation requirement satisfies the minimum-information principle."); *Kobach*, 772 F.3d at 1197-98 ("The states have failed to meet their evidentiary burden[.]"). And, consistent with the Ninth Circuit's holding in *Mi Familia Vota*, the Supreme Court has held that the NVRA preempts state laws that attempt to add a DPOC requirement to register to vote in federal elections. *Arizona v. Inter Tribal Council of Arizona, Inc.* (*ITCA*), 570 U.S. 1, 15 (2013).

The Executive Order clearly conflicts with the NVRA: Section 2(a) of the Executive Order *mandates* that the Federal Form require DPOC, while the NVRA *prohibits* the Federal Form from categorically requiring DPOC. *Compare* Dkt. 1-1, § 2(a) (mandating that the EAC require DPOC on the Federal Form), *with* 52 U.S.C. § 20508(b)(1) (limiting information required on Federal Form to "*only* such" information "as is *necessary*" for certain purposes (emphasis added)), *and Mi Familia Vota*, 129 F.4th at 719 ("DPOC is not legitimately necessary for registration."). The President has no authority to re-write the NVRA in this (or any) manner, and his attempt to do so violates the separation of powers and the NVRA itself.

### 4. The President has no authority to direct the actions of the EAC

The Executive Order also violates the separation of powers in a second way. Through the NVRA and the Help America Vote Act (HAVA), Congress assigned responsibility for developing the Federal Form to an independent, bipartisan entity—the EAC. 52 U.S.C. § 20508(a). Congress created important safeguards against partisan control of the EAC. The EAC is composed of four members, two from each major political party, and the chair and vice chair cannot be affiliated with the same political party. 52 U.S.C. § 20923(a), (c). Any action requires the approval of at least three commissioners. 52 U.S.C. § 20928.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    The Executive Order runs roughshod over these statutory safeguards. Where Congress

2    required bipartisan agreement, the President claims the authority to dictate partisan action.

3    Dkt. 1-1 at § 2(a)(i). Nothing in the NVRA or HAVA gives the President the authority to do so;

4    to the contrary, Congress made clear that the EAC is an "*independent* entity," 52 U.S.C. § 20921

5    (emphasis added), and created a structure that ensures independence and bipartisanship. In this

6    way as well, the Executive Order violates the separation of powers and is *ultra vires*.

7    Further, section 4(a) of the Executive Order directs the EAC to "take all appropriate

8    action to cease providing Federal funds to States that do not comply with[,]" among other things,

9    the requirement to "accept and use the" Federal Form, "including any requirement for [DPOC]

10   adopted pursuant to section 2(a)(ii) of" the Executive Order. Dkt. 1-1. Taken literally, this

11   requires only that state officials accept and use a version of the Federal Form that includes

12   language requiring DPOC; it does not require that Plaintiff States reject Federal Forms that are

13   not accompanied by DPOC. To the extent the Executive Order is a clumsy attempt to condition

14   EAC funding on States rejecting Federal Forms that lack DPOC, it is *ultra vires*. Congress has

15   specified the conditions that apply to EAC funding. *See, e.g.*, 52 U.S.C. § 21003. The President

16   cannot unilaterally add conditions. *City & County of San Francisco v. Trump*, 897 F.3d 1225,

17   1233-35 (9th Cir. 2018).

18   **C.    The President's Attempt to Usurp Control Over State Ballot-Receipt Deadlines is**
19       ***Ultra Vires* and Unconstitutional**

20       Section 7 of the Executive Order seeks to preempt state laws that allow for the counting

21   of ballots that are cast by—but received after—election day. Section 7(a) directs the U.S.

22   Attorney General to "take all necessary action to enforce" the nonexistent federal ballot-receipt

23   deadline. Dkt. 1-1, § 7(a). Section 7(b) directs the EAC to "condition any available funding to a

24   State on that State's compliance" with a nonexistent federal ballot-receipt deadline. Dkt. 1-1,

25   § 7(b).

