# Exhibit A

1

```
                   UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA


 LEAGUE OF UNITED LATIN          .
 AMERICAN CITIZENS, et al.,      .
                                 .  CA No. 25-0946 (CKK)
          Plaintiffs,            .
                                 .
     v.                          .
                                 .
 EXECUTIVE OFFICE OF THE         .  Washington, D.C.
 PRESIDENT, et al.,              .  Thursday, April 17, 2025
                                 .  1:37 p.m.
          Defendants.            .
 . . . . . . . . . . . . . . . . .


                  PRELIMINARY INJUNCTION HEARING
            BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
                   UNITED STATES DISTRICT JUDGE

    APPEARANCES:

 For LULAC Plaintiffs:          DANIELLE M. LANG, ESQ.
                                Campaign Legal Center
                                1101 14th Street NW
                                Washington, DC 20005

 For Nonpartisan                SOPHIA L. LANKIN, ESQ.
 Plaintiffs:                    American Civil Liberties
                                Union Foundation
                                125 Broad Street
                                New York, NY 10004

 For Democratic Party           ARIA C. BRANCH, ESQ.
 Plaintiffs:                    Elias Law Group LLP
                                250 Massachusetts Avenue NW
                                Washington, DC 20001

 For Defendants:                MICHAEL GATES, ESQ.
                                U.S. Department of Justice
                                950 Pennsylvania Avenue NW
                                Washington, DC 20530

 Court Reporter:                BRYAN A. WAYNE, RPR, CRR
                                U.S. Courthouse, Room 4704-A
                                333 Constitution Avenue NW
                                Washington, DC 20001
```

```
 1                      P R O C E E D I N G S
 2            THE DEPUTY CLERK:  Civil case 25-946, League of
 3   United Latin American Citizens, et al., League of Women Voters
 4   Education Fund, et al., and Democratic National Committee, et
 5   al., versus the Executive Office of the President, et al.
 6            THE COURT:  Let me start with the defendant, if we
 7   could have counsel for the defendant.  If you could introduce
 8   yourself.
 9            MR. GATES:  Thank you, Your Honor.  Michael Gates with
10   the Department of Justice on behalf of defendants President
11   Donald J. Trump, Attorney General Pam Bondi, the Election
12   Assistance Commission, and the other three named defendants
13   in the federal lawsuits.
14            THE COURT:  Good afternoon.  And for plaintiffs, I'll
15   call them LULAC, if I may, Secure Families Initiatives, and
16   Arizona Students' Association.
17            MS. LANG:  Danielle Lange for the LULAC plaintiffs, and
18   I'm joined by my colleagues, Heather Szilagyi, Jonathan Diaz
19   and Pooja Chaudhuri, and I believe Norman Eisen is in the
20   courtroom as well.
21            THE COURT:  Good afternoon.  And then for plaintiffs
22   League of Women Voters and the group with that, if you would
23   identify yourself.
24            MS. LAKIN:  Good morning, Your Honor.  Sophia Lakin for
25   League of Women Voters plaintiffs.  I'm joined by a number of
```

1        MR. GATES:  So to answer your question, Your Honor,
2    that's why they go through the process, to get all of this
3    input.
4        THE COURT:  And that's my question.  You're not
5    answering my question.  My question is, they go through all of
6    this, the stakeholders and everybody else, and then they come
7    back and they -- let's say they decide they disagree with the
8    president on 2(a).  So would the expectation be that EAC would
9    say, no, we're not going to do that, or would the expectation
10   be, because of the executive order, that no matter what
11   process they went through and whoever said what, the end
12   result would be what the president wants?
13       MR. GATES:  Well, it's going to be that there's going
14   to be documentary proof because it's contemplated by the
15   executive order, and proof of citizenship is also contemplated
16   by Congress in about a dozen different statutes.  The
17   citizenship requirement is absolutely required by Congress by
18   legislation in order to vote.  You have to --
19       THE COURT:  Right.  But the question is, does it have
20   to be on the form, and do they have to provide proof of it?
21       MR. GATES:  The question for voter eligibility is
22   whether you're a citizen.
23       THE COURT:  Of course.  I'm not disputing that,
24   Mr. Gates.
25       MR. GATES:  And the only thing the president has

