# Exhibit B

139 Cong. Rec. S5746-03, 1993 WL 151575

Congressional Record --- Senate

Proceedings and Debates of the 103rd Congress, First Session

Tuesday, May 11, 1993

**\*S5746** NATIONAL VOTER REGISTRATION ACT OF 1993-CONFERENCE REPORT

The Senate continued with the consideration of the conference report.

Mr. DURENBERGER.

Mr. President, I rise today in support of the conference report on the National Voter **\*S5747** Registration Act, better known as the motor-voter bill.

At the outset, I have to say that the State of Kentucky which is well known for a variety of things, from race horses to things that are consumed, has been incredibly well represented during the debate on motor-voter bill by their Senators. I want to be the first of many to compliment Senator WENDELL FORD for his leadership to promote universal access to voter registration. And I also want to thank my friend and colleague Senator MCCONNELL for his firm commitment to preserving the integrity of the election process. I believe having been sort of in the middle of this for a while, it is because of the involvement of these two Senators from different political parties from the same State that made it possible for the motor-voter bill to accomplish both of their objectives.

The motor-voter bill provides for voter registration at driver's license stations, registration by mail, and registration at certain State agencies. I have always supported the concept of this legislation. I believe that we should remove barriers that prevent any American from participating in civil society, especially barriers to full participation in the political process.

I was the author of the Voters' Rights Act a few years ago for people with disabilities which required much of the same access at the local level for people with disability.

My home State of Minnesota already registers voters using the methods outlined in this bill. In fact, we go even further than that. We allow voters to register on election day, as a result of which provision my State of Minnesota is specifically exempted from coverage under motor-voter.

So you see, Mr. President, I have had the rare luxury of considering legislation that will impact nearly every State but my own. In spite of my support for the motor-voter concept, I felt a responsibility to listen to the concerns of my colleagues from other States where the motor-voter bill will apply.

Many of my Republican colleagues were concerned that in expediting the voter registration process, we might also be opening the door to increased fraud, abuse, and coercion in the electoral process. For this reason, Republicans offered a core package of amendments to address these concerns.

If not for the presumption of unlimited debate in the Senate, these amendments might never have been seriously considered. But because the Senate requires 60 votes to cutoff debate, Republicans were able to leverage the acceptance of their core package in the Senate version of motor-voter.

The conference report adopts virtually all of the Republican core package. Some of the provisions in the core package included: Requiring an affirmative act to register; informing registrants of the penalties for submitting a false application; allowing registrants to refuse assistance, and to fill out their application in private; allowing States to determine the proper

Anything sincerely believed is worth pursuing. And since I sincerely believe that the U.S. Senate must hear the cry from the people to stop heaping new requirements on the backs of States and local governments, I rose to try to seek relief for States which have acted most responsibly and cannot, by anyone, be faulted for their efforts.

During the debate on my amendment, my good friend from Kentucky, Senator WENDELL FORD claimed that my amendment would provide a disincentive to States to purge their voter registration records; that the registration rolls would swell. To this I answer that the presumption that heretofore responsible States would begin to act irresponsibly is simply Federal paternalism and must be swept from the Hill.

We do not argue here whether it is worthwhile to have Americans participate in this democracy. All of us recognize that it is worthwhile. What we argue here is, at what cost do we mandate the method and manner by which that participation is increased? We argue here an elemental principle between the paternalism of the Federal Government and the clear freedom of individual State legislatures who seek to develop a system that works best for their individual State. Many argue that this motor-voter bill is the correct solution to the apparent problem in some States of low voter registration, and I may agree.

I agree that if the State legislatures of the States are satisfied with the version of motor-voter that they have found successful that they should take no act which will reduce their success. If on the other hand States have found that another system has brought them equal success-why is it left to this body to steal that success away from them?

The time has truly come for this body to see that we must stop applying unfunded Federal mandates to States and local governments. The tide of public opinion is rising against the Federal Government. I am now, and will, stand on the side of the people. I will work to see this practice put to an end.

The PRESIDING OFFICER.
The question is on agreeing to the conference report.

The yeas and nays have been ordered and the clerk will call the roll.

The assistant legislative clerk called the roll.

Mr. FORD.
I announce that the Senator from West Virginia <Mr. ROCKEFELLER> is necessarily absent.

Mr. SIMPSON.
I announce that the Senator from Utah <Mr. HATCH> is necessarily absent.

I further announce that, if present and voting, the Senator from Utah <Mr. HATCH> would vote "nay."

The PRESIDING OFFICER.
Are there any other Senators in the Chamber who desire to vote?

The result was announced-yeas 62, nays 36, as follows:

<Rollcall Vote No. 118 Leg.>

YEAS-62

Akaka Baucus Biden Bingaman Boren Boxer Bradley Breaux Bryan Bumpers Byrd Campbell Conrad Daschle DeConcini Dodd Domenici Dorgan Durenberger Exon Feingold Feinstein Ford Glenn Graham Harkin Hatfield Heflin Hollings Inouye

Jeffords Johnston Kennedy Kerrey Kerry Kohl Krueger Lautenberg Leahy Levin Lieberman Mathews Metzenbaum Mikulski Mitchell Moseley-Braun Moynihan Murray Nunn Packwood Pell Pryor Reid Riegle Robb Sarbanes Sasser Shelby Simon Specter Wellstone Wofford

NAYS-36

Bennett Bond Brown Burns Chafee Coats Cochran Cohen Coverdell Craig D'Amato Danforth Dole Faircloth Gorton Gramm Grassley Gregg Helms Kassebaum Kempthorne Lott Lugar Mack McCain McConnell Murkowski Nickles Pressler Roth Simpson Smith Stevens Thurmond Wallop Warner

NOT VOTING-2

Hatch Rockefeller

So the conference report was agreed to.

Mr. FORD.
Mr. President, I move to reconsider the vote by which the conference report was agreed to.

Mr. SARBANES.
I move to lay that motion on the table.

The motion to lay on the table was agreed to.

Mr. FORD.
Mr. President, I worked long and hard on this piece of legislation that now will become law upon the signature of the President, and he has said that he will sign it.

You try to thank a lot of people and it is very difficult to do because so many people played different roles and created different atmospheres that probably none of us will ever know about.

But I do want to thank Jack Sousa and Tom Zoeller of the Rules Committee and our director, Jim King. I want to especially thank Senator HATFIELD. He stood out like a beacon, if I could use that term, on the other side who was the original cosponsor from the beginning. We worked together very hard to bring this into being. Even though the percentage was not very big, he said it was a bipartisan effort.

I want to thank Sue Hildick of his staff for her hard work, and from Senator WELLSTONE'S staff, Colin McGinnis.

I have not heard anything from a politician who is for this bill. But we are going to find some elected officials who are for this bill out in the States. But, Mr. President, this was a grassroots effort. It started at home. The people at home, the organizations that came together, are the ones that brought this bill to its final conclusion today. There are representatives here today, Mr. President, of over 40 organizations in the coalition group which supported this measure and worked diligently to see its completion today.

It is unusual, I guess, that you thank someone from the other body for their hard work, but I want to thank Congressman AL SWIFT for his long and dedicated work on this legislation.

Mr. President, I hope that our constituents will begin to see a puzzle come together. We passed legislation on gifts and what we can receive, about lobbyists and all that. That was a plus, in my opinion. This bill is another piece of that puzzle coming together that we passed that will reconnect our constituency with Government and, oh, do we need that.

H.R. CONF. REP. 103-66, H.R. Conf. Rep. No. 66, 103RD Cong., 1ST Sess. 1993, 1993 WL 235764, 1993 U.S.C.C.A.N. 140 (Leg.Hist.)
**\*140** P.L. 103-31, **\*1** NATIONAL VOTER REGISTRATION ACT OF 1993

DATES OF CONSIDERATION AND PASSAGE

House: February 4, May 5, 1993
Senate: March 10, 11, 15, 16, 17, May 6, 7, 11, 1993
Cong. Record Vol. 139 (1993)
House Report (House Administration Committee) No. 103-9,
Feb. 2, 1993 (To accompany H.R. 2)
Senate Report (Rules and Administration Committee) No. 103-6,
Feb. 25, 1993 (To accompany S. 460)
House Conference Report No. 103-66,
Apr. 28, 1993 (To accompany H.R. 2)

HOUSE CONFERENCE REPORT NO. 103–66

April 28, 1993
[To accompany H.R. 2]

**\*\*0** The committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H.R. 2), to establish national voter registration procedures for Federal elections, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the House recede from its disagreement to the amendment of the Senate to the text of the bill and agree to the same with an amendment as follows:

In lieu of the matter proposed to be inserted by the Senate amendment, insert the following:

SECTION 1. SHORT TITLE.

This Act may be cited as the "National Voter Registration Act of 1993".

SEC. 2. FINDINGS AND PURPOSES.

(a) Findings.–The Congress finds that–

(1) the right of citizens of the United States to vote is a fundamental right;

(2) it is the duty of the Federal, State, and local governments to promote the exercise of that right; and

(3) discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities.

(b) Purposes.–The purposes of this Act are–

The amendment is identical to the House bill except for the disposition of fines, which are paid into the general fund of the Treasury. This modification was necessary to avoid a Budget Act point of order.

Conference substitute

Same as Senate amendment.

### SECTION 13. RULE OF CONSTRUCTION

House bill

No provision.

Senate amendment

Provides that nothing in this Act shall prevent a State from requiring presentation of documentation relating to citizenship of an applicant for voter registration.

Conference substitute

The conferees agree with the House bill and do not include this provision from the Senate amendment. It is not necessary or consistent with the purposes of this Act. Furthermore, there is concern that it could be interpreted by States to permit registration requirements that could effectively eliminate, or seriously interfere with, the mail registration program of the Act. It could also adversely affect the administration of the other registration programs as well. In addition, it creates confusion with regard to the relationship of this Act to the Voting Rights Act. Except for this provision, this Act has been carefully drafted to assure that it would not **\*\*149 \*24** supersede, restrict or limit the application of the Voting Rights Act. These concerns lead the conferees to conclude that this section should be deleted.

### SECTION 14. EFFECTIVE DATE

House bill

The bill provides that the Act will take effect January 1, 1995 in all States except those with constitutional provisions that would require a separate State and Federal voter roll. In order to give those States sufficient time to amend their constitutions to permit compliance without dual voter rolls, an effective date of January 1, 1996 is set.

Senate amendment

The amendment includes the same provisions as the bill and adds a further extension for any State that cannot amend its constitution before the 1996 effective date without a special election. For any such State, the effective date would be the date that is 120 days after the date by which it would be legally possible to amend the State constitution without a special election.

Conference substitute

Same as Senate amendment.

Charlie Rose,

> Al Swift,
> Martin Frost,
> Steny H. Hoyer,
> Gerald D. Kleczka,
> John Conyers, Jr.,
> Managers on the Part of the House.
> Wendell Ford,
> Claiborne Pell,
> Daniel K. Inouye,
> Managers on the Part of the Senate.

H.R. CONF. REP. 103-66, H.R. Conf. Rep. No. 66, 103RD Cong., 1ST Sess. 1993, 1993 WL 235764, 1993 U.S.C.C.A.N. 140 (Leg.Hist.)

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.