# Exhibit C

Mr. KERR obtained the floor.

Mr. RANDALL. Will the gentleman yield for a motion that the committee now rise?

Mr. KERR. I will.

Mr. RANDALL. I move that the committee now rise.

The motion was agreed to.

The committee accordingly rose; and the Speaker having resumed the chair, Mr. BUFFINTON reported that, according to order, the Committee of the Whole on the state of the Union had had the Union generally under consideration, and particularly the special order, being House bill No. 243, for the apportionment of Representatives to Congress among the several States according to the ninth census, and had come to no resolution thereon.

### LEAVE OF ABSENCE.

Mr. BLAIR, of Michigan, asked and obtained indefinite leave of absence for his colleague, Mr. FOSTER, of Michigan.

Mr. SHELLABARGER asked and obtained leave of absence for ten days.

### NEW YORK CITY BANKS.

Mr. TOWNSEND, of New York, by unanimous consent, submitted the following resolution; which was read, considered, and adopted:

*Resolved,* That the Secretary of the Treasury be requested to ascertain whether any of the banks in the city of New York, organized under the banking system of the United States, are in any way concerned or interested in promoting an artificial scarcity of money, and to report the same to this House.

### ENVELOPE MANUFACTURE.

Mr. RANDALL, by unanimous consent, presented the following petition; and the same was ordered to be printed in the Daily Globe:

*To the Senate and House of Representatives in Congress assembled:*

The petition of the undersigned, envelope manufacturers, printers, and stationers, respectfully represents that the United States Government, through the Post Office Department, has been for some time past manufacturing and selling envelopes at or below their cost to the Government, in the city of New York, and delivering the same through the mails to all parts of the country free of charge, at a loss to the Post Office Department of the cost of transportation, handling, &c., estimated at $1 65¼ per thousand envelopes, on the basis referred to in the Postmaster General's report for 1869, (page 34;) and, in addition, are printing on the same gratuitously for merchants and others, requiring a large and expensive clerical force to receive, copy, and transmit orders for the same, at a total estimated loss to the Department for the year 1869 of $134,489 70, while on the increased business of 1870 and 1871 it cannot be far short of $200,000. To this action of the Government we most respectfully submit the following

*Objections.*

1. That the stamped envelopes so manufactured by the Post Office Department are furnished exclusively for sale, and not for Government use.
2. That the manufacture and sale of stamped envelopes and printing on the same by the Government gratuitously is an unjust and improper interference with your petitioners' trade.
3. That the Government thereby becomes a powerful competitor against all envelope manufacturers, printers, lithographers, stationers, and dealers throughout the country, for business which should be conducted solely by private citizens and with private capital.
4. That the Government, by soliciting orders for envelopes by its thirty thousand postmasters, comes upon the market as a retail dealer, offering to print them without charge, in direct competition with envelope manufacturers, printers, stationers, and other dealers, none of whom can afford to print envelopes for their customers gratuitously.
5. That the Government delivers envelopes through the mails to all of its thirty thousand post offices without charge to the consumer, overburdening the mails, adding to the free matter (now chargeable to Congress under the franking privilege) many hundreds of tons annually, and increasing the rates charged by transportation companies for the mail service, and while your petitioners are compelled to pay for such transportation they cannot compete with the Government, which has its printing and transportation done at the expense of the public.
6. That supplying stamped envelopes at less than cost benefits only large firms and corporations who are abundantly able to pay a profit for making and printing envelopes.
7. That by this interference of the Government their business is largely diminished, their machinery reduced in value, and it operates as an invidious discrimination against your petitioners, and one not made against any other class of manufacturers, and constitutes a dangerous precedent, which, if followed in other departments of the Government, on all articles requiring a stamp, would powerfully tend to discourage private enterprise, and concentrate in the Government unwarrantable powers.

*Suggestions as to the Remedy.*

Should Congress not deem it advisable to abolish the sale of stamped envelopes, then your petitioners respectfully suggest that it would be but an act of justice to them to pass an amendment to the present law authorizing the sale of stamped envelopes, and requiring:

1. That the Post Office Department furnish envelopes to the public at ten per cent. above actual cost and not at cost, as at present. This would assist in making the Department self-sustaining, as well as in some degree help the trade.
2. The amendment to the Post Office appropriation bill passed by Congress at its last session, providing "that no envelope as furnished by the Government shall contain any lithographing or engraving, and no printing, except printed request to return the letter to the writer," should be made into a permanent law, as it expires July 1, 1872.
3. Should Congress not prohibit the printing of business cards, then all stamped envelopes printed to order, with the name, address, and business of the party ordering them, should be charged one dollar per thousand extra, which is less than ordinarily charged by printers and stationers.
4. That all stamped envelopes with business cards printed on them, and sent through the mails, should be charged with postage, same as other printed matter, which cost of transportation is estimated at $1 44 per thousand, from data given in the Postmaster General's report for 1869, page 34.

Your petitioners therefore pray that such legislation may be adopted by your honorable bodies as may relieve them from injurious competition.

### FRAUDS IN THE NAVAL SERVICE.

Mr. L. MYERS, by unanimous consent, introduced a bill (H. R. No. 615) for the better detection and prevention of frauds in the naval service; which was read a first and second time, ordered to be printed, and to be referred to the Committee on Naval Affairs.

Mr. SCOFIELD moved to reconsider the vote by which the bill was referred; and also moved that the motion to reconsider be laid on the table.

The latter motion was agreed to.

Mr. SNAPP. I move that the House now adjourn.

The motion was agreed to; and accordingly (at four o'clock p. m.) the House adjourned.

### PETITIONS, ETC.

The following petitions, &c., were presented under the rule, and referred to the appropriate committees:

By Mr. CHIPMAN: The memorial of Jane Dulaney, for a pension.

By Mr. COBURN: The petition of Thomas A. Dillon, in relation to his claim for bounty.

By Mr. DAVIS: The petition of James S. Wheat, Benjamin Stanton, and others, of West Virginia, praying the passage of a law authorizing an additional term of the circuit court of the United States to be held in the city of Wheeling in the district of West Virginia.

By Mr. HARRIS, of Virginia: A petition of manufacturers of tobacco at Lynchburg, Virginia, praying a uniform tax of sixteen cents per pound on manufactured and smoking tobacco.

By Mr. KELLOGG: The petition of Jeremiah Peck, of Connecticut, for an amendment of the tax laws.

By Mr. KETCHAM: The petition of L. H. Bogardus, jr., late second lieutenant fourth United States infantry, asking to be restored to his former rank in the regular Army.

By Mr. LAMPORT: The petition of R. L. Adams and others, relating to printed envelopes, &c.

By Mr. MONROE: The petition of George Olmstead and 12 others, citizens of Elyria, Ohio, asking for legislation in regard to the manufacture of envelopes by the Post Office Department.

By Mr. L. MYERS: A resolution of the city of Philadelphia, asking the repeal of the United States tax on gas consumed in the public lamps of said city, and on all illuminating gas.

By Mr. PLATT: The petition of Edward Cavendy, for compensation for the invention of tripods for taking zenith observations at sea, &c.

Also, the petition of Mrs. Mary A. Dodd, of Portsmouth, Virginia, for a pension.

By Mr. PRICE: The memorial of Mrs. Margaret S. Fain, widow of W. C. Fain, praying for a pension.

By Mr. RANDALL: A petition of sundry envelope manufacturers, printers, and stationers, remonstrating against the present system of sale of stamped envelopes by the Post Office Department.

By Mr. SHERWOOD: The petition of Harrison Gibson & Co. and others, of Williamsport, Pennsylvania, protesting against the manufacture and sale of envelopes by the Post Office Department.

By Mr. TOWNSEND, of New York: The petition of John J. Crittenden, Charles Van Name, Cornelius C. Jones, Garrett P. Wright, and Barnett Jones, to change the name of the American coasting vessel known as the Andrew Stewart.

By Mr. TWICHELL: The petition of Rand, Avery & Co., and others, printers and stationers, to change the present mode of furnishing the Post Office Department with envelopes, &c.

By Mr. VAUGHAN: The memorial of J. L. Beasley and 45 others, citizens of the county of Shelby, Tennessee, praying for the refunding of the cotton tax heretofore collected.

---

## IN SENATE.

WEDNESDAY, *December* 13, 1871.

Prayer by the Chaplain, Rev. J. P. NEWMAN, D. D.

The Journal of yesterday's proceedings was read and approved.

### COMMITTEE SERVICE.

The Vice President appointed Mr. ANTHONY to fill the vacancy upon the Committee on Privileges and Elections and Mr. CRAGIN to fill the vacancy upon the Committee on Agriculture, under the order made yesterday.

### PETITIONS AND MEMORIALS.

Mr. SUMNER. I present the petition of the Twenty-first District Republican Club of Washington, and also of the executive committee of the Workingmen's Association of Washington — a Republican club and the workingmen uniting in the same petition. They set forth that there exists "a wicked and unjust discrimination against citizens of color in the District of Columbia and in the States," and they ask Congress to adopt the supplementary civil rights bill now pending. They say, "By so doing you will perform an act of justice, and send to the hearts of thousands who at present are denied the common rights of men and women throughout the entire country a thrill of joy for such a reasonable and just consummation." This is signed "William T. Davis, chairman of the Republican club," and "J. B. Mansfield, secretary;" also by "James G. Marshall, president of the Workingmen's Association," and "Aaron Bradshaw, secretary."

In presenting this petition I desire to express my joy that the workingmen of the country unite with the colored men in asking for equal rights. I regard that as a good sign, and I hope the Senate will take notice, and will make haste to pass the bill which this petition prays for. I move that the petition lie on the table.

The motion was agreed to.

Mr. SHERMAN. I present the memorial of the Ohio yearly meeting of Friends, held at Salem by adjournments from the 28th day of the eighth month to the 31st day of the same month, of this year, in which they wish to express their satisfaction with the settlement of grave difficulties with Great Britain by arbitration, and pray that all the powers of the Government may use their influence with the Governments of the world for the settlement of all national difficulties in some similar way, that the disarmament of all nations may thereby be brought about. I move the reference of

is made to have the House consist of the limited number, under the ratio prescribed by the act of 1850, or any kindred application of the rule, it leads to manifest injustice. But, apart from that, Mr. Chairman, I am opposed to reducing the number below two hundred and forty-three, and I hope the amendment will not prevail.

The question was on agreeing to Mr. BRIGHT'S amendment.

The committee divided; and there were—ayes 43, noes 92.

Mr. BRIGHT called for tellers.

Tellers were ordered; and Mr. BRIGHT and Mr. MERCUR were appointed.

The committee again divided; and the tellers reported—ayes 58, noes 94.

So the amendment was not agreed to.

Mr. BUTLER, of Massachusetts. I desire to offer the following amendment:

Add the following additional sections:
SEC. —. *Be it enacted, &c.,* That the Tuesday next after the first Monday in November, in the year 1874, is hereby fixed and established as the day in each of the States and Territories of the United States for the election of Representatives and Delegates to the Forty-Fourth Congress; and the Tuesday next after the first Monday in November, in every second year thereafter, is hereby fixed and established as the day for the election in each of said States and Territories of Representatives and Delegates to the Congress commencing on the 4th day of March next thereafter: *Provided,* That this section shall not apply to the State of Maine or the State of Indiana until the year 1876.
SEC. —. *And be it further enacted,* That if, upon trial, there shall be a failure to elect a Representative or Delegate in Congress in any State, district, or Territory, upon the day hereby fixed and established for such election, or if, after any such election, a vacancy shall occur in any such State, district, or Territory, from death, resignation, or otherwise, an election shall be held to fill any vacancy caused by such failure, resignation, death, or otherwise, at such time and in such manner as is or may be provided by law for filling vacancies in the State or Territory in which the same may occur.

Mr. BUTLER, of Massachusetts. Mr. Chairman, this amendment which I offer is substantially like the one which I first offered, has all the effect of the one which I first offered, except that it leaves out the States of Indiana and Maine, the gentlemen from Indiana insisting that by the terms of their State constitution they cannot alter their election laws until after 1874.

That our fathers contemplated that we should take this matter in hand would clearly appear from the provision in the Constitution which is to be found in the fourth section of the first article, and is as follows:

"The times, places, and manner of holding elections for Senators and Representatives shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators."

Now, the desirableness of this is shown by the fact that the amendment which I now offer passed the House of Representatives on the 4th of April, 1870, in the very words in which I have drawn it, except that it did not contain the exceptions which my amendment does. I have yielded to those exceptions on account of the inconveniences which have been stated by the gentlemen from Indiana and Maine. How desirable, therefore, it is that there should be a uniform day for the election of Representatives in Congress has been settled once by the House, and how desirable it is everybody, I think, can see when they look at the operations of the present law. Unless we do fix some time at which, as a rule, Representatives shall be elected, it will be in the power of each State to fix upon a different day, and we may have a canvass going on all over the Union at different times. It gives some States undue advantage. It gives some parties undue advantage. I can remember, in 1840, when the news from Pennsylvania and other States that held their elections prior to the presidential election settled the presidential election as effectually as it was afterward done, and I agree with the gentleman from Maine [Mr. PETERS] that the election in that State has an influence, and that the elections in Vermont and the elections in California in September also have great influence upon the other elections. I agree also that Indiana, Ohio, and Pennsylvania, by voting in October, have an influence. But what I contend is that that is an undue advantage, that it is a wrong, and it is a wrong also to the people of those States, that once in four years they shall be put to the trouble of having a double election. On every election day the poor laboring man who goes to the polls to vote loses his day's work, to say nothing of the expenses which fall on the politicians, and are of no very great consequence one way or the other.

[Here the hammer fell.]

Mr. McHENRY. Is an amendment to the amendment now in order?

The CHAIRMAN. It is not. The amendment offered by the gentleman from Massachusetts must first be acted on.

Mr. FARNSWORTH. I submit that the amendment of the gentleman from Massachusetts is an amendment to the substitute, and therefore an amendment to it is in order.

The CHAIRMAN. The substitute is in the nature of an amendment, and another amendment would be an amendment in the third degree, which the Chair cannot entertain.

Mr. CONNER. Before the question is put upon the amendment of the gentleman from Massachusetts, I would like to make an explanation to the House as to the effect it will have upon my State. We at present have no Legislature in Texas. Under the pending bill we will gain two additional Representatives. As the law now stands there is no provision for electing more than four Representatives, and unless the amendment proposed by the gentleman from Massachusetts shall prevail we will be here without the two additional Representatives to which we are entitled. I trust that our friends will so vote as to give us our legitimate strength on this floor. Under the existing law our Legislature cannot meet until January, 1873, and in the mean time we will be deprived of two Representatives to which we shall be entitled under each of the bills now pending before the committee unless the amendment of the gentleman from Massachusetts shall prevail.

The question was taken upon the amendment of Mr. BUTLER, of Massachusetts; and there were—ayes 56, noes 74.

So the amendment was rejected.

Mr. PLATT. I offer the following amendment to the substitute of the gentleman from Pennsylvania, [Mr. MERCUR:]

Insert in line five, page 3, after the word "territory," the words "and containing as nearly as practicable an equal number of inhabitants, and."

There is no provision of law that I have been able to discover which provides that the State Legislatures in districting the States for congressional Representatives shall make the districts contain an equal number of inhabitants. There is nothing to prevent a State, if it chooses to do so, from making half a State one congressional district and dividing the rest of the State among the other members. They can make one district containing any population they choose, and other districts with as small a population as they choose. It is for the purpose of meeting a contingency of this kind that may possibly arise that I desire to have inserted in the bill the amendment which I have proposed.

Mr. MERCUR. I believe that is just, and I hope it will be adopted.

Mr. STOUGHTON. I rise to oppose the amendment. It is a question, a grave question, whether that amendment would not involve more difficulty than would be compensated by any advantages that might possibly arise from it. In the western States especially I can show what its practical effect would be. In the older settled portions of the western States the increase in population is very small, while in the newer portions of the States it is very large. Take my own State of Michigan, for instance: in the southern part of the State the increase of population during the last decade has been comparatively small, while in some of the northern counties, in most of the northern regions of the State, the increase of population has been very rapid. According to the old apportionment of the State of Michigan, larger districts, so far as population is concerned, were made in the southern part of the State than in the northern part of the State. Yet to-day in some of the northern districts there are two hundred and fifty thousand people. In apportioning the States under this law it will be absolutely necessary to make districts in the southern part of the State containing more population than in districts in the northern part of the State, for the very obvious reason that the northern districts will increase very rapidly, while the southern districts will have but a small increase of population. In order to get a fair average during the decade a discrimination must be made, for it will be but just and right. I think it should be left to the discretion and judgment of the Legislature, and not be tied up by a provision of this kind.

The question was taken upon the amendment; and it was agreed to.

Mr. KILLINGER. I move the sections I send to the Clerk's desk as an amendment to the pending substitute.

The Clerk read as follows:

SEC. —. That the Tuesday next after the first Monday in November, in the year 1876, is hereby fixed and established as the day in each of the States and Territories of the United States for the election of Representatives and Delegates to the Forty-Fifth Congress; and the Tuesday next after the first Monday in November in every second year thereafter is hereby fixed and established as the day for the election, in each of said States and Territories, of Representatives and Delegates to the Congress commencing on the 4th day of March next thereafter.
SEC. —. That if, upon trial, there shall be a failure to elect a Representative or Delegate in Congress in any State, district, or Territory upon the day hereby fixed and established for such election, or if, after any such election, a vacancy shall occur in any such State, district, or Territory, from death, resignation, or otherwise, an election shall be held to fill any vacancy caused by such failure, resignation, death, or otherwise, at such time and in such manner as is or may be provided by law for filling vacancies in the State or Territory in which the same may occur.

Mr. KILLINGER. The object of that amendment is to put off a uniform day of election for two years longer than by the amendment of the gentleman from Massachusetts, [Mr. BUTLER.] It is his amendment in other respects, omitting the exception in favor of Indiana and Maine. It covers the same ground, but extends the time so that all the States may come under this provision.

Mr. BUTLER, of Massachusetts. I move to amend by striking out the last word, for the purpose of saying simply that this amendment as offered by my friend from Pennsylvania [Mr. KILLINGER] goes into operation in 1876, when a presidential election will take place. That will give every State time to conform to it. It deals with members of the Forty-Fifth and subsequent Congresses.

The CHAIRMAN. The Chair would suggest to the gentleman from Massachusetts [Mr. BUTLER] that his amendment is not strictly in order.

Mr. BUTLER, of Massachusetts. I will withdraw it.

Mr. POLAND. I desire to move a substitute for the first section of the amendment offered by the gentleman from Pennsylvania, [Mr. KILLINGER.]

The CHAIRMAN. The Chair will state to the gentleman from Vermont [Mr. POLAND] that but one amendment to the substitute proposed by the gentleman from Pennsylvania [Mr. MERCUR] can be entertained at one time. The substitute moved by the gentleman from Pennsylvania [Mr. MERCUR] is in the nature of an amendment, and the other gentleman from Pennsylvania [Mr. KILLINGER] has moved an amendment to that amendment.

The question was then taken upon the