1

The Honorable John H. Chun

2

3

4

5

6

7
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
8
**AT SEATTLE**

9
STATE OF WASHINGTON, et al.,

NO. 2:25-cv-00602-JHC

10
Plaintiffs,

DECLARATION OF
DENA DAWSON
11
v.

12
DONALD J. TRUMP, in his official
capacity as President of the United States of
13
America, et al.,

14
Defendants.

15

16
I, Dena Dawson, declare as follows:

17
1.     I am the Elections Director for the Oregon Secretary of State and lead its

18
Elections Division. I am over the age of 18, competent to testify as to the matters herein, and

19
make this declaration based on my personal knowledge. The statements set forth below are based

20
on personal knowledge, through consultation with the Secretary of State's Elections Division

21
staff, or from documents that have been provided to and reviewed by me.

22
2.     I have served as Oregon's Elections Director since January 2025. Prior to this

23
role, I was Lane County Clerk, the county's chief election official. Earlier in my career, I worked

24
at county election offices in Nevada and Colorado, and in Multnomah County, Oregon. I have

25
more than 18 years of experience in elections administration.

26

DECLARATION OF DENA DAWSON
NO. 2:25-cv-00602-JHC

1

3.      The Secretary of State is Oregon's chief elections officer. The Secretary of State and its Elections Division (together, the "SOS") have oversight responsibilities, including maintaining the uniform application and operation of election law, directing, assisting, and advising county clerks on election procedures, and maintaining a maximum degree of correctness, accuracy, impartiality, and efficiency in the administration of election laws. Part of the SOS's duties are to ensure that voters in Oregon have reliable access to accurate information concerning elections.

**National Mail Voter Registration Form—Documentary Proof of Citizenship**

4.      Oregon does not systematically count the number of voters who register to vote by submitting the National Mail Voter Registration Form. Based on data reported to the U.S. Election Assistance Commission (EAC) in response to the 2022 Election Administration and Voting Survey, Oregon counties processed 11,292 new mail registrations between the 2020 general election and the 2022 general election. Of those registrations, 990 were in Lane County, where I was then serving as the County Clerk. Based on my experience as an election official in Oregon, most mail registration applications are submitted on the state registration form. However, county elections offices still receive some registrations on the federal form, including close to the registration deadline, which is 21 days before each election.

5.      When Oregon elections officials receive a voter registration application by mail, they review the application to confirm it is legible, accurate, and complete prior to processing. If a registration application is legible, accurate and contains, at a minimum, the registrant's name, residence address, date of birth and signature, the county clerk registers the person. In the case of a registration application missing a date of birth, containing an incomplete date of birth or containing an unintentional scrivener's error, the elections official will attempt to obtain the missing or incomplete information from all sources available to them, including but not limited to current and previous addresses and phone numbers of the registrant. The election official may also supply the registrant's date of birth from any previous registration of the registrant. If the

missing or incomplete information cannot be obtained from sources available to the election office, the election office will use reasonable efforts to contact the registrant by phone, mail, and email to obtain the missing or incomplete information.

6.      If registrants are required to provide documentary evidence of citizenship as part of the registration process to vote in federal elections, it is likely that the number of incomplete registration applications will increase significantly. Local election officials would be required to register the voter for local and statewide elections but may also have to carry out the incomplete application process in order to obtain documentary proof of citizenship. Upon receipt of the required documentation, election officials will update the voter's registration to ensure the voter receives a ballot with federal races. This type of bifurcated system does not currently exist in Oregon and would require significant resources to develop and implement.

7.      If Oregon elections officials are required to process registrations that include documentary proof of citizenship, the SOS will need to, at the very least, provide education and training to elections officials on identifying authentic documentation and reporting requirements for inauthentic documentation. The SOS will also need to assess whether elections offices across the state have adequate infrastructure for individuals to register to vote in person, and how to provide sufficiently secure systems for uploading or mailing copies of documentary proof of citizenship.

**Ballot-Receipt Deadline**

8.      Oregon conducts elections by mail. Electors receive a ballot in the mail and may return it by mail, by depositing it at the county clerk's office, or by depositing it at a ballot drop box. Or. Rev. Stat. § 254.470(6)(b). The voter signs the statement on the envelope that states:

> Voter's Statement
> By signing below I declare under penalty of perjury that:
>
> . . .
>
> If mailed, this ballot was mailed no later than election day.

I understand that making a false statement in this declaration is a felony punishable by up to five years' imprisonment and a fine of up to $125,000 and civil offense punishable by penalties of up to $10,000.

*See* Attachment 1 (Vote By Mail Procedures Manual, at 89 (Appendix 23, Sample Return Envelope, Minimum Language), adopted by Or. Admin. R. 165-007-0030).

9.     If the ballot is returned by mail, it must be received within seven calendar days after election day and be postmarked on or before election day. Or. Rev. Stat. § 254.470(6)(e). If an otherwise valid ballot satisfies those criteria, it is counted in the election. If a ballot is received more than seven days after election day, it is not counted.

10.    For military or overseas electors, their ballots may be returned to the SOS or to the elector's county elections office. If the SOS or the county receives the ballot by 8:00 p.m. on election day, or within seven days of election day with a postmark no later than election day, it is deemed to have been timely received, and it is counted in the election. Or. Rev. Stat. § 253.585(3).

11.    If a postmark is missing or not legible, the date on the signed declaration on the ballot return envelope is evidence of the date of mailing. If that date is not later than election day, the elections official counts the ballot. Or. Admin. R. 165-007-0045(6). If an otherwise valid ballot is received by mail within seven days of an election and it has no postmark date, it is deemed timely and must be processed. Or. Rev. Stat. §§ 253.585(4), 254.470(8).

12.    If a ballot is received more than seven days after an election, regardless of postmark date, it is not counted. Or. Rev. Stat. §§ 253.585(4); 254.470(8).

13.    If a ballot is postmarked timely but not received until after the seventh day after an election, the voter is mailed a notice advising them that their timely postmarked ballot was received after the seventh day and not counted.

14.    In the 2020 general election, before Oregon changed its law to accept ballots received by mail after election day, Oregon counties reported to the EAC that 958 mail ballots were rejected as untimely. Since that law was enacted, ballots are now counted that would have

been rejected under the prior rules. Based on the Elections Division's review of Oregon's elections records, 13,596 ballots cast on or before election day but received after election day were counted in the 2024 general election based on these changes to state law.

15.    If Oregon was required to reject votes for federal office, it would require changing numerous communications with voters. Communications include but are not limited to, mail ballot instructions, voters' pamphlets, mail ballot packet materials, including envelopes, press releases, voter outreach and education materials, public notices and other printed publications. Because the method of administering a postmarked process that differs for state and federal offices is incredibly complex, an increase in communication would be required to educate voters on the process.

16.    If county elections officials in Oregon cannot count votes for federal office that are received after election day but are timely under state law, the SOS and county elections officials will need to change current ballot processes to differentiate between votes for state office and votes for federal office. This would require county elections officials to manually review each postmarked voted ballot and manually duplicate the choices for every selection, except federal races. This manual duplication process is extremely labor intensive, would require skilled election workers, and would slow the release of results. Manual ballot duplication requires a team of bi-partisan election workers to transfer qualified votes from the voted ballot onto an unmarked ballot, the team then proofs the marked selections, affixes sequential numbered labels identifying the pair of ballots, and completes all required paperwork. The number of ballots with federal races that would need to be duplicated is unknown and is dependent on whether documentary proof of citizenship is required to receive a ballot which includes federal races. If a bifurcated system exists where only a section of the electorate receives ballots which include federal races, those returned ballots, received after election day, would be reviewed for duplication.

**Ballot Tally Machines and the Federal Voluntary Voting System Guidelines**

17.     Under Oregon law, a ballot tally machine must be certified by the Secretary of State before it is used in Oregon elections. Or. Rev. Stat. § 246.550.

18.     For the Secretary of State to approve such a system, it "must be certified by the Elections Assistance Commission (EAC) or be examined by a federally accredited voting systems testing laboratory (VSTL)." Or. Admin. R. 165-007-0350(1). Currently, Oregon counties use systems provided by three vendors, each of which the Secretary has approved: Clear Ballot's ClearVote; Hart's Verity Voting; and Election Systems & Software's EVS. All the voting systems used by counties in Oregon were certified under the then-applicable Voluntary Voting System Guidelines (VVSG) testing standards.

19.     VVSG 2.0 is a significant overhaul of VVSG 1.0, with a different structure and content than previous versions. It includes high-level principles and guidelines, coupled with technical requirements emphasizing usability, accessibility, security, and interoperability. Because the changes to VVSG 2.0 include specific hardware requirements, upgrading a VVSG 1.0 system is incredibly impractical if not impossible. One voting system has had its VVSG 2.0 testing completed, but no voting systems have been certified under the VVSG 2.0 testing standard. No voting systems have been certified under the VVSG 2.0 testing standard. If the VVSG 2.0 testing standard were required for federal certification, counties would be required to purchase new voting systems, which would impact county budgets significantly, during a time when most counties are facing major budget shortfalls. Currently, the EAC's Lifecycle policy provides a path for VVSG 1.0 systems to continue to receive modifications under certain circumstances, allowing counties to maintain their current certified system, while preparing to purchase the new VVSG 2.0 systems.

**Federal Elections Funding**

20.     The Oregon Secretary of State has received over $13 million in grants from the EAC to support election security in Oregon, of which more than $6 million remains available

for future spending. EAC funds have been, and continue to be, used to maintain and modernize Oregon's centralized voter registration and election management system. As recent as 2020, the Secretary of State's office provided opportunities for all 36 counties to improve election security through subgrants of $30,000 each.

21.    The Oregon Secretary of State has been awarded a roughly $6 million Electronic Absentee Systems for Elections (EASE) grant to purchase equipment to modernize the voting process, including for UOCAVA and ADA voters. The equipment purchased with this grant will modernize the way counties duplicate ballots marked online, printed, and returned by mail or electronic transmission, ensuring all ballots cast by our military, overseas, or disabled voters are accurately duplicated and counted.

I declare under penalty of perjury under the laws of the State of Oregon and the United States of America that, to the best of my knowledge, the foregoing is true and correct.

DATED 21st day of May 2025.

DENA DAWSON

DECLARATION OF DENA DAWSON
NO. 2:25-cv-00602-JHC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744