1

The Honorable John H. Chun

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9  STATE OF WASHINGTON, et al.,

NO. 2:25-cv-00602-JHC

10            Plaintiffs,

DECLARATION OF JULIE WISE

11     v.

12  DONALD J. TRUMP, in his official
capacity as President of the United States of
13  America, et al.,

14            Defendants.

15

16          I, JULIE WISE, declare as follows:

17          1.      I am over the age of 18, competent to testify as to the matters herein, and make

18  this declaration based on my personal knowledge.

19          2.      I am the elected Director of Elections for Martin Luther King, Jr. County (King

20  County). I have held this position since 2016.

21          3.      I have worked as an election administrator for 24 years. From 2013 to 2015, I

22  served as Deputy Director of King County Elections.

23          4.      I am a state and nationally certified election administrator by the Washington

24  Secretary of State and the National Association of Election Officials, respectively.

25          5.      Pursuant to the King County Charter §§ 350.20.50, 610 and 647, the Director of

26  Elections is a non-partisan office elected by the voters of King County to a four-year term. I was

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC

1

1  first elected Director of King County Elections in November of 2015, and was reelected in 2019,

2  and 2023.

3       6.      As Director of Elections, I serve in the role of county auditor for purposes of the

4  provisions of Chapter 29A of the Revised Code of Washington and am "ex officio the supervisor

5  of all primaries and elections" within the county. Wash. Rev. Code § 29A.04.216; Wash. Rev.

6  Code § 29A.04.025.

7       7.      King County Elections administers elections in King County, Washington, the

8  most populous county in Washington State and the 13th most populous county in the United

9  States of America.

10      8.      King County has over 1.4 million registered voters. It is one of the largest vote-

11  by-mail jurisdictions in the nation.

12      9.      Currently, King County Elections has 73 full-time employees. During the period

13  around the 2024 November general election, King County Elections employed as many as 800

14  full-time and temporary employees.

15      10.     Among the policies of the State of Washington enacted by the legislature

16  regarding elections is the requirement "to encourage every eligible person to register to vote and

17  to participate fully in all elections, and to protect the integrity of the electoral process by

18  providing equal access to the process while guarding against discrimination and fraud." Wash.

19  Rev. Code § 29A.04.205.

20      11.     As Director of King County Elections, I am committed to increasing both

21  accessibility and security in our elections.

22      12.     I have read and am familiar with federal and state laws related to elections,

23  including the provisions of the National Voter Registration Act and the Help America Vote Act.

24      13.     I have read Executive Order No. 14,248 and am familiar with its contents.

25

26

1  14.   I understand that the executive order requires the Election Assistance

2  Commission (EAC) to change the Federal Form to require documentary proof of United States

3  citizenship.

4  15.   I understand that the executive order also requires the EAC to change the Federal

5  Form to require that State and local election officials record on the form information about the

6  documentary proof of citizenship provided by voters.

7  16.   I understand that the executive order limits "documentary proof of citizenship"

8  to U.S. passports, REAL ID Act-compliant identification documents that indicate U.S.

9  citizenship; military identification cards that indicate U.S. citizenship, and valid Federal or State

10  government-issued photo identification that either indicates U.S. citizenship or is accompanied

11  by proof of U.S. citizenship.

12  17.   As the head election administrator for King County, I take seriously my

13  responsibility to encourage every eligible person to register to vote and to participate fully in all

14  elections. It is my opinion that the executive order's requirement for voters to provide

15  documentary proof of citizenship would result in mass disenfranchisement of eligible voters in

16  King County—for whom it may be overly burdensome or impossible to present a document

17  proving their citizenship. I am especially concerned this requirement will disproportionately

18  impact King County voters who are elderly, disabled, low-income, students, overseas and

19  military voters, naturalized citizens, live in rural areas, and voters who are historically

20  underrepresented in election participation.

21  18.   As written, the executive order is unclear as to whether the requirement for voters

22  to provide documentary proof of citizenship would apply to all currently registered voters or

23  would be limited to a subset of voters, such as voters registering for the first time or updating

24  their voter registrations following a move or legal name change.

25  19.   As written, the executive order is unclear as to whether the documentary proof of

26  citizenship provided to state or local officials must be presented in person.

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

20.     The executive order has already caused confusion amongst eligible and registered voters, some of whom have called King County Elections concerned that the executive order will deactivate their current voter registration and require them to re-register to vote.

21.     If the executive order was implemented, I anticipate voter confusion regarding what forms of identification could be provided to comply with the executive order. The executive order lists REAL ID compliant identification and military identification as forms of identification that may be presented as documentary proof of United States citizenship, so long as they indicate that the identification holder is a citizen. However, it is my understanding that Washington State's Enhanced Driver's License, which complies with the REAL ID Act, does not indicate on its face whether the license holder is a U.S. citizen. Similarly, in my experience, many military identification cards do not indicate the citizenship of the card holder on the document.

22.     Implementation of the executive order's requirement for voters to provide documentary proof of citizenship would result in the need for numerous changes to King County Elections' operations, including new voter registration procedures, changes in employee training, and voter education. However, without clarity on the executive order's requirements, King County Elections is unable to prepare for implementing these changes.

23.     Moreover, the executive order's proof of citizenship requirement would come at significant cost to King County Elections. The executive order does not provide any funding to support these efforts—or any of its other mandates. At present the King County General Fund, out of which King County Elections is funded, is facing long-term structural shortfalls. What's more, even if the King County Council appropriated additional funds to support implementation of the executive order, per Washington State law, a significant portion of those costs would be passed along to much smaller jurisdictions like school, fire, and water districts that face even larger budget challenges.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

24.     Any change in how voting works also requires substantial voter outreach and education efforts. For example, in 2023, in an effort to bring down signature challenge rates, King County Elections undertook a campaign to encourage voters to update their signatures on file. The printing and mailing costs of this effort alone constituted more than $1 million dollars. To provide another example, in planning for an upcoming transition to Ranked Choice Voting for the residents of the City of Seattle, King County Elections anticipates the need for a voter education campaign costing upwards of $5 million dollars.

25.     Currently, King County Elections processes anywhere from 300,000 to more than 500,000 voter registrations annually, including new registrations and updated registrations. Federal election years typically experience much higher numbers, as detailed in the chart below. The majority of voters, 80 to 86%, submit voter registrations through the Department of Licensing (DOL) and 8 to 38% submit registrations through the online registration system (OLVR). Only approximately 3 to 6% of voters submit paper forms and even fewer voters, 0.5 to 5%, register in-person. Of those that are registering in-person, on average 77% are registering at one of our seven vote centers open on Election Day and the Saturday and Monday prior to Election Day. Of these registrations, about 40 to 75% are updates to existing registrations.

| Year | DOL | % DOL | OLVR | % OLVR | Paper | % Paper | In-person | % In-person | Total |
|------|------|-------|------|--------|-------|---------|-----------|-------------|-------|
| 2024 | 296,101 | 67.97% | 100,661 | 23.11% | 14,601 | 3.35% | 24,265 | 5.57% | 435,628 |
| 2023 | 251,830 | 85.89% | 27,022 | 9.22% | 12,656 | 4.32% | 1,695 | 0.58% | 293,203 |
| 2022 | 266,777 | 78.13% | 47,693 | 13.97% | 17,975 | 5.26% | 8,986 | 2.63% | 341,431 |
| 2021 | 272,796 | 85.64% | 28,137 | 8.83% | 14,925 | 4.69% | 2,675 | 0.84% | 318,533 |
| 2020 | 278,826 | 51.81% | 206,456 | 38.36% | 35,719 | 6.64% | 17,152 | 3.19% | 538,153 |

26.     King County Elections is simply not able to handle registration of King County's 1.4 million voters, or even a fraction of those voters to satisfy the executive order's requirements. Our office is staffed based on the number of registrations we currently receive and the method

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

that the majority of voters clearly prefer, DOL or OLVR. To further illustrate this point, on average in one hour, our staff are able to process 35 to 40 DOL or OLVR registrations, 18 paper registrations, and only about eight in-person registrations. In addition, customer service and parking space at our headquarters is limited as we see so few customers in-person throughout the year. This is the only physical space that we maintain year-round. Vote centers are only open during limited times each year on and prior to election day. Most of our vote centers are in conference rooms at city halls or community centers where space is limited.

27.    The executive order's requirement for voters to provide documentary proof of citizenship would dramatically increase the number of voters in King County who register in person, in part due to Wash. Rev. Code § 29A.08.140(1), which allows Washington voters to register to vote until 8:00 pm on election day and requires that, in the seven days before election day, voters must appear in person to register to vote. Anticipating and accommodating a significant shift to in-person registration would require King County Elections to expend a great deal of resources that we simply do not have. To maintain voter turnout, it would be crucial to have an extensive voter education campaign informing voters of these changes. Our office would need to establish many more vote center locations and extend hours at all sites. King County Elections would also need to hire a substantial number of short-term staff to process these registrations, which would be difficult to do under the executive order's time constraints as it requires a significant amount of training to accurately process voter registrations. Such a huge shift in our voting system in Washington State would require years to successfully build the infrastructure and implement with resources that do not exist.

28.    The executive order could result in a bifurcated voting system whereby some voters are eligible to vote for local and state elections under Washington law but would not be eligible to vote in federal elections. Due to the size of our jurisdiction, number of precincts, and the seven languages we provide voting materials in, having a bifurcated system would be

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

extremely problematic for our tabulation system and would require double the number of ballot styles.

Such a dramatic shift in election operations would create capacity issues and likely cause severe slowdowns that would put at risk our ability to complete tabulation and adjudication of ballots with accuracy prior to certification of the election. An additional concern of administering a bifurcated system is how to handle voters who did not initially meet the federal requirements and received a non-federal ballot and then updated their registration to meet the requirements for a federal ballot before election day as they would then be eligible for races that were not on their original ballot.

29.     I understand that the executive order interprets federal law to require that all ballots, except for ballots from UOCAVA voters, be received by election day to be counted for federal elections.

30.     I further understand that the executive order directs the United States Attorney General to take "all necessary action" against States that violate this interpretation of federal law and that the executive order directs the EAC to condition all available funding to States on compliance with this interpretation.

31.     As noted above, King County is one of the largest vote-by-mail jurisdictions in the nation. In accordance with Washington law, King County voters may currently return their ballots to King County Elections by mailing ballots through the United States Postal Service (USPS) or by placing them in one of King County Elections' 85 secure ballot drop boxes.

32.     Pursuant to Wash. Rev. Code § 29A.60.190, all ballots returned to a ballot drop box by 8:00 pm on election day and ballots postmarked on or before election day and received no later than the day before election certification must be counted. This ensures that all ballots in Washington State are voted on or before election day. It is my understanding that this process mirrors that used by the Internal Revenue Service, which considers a tax return filed on time so long as the tax return is postmarked by the due date. I can think of no reason why ballots that

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    have entered the mail stream on or before election day, guaranteeing that they were voted on or

2    before election day, should not be counted.

3        33.    For each election in King County, approximately 50 to 60% of ballots are

4    returned by ballot drop box. For a general election, that means King County Elections receives

5    anywhere from 30,000 to 50,000 ballots through the mail after election day. On average 91% of

6    those ballots have on-time postmarks.

7        34.    As the Director of King County Elections, I take seriously my responsibility to

8    encourage every eligible person to participate fully in all elections. It is my opinion that the

9    executive order's requirement that ballots be received by election day is a terrible idea. It would

10   result in the disenfranchisement of a significant number of eligible voters in King County and

11   would disproportionately impact voters who are most reliant on our vote-by-mail system,

12   including elderly, disabled, low-income, and rural voters—for whom traveling to a ballot drop

13   box or vote center may be difficult.

14       35.    I am further concerned that the executive order's requirement that all ballots be

15   returned by election day comes at a time when the federal government is contemplating

16   significant cuts to USPS that will impact USPS's ability to deliver ballots to King County

17   Elections by election day. In my experience, it is not unusual to have ballots postmarked well

18   before Election Day that are received in our office much later. For example, during our April 22,

19   2025, Special Election, we had a voter whose ballot was postmarked in Texas on April 18, and

20   another voter whose ballot was postmarked in Seattle on April 19. Despite both ballots being in

21   USPS custody several days prior to election day, neither of the ballots was received in our office

22   until May 6. Under the executive order's requirements, voters like these would be

23   disenfranchised.

24       36.    I believe that the executive order's requirement that ballots be received by

25   election day would significantly alter voter behavior in Washington State. Accommodating a

26   significant change in how and when voters return their ballots in a manner that maximizes voters'

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC

8

1   ability to cast their votes would require significant operational changes for King County

2   Elections.

3        37.    If we were no longer able to accept ballots with on-time postmarks after election

4   day, more voters would shift to using a ballot drop box to return their ballot. This would result

5   in the need to increase the number of ballot drop boxes available throughout the county and King

6   County Elections staff, both permanent and temporary, to manage the ballot drop box program.

7        Installing and maintaining a ballot drop box is a costly and multi-step process. Each ballot

8   drop box costs approximately $10,000 to acquire. Prior to installation of each box, a site must

9   be identified for its future location and an agreement worked out with the site owner governing

10  the conditions in which King County Elections may operate the ballot drop box on the property.

11  Ongoing King County Elections operational needs would also increase as each ballot drop box

12  requires a traffic control plan, some of which include traffic control officers, flaggers, traffic

13  signage, and other measures. For larger federal elections we also hire security officers for each

14  ballot drop box location. Law enforcement resources are already challenging to obtain for the 85

15  ballot drop boxes that we currently have. Increasing boxes would make this even more difficult

16  and would put a further strain on our resources.

17       38.    Presently, all ballot drop boxes are emptied after closing at 8:00 p.m. on election

18  day, unless there are unforeseen circumstances that make accessing and emptying the box after

19  8:00 p.m. impossible. The executive order's election day ballot receipt deadline could mean that,

20  in those unforeseen circumstances, King County Elections would not be able to count the

21  otherwise-eligible ballots that were voted and placed in ballot drop boxes by 8:00 p.m. on

22  election day.

23       39.    Similar to the executive order's documentary proof of citizenship requirement,

24  the executive order's ballot receipt deadline would result in a bifurcated ballot scenario, which

25  would severely impact election administration. Ballots postmarked on or before election day,

26  but not received by King County Elections by Election Day, would not be eligible for counting

DECLARATION OF JULIE WISE                        9        ATTORNEY GENERAL OF WASHINGTON
NO. 2:25-cv-00602-JHC                                        Complex Litigation Division
                                                              800 5th Avenue, Suite 2000
                                                               Seattle, WA 98104-3188
                                                                  (206) 464-7744

1  for federal election contests but would be mandatorily counted under Washington State law for

2  all state and local jurisdiction ballot contests. This scenario would be extremely problematic for

3  our tabulation system and would cause severe slowdowns in our ability to complete tabulation

4  and adjudication of all ballots prior to the election certification deadline.

5          40.     The executive order is unclear as to whether or how it would impact the signature

6  resolution process for voters whose ballot was received by election day, but the ballot is

7  challenged for either having no signature or a signature that is not the same as any signatures in

8  the voter registration file. Pursuant to Wash. Rev. Code § 29A.40.110(3) and the standards set

9  forth in Wash. Admin. Code § 434-379-020, the signature resolution process continues up to the

10  day before the election is certified.

11          When a ballot is challenged, King County Elections sends the voter a letter by first class

12  mail advising them that their ballot has been challenged and providing them with a signature

13  resolution form to sign and return in a prepaid envelope addressed to King County Elections. In

14  addition to sending a letter, if the voter provides a phone number on the ballot return envelope

15  or if there is a phone number on file for that voter, King County Elections will place an automated

16  courtesy call to that number after the ballot has been challenged. The courtesy call informs the

17  recipient that there is an issue with the signature on the ballot return envelope and instructs the

18  recipient to contact King County Elections. Within five days of certification, King County

19  Elections will also send an automated mandatory call to any voter with an outstanding signature

20  challenge, provided the voter has a phone number on file or writes one on their return ballot

21  envelope. If the voter provides an email address on the ballot return envelope or if there is an

22  email address on file for that voter, King County Elections also sends emails with the same

23  information. The first email will go out around the same time as the first courtesy calls and then

24  an additional email within five days of certification if the signature challenge is still outstanding.

25          41.     Another way that King County Elections ensures election integrity is through

26  regular maintenance of voter rolls. King County Elections maintains voter registration records

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC

10

1  using data and information from numerous sources in addition to hearing from the voters

2  themselves. The Department of Licensing and the US Postal Service provide data regularly on

3  address updates, new registrations, and signature updates. King County Elections also gets

4  notifications from the Social Security Administration and our staff check obituaries regularly to

5  remove deceased voters from the rolls. Washington State is a member of ERIC (Electronic

6  Registration Information Center), which is a consortium of 24 states plus Washington DC that

7  compares voting data across member jurisdictions. King County Elections, along with all 39

8  counties in Washington, also uses the Secretary of State's VoteWA system for voter registration,

9  which is updated in real-time across county lines. King County Elections also annually reviews

10  voters who appear to be registered at a private mailbox, which is prohibited by Washington State

11  law, proactively reaches out to those voters, and ultimately challenges those registrations if the

12  voters do not update their address.

13      42.    I understand that the executive order directs the EAC to amend its Voluntary

14  Voting System Guidelines (VVSG) 2.0 to "provide that voting systems should not use a ballot

15  in which a vote is contained within a barcode or quick-response code in the vote counting process

16  except where necessary to accommodate individuals with disabilities and should provide a voter-

17  verifiable paper record to prevent fraud or mistake."

18      43.    I further understand that the executive order directs the EAC to review voting

19  systems and either re-certify voting systems under the amended guidelines or rescind previous

20  certifications. The executive order requires that this occur within 180 days.

21      44.    I understand that there are not currently any voting systems in the nation that are

22  in compliance with VVSG 2.0 testing standards.

23      45.    Based on my past experience, the EAC's testing and certification process is time

24  consuming and unpredictable. Historically, the EAC has had significant backlogs in its

25  certification process. More recently, VVSG certification has taken approximately six months to

26  complete, barring any unforeseen circumstances.

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC                    11          ATTORNEY GENERAL OF WASHINGTON
                                                      Complex Litigation Division
                                                      800 5th Avenue, Suite 2000
                                                      Seattle, WA 98104-3188
                                                      (206) 464-7744

1      46.     Moreover, the executive order's timeline for application of amended VVSG 2.0

2   standards is inconsistent with the realities of election administration. Due to the cyclical and

3   ongoing nature of our elections calendar, we have an extremely limited window of time for

4   making changes to our tabulation system, which occurs in April and May. Changes occurring

5   outside of that timeframe would be highly disruptive to the proper administration of an ongoing

6   election. Section 434-335-190 of the Washington Administrative Code also limits the period in

7   which a Washington County may modify, change, alter, or install voting or vote tabulation

8   systems, equipment, or components by restricting those activities from taking place between

9   June 15 to November 30 each year, without express permission from the Washington Secretary

10   of State. In addition to those concerns, as no tabulation system has yet been certified under the

11   VVSG 2.0 requirements, let alone amended VVSG 2.0 requirements, it is unknown how long

12   certification under the new requirements would take and how the certification process would

13   impact King County Elections operations.

14      47.     Implementation of our current tabulation system was a two-year process.

15   Purchasing the tabulation system alone cost more than $2 million dollars in 2017. Staffing costs

16   associated with the project totaled $273,000.

17      48.     If King County Elections' current voting system is not recertified under the

18   amended VVSG 2.0 testing standards, we might need to purchase a new voting system. I believe

19   acquisition of a new voting system, which would include voting software, a tabulation system,

20   and staffing costs for implementation, would cost more than $7 million dollars. Moreover,

21   implementation of a new system on a short timeline would interrupt King County Elections

22   operations and be virtually impossible. Furthermore, such an acquisition would take place at a

23   time when numerous election administration agencies throughout the country would also be

24   required to implement new voting systems. The executive order does not provide funding for the

25   costs associated with the acquisition and implementation of a new voting system nor does the

26

DECLARATION OF JULIE WISE              12            ATTORNEY GENERAL OF WASHINGTON
NO. 2:25-cv-00602-JHC                                 Complex Litigation Division
                                                    800 5th Avenue, Suite 2000
                                                    Seattle, WA 98104-3188
                                                       (206) 464-7744

1  executive order ensure that voting system vendors will have sufficient supply to meet the needs

2  of all jurisdictions.

3       49.     King County Elections uses the Clear Ballot voting system, version 2.3, which

4  was VVSG 1.0 certified by the EAC in October 2022. Certification of our tabulation system is

5  governed by Chapter 29A.12 of the Revised Code of Washington, which requires that the system

6  has been tested and certified by an independent testing authority designated by the EAC but does

7  not require EAC certification. The EAC has two designated Voting System Test Laboratories

8  (VSTL). The Clear Ballot tabulation system used by King County Elections was tested by the

9  Pro V&V laboratory and has been certified by the Washington Secretary of State.

10      50.     EAC certification is just one way to ensure election security is being met and

11  King County Elections utilizes numerous other measures to safeguard the integrity of our

12  elections. For example, our tabulation system is on an entirely "closed" or "air-gapped" network,

13  meaning it is not connected in any way, shape, or form to the outside world. Additionally, the

14  tabulation system is located on our secure ballot processing floor which requires security badge

15  access. The tabulation server room itself requires both badge and biometric access; only a

16  handful of employees have access to this room. The King County Elections' building is also

17  monitored twenty-four hours a day, seven days a week by over 80 security cameras. During an

18  active election we have 15 webcams livestreaming at all hours of the day that show all ballot

19  processing areas, including the tabulation area.

20      The Department of Homeland Security Cybersecurity and Infrastructure Security

21  Agency (CISA) has conducted both physical and cyber security audits and did not find any

22  security concerns with King County Elections' tabulation system. The Washington State

23  Auditor's Office has also completed cybersecurity audits and similarly did not find any security

24  concerns with King County Elections' tabulation system.

25      To demonstrate and confirm the accuracy of the tabulation equipment, prior to each

26  election we conduct a logic and accuracy test. We repeat this test the day before election day.

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC                           13          ATTORNEY GENERAL OF WASHINGTON
                                                                Complex Litigation Division
                                                                  800 5th Avenue, Suite 2000
                                                                   Seattle, WA 98104-3188
                                                                      (206) 464-7744

That means we typically conduct eight logic and accuracy tests annually in King County, where elections may be held in February, April, August, and November. Additional logic and accuracy tests are conducted in presidential election years for Washington's Presidential Primary Election. During the logic and accuracy test a pre-marked set of test ballots, with predetermined results, is run through the tabulation system. The results are then tabulated and compared with the pre-existing, known results to verify the system is correctly counting votes as marked.

Following each election day, King County Elections also conducts two additional audits, a batch audit and a risk limiting audit. During batch audits we randomly select approximately 1,500 ballots and perform a hand count to tally the results of a randomly selected contest. Those results are then compared to the tabulation system's results to prove that the system is counting votes accurately. During risk limiting audits, we take a random sample of individual voted ballots and compare each vote on the marked ballot against the tabulated votes for those individual ballots. This audit provides statistical confidence that the stated winner is truly the winner.

51.    King County Elections funds its election administration services from three sources: the County's general fund, revenue collected from jurisdictions participating in elections, and grants supporting election administration.

52.    The EAC awarded an Election Security Grant to King County Elections in 2020. King County Elections has received over $1,000,000 through this grant, with almost $400,000 remaining. King County Elections has used this funding for, among other things, a second fiber network, a network upgrade, 60 vote center printers, and a security camera replacement project. King County Elections recently sent a notice to the EAC seeking an extension to 2029.

53.    King County Elections has received and is receiving funding from the Department of Homeland Security's State Homeland Security Program, by way of the King County Office of Emergency Management. A reimbursement request for $150,000 is currently pending with the Department of Homeland Security for a camera replacement project. King

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

County Elections was also recently awarded $195,000 for ballistic film and a public announcement system. The full amount remains available.

54.     King County Elections has received and is receiving funding from the Federal Emergency Management Agency's Urban Areas Security Initiative, by way of the King County Office of Emergency Management. Almost $250,000 remains available for election security workshops and personal protective equipment.

55.     The executive order is also unclear as to what additional cooperation may be expected by King County Elections in addition to what is detailed above. To comply with the executive order's other unfunded mandates, we may need to hire additional staff members or devote our scarce resources to facilitate compliance with the order.


I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED this __29th__ day of May 2025.


JULIE WISE

DECLARATION OF JULIE WISE
NO. 2:25-cv-00602-JHC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744