1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable John H. Chun

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STATE OF WASHINGTON; and
STATE OF OREGON,

                 Plaintiffs,

     v.

DONALD TRUMP, in his official
capacity as President of the United States
of America, et al.,

             Defendants.

NO. 2:25-CV-00602-JHC

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS

NOTE ON MOTION CALENDAR:
AUGUST 13, 2025

**ORAL ARGUMENT REQUESTED**

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................... 1

II.     LEGAL STANDARDS ............................................................................................. 2

III.    ARGUMENT .............................................................................................................. 3

        A.    Plaintiff States Appropriately Rely on an Equitable Cause of Action ..................... 3

        B.    Plaintiff States Are Entitled to Summary Judgment on the Federal Form
              DPOC Claims (EO Sections 2(a) and 4(a)) ............................................................ 4

              1.    Plaintiff States' Federal Form DPOC claims are justiciable ............................ 4

              2.    The President cannot require DPOC on the Federal Form ................................ 8

                    a.    Section 2(a) is inconsistent with express textual prohibitions
                          of the NVRA and violates the separation of powers ................................ 9

                    b.    Section 2(a) is contrary to Congress's allocation of authority
                          to the EAC and legislative safeguards ..................................................... 11

                    c.    Section 4(a) is inconsistent with congressional grant provisions ............. 13

                    d.    The president does not have authority to direct the outcome
                          of decisions committed to the EAC ......................................................... 13

        C.    Plaintiff States Are Entitled to Summary Judgment and Declaratory
              Judgment on Their Ballot Receipt Deadline Claims (EO Section 7) ..................... 15

              1.    Plaintiff States' ballot receipt deadline claims are justiciable ........................ 15

              2.    The President has no authority to set ballot-receipt deadlines ........................ 17

              3.    The EAC has no authority to condition funds on ballot-receipt deadlines ...... 21

        D.    Plaintiff States are Entitled to Summary Judgment on Their Voting
              System Claims, and their Challenge to Section (4)(d) Should Be
              Allowed to Proceed (EO Section 4(b), (d)) ............................................................ 22

              1.    Plaintiff States have standing to challenge sections (4)(b) and (4)(d) ............ 22

              2.    Defendants fail to show that sections (4)(b) and (d) are lawful ...................... 27

        E.    If This Court Denies Summary Judgment on Any Claims,
              It Still Should Not Dismiss Them ........................................................................... 29

        F.    This Court Should Not Dismiss Plaintiff States' Federal Post Card
              Application DPOC Claims (EO Section 3(d)) ......................................................... 30

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1. Plaintiff States' federal post card application claims are justiciable ............... 30

2. Plaintiff States have sufficiently alleged that the FPCA DPOC requirement violates the separation of powers, the Election Clauses, the right to vote, and the Tenth Amendment, and is *ultra vires* ...................... 31

G. This Court Should Not Dismiss Plaintiff States' Voter Registration Agency Claims (EO Section 2(d)) ............................................................ 33

H. Based on Defendants' Concessions, Plaintiff States Do Not Oppose Dismissal of Their Challenges to the Information-Sharing Provisions (EO Sections 2(b)(iii), 2(e)(ii)), and 5(b)) .............................................. 35

I. Defendants Do Not Challenge the Types of Relief Sought by Plaintiff States ....... 36

IV. CONCLUSION ....................................................................................... 36

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Abbott Lab'ys v. Gardner*,
　387 U.S. 136 (1967),
　*abrogated on other grounds by*
　*Califano v. Sanders*,
　430 U.S. 99 (1977) ............................................................................. 16

*Am. Fed. of Gov't Emps. v. Trump*,
　139 F.4th 1020 (9th Cir. 2025) ......................................................... 29

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
　570 U.S. 1 (2013) ................................................................................. 7

*Armstrong v. Exceptional Child Ctr., Inc.*,
　575 U.S. 320 (2015) ............................................................................. 3

*Backcountry Against Dumps v. Fed. Aviation Admin.*,
　77 F.4th 1260 (9th Cir. 2023) ........................................................... 28

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*,
　295 F.3d 28 (D.C. Cir. 2002) ............................................................ 14

*Bognet v. Sec'y Commonwealth of Pa.*,
　980 F.3d 336 (3d Cir. 2020),
　*cert. granted, judgment vacated as moot sub nom.*
　*Bognet v. Degraffenreid*,
　141 S. Ct. 2508 (2021) ...................................................................... 18

*Bost v. Ill. State Bd. of Elections*,
　684 F. Supp. 3d 720 (2023) ............................................................... 18

*Bush v. Gore*,
　531 U.S. 98 (2000) ............................................................................. 22

*California v. Azar*,
　911 F.3d 558 (9th Cir. 2018) ............................................................ 25

*California v. Trump*,
　No. 1:25-cv-10810, 2025 WL 1667949 (D. Mass. July 25, 2025), *appeal filed*,
　No. 25-1726 (1st Cir. Aug. 1, 2025) .......................................... passim

*California v. U.S. Dep't of Health & Hum. Servs.*,
　941 F.3d 410 (9th Cir. 2019),
　*judgment vacated on other grounds by*
　*Little Sisters of Poor Jeanne Jugan Residence v. California*,
　141 S. Ct. 192 (2020) .......................................................................... 6

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Chamber of Com. of U.S. v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996)................................................................ 3

*City & County of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) .............................................................. 29

*City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*,
  944 F.3d 773 (9th Cir. 2019) ................................................................ 6

*City of Arlington v. FCC*,
  569 U.S. 290 (2013) ............................................................................ 14

*Democratic Nat'l Comm. v. Wis. State Legislature*,
  141 S. Ct. 28 (2020) ............................................................................ 31

*Donald J. Trump for President, Inc. v. Way*,
  492 F. Supp. 3d 354 (D.N.J. 2020) ...................................................... 19

*Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*,
  693 F.3d 1303 (10th Cir. 2012) ............................................................ 13

*Endy v. County of Los Angeles*,
  975 F.3d 757 (9th Cir. 2020) ................................................................ 3

*Fish v. Schwab*,
  957 F.3d 1105 (10th Cir. 2020) ............................................................ 11

*Foster v. Love*,
  522 U.S. 67 (1997)........................................................................ 18, 20

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  586 U.S. 296 (2019) ............................................................................ 10

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)......................................................................... 4, 7

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010)............................................................................. 3

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991)....................................................................... 29, 33

*Haw. Newspaper Agency v. Bronster*,
  103 F.3d 742 (9th Cir. 1996) ........................................................... 16, 31

*HIAS, Inc. v. Trump*,
  985 F.3d 309 (4th Cir. 2021) ............................................................... 29

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) .............................................................. 10

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*In re United Mine Workers of Am. Int'l Union,*
  190 F.3d 545 (D.C. Cir. 1999) ............................................................ 30

*Jones v. L.A. Cent. Plaza LLC,*
  74 F.4th 1053 (9th Cir. 2023) ............................................................... 2

*Kobach v. U.S. Election Assistance Comm'n,*
  772 F.3d 1183 (10th Cir. 2014) ........................................................... 11

*League of United Latin Am. Citizens v. Exec. Off. of the President* (*LULAC*),
  No. 25-0946 (CKK), 2025 WL 1187730 (D.D.C. Apr. 24, 2025) ................. passim

*League of Women Voters of U. S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) ............................................................. 7, 11

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ....................................................................... 8, 24

*Mallory v. Norfolk S. Ry. Co.,*
  600 U.S. 122 (2023) ............................................................................ 4

*Martin v. City of Boise,*
  920 F.3d 584 (9th Cir. 2019),
  *abrogated on other grounds by*
  *City of Grants Pass v. Johnson*, 603 U.S. 520 (2024) ............................... 5

*McConnell v. Fed. Election Comm'n,*
  540 U.S. 93 (2003),
  *overruled by*
  *Citizens United v. Fed. Election Comm'n,*
  558 U.S. 310 (2010) .......................................................................... 25

*Mecinas v. Hobbs,*
  30 F.4th 890 (9th Cir. 2022) ...................................................... 8, 30, 33

*Mendia v. Garcia,*
  768 F.3d 1009 (9th Cir. 2014) ............................................................ 24

*Mi Familia Vota v. Fontes,*
  129 F.4th 691 (9th Cir. 2025) ............................................................. 10

*Morrison v. Olson,*
  487 U.S. 654 (1988) .......................................................................... 14

*Murphy Co. v. Biden,*
  65 F.4th 1122 (9th Cir. 2023) ............................................................... 3

*Myers v. United States,*
  272 U.S. 52 (1926) ............................................................................ 14

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Nat. Res. Def. Council v. U.S. EPA*,
  735 F.3d 873 (9th Cir. 2013) ............................................................................ 23

*Nuclear Regul. Comm'n v. Texas* (*NRC*),
  605 U.S. 665 (2025) ..................................................................................... 3, 4

*Perez v. Mortg. Bankers Ass'n*,
  575 U.S. 92 (2015) ........................................................................................ 12

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
  39 F.4th 1158 (9th Cir. 2022) .......................................................................... 2

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
  589 U.S. 423 (2020) (per curiam) .................................................................. 16

*Republican Nat'l Comm. v. Wetzel*,
  120 F.4th 200 (5th Cir. 2024) .................................................................. 18, 19

*Scott v. Rosenberg*,
  702 F.2d 1263 (9th Cir. 1983) ........................................................................ 26

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  591 U.S. 213 (2020) ...................................................................................... 14

*Sierra Club v. Trump*,
  963 F.3d 874 (9th Cir. 2020),
  *vacated on other grounds by*
  *Biden v. Sierra Club*,
  142 S. Ct. 46 (2021) ........................................................................................ 3

*Texas v. United States*,
  523 U.S. 296 (1998) ...................................................................................... 26

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) .......................................................................... 25

*Trump v. CASA, Inc.*,
  145 S. Ct. 2540 (2025) .................................................................................... 36

*Trump v. Wilcox*,
  145 S. Ct. 1415 (2025) .................................................................................... 14

*United States ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954) ...................................................................................... 28

*United States v. Alabama*,
  778 F.3d 926 (11th Cir. 2015) ........................................................................ 32

*Util. Air Reg. Grp. v. EPA*,
  573 U.S. 302 (2014) ...................................................................................... 30

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Washington v. FDA*,
   108 F.4th 1163 (9th Cir. 2024) ............................................................ 16

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .............................................................. 2

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952)............................................................ 3, 4, 8, 17

## Constitutional Provisions

U.S. Const. amend. X ............................................... 13, 29, 30, 33

U.S. Const. art. I, § 4 ........................................................... 15

U.S. Const. art. I, § 4, cl. 1 ........................................... passim

U.S. Const. art. II ................................................................ 15

U.S. Const. art. II, section 3 ............................................... 30

## Statutes

### Federal Statutes

2 U.S.C. § 7............................................................... 17, 20

3 U.S.C. § 1 ...................................................................... 17

3 U.S.C. § 21 .................................................................... 20

3 U.S.C. § 21(1) ................................................................ 17

5 U.S.C. § 553(b) .............................................................. 12

5 U.S.C. § 553(c) .............................................................. 12

5 U.S.C. § 704 .................................................................... 6

6 U.S.C. §§ 603-609a ........................................................ 29

7 U.S.C. § 610(c) .............................................................. 11

50 U.S.C. § 1702 .............................................................. 11

52 U.S.C. § 20107(3) ........................................................ 20

52 U.S.C. § 20301(a) ........................................................ 32

52 U.S.C. § 20301(b)(2) .................................................... 32

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

52 U.S.C. § 20301(b)(7) ............................................................................ 32

52 U.S.C. § 20302(a)(5) ............................................................................ 32

52 U.S.C. § 20303(a)(1) ............................................................................ 20

52 U.S.C. § 20303(b)(3) ............................................................................ 19

52 U.S.C. § 20304(b)(1) ............................................................................ 19

52 U.S.C. § 20502(1) ................................................................................. 20

52 U.S.C. § 20504(c)(2)(B) ....................................................................... 11

52 U.S.C. § 20505(a)(1) ............................................................................ 13

52 U.S.C. § 20505(a)(2) ............................................................................ 10

52 U.S.C. § 20506(a) ................................................................................. 35

52 U.S.C. § 20506(a)(1) ............................................................................ 34

52 U.S.C. § 20506(a)(2) ............................................................................ 34

52 U.S.C. § 20506(a)(3) ............................................................................ 34

52 U.S.C. § 20506(a)(3)(B)(ii) .................................................................. 35

52 U.S.C. § 20506(a)(6) ....................................................................... 34, 35

52 U.S.C. § 20506(c) ................................................................................. 35

52 U.S.C. § 20508(a) ................................................................................. 11

52 U.S.C. § 20508(a)(1) ......................................................................... 5, 12

52 U.S.C. § 20508(a)(2) ............................................................................ 12

52 U.S.C. § 20508(b) ................................................................................. 10

52 U.S.C. § 20508(b)(1) .......................................................................... 9, 11

52 U.S.C. § 20508(b)(2) ............................................................................ 10

52 U.S.C. § 20508(b)(3) .......................................................................... 9, 10

52 U.S.C. § 20921 .................................................................................. 12, 27

52 U.S.C. § 20923 ..................................................................................... 27

52 U.S.C. § 20923(a) ................................................................................. 12

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

viii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

52 U.S.C. § 20923(a)(1)................................................................ 14

52 U.S.C. § 20923(a)(2)................................................................ 14

52 U.S.C. § 20923(a)(3)................................................................ 14

52 U.S.C. § 20923(c).................................................................... 12

52 U.S.C. § 20928................................................................. 12, 27

52 U.S.C. § 20929...................................................................... 12

52 U.S.C. § 20943...................................................................... 27

52 U.S.C. § 20944...................................................................... 27

52 U.S.C. § 20961...................................................................... 27

52 U.S.C. § 20962(a).................................................................. 27

52 U.S.C. § 20962(b)(1).............................................................. 27

52 U.S.C. § 20962(b)(2).............................................................. 27

52. U.S.C. § 20962(b)(3)............................................................. 27

52 U.S.C. § 20962(d)(1).............................................................. 27

52 U.S.C. § 21003................................................................ 13, 21

52 U.S.C. § 21003(b)(1)(A).......................................................... 21

52 U.S.C. § 21004(a)(1).............................................................. 21

52 U.S.C. § 21081................................................................ 21, 22

52 U.S.C. § 21081(a)(6).............................................................. 21

52 U.S.C. § 21081(b).................................................................. 22

52 U.S.C. § 21083...................................................................... 21

52 U.S.C. § 30101(1).................................................................. 20

Pub. L. No. 99-410, 100 Stat. 924 (Aug. 28, 1986)........................ 19

Consolidated Appropriations Act,
   Pub. L. No. 117-328, 136 Stat. 4459 (Dec. 29, 2022) ................. 19

Help America Vote Act
   Pub. L. No. 107-252, 116 Stat. 1666 (2022)........................ 12, 22

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

ix

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

National Voter Registration Act,
   Pub. L. No. 103-31, 107 State. 77 (1993)....................................... 9, 10, 11, 34

Uniformed and Overseas Citizens Absentee Voting Act,
   Pub. L. No. 99-410, 100 Stat. 77 (1986)............................................... 31, 32

State Statutes

Or. Rev. Stat. § 254.470(6) ........................................................................... 22

Or. Rev. Stat. § 254.470(6)(e)(B) .................................................................. 17

Or. Rev. Stat. § 254.470(8) ........................................................................... 17

Wash. Rev. Code § 29A.12.080(5) ................................................................ 24

Wash. Rev. Code § 29A.40.110(3) ............................................................ 17, 22

**Regulations**

86 Fed. Reg. 62156 (Nov. 9, 2021) ............................................................... 28

Or. Admin. R. 165-007-0030 .......................................................................... 22

Or. Admin. R. 165-007-0045 .......................................................................... 22

Wash. Admin. Code § 434-261-086 ............................................................... 22

Wash. Admin. Code § 434-335-010 ............................................................... 24

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ................................................................................... 2

**Other Authorities**

*Authentication,*
   Black's Law Dictionary (12th ed. 2024) ....................................................... 9

Dep't Homeland Security, *Notice of Funding Opportunity:*
   *Fiscal Year 2025 Homeland Security Grant Program,*
   https://files.simpler.grants.gov/opportunities/4d66b22d-
   90b7-489c-b009-f958c5e357e1/attachments/756a6d1e-fe87-
   4770-aa2c-1c3619c21481/Fiscal_Year_2025_Homeland_
   Security_Grant_Program_NOFO_508.pdf................................................. 26

Erik J. Engstrom & Jason M. Roberts,
   *The Politics of Ballot Choice,* 7
   7 Ohio State L. J. 839 (2016)...................................................................... 19

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

x

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Or. Sec'y of State, *Election Integrity*,
  https://sos.oregon.gov/elections/Pages/security.aspx (last visited Aug. 12, 2025) ............... 24

U.S. Election Assistance Comm'n,
  *Voting System Testing and Certification VVSG Lifecycle Policy* (June 16, 2023),
  https://www.eac.gov/sites/default/files/TestingCertification/VVSG_
  Lifecycle_Policy_9_22.pdf.................................................................................................. 28

Wash. Sec'y of State,
  *Securing Your Vote*,
  https://www.sos.wa.gov/elections/voters/securing-your-vote
  (last visited Aug. 12, 2025)................................................................................................. 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

xi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# I.    INTRODUCTION

To protect against despotism, the Constitution grants the President no authority over federal elections. Instead, States are responsible for regulating federal elections, subject only to preemption by Congress. Nonetheless, President Trump issued Executive Order 14,248, purporting to impose new election rules and override state voting laws. This Court can and should invalidate the parts of the Executive Order that Plaintiff States challenge here.

Defendants' primary response is that Plaintiff States lack standing to challenge the order. That argument is wrong, as recognized by the only other court to consider this question. *California v. Trump*, No. 1:25-cv-10810, 2025 WL 1667949 (D. Mass. July 25, 2025), *appeal filed*, No. 25-1726 (1st Cir. Aug. 1, 2025). Defendants essentially claim that the Executive Order doesn't harm States because it doesn't do anything. But this Court should reject Defendants' attempt to re-write the Executive Order. The Order's explicit terms direct illegal conduct that the President has no authority to require, and that conduct will undeniably harm Plaintiff States. Plaintiff States are thus entitled to summary judgment on their claims challenging the President's documentary proof of citizenship (DPOC) requirement for the Federal Form, the President's imposition of a national ballot-receipt deadline, and the President's attempt to re-write guidelines for voting systems and mandate decertification of all existing voting systems.

This Court should also deny Defendants' motion to dismiss Plaintiff States' claims related to voter registration agencies and the DPOC requirement for the Federal Post Card Application used by military and overseas voters. As detailed below, Plaintiff States have plausibly alleged that those aspects of the Order are unlawful and that Plaintiff States have standing to challenge them. In light of Defendants' concessions in their motion, however, the Plaintiff States do not object to dismissal of their separate claims challenging portions of the information-sharing provisions of the Executive Order.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS No. 2:25-cv-00602-JHC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## II.    LEGAL STANDARDS

The case involves both a motion for partial summary judgment under Rule 56 and a motion to dismiss under Rule 12(b)(1) and 12(b)(6). Different legal standards apply to the competing motions.

Defendants ask this Court to dismiss each of Plaintiff States' claims under Rule 12(b)(1) and/or 12(b)(6). Defendants' standing arguments "pertain to a federal court's subject-matter jurisdiction," so they are properly considered under Rule 12(b)(1), "not Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Under Rule 12(b)(1), a party's "jurisdictional attack[]" can be either facial or factual." *Id.* On a facial attack, this Court presumes the truth of the allegations in the complaint. *See id.* "With a factual Rule 12(b)(1) attack, however, a court" does not have to "presume the truthfulness of plaintiffs' allegations" and may instead "look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *Id.*

Under Rule 12(b)(6), courts "accept all well-pleaded factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff." *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161 (9th Cir. 2022) (quoting *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020)). The allegations need only make the claim plausible. *Id.* In this procedural posture, when considering Defendants' motion to dismiss, this Court may consider facts submitted as part of the summary judgment record. *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1061 (9th Cir. 2023).

Plaintiff States seek summary judgment with respect to specific provisions of the Executive Order: sections 2(a) and 4(a), which relate to requiring DPOC on the Federal Form; section 7, which imposes a ballot-receipt deadline on States; and section 4(b), which directs the Election Assistance Commission (EAC) to make specific changes to the Voluntary Voting System Guidelines (VVSGs) and decertify all existing voting systems. Dkt. 37 at 33. Under Rule 56(a), Plaintiff States' burden is to "show[] that there is no genuine dispute as to any material

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    fact and" that they are "entitled to judgment as a matter of law." The court draws "justifiable

2    inferences" in favor of the nonmoving party. *Endy v. County of Los Angeles*, 975 F.3d 757, 763

3    (9th Cir. 2020). Defendants cannot rely on mere allegations or denials to create a genuine issue

4    of material fact. *Id.* at 763, 768.

### III.    ARGUMENT

#### A.    Plaintiff States Appropriately Rely on an Equitable Cause of Action

7         Plaintiff States have a cause of action for each of their claims under both an *ultra vires*

8    theory and/or for violation of the constitutional separation of powers. Controlling authority from

9    the Supreme Court and the Ninth Circuit has repeatedly affirmed that these causes of action are

10   available where executive branch officials exceed their authority or otherwise violate the

11   separation of powers. *E.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)

12   ("The ability to sue to enjoin unconstitutional actions by . . . federal officers is the creation of

13   courts of equity, and reflects a long history of judicial review of illegal executive action[.]");

14   *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); *Youngstown

15   Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582-89 (1952); *Murphy Co. v. Biden*, 65 F.4th 1122,

16   1128-29 (9th Cir. 2023); *Sierra Club v. Trump*, 963 F.3d 874, 891-93 (9th Cir. 2020), *vacated

17   on other grounds by Biden v. Sierra Club*, 142 S. Ct. 46 (2021); *see also Chamber of Com. of

18   U.S. v. Reich*, 74 F.3d 1322, 1326-28 (D.C. Cir. 1996); *League of United Latin Am. Citizens v.

19   Exec. Off. of the President* (*LULAC*), No. 25-0946 (CKK), 2025 WL 1187730, at *16-17 (D.D.C.

20   Apr. 24, 2025) (same). Defendants simply ignore this longstanding precedent.

21        Defendants instead rely on a readily distinguishable case, *Nuclear Regulatory

22   Commission v. Texas* (*NRC*), 605 U.S. 665 (2025). The Supreme Court's decision in *NRC* stands

23   for the unremarkable proposition that parties may not use an *ultra vires* cause of action as "an

24   easy end-run around the limitations of . . . judicial-review statutes." *Id.* at 681. In *NRC*, a federal

25   agency held an adjudicatory proceeding and granted a license to a private party. *Id.*

26   at 670. A federal statute limited judicial review of licensing orders to parties to the adjudicatory

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   proceeding. *Id.* Texas was not a party and had not even sought to intervene in the adjudicatory

2   proceeding. *Id.* In that circumstance—where there was a final agency order and a statute

3   specifically precluded Texas from seeking judicial review—the Supreme Court held that Texas

4   and the other plaintiff "may not maintain a nonstatutory ultra vires claim." *Id.* at 683.

5        *NRC* is distinguishable for at least three reasons. First, in *NRC*, a statute expressly

6   precluded the plaintiffs from challenging the agency action. *Id.* at 1772. No such statute exists

7   here. Second, *NRC* did not involve an executive order. Defendants acknowledge that an

8   executive order may not be challenged under the Administrative Procedure Act (APA). Dkt. 64

9   at 17 (citing *Franklin v. Massachusetts*, 505 U.S. 788 (1992)). This case is no "end run" around

10  an available alternative. Third, unlike this case, *NRC* did not involve a violation of the separation

11  of powers. Here, for reasons explained below, the challenged provisions of the Executive Order

12  are contrary to the constitutional allocation of authority to Congress under the Elections Clause.

13  Perhaps most tellingly, nothing in *NRC* even mentions, much less purports to overrule, any of

14  the Court's cases recognizing an *ultra vires* cause of action to challenge unlawful executive

15  orders or violations of the separation of powers. To the extent Defendants argue that *NRC* silently

16  overruled *Youngstown* and its progeny, refusing to give those cases effect would be "clear[ ]

17  err[or.]" *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023).

18       Under well-established law, Plaintiff States may rely on a nonstatutory equitable cause

19  of action to challenge the sections of the Executive Order that are *ultra vires* and/or violate the

20  separation of powers.

21  **B.    Plaintiff States Are Entitled to Summary Judgment on the Federal Form DPOC
22         Claims (EO Sections 2(a) and 4(a))**

23       **1.    Plaintiff States' Federal Form DPOC claims are justiciable**

24       Three facts establish that Plaintiff States have standing to challenge the Executive

25  Order's requirement that the EAC require DPOC on the Federal Form. First, it is undisputed in

26  this litigation that, absent judicial relief, the Federal Form *will* require DPOC. Second, it is

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    undisputed that requiring DPOC on the Federal Form *will* harm Plaintiff States. And third, that

2    harm is traceable to the Executive Order's mandate that the Federal Form "shall . . . require"

3    DPOC. Plaintiff States therefore have standing, and this claim is ripe for adjudication.

4    **The DPOC requirement is imminent.** The Federal Form *will* require DPOC, and the

5    injury is therefore "certainly impending." *Martin v. City of Boise*, 920 F.3d 584, 608 (9th

6    Cir. 2019) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 (2013)), *abrogated on*

7    *other grounds by City of Grants Pass v. Johnson*, 603 U.S. 520 (2024). The Executive Order

8    mandates that the EAC add a DPOC requirement to the Federal Form: "the Election Assistance

9    Commission *shall* take appropriate action to require . . . (A) documentary proof of United States

10    citizenship . . ." Dkt. 1-1, § 2(a)(i) (emphasis added); *see also LULAC*, 2025 WL 1187730,

11    at *27 ("Section 2(a) mandates that the EAC take action to require documentary proof of

12    citizenship on the Federal Form. It states that mandate in no uncertain terms."). The Executive

13    Order further provides an exclusive list of documents that satisfy the requirement: "[DPOC]

14    *shall* include[.]" Dkt. 1-1, § 2(a)(ii) (emphasis added). The mandatory language in the Order

15    amounts to a "credible threat" that DPOC will be required. *Martin*, 920 F.3d at 608 (quoting

16    *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *accord LULAC*, 2025

17    WL 1187730, at *28 ("Section 2(a) leaves no uncertainty about what it requires from the EAC.").

18    And in other proceedings, Defendants have unambiguously affirmed that DPOC will be required.

19    *See* Dkt. 38-1 at 4-6.

20    Defendants' arguments related to imminence are misdirection. Defendants are correct

21    that changes to the Federal Form must go through a notice-and-comment rulemaking process.

22    Dkt. 64 at 6-7 (citing 52 U.S.C. § 20929); *see also* 52 U.S.C. § 20508(a)(1). While true, that's

23    irrelevant. The outcome is predetermined: the President has ordered that the Federal Form

24    "shall" require DPOC, Dkt. 1-1, § 2(a)(i), and that only certain types of documents will suffice,

25    *id.* § 2(a)(ii). That DPOC requirement is the source of the injury to Plaintiff States. While the

26

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  precise wording of the requirement and its location on the Federal Form have not been

2  determined, those details are not material to Plaintiff States' claims.

3       In other litigation, Defendants have completely reversed course—disavowing their prior

4  arguments—and taken the position that the Executive Order does not "predordain[] the outcome

5  of the EAC's process." Defs.' Reply in Supp. of Defs.' Mot. to Dismiss at 2-3, *California v.*

6  *Trump*, No. 1:25-cv-10810 (D. Mass. July 25, 2025), Dkt. 120. Instead, Defendants suggest that

7  the EAC "may determine, at the end of its rulemaking process, not to adopt a [DPOC]

8  requirement." *Id.* at 3 n.1. But that argument simply cannot be squared with the text of the

9  Executive Order, which says that the EAC "*shall* take appropriate action *to require* . . .

10  [DPOC] . . . on the [Federal F]orm." Dkt. 1-1, § 2(a) (emphasis added).

11       Defendants also suggest that the existence of preliminary injunctions in other cases

12  undermines Plaintiff States' ability to show imminent injury. Dkt. 64 at 7 n.5. Not so. "[N]o

13  court has adopted the view that an injunction imposed by one district court against a defendant

14  deprives every other federal court of subject matter jurisdiction over a dispute in which a plaintiff

15  seeks similar equitable relief against the same defendant." *California v. U.S. Dep't of Health &*

16  *Hum. Servs.*, 941 F.3d 410, 421 (9th Cir. 2019), *judgment vacated on other grounds by Little*

17  *Sisters of Poor Jeanne Jugan Residence v. California*, 141 S. Ct. 192 (2020). Notably, Plaintiff

18  States seek permanent relief on this motion, and that is different in kind from the *preliminary*

19  injunctions issued elsewhere. In any case, Ninth Circuit precedent holds that in this situation,

20  even where an injunction from another court "has a fully nationwide scope, we nevertheless

21  retain jurisdiction under the exception to mootness for cases capable of repetition, yet evading

22  review." *City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773,

23  788 (9th Cir. 2019).

24       Finally, Defendants' "final agency action" argument is a red herring. Dkt. 64 at 7. "Final

25  agency action" is a concept related to review under the APA. *See* 5 U.S.C. § 704. This is not an

26  APA action. This is a challenge to the Executive Order issued by the President, and it is settled

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  law that such orders cannot be challenged under the APA. *Franklin*, 505 U.S. at 801 (holding

2  that President's actions are not reviewable under the APA).

3        ***The DPOC requirement will harm Plaintiff States.*** It is undisputed that the DPOC

4  requirement will harm Plaintiff States. Plaintiff States have provided robust evidence of the

5  harms that the DPOC requirement will create. *See* Dkt. 39, ¶¶ 29-44; Dkt. 40, ¶¶ 6-7; Dkt. 42,

6  ¶¶ 13-23; Dkt. 43, ¶¶ 16-25; Dkt. 44, ¶¶ 6-13; Dkt. 46, ¶¶ 15-20; Dkt. 48, ¶¶ 17-28. For example,

7  Plaintiff States will be forced to spend hundreds of thousands of dollars updating statewide voter

8  registration databases, and voter education and outreach related to the new requirements will

9  cost millions of dollars. Dkt. 39, ¶¶ 30, 42-43; Dkt. 48, ¶ 24. Defendants neither dispute any of

10  those facts nor provide any new facts in support of their Opposition.

11        Section 4(a) of the Executive Order compounds that harm. The intent of section 4(a) is

12  to direct the EAC to withhold federal funding from States—like Plaintiff States—that accept and

13  use the Federal Form, even when it is not accompanied by DPOC. As the above paragraph

14  demonstrates, that harms Plaintiff States. Withholding EAC funding only adds further harm.

15        There is no genuine dispute that section 2(a)'s DPOC requirement and section 4(a)'s

16  directive to withhold funding will injure Plaintiff States.

17        ***The DPOC requirement is traceable to the Executive Order.*** The injury to Plaintiff

18  States is traceable to the Executive Order. Defendants do not contest this in their brief, *see* Dkt 64

19  at 6-7, and the facts make this clear. Before the Executive Order the EAC consistently *rejected*

20  requests by states to add state-specific DPOC requirements to the Federal Form. *See Arizona v.*

21  *Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 6 (2013); *League of Women Voters of U. S. v.*

22  *Newby*, 838 F.3d 1, 5 (D.C. Cir. 2016); Dkt. 38-4.

23        Following the Executive Order, the EAC took a preliminary step to require DPOC on the

24  Federal Form. *See* Dkt. 39-2; *see also* Dkt. 64 at 7 n.5. Since the *LULAC* court entered a

25  preliminary injunction, the EAC has "paused" its solicitation of feedback and has not taken any

26  other official action to require DPOC on the Federal Form. Dkt. 39-4 at 2; Dkt. 64 at 7 n.5. This

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

is significant because the preliminary injunction in the *LULAC* case expressly did *not* "prevent Defendants from taking any lawful action that is not based on Section[] 2(a) . . ." of the Executive Order. *LULAC*, 2025 WL 1187730, at *63. In other words, the EAC could have—but did not—exercise its independent discretion to pursue changes to the Federal Form. That it has apparently not pursued any changes confirms that the harm is "fairly traceable to [the Executive Order] and not the result of independent action of [the EAC]." *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

For the same reasons that this issue presents an imminent injury, the issue is also ripe for adjudication. Defendants suggest that there is a "lack of finality and definiteness" and that "Plaintiff States do not yet know how they will be harmed—if at all." Dkt. 64 at 7. This is simply incorrect. Defendants do not deny (to date in this litigation, at least) that the Executive Order *mandates* that the Federal Form require DPOC, nor do they dispute the facts establishing that a DPOC requirement will injure Plaintiff States. The material decision—that the Federal Form will require DPOC—is final and definite. Whether that decision is lawful is therefore ripe for review. *See, e.g.*, *California*, 2025 WL 1667949, at *7 (holding that "the challenge to § 2(a) is ripe for consideration"); *accord LULAC*, 2025 WL 1187730, at *31 (D.D.C. Apr. 24, 2025).

In sum, Plaintiff States have standing to challenge the Executive Order's mandate to require DPOC on the Federal Form, and this claim is ripe. *See* Dkt. 1-1, § 2(a).

### 2. The President cannot require DPOC on the Federal Form

The President has no inherent constitutional authority to establish voter registration requirements. *See* Dkt. 37 at 18. Under the Elections Clause, States regulate the times, places, and manner of federal elections, subject only to preemption by *Congress*. U.S. Const. art. I, § 4, cl. 1. Defendants do not argue otherwise. *See* Dkt. 64 at 18-23. As a result, the authority for section 7 must come from a statutory delegation by Congress. *Youngstown*, 343 U.S. at 585 ("The President's power, if any, . . . must stem either from an act of Congress or from the Constitution itself.").

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS No. 2:25-cv-00602-JHC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Contrary to Defendants' arguments, the President also has no *statutory* authority to

2    dictate requirements for the Federal Form. No statute gives the President such authority; indeed,

3    statutes forbid the President's actions. As a result, section 2(a) is *ultra vires* and violates the

4    separation of powers.

5              **a.**      **Section 2(a) is inconsistent with express textual prohibitions of the**

6                          **NVRA and violates the separation of powers**

7    Requiring DPOC on the Federal Form is contrary to two express provisions of the

8    National Voter Registration Act of 1993 (NVRA): the prohibition of any "formal authentication"

9    requirement on the Federal Form and the limitation that the Federal Form may require only

10   information that is "necessary[.]" 52 U.S.C. § 20508(b)(1), (3). Because section 2(a) of the

11   Executive Order is inconsistent with Congress's exercise of its authority under the Elections

12   Clause, it violates the separation of powers.

13   DPOC is a prohibited form of "formal authentication" of citizenship. Defendants attempt

14   to avoid this result by offering a strained interpretation of "formal authentication." Dkt. 64 at 22.

15   The statutory text is straightforward and provides that the Federal Form "may not include any

16   requirement for notarization or other formal authentication." 52 U.S.C. § 20508(b)(3).

17   Defendants recognize that "authentication" means, "[b]roadly, the act of proving that something

18   (as a document) is true or genuine." *Authentication*, Black's Law Dictionary (12th ed. 2024).

19   "Documentary proof of citizenship" falls squarely within this definition. It is "a document" that

20   acts to "prov[e]" that a person's citizenship attestation "is true or genuine." *Id.*; *see also*

21   Dkt. 1-1, § 2(a)(ii).

22   Defendants urge the Court to disregard the plain meaning of "authentication" and instead

23   interpret the statute to prohibit only formal proof of *identity*. But nothing about the statute

24   suggests such a cramped reading. The statute does not say "notarization or other formal

25   authentication *of identity*." Nor does it say "notarization or *similar* formal identification."

26   Instead, Congress broadly prohibited notarization requirements *and* "other formal

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

authentication" requirements. 52 U.S.C. § 20508(b)(3). To the extent the statute is ambiguous, legislative history confirms Congress's broader intent, demonstrating that Congress rejected a proposal reserving authority for individual states to require DPOC because it "could effectively eliminate, or seriously interfere with, the mail registration program of the Act." Dkt. 38-2 at 6; *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022) (confirming statutory interpretation by looking to legislative history). Congress's rejection of a proposal to allow individual states to require DPOC demonstrates that it would certainly also reject a proposal to *mandate* DPOC *nationwide*. *See, e.g.*, *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 307 (2019) (relying on the fact that Congress considered and "rejected proposals that would have eliminated [copyright] registration" in interpreting a statute).

Requiring DPOC is also inconsistent with the NVRA's mandate that the Federal Form may require only information that "is necessary to enable the appropriate election official to assess the eligibility of the applicant to vote." 52 U.S.C. § 20508(b). DPOC is not necessary; an applicant's sworn attestation is the form of proof Congress chose to require, and it allows election officials to assess an applicant's eligibility. *See* Dkt. 37 at 10-11; *see also* 52 U.S.C. § 20508(b)(2). Defendants' attempt to distinguish the cases cited in Plaintiff States' motion lacks merit. True, those cases addressed *state* requirements to include a DPOC requirement. Dkt. 64 at 22. But that is a distinction without a difference. The legal test is the same and requires that the information "is necessary[.]" *Compare* 52 U.S.C. § 20508(b)(1) (establishing requirements for the Federal Form), *with*, 52 U.S.C. § 20505(a)(2) (requiring that state forms "meet[] all of the criteria stated in section 20508(b)").

Binding Ninth Circuit authority holds that "the text of the NVRA is unambiguous" and that, in light of the attestation requirement, "DPOC is not legitimately necessary for registration." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 719 (9th Cir. 2025). The amicus brief from the Republican Party of Arizona is unhelpful because it ignores this mandatory authority. *See* Dkt. 81 at 10-16.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

To the extent the Federal Form could ever include a DPOC requirement, there would have to be some *factual* showing that DPOC is necessary. *Fish v. Schwab*, 957 F.3d 1105, 1138 (10th Cir. 2020) (applying test requiring a factual showing that attestation is insufficient);[1] *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (holding that officials had "failed to meet their evidentiary burden" to establish necessity); *see also League of Women Voters of the U.S.*, 833 F.3d at 10 (reversing EAC executive director's addition of a state-specific DPOC requirement based on failure to articulate factual basis). Neither the Executive Order nor Defendants' briefing even *attempts* to make such a factual showing. The upshot is that the Executive Order directs the EAC to require DPOC without a factual showing that DPOC is necessary. That violates 52 U.S.C. § 20508(b)(1).

> **b.    Section 2(a) is contrary to Congress's allocation of authority to the EAC and legislative safeguards**

In addition to conflicting with express statutory prohibitions, section 2(a) of the Executive Order is also contrary to the fundamental structure of the laws adopted by Congress. Congress created a detailed process for amending the Federal Form, and that process is inconsistent with the assertion that the President can unilaterally order changes. Three aspects of the statutory structure illustrate this: (1) the express delegation of authority to an independent agency; (2) the bipartisanship requirements for the EAC; and (3) the public input requirements.

Congress assigned responsibility for the Federal Form to an independent agency, not to the President. 52 U.S.C. § 20508(a). Congress knows how to assign specific responsibilities to the President, *e.g.*, 50 U.S.C. § 1702 ("At the time[] and to the extent specified in section 1701 of this title, the President may . . . ."), or carve out a specific role for the President, *e.g.*, 7 U.S.C. § 610(c) ("The Secretary of Agriculture is authorized, *with the approval of the President*, . . . ." (Emphasis added.)). Congress did not do so here. In fact, it is striking that the NVRA—the law

---

[1] *Fish* concerned a closely related provision of the NVRA that applies specifically to voter registrations made in connection with an application for a driver's license, but the necessity-limitation is substantively identical. 52 U.S.C. § 20504(c)(2)(B). The Tenth Circuit's interpretation of "necessary" in *Fish* is persuasive here.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS No. 2:25-cv-00602-JHC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    requiring the creation of the Federal Form—never uses the term "President" at all. Congress

2    expressly assigned the responsibility for creating the Federal Form to an "independent entity,"

3    52 U.S.C. § 20921, and created safeguards to ensure that entity's independence, *see* Dkt. 37

4    at 20-21.

5          Congress's bipartisanship requirements for the EAC are also inconsistent with

6    Defendants' assertion that the President can unilaterally dictate changes. Congress deliberately

7    required that any action by the EAC receive bipartisan support. *See* 52 U.S.C. §§ 20923(a), (c),

8    20928; *see also* Dkt. 72 at 14-15. The assertion that a single partisan figure can dictate EAC

9    action is inconsistent with Congress's requirement of bipartisan agreement. That is confirmed

10   by the amicus brief from former Republican members of Congress who supported passage of the

11   Help America Vote Act (HAVA). *See* Dkt. 72 at 10-11. Defendants do not even acknowledge—

12   much less persuasively address—the inconsistency between the bipartisanship requirement and

13   the assertion of unilateral presidential authority.

14         The public input requirements further demonstrate that Congress did not intend to permit

15   the President to unilaterally order changes to the Federal Form. Congress required that the EAC

16   "prescribe . . . regulations" when developing the Federal Form, 52 U.S.C. §§ 20508(a)(1),

17   20929, and promulgating regulations requires that the EAC give notice and provide "interested

18   persons an opportunity to participate in the rule making," 5 U.S.C. § 553(b), (c). The EAC "must

19   consider and respond to significant comments received during the period for public comment."

20   *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). Congress also went further and

21   specifically required that, in developing the Federal Form, the EAC must "consult[ ] with the

22   chief election officers of the States." 52 U.S.C. § 20508(a)(1)-(2).

23         Under Defendants' view, this is all a hollow formality. Even if the input from the public

24   and state election officials demonstrates—and the EAC commissioners agree—that the changes

25   are unwarranted and harmful, the EAC must, according to Defendants, do the President's

26   bidding. Congress's intent in these statutes is clear. Congress intended to ensure that the relevant

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

decisionmakers—the EAC commissioners—make decisions that are meaningfully informed by feedback from state election officials and the general public. Congress did not intend to create a pointless exercise. *See Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1307 (10th Cir. 2012) (Gorsuch, J.) ("[W]e are always hesitant to assume Congress included pointless language in its statutory handiwork." (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001))). The President's claimed authority is inconsistent with Congress's statutes requiring bipartisan agreement and public input.

Because section 2(a) of the Executive Order is not based on any inherent constitutional authority of the President and is contrary to statutes adopted by Congress, it is *ultra vires* and violates the separation of powers and the Tenth Amendment.

### c.    Section 4(a) is inconsistent with congressional grant provisions

No statute authorizes the EAC to withhold funding from States that accept and use the Federal Form. To the contrary, federal law *requires* States to do so. 52 U.S.C. § 20505(a)(1). Section 4(a) purports to require the EAC to withhold funding from States that accept the Federal Form when it is not accompanied by DPOC. Dkt. 1-1, § 4(a). In this way, the Executive Order requires the EAC to withhold funds from States *because* they comply with federal law. Nothing in the statute identifying conditions on grant funding, 52 U.S.C. § 21003, authorizes such a result. As a result, section 4(a) is *ultra vires* and a violation of the separation of powers.

### d.    The president does not have authority to direct the outcome of decisions committed to the EAC

Defendants primarily rely on a sweeping theory of presidential authority that is unprecedented and wrong. At its core, Defendants' argument is that when Congress assigns responsibility to an agency, it creates executive power that the President may personally control. *See* Dkt. 64 at 18-20. As other Courts have recognized, Defendants' argument "is untethered from precedent and unsupported by even a maximalist view of 'the executive Power' under our

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS No. 2:25-cv-00602-JHC

13

ATTORNEY GENERAL OF WASHINGTON Complex Litigation Division 800 Fifth Avenue, Suite 2000 Seattle, WA 98104-3188 (206) 464-7744

1  Constitution." *California*, 2025 WL 1667949, at *8 (quoting *LULAC*, 2025 WL 1187730,

2  at *39).

3  The cases that Defendants rely on are all distinguishable. *Building & Construction*

4  *Trades Department, AFL-CIO v. Allbaugh*, 295 F.3d 28, 34 (D.C. Cir. 2002), is distinguishable

5  in two ways. First, *Allbaugh* did not address the President's authority over *independent* agencies.

6  Second, the substance of the executive order in *Allbaugh* was not contrary to any federal statutes.

7  *Id.* The footnote from *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013), that Defendants

8  cite says precisely nothing about the President's authority to dictate actions of independent

9  agencies. The remaining cases address the President's authority to remove subordinate officers.

10  *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025); *Seila Law LLC v. Consumer Fin. Prot. Bureau*,

11  591 U.S. 213, 216-17 (2020); *Myers v. United States*, 272 U.S. 52, 135 (1926). That issue is not

12  presented in this case and involves distinct considerations and historical precedent. *See Seila*

13  *Law*, 591 U.S. at 213-15 (discussing, *inter alia*, the contemporaneous views of the Framers on

14  removal of officers).

15  Even where presidential authority is at its apex, Congress may impose certain limitations

16  on presidential authority. *Id.* at 215-18. One type of permissible limitation is based on the

17  characteristics of the agency. Considerations supporting Congress's ability to limit the

18  President's removal power include that the agency is (1) a multimember body, (2) composed of

19  experts, (3) balanced along partisan lines, and (4) exercising quasi-legislative functions. *Id.* at

20  216-17. All of those considerations apply here. The EAC has four commissioners who must

21  "have experience with or expertise in election administration or the study of elections," the

22  commissioners are balanced to achieve bipartisanship, 52 U.S.C. § 20923(a)(1)-(3), and its

23  functions are quasi-legislative in the sense that they are "not essential to the President's proper

24  execution of his Article II power[.]" *Morrison v. Olson*, 487 U.S. 654, 690-91 (1988). Indeed,

25  the current context is uniquely non-essential to the President's authority. The Constitution

26  squarely assigns the ability to "make or alter" election regulations to *Congress*, not the President.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

U.S. Const art. I, § 4, cl. 1. The Constitution withholds election regulation from the President, underscoring that regulating elections is not essential to the proper execution of the President's Article II power.

In short, Defendants rely on a theory of executive power that is far broader than anything recognized by any court. The two courts to address this theory in the context of this Executive Order have both rejected it, *California*, 2025 WL 1667949, at *8; *LULAC*, 2025 WL 1187730, at *39, and this Court should, too.

**C.    Plaintiff States Are Entitled to Summary Judgment and Declaratory Judgment on Their Ballot Receipt Deadline Claims (EO Section 7)**

**1.    Plaintiff States' ballot receipt deadline claims are justiciable**

Plaintiff States have standing to challenge section 7(a) of the Executive Order, and it is proper for this Court to issue declaratory relief now. Defendants concede that section 7(a) purports to establish a national ballot-receipt deadline, Dkt. 64 at 15, and such a deadline creates sovereign and financial harms for Plaintiff States.

Section 7(a) of the Executive Order harms Plaintiff States' sovereign interests in regulating their own elections, *see* U.S. Const. art. I, § 4 (granting authority to States to regulate the "Times, Places, and Manner" of federal elections), by nullifying their statutory ballot receipt criteria.

Plaintiff States will also suffer financial harm in complying with section 7(a)'s mandatory ballot-receipt deadline. To comply with the Executive Order, Plaintiff States must change their processes for counting votes and educate the electorate on new processes. Dkt. 40, ¶¶ 15-16. This would require amending statutes and adopting new administrative rules about voting processes. Dkt. 39, ¶ 48. It would also create significant costs related to treatment of ballots received after election day. Dkt. 39, ¶ 48; Dkt. 40, ¶ 16; Dkt. 44, ¶ 17. These sovereign and financial injuries are more than sufficient to establish standing to challenge section 7(a). *See*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  *Washington v. FDA*, 108 F.4th 1163, 1175-76 (9th Cir. 2024) (holding that pocketbook injuries
2  and injuries to sovereign interests constitute injury-in-fact).

3        Plaintiffs States' section 7(a) challenge is also ripe for adjudication. To comply with the
4  Executive Order, Plaintiff States must begin changing their processes for counting ballots well
5  in advance of the next federal general election in 2026. *See Republican Nat'l Comm. v.*
6  *Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam) ("[F]ederal courts should
7  ordinarily not alter the election rules on the eve of an election." (citing *Purcell v. Gonzalez*, 549
8  U.S. 1 (2006) (per curiam))). Absent this Court's declaratory judgment on the correct
9  interpretation of the election day statutes, Plaintiff States will suffer the financial and sovereign
10  hardships associated with changing their election processes and being forced to violate their own
11  state laws. Additionally, resolving that dispute presents a purely legal question, which renders it
12  fit for judicial decision. *See Haw. Newspaper Agency v. Bronster*, 103 F.3d 742, 746 (9th
13  Cir. 1996) (holding that purely legal issues are fit for judicial decision).

14        Defendants misinterpret Plaintiff States' section 7(a) claims by arguing that they are not
15  ripe until the Attorney General takes enforcement action. The harms to Plaintiff States are not
16  contingent on how, or if, the Attorney General will implement the Executive Order. Nor do they
17  hinge on bad-faith execution of the Executive Order. *See* Dkt. 64 at 16. Rather, the Executive
18  Order's misapplication of the federal election day statutes directly and imminently harms
19  Plaintiff States by requiring them to violate their own state laws regulating ballot-receipt
20  deadlines and to spend resources changing their systems to comply with the Executive Order in
21  advance of the 2026 general election. Those harms demonstrate that the Executive Order has "a
22  direct effect on the day-to-day business" of Plaintiff States in administering elections. *See Abbott*
23  *Lab'ys v. Gardner*, 387 U.S. 136, 152 (1967), *abrogated on other grounds by Califano v.*
24  *Sanders*, 430 U.S. 99 (1977). That is sufficient to establish that the section 7(a) challenge is ripe.
25  In addition, the Executive Order directs that the Attorney General "shall" take "all necessary"
26  enforcement action. Dkt. 1-1, § 7(a). Defendants' suggestion that the Attorney General would

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

comply by simply sending a letter sharing her views on the lawfulness of Plaintiff States' laws is therefore disingenuous; the Executive Order requires more. In one of the other lawsuits, Defendants' counsel suggested that could take the form of criminal actions. Dkt. 38-1 at 9. Those additional actions would imminently harm Plaintiff States. Therefore, Plaintiffs have standing, and the section 7(a) challenge is justiciable.

**2.    The President has no authority to set ballot-receipt deadlines**

Defendants do not contend that the President has inherent constitutional authority to establish ballot return deadlines. *See* Dkt. 64 at 33 (arguing that "the President did not create a ballot-receipt deadline for federal elections—Congress did"). Any authority for section 7 must, therefore, come "from an act of Congress." *Youngstown*, 343 U.S. at 585.

No act of Congress gives the President authority to impose a ballot-receipt deadline. Defendants rely exclusively on the Election Day Statutes, 2 U.S.C. § 7 and 3 U.S.C. §§ 1, 21(1), Dkt. 64 at 34, but the plain text of those statutes demonstrates that they do not preempt state ballot-receipt deadlines. As the opening brief explains, the Election Day Statutes, 2 U.S.C. § 7 and 3 U.S.C. §§ 1, 21(1), are entirely silent as to when mail ballots must be received. Dkt. 37 at 24-25. They merely set a common day for federal general elections nationwide. Legislative history and historical practice confirm that these statutes do not preempt state ballot receipt deadlines. Dkt. 37 at 25-27. Plaintiff States' laws comply with these statutes because, for a ballot received after election day to count, voters must have completed and submitted their ballot by mail no later than the federal election day. Wash. Rev. Code § 29A.40.110(3); Or. Rev. Stat. § 254.470(6)(e)(B), (8).

The Executive Order attempts to add a requirement that ballots must also be *received* by Election Day, but Defendants identify no textual basis for such a requirement. Instead, they rely only on the Fifth Circuit's erroneous interpretation of the election day statutes to require "official action," "finality," and "consummation" of the election by all votes being cast and received by the statutory date. Dkt. 64 at 34-38 (citing *Republican Nat'l Comm. v. Wetzel*, 120 F.4th 200,

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

207 (5th Cir. 2024)). As *Wetzel* acknowledges, contemporary dictionary definitions of "election" do not support any of these purported requirements. 120 F.4th at 206 n.5.

The Fifth Circuit's opinion is by no means compelled by Supreme Court authority. The Supreme Court's only decision interpreting the election day statutes merely requires that an election must not end *before* election day. *Foster v. Love*, 522 U.S. 67, 72 (1997). It does not mean that votes cast by election day cannot be counted if—due to mailing-related delays—they are received by election officials after election day.

The Fifth Circuit's opinion is also contrary to decisions from other courts. Defendants attempt to wave away those cases in a footnote, but the cases are squarely on point and should be highly persuasive authority. As part of its standing analysis, the Third Circuit held the election day statutes and a Pennsylvania postmark-deadline law "operate harmoniously" and that the challengers therefore did not have a "cognizable basis" to challenge the state law. *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 345, 353-54 (3d Cir. 2020), *cert. granted*, *judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021). Similarly, in *Bost v. Illinois State Board of Elections*, 684 F. Supp. 3d 720, 736 (2023), the district court held, in the alternative, that a state postmark deadline "operates harmoniously with the federal statutes that set the timing for federal elections." This was not dicta.

Defendants ignore the numerous analytical problems underlying the *Wetzel* decision. For example, Plaintiff States demonstrated that *Wetzel* was historically inaccurate and contrary to the source it cited. Dkt. 37 at 29. Defendants' response was to repeat the historical inaccuracy and cite to *Wetzel*. Dkt. 64 at 36.

Defendants also ignore the deeply troubling nature of *Wetzel*'s logic. Defendants, like the *Wetzel* opinion, look to historical practice to define the term "election." Dkt. 64 at 35-36. In doing so, they attempt to freeze in time then-existing election practices. Because States did not routinely accept timely-cast ballots received after election day in 1872, the argument goes, the definition of "election" requires that ballots be received by election day. That is both illogical

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

and leads to troubling results. For example, in 1872, no States used secret ballots; Massachusetts adopted the first statewide secret ballot requirement in 1888. Erik J. Engstrom & Jason M. Roberts, *The Politics of Ballot Choice*, 77 Ohio State L. J. 839, 843 (2016). Does that mean that the term "election" prohibits secret ballots because they were not used in 1872? Of course not. Neither does the term "election" prohibit postmark-based deadlines.[2]

Congress has continued to legislate in this area without requiring a ballot-receipt deadline. Defendants attempt to sidestep this argument by mischaracterizing it as one based on congressional inaction. Dkt. 64 at 37-38. But that misses the mark. Congress reenacted the presidential election day statute in 2022 without expressly preempting postmark deadlines. *See* Consolidated Appropriations Act, Pub. L. No. 117-328, 136 Stat. 4459, Div. P, §§ 102, 104 (Dec. 29, 2022). It did so against the background of more than a dozen States having adopted postmark deadlines, Dkt 64. at 36, decades of state practice, and judicial decisions rejecting the President's interpretation of the election day statutes, *see Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020) (concluding that "the Federal Election Day Statutes are silent on methods of determining the timeliness of ballots").

Further, Congress expressly incorporated state-law ballot-receipt deadlines for military and overseas ballots. 52 U.S.C. §§ 20303(b)(3), 20304(b)(1). Congress did so in 1986, Pub. L. No. 99-410, 100 Stat. 924, § 103(b)(3) (Aug. 28, 1986), at a time when some state laws relied on ballot-receipt deadlines, further evincing Congress's acceptance of these state practices. As another district court noted when rejecting the President's interpretation, "The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *California*, 2025 WL 1667949, at *13 (alternation in original) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 18 (2014)).

---

[2] Taken to its logical conclusion, *Wetzel*'s reasoning would also call into question the legality of absentee ballots generally, as their use began around at the same time as laws allowing for the counting of ballots cast by but received after election day.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Defendants also have no answer for why Congress would preempt state ballot-receipt

2  deadlines only for federal *general* elections, but not for primary or special elections. Ordinarily,

3  when Congress exercises its authority under the Elections Clause, it does so for all federal

4  elections, including primary and special elections. *See, e.g.*, 52 U.S.C. § 20303(a)(1) (providing

5  for "a Federal write-in absentee ballot . . . for use in general, special, primary, and runoff

6  elections for Federal office" by military and overseas voters); 52 U.S.C. § 30101(1) (applying

7  federal campaign finance regulations to federal general, special, primary, and runoff elections);

8  52 U.S.C. § 20502(1) (same for NVRA); 52 U.S.C. § 20107(3) (same for the Voting

9  Accessibility for the Elderly and Handicapped Act of 1984). The election day statutes concern

10  only general elections. *See* 2 U.S.C. § 7 (providing "[t]he Tuesday next after the 1st Monday in

11  November, in every even numbered year, is established as the day for the election"); 3 U.S.C.

12  § 21 (same for quadrennial Presidential elections). This is consistent with the statutes' legislative

13  purpose: Congress set a single day to ensure the general elections would take place on the same

14  day in all states, *see Foster*, 522 U.S. at 73, but it did not impose the same uniformity for primary

15  elections. The President's preference for requiring mail ballots to be received by election day

16  would apply equally to primary and special elections. Defendants provide no explanation why

17  Congress would nevertheless preempt state postmark deadlines only for general elections.

18    Defendants make the bizarre argument that postmark-based deadlines are somehow

19  "discriminatory" and "arbitrarily treat" voters differently. Dkt. 64 at 36-37. This makes no sense.

20  Under Plaintiff States' laws, the same rule applies to *all* voters—ballots must be returned by

21  8:00pm on election day or postmarked by election day. This *prevents* arbitrary treatment.

22  Without a postmark-based deadline, two voters returning their ballots at the same time the day

23  before election day could be treated differently based on postal delays beyond their control.

24  Plaintiff States' laws *reduce* that arbitrary distinction.

25    The election day statutes do not give the President any authority to mandate a ballot-

26  receipt deadline. Because the President has no constitutional or statutory authority to impose an

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  election day ballot-receipt deadline, this Court should hold that section 7(a) of the Executive

2  Order is *ultra vires*, enter a declaratory judgment that the Plaintiff States' ballot-receipt deadline

3  laws do not violate the federal election day laws, and enter injunctive relief prohibiting the

4  Attorney General from enforcing section 7(a). *See California*, 2025 WL 1667949, at *12-*14

5  (entering preliminary injunction to prohibit civil or criminal enforcement of section 7(a) against

6  plaintiffs in that case).

7  **3.  The EAC has no authority to condition funds on ballot-receipt deadlines**

8  The President cannot condition EAC funding to States on compliance with his preferred

9  ballot-receipt deadline. Defendants' contrary arguments are wrong for two reasons. First, the

10  President cannot direct the actions of an independent, bipartisan agency like the EAC. *See supra*

11  at 11-15. Second, no statute conditions EAC funding on a ballot-receipt deadline.

12  Defendants' statutory arguments fail. The Executive Order identifies compliance with

13  52 U.S.C. § 21081(a)(6) as the basis for withholding payments. Dkt. 1-1, § 7(b). But the statute

14  identifying the conditions on EAC payments, 52 U.S.C. § 21003, never mentions compliance

15  with 52 U.S.C. § 21081 as a condition. Defendants provide a convoluted argument to get there.

16  Defendants rely on the condition that "[t]he State has filed" a state plan that contains certain

17  elements. 52 U.S.C. § 21003(b)(1)(A). The state plan has to identify "[h]ow the State will use

18  the requirements payment to meet the requirements of subchapter III." 52 U.S.C. § 21004(a)(1).

19  Subchapter 3 contains 52 U.S.C. § 21083. And so, Defendants conclude, 52 U.S.C. § 21003

20  conditions funding on compliance with 52 U.S.C. § 21083. Dkt. 64 at 39. But that interpretation

21  doesn't work. Requiring that a state plan demonstrate how the state will "use" the funds "to meet

22  the requirements of subchapter III" is *not* the same as saying that a state "must meet the

23  requirements of subchapter III." Defendants' attempt to conflate those concepts lacks merit.

24  Moreover, even if funding *were* conditioned on compliance with 52 U.S.C. § 21083, that

25  would not permit withholding funding based on ballot-receipt deadlines. The requirement

26

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Defendants rely on reads as follows:

2        Each voting system used in an election for Federal office shall meet the
3        following requirements:

         . . .
4
5        (6) Each State shall adopt uniform and nondiscriminatory standards that define
         what constitutes a vote and what will be counted as a vote for each category of
6        voting system used in the State.

7    52 U.S.C. § 21081. This is inapplicable for at least three reasons. First, that requirement is about

8    how a "voting system" operates, and a voting system is defined to refer to hardware and software

9    used in elections, not ballot receipt deadlines. 52 U.S.C. § 21081(b). Second, this provision,

10   concerning "standards that define what constitutes a vote," was adopted in the aftermath of the

11   2000 presidential election, the infamous "hanging chads," and *Bush v. Gore*'s holding that

12   Florida's "unequal evaluation of ballots" violated the Equal Protection Clause. *See* 531 U.S. 98,

13   106 (2000). In context, this provision requires a uniform process for evaluating ballots, and

14   Plaintiff States have promulgated such rules. *See* Wash. Admin. Code § 434-261-086; Oregon

15   Vote-by-Mail Procedures Manual 39–45, adopted by Or. Admin. R. 165-007-0030. Third, even

16   if ballot-receipt deadlines were subject to this HAVA provision, the ballot receipt deadlines

17   established by the Plaintiff States are also uniform and nondiscriminatory: they apply statewide.

18   Wash. Rev. Code § 29A.40.110(3); Or. Rev. Stat. § 254.470(6); Or. Admin. R. 165-007-0045.

19   Particularly in universal vote-by-mail states, like Plaintiff States, this is entirely uniform.

20       For these reasons, Plaintiff States are entitled to summary judgment with respect to

21   section 7(b) of the Executive Order.

22   **D.    Plaintiff States are Entitled to Summary Judgment on Their Voting System Claims,
             and their Challenge to Section (4)(d) Should Be Allowed to Proceed (EO Section
23           4(b), (d))**

24       **1.    Plaintiff States have standing to challenge sections (4)(b) and (4)(d)**

25       Plaintiff States are injured by sections 4(b) and 4(d) of the Executive Order. Section 4(b)

26   unlawfully directs the EAC to make specific amendments to the VVSG 2.0 and to decertify all

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

                                    22                    ATTORNEY GENERAL OF WASHINGTON
                                                               Complex Litigation Division
                                                               800 Fifth Avenue, Suite 2000
                                                               Seattle, WA  98104-3188
                                                                     (206) 464-7744

1  presently certified voting systems unless they are formally recertified under the President's

2  preferred standards. Section 4(d) unlawfully places conditions on obtaining federal funding.

3  Both provisions harm Plaintiff States, and, contrary to Defendants' arguments, those harms are

4  imminent, traceable to the executive order, and not speculative.

5      ***Standing to Challenge Section 4(b).*** The text of the Executive Order rebuts Defendants'

6  claim that decertification is not imminent. The Executive Order specifically states, "Within 180

7  days of the date of this order, the Election Assistance Commission *shall* take appropriate

8  action . . . to *rescind all previous certifications* of voting equipment based on prior standards."

9  Dkt. 1-1, § 4(b)(ii) (emphasis added). Under this plain language, decertification is mandatory

10  and must occur by September 21, 2025, and the harms that follow are inevitable. This makes the

11  harm sufficiently "actual or imminent" for standing purposes. *Nat. Res. Def. Council v. U.S.*

12  *EPA*, 735 F.3d 873, 878 (9th Cir. 2013) (holding that "an injury is 'actual or imminent' where

13  there is a 'credible threat' that a probabilistic harm will materialize"); *see also LULAC*, 2025

14  WL 1187730, at *28 (holding that injury was sufficiently imminent where Executive Order

15  purported to require EAC action).

16      Defendants' argument to the contrary—that harm is not imminent because the EAC "has

17  only certified one voting system under the *current* standard"—makes no sense. Dkt. 64 at 12.

18  The Executive Order does not require certification of new voting systems before requiring

19  decertification of existing voting systems. *See* Dkt. 1-1, § 4(b)(ii). Nor does it exempt voting

20  systems certified under the current standard (i.e., VVSG 2.0) from the decertification

21  requirement. *Id.* The result is that there will be an indefinite period in which there are *no* federally

22  certified voting systems, and this is among the most problematic practical aspects of section 4(b),

23  as it will sow chaos and distrust in the States' administration of elections and result in numerous

24  financial harms.

25      The imminent harms are directly traceable to the Executive Order. Plaintiff States need

26  establish only that the injury is "'fairly traceable to the challenged action of the defendant[.]'"

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   *Lujan*, 504 U.S. at 560 (citation modified) (*quoting Simon v. E. Ky. Welfare Rts. Org., Inc.*, 426

2   U.S. 26, 41-12 (1976)). "Causation may be found even if there are multiple links in the chain

3   connecting the defendant's unlawful conduct to the plaintiff's injury." *Mendia v. Garcia*, 768

4   F.3d 1009, 1012 (9th Cir. 2014). The Executive Order mandates changes to VVSGs and also

5   requires decertification of all existing voting systems; those changes and decertification would

6   not occur but for the Executive Order, and they harm Plaintiff States. The causal relationship is

7   clear.

8       Defendants miss the mark in arguing that the harms are not traceable to the Executive

9   Order. Defendants argue that traceability is not satisfied because States are not required to adopt

10  the VVSGs. Dkt. 64 at 11-12. But regardless of whether a state has adopted the VVSGs, federal

11  decertification will result *solely* from the Executive Order—not from any State law or policy

12  related to the VVSGs. And federal decertification will force counties either to procure new

13  voting systems (which will result in significant financial harms, Dkt. 39, ¶ 74; Dkt. 43,

14  ¶¶ 45, 47; Dkt. 44, ¶¶ 22, 25-28; *see also* Dkt. 89 at 19), or to use voting systems that are no

15  longer federally certified (which will result in harms to voter confidence, Dkt. 39, ¶ 73; Dkt. 43,

16  ¶ 46; Dkt. 44, ¶ 24); *see also* Dkt. 89 at 21-23; Wash. Sec'y of State, *Securing Your Vote*,

17  https://www.sos.wa.gov/elections/voters/securing-your-vote (last visited Aug. 12, 2025)

18  (highlighting that Washington's voting systems "must be certified by an independent testing

19  authority and the State of Washington"); Or. Sec'y of State, *Election Integrity*,

20  https://sos.oregon.gov/elections/Pages/security.aspx (last visited Aug. 12, 2025) (highlighting

21  that "Oregon's machines passed federal lab tested certification . . . .").

22      Moreover, while it is true that Washington law—not federal law—requires voting

23  systems, voting devices, and vote tallying systems to meet applicable federal standards to receive

24  state certification, *see* Wash. Admin. Code § 434-335-010; *see also* Wash. Rev. Code

25  § 29A.12.080(5); Dkt. 39, ¶ 60, that does not mean injuries resulting from changes to the federal

26  standards are self-inflicted. This situation is entirely distinct from the case relied on by

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Defendants, *McConnell v. Federal Election Commission*, 540 U.S. 93 (2003), *overruled by*

2    *Citizens United v. Federal Election Commission*, 558 U.S. 310, 355-56 (2010). In *McConnell*, it

3    was the plaintiffs' "own personal 'wish' . . . *i.e.*, their personal choice" that caused their alleged

4    injury. *Id.* at 228. Instead, this case is analogous to *Texas v. United States*, 809 F.3d 134 (5th

5    Cir. 2015). In that case, the court concluded that unlawful changes in federal policy caused the

6    State's injuries, notwithstanding that the State had elected to rely on the federal standards when

7    enacting its laws and could change state law to avoid impact. The same is true here.

8        Moreover, complying with the amended VVSGs is not nearly so voluntary as Defendants

9    suggest. Section 4(d) of the Executive Order effectively conditions receipt of Homeland Security

10   Grant Program funds (and other funding) on VVSG compliance. *See* Dkt. 1-1, § 4(d) (providing

11   that federal agencies "shall . . . heavily prioritize compliance with the" VVSG 2.0 in considering

12   funding to States). This leaves Plaintiff States with a Hobson's Choice—comply with unlawfully

13   amended VVSGs or jeopardize federal funding. Defendants cannot seriously maintain that

14   compliance with the VVSGs is voluntary when section 4(d) exists to coerce the Plaintiffs into

15   compliance. And forcing the States to choose between adhering to unlawfully amended

16   guidelines or suffering economic injuries is anything but a self-inflicted harm. *See California v.*

17   *Azar*, 911 F.3d 558, 573-74 (9th Cir. 2018) ("Courts regularly entertain actions brought by

18   states and municipalities that face economic injury, even though those governmental entities

19   theoretically could avoid the injury by enacting new legislation.").

20       Defendants' final standing argument related to decertification—that the harm from

21   federal decertification is "speculative"—fares no better than their imminence and traceability

22   arguments. Defendants simply assert that "the claimed harm is, at best, speculative." Dkt. 64

23   at 12. Not so. Plaintiff States established, through robust evidence in support of their summary

24   judgment motion, that section 4(b) of the Executive Order will result in numerous harms.

25   Dkt. 39, ¶¶ 73-75; Dkt. 40, ¶ 19; Dkt. 42, ¶ 36; Dkt. 43, ¶¶ 45-47; Dkt. 44, ¶¶ 22, 24-28; Dkt. 48,

26   ¶¶ 47-49; *see generally* Dkt. 37 at 30-31. Defendants provided no contrary evidence in response,

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

and Defendants' conclusory denial is not sufficient to establish a genuine dispute of fact as to the harms demonstrated by Plaintiff States. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271 (9th Cir. 1983) (holding that conclusory statements are insufficient to survive a properly supported summary judgment motion).

Section 4(b)(i) is closely intertwined with section 4(b)(ii). Some voting systems in Washington will not satisfy the changes required by the Executive Order. Dkt. 43, ¶ 43. Under the Executive Order, those systems could not be re-certified, Dkt. 1-1, § 4(b)(ii), resulting in the same choice of financial harm or harm to voter confidence. Dkt. 43, ¶¶ 45-46.

***Standing to Challenge Section 4(d).*** Defendants' argument that the harms from section (4)(d) are speculative is also wrong. Plaintiff States established that withholding funding in the manner directed by section 4(d) will result in harm, Dkt. 41, ¶¶ 13-19, 24, 26-27; Dkt. 48, ¶¶ 53-55, and Defendants offered no evidence suggesting otherwise. Contrary to Defendants' claim, a "date certain" is not a necessary condition to establishing standing or ripeness. Instead, the Court must consider whether the occurrence of the harm "rests upon contingent future events that may not occur as anticipated or may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified). Nothing about 4(d) is contingent on future events; its plain language expressly states that agency heads "shall" consider VVSG 2.0 compliance and federal testing in determining grant eligibility. This is not speculation. FEMA recently announced that it was conditioning Homeland Security grant funding on VVSG-related conditions. *See* https://files.simpler.grants.gov/opportunities/4d66b22d-90b7-489c-b009-f958c5e357e1/attachments/756a6d1e-fe87-4770-aa2c-1c3619c21481/Fiscal_Year_2025_Homeland_Security_Grant_Program_NOFO_508.pdf (conditioning three percent of Homeland Security Grant funding on prioritizing VVSG 2.0 and testing through an EAC-accredited laboratory). In short, there is nothing speculative about whether section 4(d) unlawfully places conditions on obtaining federal funding.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS No. 2:25-cv-00602-JHC

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**2.    Defendants fail to show that sections (4)(b) and (d) are lawful**

Contrary to Defendants' assertions, the President has no authority to control the outcome of the EAC's rulemaking processes.

Nothing in the Constitution gives the President authority to establish voting system guidelines, and Defendants do not suggest otherwise. The President also has no statutory authority to dictate the contents of the VVSGs. Defendants contend that, by assigning certain duties to the EAC, Congress created a power that the President can exercise unilaterally. But that is squarely inconsistent with the statutory scheme. Congress established the EAC as an *independent* and bipartisan agency. 52 U.S.C. §§ 20921, 20923, 20928. As a result, the President has no unilateral authority to direct changes to the VVSGs for the same reasons that he cannot direct changes to the Federal Form. *See supra* at 11-15.

Considerations unique to developing the VVSGs also reflect the inconsistency between the statutory scheme and the Executive Order's VVSG requirements. In developing the VVSGs, the EAC has to consider the recommendations of the Technical Guidelines Development Committee, a 15-member expert committee. 52 U.S.C. §§ 20961, 20962(b)(1). Congress also required proposed guidelines and modifications be considered by the Board of Advisors (a 37-member bipartisan body of election stakeholders) and the Standards Board (110-member bipartisan committee of state and local election officials). 52 U.S.C. §§ 20943, 20944, 20962(b)(2)-(3). The EAC must also publish notice of the proposed modifications in the Federal Register and provide an opportunity for public comment and a public hearing. 52 U.S.C. § 20962(a). Approval of the proposed guidelines or modifications requires bipartisan support from at least three of the four EAC commissioners, who must "tak[e] into consideration the comments and recommendations submitted by the Board of Advisors and the Standards Board[.]" 52 U.S.C. § 20962(d)(1).

These unique considerations further underscore that the President's claimed authority is inconsistent with HAVA. Whatever authority the President may have over removal of EAC

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

commissioners, he has no constitutional authority to direct the outcome of the EAC's rulemaking. *See supra* at 11-15. And he has no statutory authority to control the EAC's exercise of the powers assigned to it by Congress. Section 4(b) is *ultra vires*.

Moreover, even if the President theoretically had authority to direct the EAC's actions, the directive to decertify voting systems en masse would violate the *Accardi*[3] doctrine. Under that doctrine, "[a] federal agency . . . is 'obliged to abide by the regulations it promulgates,' including its own internal operating procedures." *Backcountry Against Dumps v. Fed. Aviation Admin.*, 77 F.4th 1260, 1267 (9th Cir. 2023) (quoting *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998)). This is especially true "[w]here a prescribed procedure is intended to protect the interests of a party before the agency." *Id.* (alteration in original) (quoting *Sameena*, 147 F.3d at 1154). The EAC has adopted an internal procedure called the VVSG Lifecycle Policy through notice-and-comment rulemaking. Notice and Request for Public Comment on VVSG Lifecycle Policy, 86 Fed. Reg. 62156, 62156-57 (Nov. 9, 2021) https://www.govinfo.gov/content/pkg/FR-2021-11-09/pdf/2021-24501.pdf. That policy expressly states that VVSG migration "does not affect the status of any EAC certified voting system" and that voting systems "may only be decertified upon a vote of the Commissioners and following the process detailed in the EAC's Testing and Certification Program Manual." U.S. Election Assistance Comm'n, *Voting System Testing and Certification VVSG Lifecycle Policy*, at ¶ 3.2 (June 16, 2023), https://www.eac.gov/sites/default/files/TestingCertification/VVSG_Lifecycle_Policy_9_22.pdf. The policy acknowledges that it protects the interests of third parties, stating that "jurisdictions may continue to acquire" voting systems certified under earlier VVSG. *Id.* Decertifying voting systems without following the process in the VVSG Lifecycle Policy would violate the *Accardi* doctrine and is yet another reason that the Executive Order is unlawful.

---

[3] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Section 4(d) of the Executive Order is also *ultra vires*. Defendants rely on the fact that 4(d) contains a savings clause and imposes funding conditions only as "consistent with applicable law[.]" Dkt. 64 at 30-31. But Defendants place far more weight on this savings clause than it can reasonably bear. "Savings clauses are read in their context, and they cannot be given effect when the Court . . . would override clear and specific language." *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018). Accordingly, courts routinely decline to give effect to savings clauses where they would override clear language or render judicial review a meaningless exercise. *See, e.g.*, *id.* at 1240; *Am. Fed. of Gov't Emps. v. Trump*, 139 F.4th 1020, 1038 (9th Cir. 2025); *HIAS, Inc. v. Trump*, 985 F.3d 309, 325 (4th Cir. 2021). Here, section 4(d) "unambiguously commands action," *City & County of San Francisco*, 897 F.3d at 1240, and adds a new criterion for the receipt of federal funds that lacks any textual support in the enabling statutes. *See* 6 U.S.C. §§ 603-609a. There is no lawful way in which the agency heads could consider Plaintiff States' compliance with these conditions that would be "in accordance with applicable law." Thus, there is "more than a 'mere possibility that some agency might make a legally suspect decision.' " *City & County of San Francisco*, 897 F.3d at 1240 (quoting *Allbaugh*, 295 F.3d at 33). In short, the language cited by Defendants does not save section 4(d) from its infirmities, and Plaintiff States' claims should proceed.

**E.    If This Court Denies Summary Judgment on Any Claims, It Still Should Not Dismiss Them**

Plaintiff States currently seek only partial summary judgment. Plaintiff States' summary judgment motion on Federal Form DPOC requirement, the ballot-receipt deadline mandate, and the VVSG requirement did not rely on the Tenth Amendment, constitutional right to vote, or Take Care Clause claims. But Plaintiff States have included plausible claims for each and none should be dismissed. Dkt. 1 at 36-38, 41.

***Tenth Amendment.*** The Tenth Amendment reserves to the States those powers not delegated to the federal government. *See Gregory v. Ashcroft*, 501 U.S. 452, 461-62 (1991).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   States therefore retain the power to regulate elections, except as preempted by Congress under

2   the Elections Clause. The Complaint plausibly alleges that Congress has not preempted state

3   regulations, and so section 2(a)'s DPOC requirements and section 7's ballot-receipt deadline

4   violate the Tenth Amendment.

5       ***Constitutional Right to Vote.*** Under settled law, governmental action violates the

6   constitutional right to vote when the burdens on the right to vote outweigh the government's

7   asserted regulatory interests. *E.g.*, *Mecinas*, 30 F.4th at 904. The complaint plausibly alleges that

8   the DPOC requirement imposes a burden on registering and that the burden is "not supported by

9   any interest that justifies this serious burden on the right to vote." Dkt. 1, ¶¶ 221-22, 224; *see*

10  *also id.*, ¶¶ 61-62 (specific factual allegations). The complaint also plausibly alleges that the

11  ballot-receipt deadline imposes a burden on exercising the right to vote and similarly lacks

12  justification. Dkt. 1, ¶¶ 221-22, 224; *see also id.*, ¶¶ 74-77, 88-94 (specific factual allegations).

13      ***Take Care Clause.*** The Take Care Clause of the Constitution, Article II, Section 3,

14  requires that the President "shall take Care that the Laws be faithfully executed." The President

15  cannot "set aside congressional legislation by executive order." *In re United Mine Workers of*

16  *Am. Int'l Union*, 190 F.3d 545, 551 (D.C. Cir. 1999); *see also Util. Air Reg. Grp. v. EPA*, 573

17  U.S. 302, 327 (2014) ("Under our system of government, Congress makes the laws and the

18  President . . . 'faithfully executes them.'" (quoting U.S. Const. art. II, § 3)). The Complaint

19  plausibly alleges that by imposing a DPOC requirement for the Federal Form, the Executive

20  Order is setting aside congressional legislation allowing eligible persons to register to vote based

21  on citizenship attestation. Dkt. 1, ¶¶ 252-53.

22  **F.    This Court Should Not Dismiss Plaintiff States' Federal Post Card Application**
        **DPOC Claims (EO Section 3(d))**
23

24      **1.    Plaintiff States' federal post card application claims are justiciable**

25  Plaintiff States have standing to challenge section 3(d), which requires DPOC on the

26  federal post card application (FPCA) used by military and overseas voters. Plaintiff States have

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

sufficiently pleaded that section 3(d) will increase burdens on state and local officials, including "significant monetary costs." Dkt. 1, ¶ 191. Defendants do not dispute that this is a cognizable injury.

Plaintiff States' section 3(d) challenge is fit for judicial review. Section 3(d) does not depend on contingencies or speculative events. It commands that the Secretary "shall update" the FPCA "to require" DPOC. Dkt. 1-1, § 3(d). Even if there is no specific deadline or date-certain, section 3(d) thus dictates a particular outcome, and no further factual development is required. *California*, 2025 WL 1667949, at *9 ("Even if the timeframe for implementation and the specific form of identification § 3(d) requires are yet to be determined . . . it leaves no doubt that [DPOC] will be required."). Plaintiff States' challenge to section 3(d) is a purely legal issue that is fit for judicial review. *See Haw. Newspaper Agency*, 103 F.3d at 746.

Further, Plaintiff States will suffer harm absent immediate judicial review. Again, Defendants do not dispute the sufficiency of Plaintiff States' allegation that section 3(d) will create harm. The changes necessary to process DPOC on the FPCA must begin to be made well in advance of the 2026 election—running statewide elections requires a "massive coordinated effort[.]" *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring).

Because Plaintiff States will suffer hardships, and because the section 3(d) challenge is fit for judicial review, both ripeness prongs are satisfied, and Plaintiff States' section 3(d) challenge is justiciable.

### 2. Plaintiff States have sufficiently alleged that the FPCA DPOC requirement violates the separation of powers, the Election Clauses, the right to vote, and the Tenth Amendment, and is *ultra vires*

Plaintiff States have sufficiently alleged that section 3(d) of the Executive Order violates the separation of powers because it infringes upon Congress's exercise of its Elections Clause power. Dkt. 1, ¶ 243. Pursuant to the Elections Clause, Congress adopted UOCAVA and directed a presidential designee to "prescribe an official post card form, containing both an absentee voter

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

registration application and an absentee ballot application, for use by the States as required under

section 20302(a)(4)" of UOCAVA. 52 U.S.C. § 20301(a), (b)(2). Section 3(d) of the Executive

Order is inconsistent with this statutory authority for three reasons.

First, Congress has defined the method for establishing citizenship on the FPCA, and that

is through "a standard oath" under penalty of perjury for individuals to attest to their citizenship.

52 U.S.C. §§ 20301(b)(7), 20302(a)(5).

Second, the FPCA is a "postcard"—"a card . . . for mailing without an envelope and to

which the sender must affix a stamp"—and that is incompatible with a requirement to attach any

form of DPOC. *See California*, 2025 WL 1667949, at *10 (alteration in original) (quoting

*Postcard*, Meriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/postcard).

Third, a DPOC requirement is inconsistent with UOCAVA's purpose of removing

barriers to overseas voting. *Id.*; *see also United States v. Alabama*, 778 F.3d 926, 928 (11th

Cir. 2015) ("By passing UOCAVA, . . . Congress unequivocally committed to eliminating

procedural roadblocks, which historically prevented thousands of service members from sharing

in the most basic of democratic rights."). Indeed, if this Court agrees that the DPOC requirement

is unlawful as to the Federal Form, allowing the Secretary to require DPOC in the FPCA would

create a puzzling asymmetry in how the federal government treats voters. *See California*, 2025

WL 1667949, at *10.

Plaintiff States have also sufficiently alleged that section 3(d) violates the Elections

Clause and is *ultra vires*. Dkt. 1, ¶¶ 150, 228. The President does not have—or even claim to

have—inherent constitutional authority to regulate voter registration. *See* U.S. Const. art. I, § 4,

cl. 1; Dkt. 64 at 26-27. Any authority to direct the contents of a voter registration form must

therefore come from statute. But the President has no statutory authority to require DPOC on the

FPCA. UOCAVA gives the President authority to appoint the person responsible for creating

the FPCA, 52 U.S.C. § 20301(a), but it gives the President no direct role in prescribing those

contents. *See supra* at 11-12.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Plaintiff States have also sufficiently alleged a violation of the right to vote. The complaint alleges that Defendants' actions—including increasing the burden associated with registering to vote—"interfere with the ability of U.S. citizens who are residents of Plaintiff States to register to vote[.]" Dkt. 1, ¶ 221. The Complaint also alleges that tens of thousands of voters in Plaintiff States used the FPCA in 2020 and 2024. Dkt. 1, ¶¶ 63-64. Further, the Complaint alleges that the Executive Order is "not supported by any interest that justifies this serious burden on the right to vote." Dkt. 1, ¶ 222. In light of these allegations—and the need for weighing burdens and governmental interests—dismissal is premature. *Mecinas*, 30 F.4th at 905 (reversing dismissal of right-to-vote claims).

Plaintiff States have also alleged a Tenth Amendment claim. Dkt. 1, ¶ 213. The Tenth Amendment preserves state authority to regulate elections, *Gregory*, 501 U.S. at 461-62, except as preempted by Congress under the Elections Clause. Congress has not exercised its Elections Clause authority to preempt state laws that allow for voter registration based on citizenship attestation. The President's attempt to do so therefore violates the Tenth Amendment.

Because Plaintiff States have sufficiently alleged that section 3(d) violates separation of powers, the Elections Clause, the right to vote, and the Tenth Amendment, and is *ultra vires*, this Court should deny the Motion to Dismiss those claims as to section 3(d).

## G.    This Court Should Not Dismiss Plaintiff States' Voter Registration Agency Claims (EO Section 2(d))

This Court should reject Defendants' motion to dismiss Plaintiff States' challenge to section 2(d), which requires proof of citizenship from enrollees in public assistance programs in order to receive a voter registration form. In the alternative, if this Court dismisses the claim, it should expressly state in its order that it is doing so in reliance on Defendants' assertion that the provision does not apply to state agencies. Dkt. 64 at 9.

Section 2(d) of the Executive Order applies to "[t]he head of each Federal voter registration executive department or agency (agency) under the National Voter Registration Act,

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   52 U.S.C. § 20506(a)." Dkt. 1-1, § (2)(d). That statutory provision applies almost exclusively to

2   agencies of *state* government, including "all offices in the State that provide public assistance[,]"

3   "all offices in the State that provide State-funded programs primarily engaged in providing

4   services to persons with disabilities[,]" and any other state-designated offices. 52 U.S.C.

5   § 20506(a)(2)-(3). These agencies must provide "registration of voters in elections for Federal

6   office." 52 U.S.C. § 20506(a)(1).

7       Plaintiff States have standing to challenge section 2(d) of the Executive Order. The

8   NVRA requires that voter registration agencies in Plaintiff States distribute the Federal Form (or

9   an agency equivalent form) with "each application . . . recertification, renewal, or change of

10  address[.]" 52 U.S.C. § 20506(a)(6). Multiple state agencies in Plaintiff States are subject to—

11  and actively comply with—this requirement. *See* Dkt. 1, ¶¶ 58, 60; *see also* Dkt. 46, ¶ 7

12  (demonstrating that there are 1,231,906 case actions requiring an offer of voter registration

13  assistance for the Washington Department of Social and Health Services). Changing those

14  processes would be costly, totaling around $17 million for just one state agency to comply with

15  section 2(d) of the Executive Order. Dkt. 46, ¶¶ 15-17.

16      Section 2(d) of the Executive Order is also *ultra vires* and violates the separation of

17  powers. The President has no constitutional or statutory authority to direct the circumstances in

18  which state agencies distribute voter registration applications. Further, section 2(d) is squarely

19  contrary to the NVRA. The NVRA *requires* that agencies distribute voter registration forms with

20  "each" relevant transaction. 52 U.S.C. § 20506(a)(6). Section 2(d) *prohibits* distribution of voter

21  registration forms as part of those transactions unless the applicant for public assistance provides

22  some form of proof of citizenship. Dkt. 1-1, § 2(d). The two other district courts to review this

23  issue have concluded that section 2(d) is likely unlawful and issued preliminary injunctions.

24  *California*, 2025 WL 1667949, at *11; *LULAC*, 2025 WL 1187730, at *48-49.

25      Defendants attempt to save section 2(d) by rendering it essentially meaningless.

26  Defendants contend that section 2(d) applies only to agencies of the federal government and not

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

to agencies of state government. Dkt. 64 at 9-10, 25. That argument is difficult to square with section 2(d)'s citation to 52 U.S.C. § 20506(a). Dkt. 1-1, § 2(d). Only a tiny sliver of 52 U.S.C. § 20506(a) applies to agencies of the federal government: state-designated federal agencies and armed forces recruitment offices. 52 U.S.C. § 20506(a)(3)(B)(ii), (c). Washington has not identified any federal agencies as state voter registration agencies, Dkt. 1-4, and nothing in the record suggests that armed forces recruitment offices are even distributing voter registration forms. The term "Federal voter registration agency executive department or agency" is ambiguous. "Federal" could modify "agency," consistent with Defendants' reading, but it could also modify "voter registration" (i.e., agencies that register voters for federal elections). The citation to 52 U.S.C. § 20506(a)(6) seemingly compels the second reading.

For these reasons, this Court should not dismiss Plaintiff States' challenge to section 2(d). However, if this Court disagrees and dismisses Plaintiff States' challenge, this Court should expressly state that it is doing so in reliance on Defendants' interpretation of section 2(d). In the event that Defendants attempt to take an inconsistent position in the future, the basis for dismissal may become relevant.

**H.    Based on Defendants' Concessions, Plaintiff States Do Not Oppose Dismissal of Their Challenges to the Information-Sharing Provisions (EO Sections 2(b)(iii), 2(e)(ii), and 5(b))**

Defendants concede that the challenged information-sharing provisions of the Executive Order are, in large measure, empty rhetoric. Specifically, Defendants concede that section 2(b)(iii)'s reference to seeking state records does not create any new authority to issue subpoenas. Dkt. 64 at 24. Defendants also appear to concede that section 2(e)(ii) does not authorize the Attorney General to access nonpublic state records. *Id.* Finally, Defendants concede that section 5(b) does not require the United States Attorney General to withhold funds from Plaintiff States. Dkt. 64 at 32.

In light of Defendants' concessions, Plaintiff States do not oppose dismissal of their challenges to these three sections. However, dismissal should be without prejudice. Plaintiff

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

35

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

States specifically reserve the right to amend their complaint if Defendants seek unlawful access to Plaintiff States' records or unlawfully attempt to withhold funds based on Plaintiff States declining to enter into information-sharing agreements.

**I.     Defendants Do Not Challenge the Types of Relief Sought by Plaintiff States**

Defendants do not dispute that this Court has authority to grant the specific relief sought in connection with Plaintiff States' motion for partial summary judgment. With respect to sections 4(a), 7(a), and 7(b) of the Executive Order, the relief sought would run only to Plaintiff States. Dkt. 37-1. With respect to sections 2(a) and 4(b), the relief sought would have effects beyond Plaintiff States. Specifically, enjoining section 2(a) will prevent the EAC from relying on the Executive Order to make changes to the Federal Form. There is only one Federal Form, so this relief is necessary to provide Plaintiff States complete relief. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2556-57 (2025). Similarly, enjoining section 4(b) will prevent the EAC from relying on the Executive Order to make changes to the VVSGs or decertify all federal voting systems. Here, too, there is only one set of VVSGs for the nation, and the EAC certifies voting systems, not state-specific uses. Relief specific to only Plaintiff States is not available for these claims, and Defendants do not argue otherwise.

## IV.     CONCLUSION

The President has no constitutional role in regulating federal elections. The Constitution assigns that responsibility to the States and Congress. Because the President has neither constitutional nor statutory authority to order the changes challenged in this case, those changes are *ultra vires*, and because they conflict with statutes adopted by Congress, they also violate the separation of powers. Plaintiff States are entitled to summary judgment with respect to sections 2(a), 4(a), 4(b), and 7 of the Executive Order. In light of Defendants' concessions, Plaintiff States do not oppose dismissal of their claims with respect to sections 2(b)(iii), 2(e)(ii)), and 5(b). This Court should deny of Defendants' motion to dismiss Plaintiff States' claims with respect to sections 2(d), 3(d), and 4(d).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

36

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

DATED this 13th day of August, 2025.

I certify that this memorandum contains 12,485 words, in compliance with the Local Civil Rules.

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*

NOAH G. PURCELL, WSBA 43492
*Solicitor General*

*s/ Karl D. Smith*
KARL D. SMITH, WSBA 41988
*Deputy Solicitor General*
WILLIAM MCGINTY, WSBA 41868
KELLY A. PARADIS, WSBA 47175
ALICIA O. YOUNG, WSBA 35553
*Deputy Solicitors General*
FREEMAN E. HALLE, WSBA 61498
MICHELLE M. SAPERSTEIN, WSBA 55539
ZANE MULLER, WSBA 63777
*Assistant Attorneys General*
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
karl.smith@atg.wa.gov
noah.purcell@atg.wa.gov
william.mcginty@atg.wa.gov
kelly.paradis@atg.wa.gov
alicia.young@atg.wa.gov
freeman.halle@atg.wa.gov
zane.muller@atg.wa.gov
michelle.saperstein@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

DAN RAYFIELD
Attorney General
State of Oregon

*s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL*
CARLA A. SCOTT, WSBA #39947
*Senior Assistant Attorneys General*
KATE E. MORROW*
*Assistant Attorney General*
Oregon Department of Justice

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

37

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

100 SW Market Street
Portland, OR 97201
(971) 673-1880
brian.s.marshall@doj.oregon.gov
carla.a.scott@doj.oregon.gov
kate.e.morrow@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*
*Admitted Pro hac vice

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-00602-JHC

38

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744