The Honorable John H. Chun

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON and STATE OF OREGON,

                         Plaintiffs,

                v.

DONALD J. TRUMP, *in his official capacity as President of the United States, et al.*,

                    Defendants.

CASE NO.  2:25-cv-602-JHC

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

NOTE ON MOTION CALENDAR: AUGUST 29, 2025

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs urge this Court to grant their motion for partial summary judgment on the basis that the Executive Order "direct[s] illegal conduct that the President has no authority to require" and that "will . . . harm Plaintiff States." DE103 at 1. But this factual premise is false. The EO, at most, properly interprets existing law and directs various Executive agencies and officials to initiate processes to carry out actions in accordance with law. Plaintiffs' claims are premature and should be dismissed for lack of subject-matter jurisdiction. Even if this Court reaches the merits of Plaintiffs' claims, however, Plaintiffs are not entitled to summary judgment, and the Court should dismiss all of Plaintiffs' claims, because the President lawfully exercised his constitutional authority when directing members of the Executive branch to carry out certain actions consistent with statutory authority.

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 1

U.S. Department of Justice
950 PENNSYLVANIA AVE., NW
WASHINGTON, D.C. 20530
(202) 353-8679

**ARGUMENT**

I.  **Plaintiffs lack an *ultra vires* cause of action.**

Plaintiffs bring eight non-statutory claims challenging the EO. DE1 ¶¶ 196-260. But as explained in Defendants' Motion, *ultra vires* review is available only when "an agency has taken action entirely 'in excess of its delegated powers and contrary to a specific prohibition in a statute," and another "statutory review scheme" does not "provide[] aggrieved persons 'with a meaningful and adequate opportunity for judicial review.'" *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025); DE64 at 17. Here, the EO directs agencies to carry out specific actions. Plaintiffs, therefore, could have challenged those actions under the APA. As a result, *ultra vires* review is foreclosed. Still, Plaintiffs argue that they can bring non-statutory causes of action for all their claims because "executive branch officials [have] exceed[ed] their authority or otherwise violate[d] the separation of powers." DE103 at 15. But the Supreme Court has disavowed any "in excess of [authority]" carveout for *ultra vires* review. And Plaintiffs have not shown that the EO violates a specific statutory prohibition and no other statutory scheme affords relief. *Nuclear Regul.*, 605 U.S. at 681; *Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2480618, at *6-8 (D.C. Cir. Aug. 13, 2025) (*Free Enterprise Fund*, *Youngstown*, *Armstrong*, and *Reich*, did not permit the grantees to assert a non-statutory cause of action to vindicate separation-of-powers principles); DE103 at 3-4.

II.  **The Court lacks jurisdiction over Plaintiffs' section 2(a) and 4(a) claims, and those claims fail substantively.**

a.  **Plaintiffs lack standing to challenge sections 2(a) and 4(a), and their claims are prudentially unripe.**

Plaintiffs argue that they have standing to challenge sections 2(a) and 4(a) because "the Executive Order mandates that the EAC add a DPOC requirement to the Federal Form" and that the outcome of the EAC's notice-and-comment rulemaking process is "predetermined." DE103 at

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 2

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

5. But section 2(a) does not predetermine the outcome of the EAC's rulemaking process. Because the outcome of that process is speculative, Plaintiffs lack standing, and their claims are prudentially unripe.

Section 2(a) directs the EAC to "take appropriate action to require" documentary proof of citizenship on the federal form. This language tracks the NVRA's requirement that the EAC prescribe regulations to include information that is "necessary" to assess voter eligibility on the federal form. 52 U.S.C. § 20508(a). The form "may require only such . . . information . . . as is necessary to enable the appropriate state election official to assess the eligibility of the applicant." *Id*. § 20508(b)(1). "[T]he phrase 'may require only' in [§ 20508(b)(1)] means that the EAC 'shall require information that's necessary, but may only require that information.'" *Arizona v. ITCA*, 570 U.S. 1, 18 (2013). In other words, if the EAC determines that something is "necessary" for a state official to assess a voter registration applicant's eligibility to vote, then it must require it on the form. *See id*. Section 2(a) therefore simply directs the EAC to begin the process for adding a documentary-proof-of-citizenship requirement to the federal form and instructs that if it determines such a requirement is necessary, then it is statutorily required to add it to the form. The process's result therefore is dictated not by section 2(a) but by the EAC's forthcoming necessity determination. The EO's savings clause, mandating that the order "be implemented consistent with applicable law," EO § 11(b), further reinforces this view. *See Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002); *Trump v. AFGE*, 145 S. Ct. 2635, 2635 (2025) (Sotomayor, J., concurring). Because section 2(a) does not dictate the outcome of the EAC's rulemaking process, any alleged injury flowing from it is "speculative" and not "*certainly impending*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs therefore lack

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 3

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

1    standing to challenge section 2(a).[1]

2         Plaintiffs note that the EAC "took a preliminary step to require DPOC on the Federal

3    Form," DE103 at 7, by sending a letter to Chief Election Officials seeking consultation on

4    development of the federal form, DE64 at 7 n.5. This does not salvage jurisdiction because it does

5    not alter the reality that the outcome of its rulemaking process is still uncertain. And because that

6    "challenged action is [not] final," Plaintiffs' claims are also not "fit for decision," or prudentially

7    ripe. *Stavrianoudakis*, 108 F.4th at 1139; DE64 at 7.[2]

8         Section 4(a) fares no better. Plaintiffs argue that section 4(a) "compounds" the "harm" that

9    2(a) inflicts. DE103 at 7. Section 4(a) directs the EAC to take "all appropriate action" to "cease

10   providing Federal funds to States that do not comply with 52 U.S.C. [§] 21145," such as the

11   requirement to use the federal form adopted pursuant to section 2(a). Because section 2(a) inflicts

12   no imminent injury on Plaintiffs, *i.e.*, the federal form has not been updated, section 4(a) will not

13   imminently injure them either. Even if section 2(a) did create cognizable injury, it is entirely

14   speculative about what "appropriate action" the EAC will take in the future pursuant to section

15   4(a). Such conjectural injury does not confer standing for Plaintiffs' 4(a) challenge. *Clapper*, 568

16   U.S. at 409.

17        Plaintiffs also accuse Defendants of "revers[ing] course" by taking the position "that the

18   Executive Order does not preordain the outcome of the EAC's process." DE103 at 6. Plaintiffs

19   base this criticism on prior attorney statements made during a hearing held on a motion for

20

21   _____

     [1]  Plaintiffs' claims challenging section 2(a) are also not constitutionally ripe because

22   "[c]onstitutional ripeness overlaps with the injury-in-fact element of Article III standing."
     *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024).

23   [2] Plaintiffs' claims challenging sections 3(d), 4(a), 4(b), and 7(a) are also not prudentially ripe for

24   the reasons stated in Defendants' motion to dismiss. *See* DE64 at 10-16.

emergency relief in the case before the District of D.C. But Defendants are not bound to those statements, which did not yield a favorable decision for them. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Nor can an attorney's statements supersede the text of the EO, which contains only a qualified direction to "take appropriate action." EO § 2(a).

   **b.  Section 2(a) was not issued *ultra vires*, nor does it violate the separation of powers.**

   Section 2(a) poses no separation-of-powers problem, nor has the President exceeded his constitutional authority in directing the EAC to "take all appropriate action to require" documentary proof of citizenship on the federal form. DE64 at 18-20. Plaintiffs argue that the "President has no inherent constitutional authority to establish voter registration requirements," DE103 at 8, but they mischaracterize the EO's directives. Section 2(a) simply directs the EAC to undergo its rulemaking process and to take all lawful action to consider adding a DPOC requirement to the federal form. *Supra* II.a. Thus, Plaintiffs' argument that section 2(a) runs afoul of "Congress's allocation of authority to the EAC and legislative safeguards" is misplaced. DE103 at 11. In any case, the President is the head of the Executive branch. U.S. Const. art. II, § 1, cl. 1. As a result, he has the constitutional authority to direct Executive agencies to act according to their statutory mandates. *See Seila L. LLC v. CFPB*, 591 U.S. 197, 213-14 (2020). The EAC wields Executive power, and whether it is characterized as an "independent" agency or not, it is subject to the supervisory authority of the president. *See id.* at 213, 216-17.  Plaintiffs also argue that *Allbaugh* is distinguishable because the executive order in that case was not contrary to any federal statutes—but that is also the case here. DE103 at 14.

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 5

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

### c. Section 2(a) does not violate the NVRA.

Plaintiffs are also wrong that section 2(a) violates the NVRA's prohibition on "formal authentication" on the federal form and requirement that it include only "necessary information." DE103 at 9 (citing 52 U.S.C. § 20508(b)(1), (3)). Section 2(a) violates neither.

Under the NVRA, the federal form "may not include any requirement for notarization or other formal authentication." 52 U.S.C. § 20508(b)(3). But "[f]ormal authentication" must be read in light of "notarization" and is best understood as a mechanism to verify the applicant's identity rather than substantiate his citizenship. DE64 at 21-22. Notarization, after all, is when a notary public "verif[ies] the identity of the signer[ ], [his or her] willingness to sign the documents, and [his or her] awareness of the contents of the document." Pat Kinsel, *What Is a Notary Public?, Notarize with Proof* (June 11, 2024), https://perma.cc/QDA4-5TSG. Moreover, authentication is not synonymous with proof. Authentication means "finding that" something "is what the proponent claims it is." Fed. R. Evid. 901(a). But whether something is authentic says nothing about whether it "has any tendency to make a fact more or less probable." Fed. R. Evid. 401(a). Here, the NVRA prohibits any formal requirement that the applicant demonstrate that something is genuine—like a genuine signature. But that does not prohibit the EAC from determining what level of proof is necessary to enable state election officials to assess an applicant's citizenship.

Plaintiffs next argue that requiring DPOC violates the NVRA's requirement that the federal form "may require only such . . . information, as is necessary to enable the appropriate State election official to assess the eligibility of the applicant," 52 U.S.C. § 20508(b)(1), because the applicant's sworn attestation is the form of proof Congress chose to assess citizenship, DE103 at 10. But that is wrong for at least two reasons. First, even if a state cannot impose a particular requirement for federal voter registration, it does not follow that the EAC is prohibited from imposing the same requirement on the separate federal form. Congress delegated authority to the

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 6

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

1   EAC—not to the states—to formulate the federal form, which includes determining what is

2   necessary to assess an individual's qualifications to register to vote. *League of Women Voters of*

3   *U.S. v. Newby*, 838 F.3d 1, 10 (D.C. Cir. 2016); *see ITCA*, 570 U.S. at 19; DE64 at 21-22. Second,

4   statutory text trumps contrary legislative history, *Stromberg Metal Works, Inc. v. Press Mech.,*

5   *Inc.*, 77 F.3d 928, 931 (7th Cir. 1996), and the Supreme Court has indicated that the EAC could

6   require DPOC on the federal form in certain circumstances, *ITCA*, 570 U.S. at 20.

7        Plaintiffs argue that *Mi Familia Vota v. Fontes*, 129 F.4th 691, 719 (9th Cir. 2025), holds

8   that "the text of the NVRA . . . unambiguous[ly]" forecloses the possibility that DPOC is necessary

9   for voter registration, DE103 at 10, as a matter of law. But *Mi Familia Vota* concerned whether

10   the NVRA permits states to require documentary proof of citizenship and evaluated the NVRA's

11   requirements through that lens. 129 F.4th at 720 ("We hold that the NVRA does not let states

12   require DPOC from applicants registering for only federal elections."); DE64 at 22. That

13   distinction is significant because the Supreme Court has held that while the NVRA "preclude[d]

14   [a state] from requiring a Federal Form applicant to submit information beyond that required by

15   the form itself," states could request "that the EAC include such a requirement among the Federal

16   Form's state-specific instructions." *ITCA*, 570 U.S. at 20. Yet Plaintiffs go on to argue that "to the

17   extent the Federal Form could ever include a DPOC requirement, there would have to be some

18   factual showing that DPOC is necessary" and fault Defendants for not making such a showing.

19   DE103 at 11. However, insofar as Plaintiffs indicate that more process is necessary for the EAC

20   to include a DPOC requirement on the federal form, they are correct. The EAC will have to make

21   a finding that such a requirement is necessary to include it on the form. 52 U.S.C. § 20508(a),

22   (b)(1). That the EAC has not yet completed its process to make that determination underscores

23   why Plaintiffs' claims are premature. *Supra* II.a.

24

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 7

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

**d.  Section 4(a) is not *ultra vires* and it does not violate the separation of powers.**

Plaintiffs claim that section 4(a) is *ultra vires* and violates the separation of powers because it "require[s] the EAC to withhold funding from States that accept the Federal Form when it is not accompanied by DPOC" and therefore withholds funds from states that "comply with federal law." DE103 at 13. Plaintiffs, again, misinterpret the EO. The statutes cited in section 4(a), which Congress enacted, provide the condition that 4(a) directs the EAC to apply. DE64 at 27-28. The laws named in 52 U.S.C. § 21145 include the NVRA, which requires that states use the federal form developed by the EAC. *Id*. § 20505(a)(1); *id*. § 20508(a)(1). Thus, to be eligible to receive HAVA requirements payments, states must use the EAC's federal form, even if that federal form is updated to require DPOC. Thus, Plaintiffs' complaint is not with section 4(a) but with 52 U.S.C. § 21145 and the NVRA itself.

### III.    The Court lacks jurisdiction over Plaintiffs' section 2(d) claims, and those claims fail substantively.

Plaintiffs lack Article III standing to challenge section 2(d) because it applies only to federal agencies, and plaintiffs here are two states. DE64 at 9-10. Plaintiffs additionally lack third-party standing to challenge section 2(d) on the basis that it violates the NVRA. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). The NVRA's directive to distribute the federal form to voters, 52 U.S.C. § 20506(a)(6), protects the rights of the voters, not the rights of the states.

Plaintiffs' challenge to section 2(d) also fails on the merits. Plaintiffs argue that section 2(d) is *ultra vires* and violates the separation of powers because the President "has no constitutional or statutory authority to direct the circumstances in which state agencies distribute voter registration applications." DE103 at 34. They also argue that it violates the NVRA by prohibiting distribution of voter registration forms as part of the relevant transaction described in 52 U.S.C. § 20506(a)(6). *Id*. But by its text, section 2(d) applies only to "Federal voter registration executive

1   department[s] or agenc[ies]" and therefore poses no constitutional or statutory problem because it

2   is well-established that the President may direct how Executive agencies carry out their statutory

3   mandates. *Supra* II.b.

4       Section 2(d) also does not violate the NVRA's command that each "voter registration

5   agency" that "is an office that provides service or assistance in addition to conducting voter

6   registration" "shall . . . distribute with each application for such service or assistance . . . the mail

7   voter registration application form," 52 U.S.C. § 20506(a)(6)(A)(i). Section 2(d) requires

8   Executive officials to "assess citizenship" prior to providing the federal form—it does not instruct

9   those officials to withhold the form following their assessment or any other circumstance. It simply

10  functions as a reminder to the person receiving the form of the requirement that he or she be a

11  United States citizen to complete the form. The EO's command to "implement[]" its provisions

12  "consistent with applicable law" further supports this understanding. EO § 11(b). Section 2(d) does

13  not violate the NVRA.

14  **IV.    The Court lacks jurisdiction over Plaintiffs' section 3(d) claims, and those claims
          fail substantively.**

15

16      Plaintiffs lack standing to challenge section 3(d) because it requires the Secretary of

17  Defense to take action to implement its directive and any injury flowing from it is speculative.

18  DE64 at 10. As to the merits, Plaintiffs argue that section 3(d) violates UOCAVA because (1)

19  Congress has already "defined the method for establishing citizenship on the" federal post-card

20  form ("FPCA") via the "standard oath"; (2) the FPCA is a "postcard," which makes it incompatible

21  with a requirement to attach DPOC; (3) a DPOC requirement is inconsistent with UOCAVA's

22  purpose; (4) section 3(d) violates the Elections Clause and is *ultra vires*; and (5) 3(d) violates the

23  right to vote and the Tenth Amendment.  DE103 at 32-33.

24

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 9

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

1    First, Congress has not foreclosed adding a DPOC requirement to the FPCA by directing

2 the Secretary of Defense to "prescribe a standard oath." 52 U.S.C. § 20301(b)(7). The standard

3 oath only requires those completing forms to "affirm[] that a material misstatement of fact in the

4 completion of [that] document may constitute grounds for a conviction for perjury." *Id*. It does not

5 dictate what proof the Secretary may require to determine whether applicants are qualified to vote.

6 Congress left the post card application's particulars to the Secretary's discretion. DE64 at 26-27.

7    Next, that the FPCA is called a "postcard" does not make it incompatible with any DPOC

8 requirement. For one, the Secretary has not yet updated the FPCA so we do not know at this

9 juncture whether the new FPCA will still be a "post card form." Second, a postcard is defined as

10 a "card designed to be carried by post without an envelope." Postcard, *Oxford English Dictionary*

11 (3d ed.). The current post-card form is not a traditional 4" x 6" card; rather, it is a two-page 8½" x

12 11" form that directs applicants to "[r]emove the adhesive liner from the top and sides" of the form

13 and "[f]old and seal tightly."[3] It may be possible to provide documentary proof of citizenship

14 within the confines of a form that "can be carried by post without an envelope." Third, "post card

15 form" may limit the design of the form itself, but it does not preclude the Secretary from requiring

16 the applicant to attach other documents to the form.

17    A DPOC requirement is not inconsistent with UOCAVA's purpose "to facilitate absentee

18 voting by United States citizens, both military and civilian, who are overseas." *Reeves v. Nago*,

19 535 F. Supp. 3d 943, 948 (D. Haw. 2021). The Secretary must carry out UOCAVA's purpose in

20 compliance with other requirements under the statute and federal law. One such requirement is

21 that UOCAVA voters must be citizens. 52 U.S.C. § 20310(1), (5); 18 U.S.C. §§ 1015(f), 611. The

22 Secretary has discretion when prescribing the FPCA to determine what proof is necessary to

23 

24 [3] FPCA, Voter Registration and Absentee Ballot Request, https://perma.cc/W6N3-VAUK.

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 10

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

1    ascertain whether that requirement has been met, 52 U.S.C. § 20301(b)(2), and he may not ignore

2    that requirement in carrying out UOCAVA's purpose.

3    Fourth, as previously explained, the President properly exercised his constitutional

4    authority to direct the Secretary of Defense to update the FPCA pursuant to section 3(d). DE64 at

5    26. And last, for the reasons explained in section IX, section 3(d) does not violate the right to vote

6    or the Tenth Amendment. *Infra* IX.

7    **V.    The Court lacks jurisdiction over Plaintiffs' section 4(b) claims, and those claims
         fail substantively.**

8
9    Section 4(b)(ii) requires the EAC "[w]ithin 180 days of" the EO to "take appropriate action

10   to review and, if appropriate, re-certify voting systems under the new standards established under

11   [§ 4(b)(i)], and to rescind all previous certifications of voting equipment based on prior standards."

12   Plaintiffs argue they have standing to challenge section 4(b)(ii) because "decertification is

13   mandatory and must occur by September 21, 2025, and the harms that follow are inevitable."

14   DE103 at 23. Not so. As a threshold matter, neither Washington nor Oregon law requires that the

15   EAC certify their voting systems. DE64 at 11 n.7. It is sufficient if the voting system is "examined

16   by a federally accredited voting systems testing laboratory (VSTL)," OAR 165-007-0350(1), or

17   tested and certified by an "independent testing authority" designated by the EAC, Wash. Rev.

18   Code §§ 29A.12.050, .080(5). Plaintiffs do not argue that their voting systems have not been

19   examined by a federally accredited VSTL or tested and certified by an EAC-designated

20   independent testing authority. Moreover, Plaintiffs' claims are not ripe because section 4(b)(ii)'s

21   directive has not been completed and will not be completed by September 21, 2025—section

22   4(b)(ii) does not require completion of its directive within 180 days but that "appropriate action"

23   be taken to carry it out.

24

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 11

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

Plaintiffs argue that one of the "most problematic practical aspects of section 4(b)" is that "there will be an indefinite period in which there are no federally certified voting systems." DE103 at 23. But the EO itself directs the EAC to first re-certify voting systems under the new standards and then to rescind all previous certifications—the order of these operations is purposeful. Nevertheless, as explained, neither Washington nor Oregon law require that voting systems in their state be EAC-certified anyway. DE64 at 11 n.7. Thus, it would not matter for any injury to them that there may not be any EAC-certified voting system for some time.

Plaintiffs argue section 4(b) is unlawful because the President has no authority to "establish voting system guidelines" or "dictate the contents of the VVSGs," and section 4(b)'s "directive to decertify voting systems en masse would violate the *Accardi* doctrine." DE103 at 27-28. For the reasons explained previously, the President has the authority to direct Executive agencies, such as the EAC, to take action in accordance with their statutory mandates, so long as those agencies comply with other legal requirements. DE64 at 28-30. Section 4(b), which directs the EAC to "initiate appropriate action to amend" the VVSG and "take appropriate action to review and . . . re-certify voting systems . . . and to rescind all previous certifications," requires the EAC to undergo its lawful processes to accomplish those tasks. That understanding is consistent with section 11(b), provides that the EO "shall be implemented consistent with applicable law." Moreover, the fact that section 4(b)(i) directs changes to the VVSG does not in any way violate the procedural requirements that the EAC must follow. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 685-86 (2020). Last, Plaintiffs' argument that section 4(b)(ii) violates *Accardi* fails because an argument based on *Accardi* must generally be brought in the context of an APA claim. *See Damus v. Nielsen*, 313 F. Supp. 3d 317, 335 (D.D.C. 2018); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 107 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002). Plaintiffs have not brought any APA claims. DE103 at 6 ("This is not an APA action.").

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 12

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

**VI.  The Court lacks jurisdiction over Plaintiffs' section 4(d) claims, and those claims fail substantively.**

Plaintiffs argue that they have standing to challenge section 4(d) because it is not contingent on future events. DE103 at 26. They refer to a FEMA document announcing Election Security as a priority for Homeland Security grants. *Id*. They do not allege, however, that they do not intend to comply with the VVSG 2.0, which is the current version (the amendment process directed by section 4(b) would result in the VVSG 2.1).[4]

Plaintiffs also argue that section 4(d) is *ultra vires* because "there is no lawful way in which the agency heads could consider Plaintiff States' compliance with [its] conditions that would be 'in accordance with applicable law.'" DE103 at 29. But that is plainly wrong. DHS is statutorily empowered to administer homeland security grant programs. 6 U.S.C. § 603. As part of that statutory authority, DHS has discretion to designate priorities when allocating grant funds. *Id.* § 608(a)(1)(K). It may exercise this discretion consistent with the President's priorities. Plaintiffs' objection is not to the EO but to the way FEMA, DHS's subagency, has implemented section 4(d). That objection is not properly before this Court—the only claims Plaintiffs bring challenging section 4(d) are an *ultra vires* claim, asserting that the President lacks the authority to issue section 4(d), and a separation-of-powers claim, arguing that section 4(d) violates various federal statutes. DE1 at 39-40.

---

[4] Plaintiffs stated in their partial-summary-judgment motion and in their Complaint that the EAC has not certified any voting systems under VVSG 2.0, DE1 ¶ 127; DE37 at 21, but that is wrong, *The EAC Announces First Certified Voting System to Voluntary Voting System Guidelines (VVSG) 2.0*, https://perma.cc/9BLB-FQ9D.

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 13

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

**VII.    The Court lacks jurisdiction to hear Plaintiffs' section 7(a) claims, and Plaintiffs' claims brought under section 7 fail substantively.**

There is no subject-matter jurisdiction over Plaintiffs' challenges to EO section 7(a). Section 7(a) interprets 2 U.S.C. § 7 and 3 U.S.C. § 1 to require a national ballot-receipt deadline and instructs the Attorney General to "take all necessary action to enforce [the statutes] against States that violate" them. Plaintiffs argue that section 7(a) "creates sovereign and financial harms" sufficient to confer standing. DE103 at 15. They are mistaken. Plaintiffs' stated sovereign harm is that section 7(a) "nullif[ies]" their ballot-receipt criteria, *id.*, but the EO does no such thing. It simply offers the President's interpretation of the Election Day statutes and directs the Attorney General to "take all necessary action to enforce [those statutes] against States that violate" them. EO § 7(a). Courts lack jurisdiction to review the Executive Branch's enforcement priorities. *United States v. Texas*, 599 U.S. 670, 679, 681 (2023). Next, Plaintiffs claim financial injuries "in complying with section 7(a)'s mandatory ballot-receipt deadline." DE103 at 15, 16. But, as the Attorney General has done nothing so far to enforce section 7(a), and what she may ultimately do is speculative at this point, Plaintiffs' injuries are self-inflicted and do not establish Article III standing. *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam); *WildEarth Guardians v. U.S. Forest Serv.*, 70 F.4th 1212, 1216 (9th Cir. 2023). Finally, the Attorney General can enforce the Election Day statutes "consistent with applicable law," as set forth in EO section 11(b); therefore, there is no risk of imminent harm. *See Trump v. New York*, 592 U.S. 125, 131 (2020); *LULAC v. EOP*, 780 F. Supp. 135, 213 (D.D.C. 2024); *AFGE*, 145 S. Ct. at 2635 (Sotomayor, J., concurring).

Plaintiffs' challenges to EO sections 7(a) and 7(b) also fail on the merits. *First*, this Court need not reach the issue of whether the Election Day statutes preempt state ballot-receipt deadlines (DE103 at 17) because the EO does not alter any federal statutes, it merely interprets them—which

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 14

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

1    is entirely proper. DE64 at 33-34. Plaintiffs do not acknowledge, let alone address, this threshold

2    defect.

3    *Second*, if the Court reaches the preemption question, which it need not do to grant

4    Defendants' Motion and deny Plaintiffs', Plaintiffs' claims still fail because (1) Congress

5    preempted state law when it enacted the Election Day statutes, U.S. Const. art. I, § 4, cl. 1; (2) the

6    Election Day statutes established a uniform, national Election Day for federal elections, 2 U.S.C.

7    § 7 & 3 U.S.C. § 1; and (3) the post-enactment development of absentee voting necessitates

8    interpretation of what constitutes a "day for the election," which EO section 7 provides. DE64 at

9    34-35. The only court of appeals to have directly considered this question has agreed with the

10   President's interpretation: finding that the Election Day statutes require ballots to "be both cast by

11   voters and received by state officials" on Election Day. *RNC v. Wetzel*, 120 F.4th 200, 204 (5th

12   Cir. 2024). Plaintiffs cast aspersions on this decision (DE103 at 17-19 & n.2), but Plaintiffs'

13   disagreement with the Fifth Circuit is not a basis to grant Plaintiffs' motion or to deny Defendants'.

14   Nor do Plaintiffs prevail by identifying purported inconsistencies between federal general elections

15   and federal primary or special elections—the Election Day statutes themselves only set a day for

16   federal general elections. DE103 at 20.

17   *Finally*, Plaintiffs challenge section 7(b) on the basis that it purportedly (i) "direct[s] the

18   actions of an independent, bipartisan agency" (the EAC); and (ii) improperly conditions EAC

19   funding on a ballot-receipt deadline. DE103 at 21-22. Section 7(b) provides that, "[c]onsistent with

20   52 U.S.C. 21001(b) and other applicable law," the EAC "shall condition any available funding"

21   on whether that state complies with 52 U.S.C. § 21081(a)(6)'s requirement that "each State adopt

22   uniform and nondiscriminatory standards within that State that define what constitutes a vote and

23   what will be counted as a vote," including that "there be a uniform and nondiscriminatory ballot

24   receipt deadline of Election Day for all methods of voting." Section 7(b) follows the statutes it

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 15

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

1   cites. *See* DE64 at 39. Plaintiffs may disparage Defendants' argument as "convoluted," but the

2   statutes speak for themselves.[5]

3   **VIII.  Plaintiffs agree that their claims challenging sections 2(b)(iii), 2(e)(ii), and 5(b) should be dismissed.**

4          Plaintiffs agree to dismissal of their claims challenging sections 2(b)(iii), 2(e)(ii), and

5   5(b). DE103 at 35-36. They offer no rebuttal to Defendants' arguments for why those claims

6   should be dismissed. *Id.* at 35. Defendants note, however, that they did not "concede that

7   section 2(e)(ii) does not authorize the Attorney General to access nonpublic state records." *Id.*

8   Defendants maintain that Plaintiffs have not stated a claim with respect to section 2(e)(ii), in

9   part because they have not alleged any way in which the section might authorize access to

10  records in a manner inconsistent with state law. Plaintiffs have still failed to do so. Thus, their

11  challenge to section 2(e)(ii) should be dismissed.

12         As for section 2(b)(iii), Defendants maintain that the EO permits only subpoenas

13  authorized by law. Because Plaintiffs challenge section 2(b)(iii) "to the extent" it allows for

14  "subpoenas not authorized by law"—and the section does not allow for such subpoenas—they

15  fail to state a claim.

16         Finally, concerning section 5(b), Defendants explained that section 5(b)(ii)'s direction

17  that the Attorney General "review" whether withholding funds from states—a matter

18  committed to her discretion—is appropriate under certain circumstances, consistent with law.

19

20

21  _____

    [5] Plaintiffs alternatively argue that "even if funding were conditioned on compliance with 52
22  U.S.C. § 21083, that would not permit withholding funding based on ballot-receipt deadlines,"
    because § 21083 is "inapplicable." DE103 at 21-22. To reach this conclusion, Plaintiffs read the
23  statutory text too narrowly and infer context that does not exist. Plaintiffs do not, and cannot,
    dispute that "voting system" means the "total combination" of equipment used "to define ballots."
24  52 U.S.C. § 21081(b)(1)(A).

1  The section does not itself require withholding of funds. On that understanding, Plaintiffs agree

2  to dismissal of their claim.

3  **IX.    Requiring documentary proof of citizenship and setting a uniform ballot-receipt deadline do not violate the right to vote, the Tenth Amendment, or the President's duty under the Take Care Clause.**

5  Plaintiffs argue that their partial summary judgment motion did not address their "Tenth

6  Amendment, constitutional right to vote, or Take Care Clause claims," and that those claims should

7  not be dismissed. DE103 at 29. But just because Plaintiffs did not move for summary judgment on

8  those claims does not mean that they state a claim. They do not and dismissal at this stage is

9  appropriate under Rule 12.

10  First, Plaintiffs argue that "section 2(a) [and 3(d)]'s DPOC requirements" and "section 7's

11  ballot-receipt deadline violate the Tenth Amendment." *Id* at 30, 33. But as explained, section 2(a)

12  does not violate the anti-commandeering doctrine. DE64 at 23. Congress has the authority to

13  preempt state regulations concerning the times, places, and manner of holding elections. U.S.

14  Const. art. I., § 4, cl. 1. It exercised that authority in requiring the states to use the federal form,

15  s*ee* 52 U.S.C. § 20508, and to develop the FPCA, *id*. § 20301(b)(2). And for the reasons explained

16  above, the President lawfully exercised his authority in directing the EAC and the Secretary of

17  Defense, an Executive agency and official subject to his supervisory authority, to "take appropriate

18  action to require" DPOC on the federal form. *Supra* II.a.-c., IV. Section 7(a)'s ballot-receipt

19  deadline similarly poses no Tenth Amendment problem. Congress exercised its Elections Clause

20  authority to preempt state law when it set a nationwide Election Day. 2 U.S.C. § 7; 3 U.S.C. § 1.

21  The President has lawfully exercised his authority to direct Executive officials to enforce

22  Congress's mandate. *Supra* VII.

23  Second, Plaintiffs argue that section 2(a) and 3(d)'s DPOC requirements, as well as 7(a)'s

24  ballot-receipt deadline, violate the constitutional right to vote. DE103 at 30, 33. Plaintiffs lack

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 17

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

1    third-party standing to assert individuals' "constitutional right to vote." *See Kowalski*, 543 U.S. at

2    130; *see also Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923). This Court should dismiss

3    Plaintiffs' claim 3 on that basis alone. DE1 at 37-38.

4         But in the event this Court proceeds to the merits of this claim, sections 2(a), 3(d), and 7(a)

5    do not excessively burden the constitutional right to vote.[6] "Election laws will invariably impose

6    some burden upon individual voters," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992), and affect

7    "the individual's right to vote and his right to associate with others for political ends," *Anderson*

8    *v. Celebrezze*, 460 U.S. 780, 788 (1983). "A court considering a challenge to a [government]

9    election law must weigh 'the character and magnitude of the asserted injury to the rights protected

10   by the First and [Fifth] Amendments that the plaintiff seeks to vindicate' against 'the precise

11   interests put forward by the State as justifications for the burden imposed by its rule,' considering

12   'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*,

13   504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). When an individual's First and Fifth

14   Amendment rights are severely burdened, the law must be "narrowly drawn to advance a state

15   interest of compelling importance." *Id*. (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). But

16   when an election law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First

17   and [Fifth] Amendment rights of voters," the government's "important regulatory interests are

18   generally sufficient to justify the restrictions." *Id*. (quoting *Anderson*, 460 U.S. at 788).

19        Neither a DPOC a requirement nor a nationwide ballot-receipt deadline would severely

20   burden individual voters' First and Fifth Amendment rights because they are "generally applicable,

21   even-handed, politically neutral, and . . . protect the reliability and integrity of the election

22

23   ───────────────

24   [6] Plaintiffs' complaint includes section 4(a) in their claim 3. DE1 ¶ 223. But section 4(a) does not
     impose any DPOC requirement of its own and refers to section 2(a)'s requirement. *Supra* II.a, d.

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 18

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 353-8679

1    process." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002). Because sections

2    2(a), 3(d), and 7(a) do not severely burden voters' First and Fifth Amendment rights—rights

3    Plaintiffs cannot assert—Defendants' "important regulatory interests" sufficiently justify any

4    minimal burden. *Libertarian Party v. D.C. Bd. of Elections & Ethics*, 682 F.3d 72, 76 (D.C. Cir.

5    2012) (quoting *Burdick*, 504 U.S. at 434).

6        The EO identifies several important interests that it furthers, including ensuring that

7    American elections comply with federal laws that protect Americans' voting rights, guarding

8    against dilution by illegal voting, and promoting public trust in federal elections. EO § 1. "There

9    is no question about the legitimacy or importance of the [Government's] interest in counting only

10   the votes of eligible voters." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008).

11   And Defendants have an important interest in "safeguarding public confidence by eliminating

12   [fraud and] even appearances of fraud." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 633 (6th

13   Cir. 2016). "[T]he [Government] is entitled to enact prophylactic legislation to prevent the

14   occurrence of non-citizen voting." *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 1010 (D. Ariz.

15   2024). Defendants' important interests sufficiently justify any minimal restriction on Plaintiffs'

16   First and Fifth Amendment rights, and Plaintiffs' claim fails for that reason as well.

17       Third, Plaintiffs claim that section 2(a) violates the President's duty under the Take Care

18   clause. DE103 at 30; DE1 at 41. But as explained previously, whether the President appropriately

19   exercised his take-care authority is a non-justiciable political question. *See* DE64 at 14. Plaintiffs

20   assert no independent basis for this claim other than their separate allegations that the EO violates

21   federal statutes. DE1 ¶¶ 246-47. Additionally, this Court lacks jurisdiction to consider Claim 6

22   because it is a "generalized grievance[] about the conduct of [the] government." *Flast v. Cohen*,

23   392 U.S. 83, 106 (1968), and that is insufficient to confer standing, DE64 at 14-15. Nevertheless,

24   section 2(a) violates no constitutional or statutory provision. *Supra* II.a.-c.; DE64 at 18-23.

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 19

U.S. Department of Justice
950 PENNSYLVANIA AVE., NW
WASHINGTON, D.C. 20530
(202) 353-8679

1    **X.      Plaintiffs are not entitled to the relief they seek.**

2          Plaintiffs are not entitled to summary judgment on their claims challenging sections 2(a),

3    4(a), 4(b), 7(a), or 7(b), because this Court lacks jurisdiction to adjudicate them and because they

4    fail substantively. Because Plaintiffs are unlikely to succeed on the merits, they are not entitled to

5    a permanent injunction on any claim. In no event are Plaintiffs entitled to nationwide injunctive

6    relief. Plaintiffs claim that they are entitled to a nationwide injunction on sections 2(a) and 4(b)

7    because "[t]here is only one Federal Form," and "one set of VVSGs." DE103 at 36. But a federal

8    court's power is limited to "administer[ing] complete relief between the parties." *Trump v. CASA,*

9    *Inc.*, 145 S. Ct. 2540, 2557 (2025). Even if this Court decides that an injunction is appropriate with

10   respect to 2(a) and 4(b), it could be limited to the Plaintiffs in this case. The federal form includes

11   instructions for each of the 50 states, and the EAC could require DPOC in the state-specific

12   instructions for the non-plaintiff states, if it decides to require DPOC at the end of its process.[7] The

13   EAC could similarly amend the VVSG to have specific instructions for particular states or have

14   state-specific voting system certifications.

15                                    **CONCLUSION**

16         For these reasons, the Court should deny Plaintiffs' motion for partial summary judgment

17   and grant Defendants' motion to dismiss Plaintiffs' Complaint.

18

19

20

21

22

23   _____

24   [7] *See* USEAC, *Register to Vote In Your State By Using This Postcard Form and Guide*, OMB
     Control No. 3265-0015, https://perma.cc/KV6S-WCVY.

Dated: August 29, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH E. BORSON
Assistant Director
Civil Division, Federal Programs Branch

*/s/ Bridget K. O'Hickey*
BRIDGET K. O'HICKEY
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue,
NW Washington, DC 20530
(202) 353-8679
Bridget.K.O'Hickey@usdoj.gov

MARIANNE F. KIES
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov

*Attorney for Defendants*

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 21

U.S. Department of Justice
950 PENNSYLVANIA AVE., NW
WASHINGTON, D.C. 20530
(202) 353-8679

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

<u>CERTIFICATE OF SERVICE</u>

I, Bridget O'Hickey, hereby certify that I served a true copy of the above document upon all counsel of record via this court's electronic filing system and upon any non-registered participants via first class mail. I further certify that this memorandum contains 6,295 words, in compliance with the Local Civil Rules.


Dated: August 29, 2025

/s/ *Bridget K. O'Hickey*
BRIDGET K. O'HICKEY
Counsel to the Assistant Attorney General

DEFENDANTS' REPLY IN SUPORT OF
DEFENDANTS' MOTION TO DISMISS
No. 2:25-cv-602-JHC - 22

U.S. Department of Justice
950 PENNSYLVANIA AVE., NW
WASHINGTON, D.C. 20530
(202) 353-8679