26

1    This is entirely unlawful. Federal law does not create a ballot-receipt deadline. The

2    statutes cited in the Executive Order (2 U.S.C. § 7 and 3 U.S.C. § 1) are conspicuously silent on

3    when timely-cast ballots must be received. The President has no authority to invent new election

4    regulations. Any effort by the U.S. Attorney General to enforce the made-up ballot-receipt

5    deadline is unlawful, as is imposing new, non-congressionally approved conditions on federal

6    funding. Plaintiff States are entitled to summary judgment that section 7 is *ultra vires* and a

7    declaratory judgment that the federal election day statutes (2 U.S.C. § 7 and 3 U.S.C. § 1) do not

8    preempt Plaintiff States' ballot-receipt deadline laws.

9    **1.    Plaintiff States' ballot-receipt deadline claims are justiciable**

10    **a.    Plaintiff States have standing**

11    Plaintiff States have standing under two independent theories.

12    First, Plaintiff States have standing because the Executive Order infringes on their

13    sovereign rights. *See Arizona v. Yellen*, 34 F.4th 841, 851 (9th Cir. 2022). Plaintiff States have

14    a sovereign interest in regulating the manner of federal elections, including setting ballot-receipt

15    deadlines. U.S. Const., art. I, § 4; *Snapp*, 458 U.S. at 601. Section 7 of the Executive Order

16    infringes on that sovereign interest by attempting to preempt ballot return deadlines. Dkt. 1-1,

17    § 7. The declaratory judgment claim requires interpreting statutes that set the election day for

18    federal general elections. *See* 2 U.S.C. § 1 (Senate), 2 U.S.C. § 7 (House); 3 U.S.C. §§ 1, 21(1)

19    (Presidential electors). While Defendants may disagree on the merits, it is "enough for standing

20    purposes that if the plaintiff's interpretation of the [challenged] statute was correct, it would

21    'suffer serious consequences.'" *Yellen*, 34 F.4th at 853 (quoting *City & County of San Francisco*,

22    897 F.3d at 1236).

23    Second, Plaintiff States have standing based on financial injuries. Enforcement of a

24    ballot-receipt deadline will injure Plaintiff States through the loss of EAC and U.S. DOJ funding,

25    *see* Holmes Decl., ¶¶ 76-77; Dawson Decl., ¶ 20; Farmer Decl., ¶ 35; Hall Decl., ¶¶ 36, 48;

26    Declaration of Leesa Manion, ¶¶ 4-8; Declaration of Patricia Cole-Tindall, ¶¶ 13-27, by requiring

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC                    13                    ATTORNEY GENERAL OF WASHINGTON
                                                              Complex Litigation Division
                                                              800 Fifth Avenue, Suite 2000
                                                              Seattle, WA  98104-3188
                                                              (206) 464-7744

additional ballot drop boxes and county staff, Wise Decl., ¶ 37, and by the very substantial costs of changing how Plaintiff States treat ballots received after election day, Wise Decl., ¶ 39; Kimsey Decl., ¶ 17; Hall Decl., ¶ 33; Dawson Decl., ¶¶ 15-16.

Plaintiff States' injuries are directly traceable to the Executive Order, and a declaratory judgment and permanent injunction preventing enforcement of section 7 will remedy the harm.

### b.    The Plaintiff States' declaratory judgment claim is ripe

Plaintiff States' declaratory judgment claim is fit for judicial decision and, absent a decision from this Court, the parties will suffer hardship. *See Thomas*, 124 F.4th at 1187. The claim is fit for a judicial decision because it is not contingent on future events. Plaintiff States have existing ballot-receipt deadlines that are inconsistent with the Executive Order, and the Executive Order directs that the Attorney General "shall" enforce the statutes against Plaintiff States. Dkt. 1-1, § 7(a). The dispute exists now, and the question is purely legal—whether federal law preempts Plaintiff States' ballot-receipt deadlines. *See Haw. Newspaper Agency*, 103 F.3d at 746.

Absent this Court's review, Plaintiff States will suffer hardship. Plaintiff States must choose between changing statutory ballot-receipt deadlines and enforcement by the U.S. Attorney General (whether that is withholding DOJ grants, criminal prosecutions of election officials, and/or civil proceedings). Changing ballot-receipt deadlines involves not only injury to Plaintiff States' sovereign interests in adopting and enforcing state law, but also the costs of public education campaigns, building additional drop boxes, and hiring additional staff. Wise Decl., ¶¶ 33, 36-37; Farmer Decl., ¶ 36; Dawson Decl., ¶ 15-16. Enforcement action would also involve obvious hardships. *E.g.*, Wise Decl., ¶¶ 52-54; Hall Decl., ¶¶ 32-33. Either way, there is a "'substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

The Court should not delay resolution of the ballot-receipt deadline dispute. It is well established that "federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). Changes to ballot-receipt deadlines will take significant time to implement, so this issue must be decided well ahead of the 2026 general election.

### 2.      The President has no authority to dictate ballot-receipt deadlines

The President has no constitutional authority to create ballot-receipt deadlines for federal elections. The Constitution vests the authority to regulate federal elections in States and Congress. U.S. Const. art. I, § 4. The Executive Order does not claim otherwise. *See* Dkt. 1-1, §§ 1, 7.

The President also has no statutory authority to require that States adopt his preferred ballot-receipt deadline. The Executive Order relies on a patently incorrect reading of two federal statutes—2 U.S.C. § 7 and 3 U.S.C. § 1—that, according to the President, create a "ballot receipt deadline of Election Day for all methods of voting, excluding ballots cast in accordance with" the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA). Dkt. 1-1, § 7(b). But those statutes are entirely silent regarding ballot-receipt deadlines; they simply establish a uniform day for federal general elections. The statute regarding elections for United States representatives provides, in its entirety, as follows:

> The Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States and Territories of the United States, of Representatives and Delegates to the Congress commencing on the 3d day of January next thereafter.

2 U.S.C. § 7. The words "ballot" and "deadline" are conspicuously absent from this text. Similarly, the statute for elections of presidential electors provides, in its entirety, as follows:

> The electors of President and Vice President shall be appointed, in each State, on election day, in accordance with the laws of the State enacted prior to election day.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    3 U.S.C. § 1.

2      The interpretive task here is straightforward. When interpreting laws adopted under the

3    Elections Clause, "the reasonable assumption is that the statutory text accurately communicates

4    the scope of Congress's pre-emptive intent." *ITCA*, 570 U.S. at 14. Such legislation supersedes

5    state laws so far as they are inconsistent, but "no farther[.]" *Id.* at 9. The statutory text is clear.

6    It sets a date on which the election must be held. State laws that count ballots postmarked by

7    election day are entirely consistent with the federal election day statutes. The voter has made a

8    final and irreversible selection by election day, just like a voter who casts a ballot at a polling

9    site. The federal election day statutes are silent on these deadlines and so the state laws are not

10   preempted. *See ITCA*, 570 U.S. at 14.

11     Plaintiff States are far from alone; many States accept timely-cast ballots that are received

12   after election day. Seventeen States (slightly over one-third of all States), plus the District of

13   Columbia, accept ballots received after election day so long as they were postmarked on or

14   before election day. National Council of State Legislatures, *Table 11: Receipt and Postmark*

15   *Deadlines for Absentee/Mail Ballots* (updated May 12, 2025), https://www.ncsl.org/elections-

16   and-campaigns/table-11-receipt-and-postmark-deadlines-for-absentee-mail-ballots.[2]

17     The purpose of the federal election day statutes confirms that they were never intended

18   to preempt state ballot-receipt deadlines. The sponsor of the bill identified the purpose as

19   avoiding a situation in which "it will be in the power of each State to fix upon a different day"

20   to hold elections and to prevent any States from obtaining an "undue advantage." Cong. Globe,

21   42d Cong., 2d Sess. 141 (1871) (remarks of Rep. Butler).[3] Nothing in the text or legislative

22   history expresses concern with when ballots cast by election day are received or counted. And

23   this is telling because receiving timely-cast ballots after election day was not unknown. During

24   the Civil War, some States permitted soldiers in the field to provide their ballots to military

25   _____

       [2] Until May 7, 2025, Utah was an eighteenth state that accepted timely-cast ballots received after election
26   day.

       [3] This excerpt is Exhibit D of the Declaration of Kelly Paradis.

officials *on* election day that were then transmitted to election officials *after* election day. Josiah

Henry Benton, *Voting in the Field: A Forgotten Chapter of the Civil War* 171-73, 186-87, 190

(1915), https://perma.cc/5HGD-K5JC/. This occurred shortly before the 1871 adoption of the

federal election day statutes. And through the following 150 years, States have continued to

exercise their authority to accept ballots received after election day, *see, e.g.*, 1933 Wash. Sess.

Laws 100-01 (Ex. Sess., ch. 41, § 3) (requiring that absentee ballots be "posted . . . not later than

the day of the election"); Cal. Political Code § 1360 (Deering 1924); Kans. Rev. Stat. § 25-1106

(Chester I. Long, et al., eds. 1923), and, despite amending the federal election day statutes,

Congress has never called those state laws into question.

The federal statutes only set the date for federal *general* elections. 2 U.S.C. § 7; 3 U.S.C.

§ 21(1). If these statutes were intended to preempt state ballot-receipt deadlines for federal

elections, they would refer to "federal elections" generally, and thus also apply to primary and

special federal elections, as do other federal election statutes. *See* 52 U.S.C. § 30101(1) (defining

"election" under federal campaign finance law to include "a general, special, primary, or runoff

election"); 52 U.S.C. § 20502 (adopting § 30101(1) definition for NVRA).

Later legislative history further confirms that Congress has never intended to preempt

state ballot-receipt deadline laws. In 2022, Congress amended the presidential electors statute,

3 U.S.C. § 1, to add the term "election day," which it defined in 3 U.S.C. § 21(1). Consolidated

Appropriations Act of 2023, Pub. L. No. 117-328, § 102, 136 Stat. 4459 (Dec. 29, 2022). At that

time, Congress was certainly aware that over one-third of States counted timely-cast ballots

received after election day. And yet Congress still remained silent on ballot-receipt deadlines,

reflecting that it did not intend to preempt this well-established form of state election regulation.

Similarly, in 1986, Congress enacted the law now known as UOCAVA. That statute

provided, and still provides, that overseas ballots "shall be submitted and processed in the

manner provided by law for absentee ballots in the State involved[ ]" and acknowledges that the

"deadline for receipt of the State absentee ballot under State law" applies. UOCAVA, Pub. L.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

No. 99-410, § 103(b), 100 Stat. 924 (Aug. 28, 1986), *codified at* 52 U.S.C. § 20303(b). At that time, at least eight states and the District of Columbia already had laws providing that absentee ballots postmarked by election day but received after election day must be counted. 1986 Ala. Sess. Laws, ch. 85, §§ 9-11; 1985 Md. Laws 2768; 1985 Mass. Acts 792, 792-93; 1984 N.Y. Laws 1784; 1981 N.D. Laws 564, 564-65; 1984 Ohio Laws 137; 1984 V.I. Sess. Laws 132; 32 D.C. Reg. 3828 (July 5, 1985). In adopting UOCAVA, Congress blessed these ballot-receipt deadlines, expressly making them applicable to UOCAVA ballots.

The Executive Order does something telling here. It claims to exempt UOCAVA voters from the election day ballot-receipt deadline. Dkt. 1-1, § 7. But the statutes it relies on—2 U.S.C. § 7 and 3 U.S.C. § 1—create no such exception, nor does UOCAVA expressly create an exception. UOCAVA simply provides that state ballot receipt deadlines apply to UOCAVA ballots. In this attempt to create an exception, the President gives the game away. He is not attempting to enforce federal law; he is attempting to pick and choose who gets to vote for President. He does not, should not, and must not have that power.

Unsurprisingly, federal and state courts have almost universally rejected the argument that the election day statutes preempt state ballot-receipt deadlines. *See Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 368 n.23 (Pa. 2020) (observing that "the tabulation of ballots received after Election Day does not undermine the existence of a federal Election Day, where the proposal requires that ballots be cast by Election Day"); *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 353-54 (3d Cir. 2020), *cert. granted, judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) ("The Deadline Extension and federal laws setting the date for federal elections can, and indeed do, operate harmoniously."); *Donald J. Trump for President v. Way*, 492 F. Supp. 3d 354, 369-73 (D.N.J. 2020) (finding no likelihood of success in challenge to a state's post-election mail ballot-receipt deadline); *Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d 720, 736 (N.D. Ill. 2023) (holding that Illinois law allowing counting of timely-cast votes received after election day "does not conflict" with federal election day

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1     statutes); *Republican Nat'l Comm. v. Wetzel*, 742 F. Supp. 3d 587, 601 (S.D. Miss.), *rev'd in*

2     *part, vacated in part*, 120 F.4th 200 (5th Cir. 2024) (similar for Mississippi law).

3         There is only one case that goes against this overwhelming weight of authority. In

4     *Republican National Committee v. Wetzel*, 120 F.4th 200, 203-05 (5th Cir. 2024),[4] the Fifth

5     Circuit held that the federal election day statutes preempted Mississippi's laws that counted

6     timely-cast ballots received after election day. The Fifth Circuit's decision is not binding on this

7     Court, and its profound errors make it decidedly unpersuasive.

8         *Wetzel* is atextual. It invents an election day ballot-receipt requirement that appears

9     nowhere in the text of the statute. The core analytical basis for the *Wetzel* decision is the panel's

10    conclusion that a ballot is not "cast" (a term appearing nowhere in federal law) until "it is

11    received" by election officials. *Id.* at 207. But the only analysis is the panel's assertion that "it

12    should be . . . obvious[.]" *Id.* There is no citation to contemporary dictionary definitions; there

13    is no respect, as required by principles of federalism, for the fact that over one-third of States

14    have reached a very different conclusion; there is no recognition that Congress has long

15    acquiesced in post-election day ballot-receipt deadlines. And the *Wetzel* panel is simply wrong.

16    It is far from "obvious" that a ballot is not cast until it is received. Even when a person "casts"

17    their vote in person at a voting booth on election day, it might not be "received" by election

18    officials who will actually count the ballot until arrival many hours later (perhaps after midnight,

19    and so on the next day), at a central location. The *Wetzel* court acknowledged that "most . . .

20    contemporary sources" that define the term *election* "make no mention of deadlines or ballot

21    receipt." 120 F.4th at 206 n.5. But rather than draw the obvious conclusion that, in using the term

22    *election*, Congress did not address deadlines or ballot-receipt, the *Wetzel* court gave itself *carte*

23    *blanche* to invent such a new definition.

24

25                               
           [4] Five judges dissented from the petition to rehear the case en banc. 132 F.4th 775 (5th Cir. 2025).

26    Mississippi has informed the district court that it intends to file a petition for writ of certiorari. *Republican Nat'l Comm. v. Wetzel*, No. 1:24-cv-00025-LG-RPM (S.D. Miss. Apr. 18, 2025), ECF No. 116.

1    *Wetzel* is also ahistorical. As discussed above, during the Civil War, one practice for

2    soldiers was to return ballots to military officials on election day, which were transmitted to

3    election officials between election day and canvassing. Benton, *supra*, at 186-87, 190; *Wetzel*

4    mischaracterizes this history, incorrectly claiming that "[*e*]*lection officials* brought ballot boxes

5    to the battle-field[.]" 120 F.4th at 209 (emphasis added) (citing Benton, *supra*, at 15). This was

6    true for some States, but, had the *Wetzel* panel kept reading the source it cited, it would have

7    learned that other States did not rely on election officials. *Wetzel* also glosses over the expansion

8    of state laws authorizing post-election day receipt, characterizing eighteen States—over one-

9    third of all States—as "[a] few 'late-in-time outliers[.]' " *Id.* at 211.

10    Finally, *Wetzel* is based on factual assumptions that are wrong. *Wetzel* falsely suggests

11    that "voters can change their votes after Election Day" by recalling their mailed ballots. *Id.* at

12    208. But even if a voter successfully recalls a mailed ballot after election day and makes changes

13    to the ballot, it will not be accepted because the new postmark will be *after* election day.

14    There are many other methodological and practical problems with the *Wetzel* decision.

15    Its reasoning would, for example, call into question the ability of election officials to later reject

16    improper ballots or for voters to later cure signature issues on ballots. *Id.* at 207 (suggesting that

17    the election result must be "fixed" by election day). And it badly misconstrues certain cases it

18    relies on, including *Maddox v. Board of State Canvassers*, 149 P.2d 112 (Mont. 1944), and

19    *Newberry v. United States*, 256 U.S. 232, 250 (1921). For present purposes, it is enough to show

20    that *Wetzel* is simply wrong—very wrong—in interpreting 2 U.S.C. § 7 and 3 U.S.C. § 1 to create

21    an election day ballot-receipt deadline.

22    Properly construed, nothing in the text of 2 U.S.C. § 7 or 3 U.S.C. § 1 purports to require

23    that election officials receive ballots by election day. Under the Elections Clause, regulating this

24    aspect of the manner of federal elections is left to the States. U.S. Const. art. I, § 4. The President

25    has no authority to require that States reject ballots received after election day.

26

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC                    20                    ATTORNEY GENERAL OF WASHINGTON
                                                              Complex Litigation Division
                                                              800 Fifth Avenue, Suite 2000
                                                              Seattle, WA  98104-3188
                                                              (206) 464-7744

**D.    The President Has No Authority to Dictate Standards for Voting Systems or the Outcome of the Testing and Certification Process**

The Executive Order unlawfully directs the EAC to make specific changes to voting system guidelines and to rescind certifications of voting systems by mid-September 2025. This directive will result in the federal de-certification of *all* voting systems used in the United States, including in Plaintiff States. This serves no purpose other than to undermine public confidence in the legitimacy of elections. The President has no authority to order changes to election systems guidelines or dictate the outcome of the testing and certification process. If the President has the authority to order these changes to voting systems guidelines, nothing prevents the President from ordering even more dramatic changes to election systems, tightening control over elections in a manner antithetical to our democratic process. Sections 4(a) and 4(b) violate the separation of powers and are *ultra vires* and unconstitutional; this Court should permanently enjoin the EAC from implementing these unlawful provisions.

**1.    Plaintiff States have standing to challenge the voting systems requirements**

In Washington, voting systems must be approved by the Secretary of State, and the voting system must be one that "has been tested and certified by an independent testing authority designated by the" EAC. Wash. Rev. Code §§ 29A.12.050, .080(5). In Oregon, voting systems must be certified by the Secretary of State, Or. Rev. Stat. § 246.550, for which he relies on federal certifications, Or. Admin. R. 165-007-0350(1).

In order to receive federal certification, voting systems must satisfy the Voluntary Voting System Guidelines (VVSG) adopted by the EAC. Holmes Decl., ¶ 60. The voting systems currently used in the States have all been certified under the VVSG 1.0 testing standard. *Id.*, ¶ 57. In 2021, the EAC adopted the latest iteration of the VVSG (VVSG 2.0), but the EAC has not certified any voting systems under that testing standard. *Id.*, ¶¶ 68-69.

The Executive Order mandates that, within 180 days of its issuance (*i.e.*, by September 21, 2025), the EAC must "take appropriate action to . . . rescind all previous

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT No. 2:25-cv-00602-JHC

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

certifications of voting equipment based on prior standards." Dkt. 1-1, § 4(b)(ii). The EAC may re-certify voting systems under the new guidelines that the Executive Order directs the EAC to adopt. *Id.* But those new standards will not exist by September 21, 2025. Holmes Decl., ¶ 70. Even if they did, no systems could be re-certified to these standards by September 21; certification is a years-long process. *Id.*, ¶¶ 67-68, 70. The inevitable result is that the Executive Order directs the EAC to de-certify all voting systems used in the United States.

The de-certification of voting systems creates a concrete and particularized injury to Plaintiff States. Plaintiff States face the untenable dilemma of continuing to use the federally de-certified voting systems or else count ballots by hand until new voting systems are available or existing systems are re-certified. Adopting new voting system guidelines and certifying voting systems under those guidelines is a years-long process. Holmes Decl., ¶¶ 67-68. Using federally de-certified voting systems will undermine public confidence in elections in Plaintiff States and require that Plaintiff States spend staff time and money explaining to voters that the voting systems are reliable and secure. Holmes Decl., ¶ 73; Kimsey Decl., ¶ 24; Hall Decl., ¶ 46. In the alternative, Plaintiff States would have to either buy expensive new voting systems, Kimsey Decl., ¶ 22 ("approximately $750,000" for Clark County); Hall Decl., ¶ 45 ("over $550,000" for Thurston County), or hire enough staff to hand-count ballots, a process that is time-consuming, costly, and less reliable than counting ballots using a tabulator. Holmes Decl., ¶ 74; Kimsey Decl., ¶¶ 25-28; Hall Decl., ¶ 47.

These harms are directly traceable to the Executive Order. Before the Executive Order, there was no direction for the EAC to rescind voting system certifications and, therefore, no need for Plaintiff States to replace their existing voting systems. Summary judgment will redress these harms. If this Court grants summary judgment, the Plaintiff States will continue using their existing voting systems without the harms identified.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

### 2.    The President has no authority to control voting systems

2      The President has no constitutional authority to alter voting system guidelines or to direct

3  which voting systems are federally certified. Nothing in the Elections Clause gives the President

4  control over *any* aspect of regulating elections. *See* U.S. Const. art. I, § 4, cl. 1; *see also* U.S.

5  Const. art. II, § 1, cl. 2.

6      The President also has no *statutory* authority to alter voting system guidelines. Through

7  HAVA, Congress assigned responsibility for adopting and modifying the VVSG to the

8  independent and bipartisan EAC, and it required the EAC to consider the technical expertise of

9  several bipartisan expert bodies. 52 U.S.C. §§ 20922(1), 20962. To adopt or modify the VVSG,

10  the Executive Director of the EAC must first work with the Technical Guidelines Development

11  Committee and take its recommendations into consideration. 52 U.S.C. §§ 20961(b)(1),

12  20962(b)(1). Next, the Board of Advisors and the Standards Board must review the proposed

13  guidelines and submit comments and recommendations, which the EAC must consider. 52

14  U.S.C. § 20962(b)-(d). The EAC must also publish the proposed VVSG in the Federal Register,

15  provide an opportunity for public comment, and publish the final guidelines in the Federal

16  Register. 52 U.S.C. § 20962(a). The EAC may not vote on the final adoption (or modification)

17  of a guideline until 90 days after submission to the Board of Advisors and Standards Board, and

18  at least three of the EAC's four members must vote to approve it. 52 U.S.C. §§ 20962(d)(2),

19  20928.

20      Nor does the President have any statutory authority to determine which voting systems

21  can be federally certified. Through HAVA, Congress assigned the EAC responsibility to test,

22  certify, de-certify, or re-certify voting system hardware and software. 52 U.S.C. §§ 20922(2),

23  20971. Congress assigned no similar responsibility to the President.

24      Congress created no role for the President in the processes of adopting or modifying

25  VVSG or certifying or de-certifying voting systems. Congress plainly intended for such

26  decisions to be made by bipartisan entities composed of individuals with experience or expertise

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

in election administration or the study of elections. *See* 52 U.S.C. §§ 20923(a)(1), (3), 20943(a), 20944(a)-(b), 20961(c). The Executive Order entirely upends the statutory scheme created by Congress, seeking to replace statutorily required bipartisan consensus based on technical expertise with presidential whims based on conspiracy theories. The President's actions violate the separation of powers and are *ultra vires*. This court should hold unlawful the President's attempts to control the voting systems used by the Plaintiff States.

## IV.   CONCLUSION

To prevent tyranny, the Framers intentionally divided power between the States and the Federal Government and separated the Federal Government's powers among three branches. In the Executive Order provisions challenged here, the President seeks to disregard constitutional limits on his power. In any context, this would be troubling, but it is especially so in the context of elections. As the Supreme Court has held, the right to vote "in a free an unimpaired manner is preservative of other basic civil and political rights." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964). Our Constitution and laws do not permit any President to exert control over the regulation of our elections. Accordingly, this Court should grant partial summary judgment in favor of Plaintiff States and (1) hold that sections 2(a), 4(a), 4(b), and 7 of the Executive Order are *ultra vires* and a violation of the separation of powers and (2) enter a declaratory judgment that Plaintiff States' ballot-receipt deadlines are not preempted by 2 U.S.C. § 7 or 3 U.S.C. § 1.

DATED this 29th day of May, 2025.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    I certify that this memorandum contains 8,345
     words, in compliance with the Local Civil Rules
2

3    NICHOLAS W. BROWN
        *Attorney General*
4       *State of Washington*

5    NOAH G. PURCELL, WSBA 43492
        *Solicitor General*
6

     *s/ Karl D. Smith*
7    KARL D. SMITH, WSBA 41988
        *Deputy Solicitor General*
8    WILLIAM MCGINTY, WSBA 41868
     KELLY A. PARADIS, WSBA 47175
9    ALICIA O. YOUNG, WSBA 35553
        *Deputy Solicitors General*
10   FREEMAN E. HALLE, WSBA 61498
     MICHELLE M. SAPERSTEIN, WSBA 55539
11   ZANE MULLER, WSBA **
        *Assistant Attorneys General*
12   Office of the Washington State Attorney General
     800 Fifth Avenue, Suite 2000
13   Seattle, WA 98104-3188
     206-464-7744
14   karl.smith@atg.wa.gov
     noah.purcell@atg.wa.gov
15   william.mcginty@atg.wa.gov
     kelly.paradis@atg.wa.gov
16   alicia.young@atg.wa.gov
     freeman.halle@atg.wa.gov
17   zane.muller@atg.wa.gov
     michelle.saperstein@atg.wa.gov
18

19   *Attorneys for Plaintiff State of Washington*

20   DAN RAYFIELD
     Attorney General
21   State of Oregon

     *s/ Brian Simmonds Marshall*
22   BRIAN SIMMONDS MARSHALL*
     CARLA A. SCOTT, WSBA #39947
23   *Senior Assistant Attorneys General*
     KATE E. MORROW*
24   *Assistant Attorney General*
     Oregon Department of Justice
25   100 SW Market Street
     Portland, OR 97201
26   (971) 673-1880

PLAINTIFFS' MOTION FOR PARTIAL          25          ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                         Complex Litigation Division
No. 2:25-cv-00602-JHC                                   800 Fifth Avenue, Suite 2000
                                                         Seattle, WA  98104-3188
                                                            (206) 464-7744

brian.s.marshall@doj.oregon.gov
carla.a.scott@doj.oregon.gov
kate.e.morrow@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*

*Admitted Pro hac vice
**Washington State bar admission pending

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744