1    ordered is a mechanism to prove what the statutes passed
2    by Congress require.
3         THE COURT:  The point is, Mr. Gates, at this point the
4    expectation is that, yes, you have to be a citizen in order to
5    vote.  We all agree on that.
6         MR. GATES:  That's the law.
7         THE COURT:  So the question is whether the additional
8    provision in 2(a) should be added or not.  So you're ducking
9    my question.
10        MR. GATES:  I don't mean to.
11        THE COURT:  No, you are, sir.
12        MR. GATES:  I didn't intend to.
13        THE COURT:  You may not intend it, but you are.  So let
14   me just put it this way again, and then we'll move on:  Your
15   view is that what the president is requiring in 2(a) is legal.
16        MR. GATES:  Yes.
17        THE COURT:  Okay.  That's fine.  And you also agree
18   that they're going to go through the process of notice and
19   comment, they're going to be adding all these extra
20   consultations, etc.
21        MR. GATES:  Yes.
22        THE COURT:  And let's assume, at the end of what
23   they're required to do, they disagree with what the president
24   wants added to the form.  Okay?  Let's assume that that
25   happens.  The question for you is whether, if the expectation

```
 1     is that despite their conclusion -- you seem to have decided
 2     they can't conclude anything else.  But let us assume that
 3     actually they could conclude at the end that there isn't a
 4     need for it, or for whatever reason.  Would the expectation
 5     be from your argument that it wouldn't matter if they decided
 6     that it didn't need to be there as the president wanted in
 7     terms of the proof, EAC would still be required to do this
 8     because the president has ordered it?  Is that your view?
 9             MR. GATES:  Yes, and I'm not ducking --
10             THE COURT:  Okay.  You answered my question.
11             MR. GATES:  Can I please explain?  The executive order
12     is binding --
13             THE COURT:  No, no.  You've answered my question.  It
14     goes to -- if I could follow up with this.  So as a practical
15     matter, the president has decided that this 2(a), with the
16     requirements that are in 2(a), should be something that EAC
17     should adopt and that --
18             MR. GATES:  Proof of citizenship.
19             THE COURT:  Okay.  And EAC is expected to go through
20     the process that's set out by statute and otherwise, okay?
21     And the expectation on the president's part, because he's
22     ordered it, is that the end result will be that 2(a) will be
23     adopted by EAC even if EAC decides, after they go through all
24     of their process, that they do not think it's needed, required,
25     or whatever their reason is, they wouldn't put it in except
```

1      for the president's order.  So would you agree that that's
2      your position?
3             MR. GATES:  Yes, but we don't know what the form is
4      ultimately going to look like.
5             THE COURT:  I agree.  I'm putting it totally in a
6      hypothetical form.  I'm trying to figure out whether from
7      your perspective that the EAC is expected to adopt 2(c) no
8      matter what process they go through.
9             MR. GATES:  That's the directive --
10            THE COURT:  And I don't know what the answer is.
11            MR. GATES:  Well, that --
12            THE COURT:  Yes or no?  This is a yes or no.  You can
13     explain, but it's a yes-or-no question.
14            MR. GATES:  I think it's a yes because the documentary
15     proof is required, but what the form is going to look like or
16     what information's going to be presented on the form won't be
17     in final form until the APA process has been completed.
18            THE COURT:  Right.  But I'm just saying to you, you go
19     through the APA process, and at the bottom, at the end, the
20     EAC decides that they do not want to adopt 2(a).  But your
21     view, as I understand it, and the president's view is that he
22     has mandated that it be included, that 2(a) be adopted; and
23     therefore, they can go through the whole process, but the
24     bottom line is 2(a) is going to be adopted by EAC.  Am I
25     correct?  Yes or no.

1           MR. GATES:  Yes.  And the EAC could actually require
2    documentary proof if the executive order didn't ever exist.
3    The EAC could, on its own, knowing that citizenship is
4    required by law, could require it on their own.
5           THE COURT:  They could require it.  I'm not saying
6    that they couldn't.  If they decided on their own and it was
7    consistent with the president, that's fine.  My question is,
8    if they concluded differently than the president, would the
9    president's direction and order -- basically, it's sort of the
10   prior determination as to the outcome.
11          MR. GATES:  I think you're assuming what questions
12   are going to be presented to the stakeholders and what their
13   feedback is going to be.
14          THE COURT:  I'm telling you the bottom line.  I'm
15   telling you the end.  I think I've gotten enough of a sense
16   of what you're arguing, so let me move on to some other
17   things.
18          MR. GATES:  Okay.
19          THE COURT:  So 2(b), let's move to that, directs
20   several federal agencies and officers to take action to
21   identify unqualified voters registered in the states by
22   granting access to information in federal databases, and
23   Section 2(b)(iii) in particular directs the Department of
24   Homeland Security to coordinate with a DOGE administrator
25   to review each state's publicly available voter registration

1   in this regard.  Only the states have standing in a claim like
2   this on the one hand.  On the other hand, 33 states, including
3   Arizona, have already adopted election-day ballot receipt
4   deadline requirements.
5           THE COURT:  I understand that.  You're bringing extra
6   arguments out, but they're not really what I was trying to
7   get at.  So let me get on to the rest of it.  I don't disagree
8   with what you said, and that is in the pleadings.
9           What actions could the attorney general take consistent
10  with applicable law to enforce the election-day statutes?
11  Does that mean lawsuits?
12          MR. GATES:  Any number of actions, including criminal
13  actions.
14          THE COURT:  Okay.  So it's bringing lawsuits or taking
15  court actions.  Right?
16          MR. GATES:  Any number of actions.  You could send
17  letters to correct -- to encourage compliance --
18          THE COURT:  I'm asking if one of the things would be
19  lawsuits, in other words.
20          MR. GATES:  Well, you and I have to look into our
21  crystal ball and make a prediction.
22          THE COURT:  Okay.  Let me move on a little bit as to
23  why I was getting to this.  So let me talk about lawsuits.
24  The Voting Rights Section of the DOJ Civil Rights Division has
25  always been historically responsible for bringing lawsuits on

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne