The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON; and
STATE OF OREGON,

          Plaintiffs,

   v.

DONALD TRUMP, in his official capacity as President of the United States of America, et al.,

          Defendants.

NO. 2:25-cv-00602-JHC

PLAINTIFFS' SUPPLEMENTAL BRIEF

### 1. Plaintiff States Rely on an Equitable Cause of Action

For each of their claims, Plaintiff States rely on an equitable cause of action under which courts may enjoin governmental conduct that is *ultra vires* or violates the Constitution. Federal courts have repeatedly recognized such a cause of action. *E.g.*, *Sierra Club v. Trump*, 929 F.3d 670, 694-98 (9th Cir. 2019) ("Plaintiffs may bring their challenge through an equitable action to enjoin unconstitutional official conduct . . . ."); *see also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952); *Murphy Co. v. Biden*, 65 F.4th 1122, 1128-31 (9th Cir. 2023); *Washington v. Trump*, 765 F. Supp. 3d 1142, 1148-49 (W.D. Wash. 2025), *aff'd on other grounds*, 145 F.4th 1013 (9th Cir. 2025); Lisa Manheim & Kathryn Watts, *Reviewing Presidential Orders*, 86 U. Chi. L. Rev. 1743, 1805-11 (2019) (discussing causes of action for challenging presidential orders). Here, Plaintiff States' claims are based on the President's

PLAINTIFFS' SUPPLEMENTAL BRIEF
No. 2:25-cv-00602-JHC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-774

violations of the Constitution. Specifically, the challenged provisions violate the constitutional separation-of-powers doctrine by infringing on the Constitution's allocation of authority over elections to the States and Congress. U.S. Const. art. I, § 4, cl. 1; U.S. Const. art. II, § 1, cl. 2. The President's *ultra vires* acts violate the Constitution, and the States may appropriately rely on the long-recognized equitable cause of action.

District courts in other cases challenging this Executive Order have recognized the availability of this equitable cause of action. *California v. Trump*, __ F. Supp. 3d. __, No. 25-cv-10810-DJC, 2025 WL 2663106, at *7-8 (D. Mass. Sept. 17, 2025) (denying motion to dismiss and rejecting argument that plaintiff states could not rely on nonstatutory cause of action); *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 171-73 (D.D.C. 2025) (recognizing *ultra vires* cause of action and granting preliminary injunction); *see also League of United Latin American Citizens v. Exec. Off. of the President*, __ F. Supp. 3d __, No. 25-0946 (CKK), 2025 WL 3042704, at *23-25 (D.D.C. Oct. 31, 2025) (granting summary judgment on section 2(a) of the Executive Order and relying on equitable constitutional cause of action).

Plaintiff States do not rely on any other cause of action at this time.

### 2. Standing to Challenge Section 2(d)

If EO section 2(d) applies only to agencies of the federal government, Plaintiff States do *not* assert that they have standing to challenge it based on the allegations in the current complaint. If this Court agrees with Defendants' interpretation of EO section 2(d), this Court should dismiss Plaintiffs' challenge to section 2(d) on that basis.

### 3. Scope of the Challenge to Section 3(d)

Plaintiff States challenge EO section 3(d) in its entirety. Section 3(d)(ii) is justiciable for essentially the same reasons that section 3(d)(i) is justiciable. Section 3(d)(ii) requires that the Secretary of Defense "update" the Federal Post Card Application (FPCA) "to require . . . proof of eligibility to vote in elections in the State in which the voter is attempting to vote."

PLAINTIFFS' SUPPLEMENTAL BRIEF
No. 2:25-cv-00602-JHC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-774

Dkt. 1-1 at 4. The FPCA already requires all the proof necessary for election officials in Plaintiff States to determine a person's eligibility to register to vote. *See* Dkt. 1-5 at 1. By its terms, section 3(d)(ii) purports to require more, and processing that something more necessarily creates additional burdens on Plaintiff States. Defendants do not dispute that Plaintiff States are injured by increased burdens on state and local officials, including "significant monetary costs." Dkt. 1, ¶¶ 191-93. Thus, Plaintiff States have sufficiently alleged Article III standing.

The challenge to section 3(d)(ii) is ripe. Section 3(d)(ii) commands that the Secretary "shall update" the FPCA "to require" "proof of eligibility to vote in elections in the State in which the voter is attempting to vote." Dkt. 1-1, § 3(d)(ii). There is no delay to the effective date of section 3(d)(ii). Even if the precise contours of what constitutes additional "proof of eligibility" to vote in a specific state are uncertain right now, the Executive Order dictates a particular outcome: the FPCA must require *additional* proof of eligibility to vote. The legality of that mandate is a purely legal question that does not depend on what constitutes additional "proof of eligibility," and thus it is fit for review. *See Thomas v. County of Humboldt*, 124 F.4th 1179, 1190 (9th Cir. 2024) (stating that purely legal questions are fit for review).

Plaintiff States have alleged that, absent this Court's review, they will suffer unnecessary hardship by having to spend resources to adjust their processing to meet the new FCPA requirements. Dkt. 1, ¶¶ 192-93, 222. Because implementing section 3(d) in its entirety "would force a diversion of state resources and could cast uncertainty upon the 'massive coordinated effort' necessary to run state elections," the hardship prong is satisfied. *California v. Trump*, 786 F. Supp. 3d 359, 382 (D. Mass. 2025) (citing *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring)) (order on preliminary injunction), *appeal docketed*, No. 25-1726 (1st Cir. Aug. 1, 2025); *accord California v. Trump*, 2025 WL 2663106, at *4 (order on motion to dismiss). Thus, the challenge to section 3(d)(ii) is justiciable, and this Court should deny Defendants' motion to dismiss Plaintiff States' challenges to section 3(d)(i) and 3(d)(ii).

### 4. Challenges to EO Section 4

A favorable ruling on Plaintiff States' challenge to EO section 4(b) would *not* moot Plaintiff States' section 4(d) claim.

There have been three versions of the Voluntary Voting System Guidelines (VVSG), and the Election Assistance Commission (EAC) is exploring a fourth version. The existing versions are VVSG 1.0 (adopted in 2005), VVSG 1.1 (adopted in 2015), and VVSG 2.0 (adopted in 2021). The EAC is internally reviewing a new version, referred to as VVSG 2.1. *See* EAC, *EAC Technical Guidelines Development Committee Virtual Meeting*, https://www.eac.gov/events/2025/07/02/eac-technical-guidelines-development-committee-virtual-meeting (last visited Nov. 21, 2025).

Section 4(b)(i) of the Executive Order directs the EAC to make changes to VVSG 2.0. Those changes could be implemented in VVSG 2.1 (and, in fact, are included in the most recent draft). Election Assistance Commission, *Voluntary Voting System Guidelines VVSG 2.1* p. 9, https://www.eac.gov/sites/default/files/2025-06/DRAFT_Voluntary_Voting_System%20Guidelines_Version_2.1_TGDC_Member_Review.pdf (last visited Nov. 21, 2025) (identifying proposed changes "based on the EO"). Section 4(b)(ii) directs the EAC to "rescind" all certifications that were based on VVSG 1.0, 1.1, and 2.0 (i.e., all standards prior to the changes ordered by section 4(b)(i) of the Executive Order).

A favorable ruling on Plaintiff States' challenge to section 4(b) would not moot Plaintiff States' section 4(d) challenge. Section 4(d) is unrelated to VVSG 2.1 or decertification of voting systems. Section 4(d) requires that certain federal agencies "heavily prioritize compliance with" VVSG 2.0 when considering funding. Dkt. 1-1 at 5. The voting systems in Plaintiff States have not been certified to the VVSG 2.0 standard. Dkt. 39, ¶ 69; Dkt. 40, ¶ 19. Prioritizing compliance with VVSG 2.0 therefore harms Plaintiff States, and that is true even if this Court enjoins the Executive Order's mandate to adopt VVSG 2.1 and prohibits decertification of systems certified to VVSG 1.0, 1.1, and 2.0.

PLAINTIFFS' SUPPLEMENTAL BRIEF  
No. 2:25-cv-00602-JHC

4

ATTORNEY GENERAL OF WASHINGTON  
Complex Litigation Division  
800 Fifth Avenue, Suite 2000  
Seattle, WA 98104-3188  
(206) 464-774

Plaintiff States' challenge to EO section 4(d) survives Defendants' motion to dismiss because section 4(d) harms Plaintiff States (as described above) and because section 4(d) is *ultra vires*. It attempts to add a funding condition that does not exist in statute. *See* 6 U.S.C. §§ 603-609a. The President has no authority to unilaterally add a funding condition when Congress has defined eligibility criteria. *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1233-35 (9th Cir. 2018). Defendants do not identify any relevant funding conditions that expressly tie funding to the VVSG. Defendants instead point to a statute that creates a list of ten considerations that the FEMA Administrator may use in assessing the "relative threat, vulnerability, and consequences from acts of terrorism" that States face. 6 U.S.C. § 608(a)(1) (cited in Dkt. 113 at 13). That statute then adds as a consideration, "such other factors as are specified in writing by the Administrator[.]" 6 U.S.C. § 608(a)(1)(K).

Defendants appear to take the view that this clause allows the Administrator unlimited "discretion to designate priorities when allocating grant funds." Dkt. 113 at 13. But federal courts acknowledge "the importance of *context* when a court interprets a delegation to an administrative agency." *Biden v. Nebraska*, 600 U.S. 477, 508 (2023) (Barrett, J., concurring). Under the canon of *ejusdem generis*, "'a "general or collective term" at the end of a list of specific items' is typically 'controlled and defined by reference to' the specific classes . . . that precede it." *Fischer v. United States*, 603 U.S. 480, 487 (2024) (alteration in original) (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022)). Nothing in the ten enumerated items in 6 U.S.C. § 608(a)(1)— or anywhere else in the statutory context—suggests that the "other factors" addressed in section 608(a)(1)(K) include noncompliance with voting system guidelines.

Indeed, it would violate the Elections Clause to read the catchall language in section 608(a)(1)(K) as allowing the Administration to condition grant funding on state election rules, like which voting systems to use. Under the Constitution, States have power to set the time, place, and manner of federal elections, subject to alteration only by Congress. Congress nowhere granted the Executive authority to dictate state election rules through funding

PLAINTIFFS' SUPPLEMENTAL BRIEF
No. 2:25-cv-00602-JHC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-774

conditions. Just as the FEMA Administrator could not condition DHS grant funding on States banning absentee voting, so too he cannot condition grant funding on use of any particular voting system. Section 4(d) of the EO is *ultra vires*.

### 5. Scope of Remedy With Respect to EO Section 7(a)

With respect to section 7(a), Plaintiff States do *not* request a universal injunction. The requested injunction is limited to Washington and Oregon.

Plaintiff States *do*, however, seek an injunction against section 7(a) in its entirety as to Plaintiff States. The injunction should prevent the Attorney General from taking action "to enforce 2 U.S.C. 7 and 3 U.S.C. 1" against Plaintiff States for "violat[ing] these provisions by including absentee or mail-in ballots received after Election Day in the final tabulation of votes" for federal offices. Dkt 1-1 at 6.

One important clarification is in order. The injunction would prohibit only actions "to enforce" those statutes. The word "enforce" involves an element of compulsion. *E.g.*, *Enforce*, Black's Law Dictionary (12th ed. 2024) ("1. To give force or effect to (a law, etc.); to compel obedience to. 2. Loosely, to compel a person to pay damages for not complying with (a contract)."); *Enforce*, Dictionary.com, https://www.dictionary.com/browse/enforce (last visited Nov. 24, 2025) ("1. to put or keep in force; compel obedience to. . . ."). Accordingly, the injunction would prohibit only actions that seek to *compel* Plaintiff States to no longer count timely-cast ballots received after Election Day. A letter or other statement merely setting out the Attorney General's interpretation of federal law without any type of compulsion would not violate the injunction because a letter or statement does not "enforce" an erroneous interpretation of federal law. As a result, this injunction would be largely consistent with the preliminary injunction issued in *California v. Trump*, which "enjoin[ed] the Attorney General from taking civil or criminal enforcement actions to enforce § 7(a)[.]" *California v. Trump*, 786 F. Supp. 3d at 388. An additional action that could violate a total injunction is the withholding of federal funds based on Plaintiff States counting timely-cast ballots received after Election Day.

PLAINTIFFS' SUPPLEMENTAL BRIEF
No. 2:25-cv-00602-JHC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-774

The declaratory judgment that Plaintiff States seek is relevant in two ways. First, it will effectively resolve this dispute. If this Court issues a declaratory judgment that Plaintiff States' state-law ballot-receipt deadlines are not preempted by the federal election day statutes, that resolves the dispute over the President's erroneous interpretation of the federal election day statutes. The Attorney General would then have no basis on which to take "action to enforce" those statutes against Plaintiff States. Second, the scope of the injunctive relief should match the scope of the declaratory judgment. A declaratory judgment "has 'the force and effect of a final judgment,'" but "it is a much milder form of relief than an injunction." *Steffel v. Thompson*, 415 U.S. 452, 471 (1974) (quoting 28 U.S.C. § 2201). An injunction, by contrast, is "backed by the power of contempt." *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023). This Court should issue an injunction that allows it to enforce the full scope of the accompanying declaratory judgment.

In sum, this Court should issue a declaratory judgment that Plaintiff States' ballot-receipt deadline statutes are not preempted by the federal election day statutes. This Court's injunction should match the scope of the declaratory judgment by enjoining any action "to enforce" an erroneous interpretation of federal election day statutes.

### 6.    Sections 2(b)(iii), 2(e)(ii), and 5(b)

Plaintiff States still agree to dismissal of their challenges to EO sections 2(b)(iii), 2(e)(ii), and 5(b). Defendants' reply brief confirms that Defendants agree that EO sections 2(b)(iii) and 5(b) are not independent sources of authority. Dkt. 113 at 16-17. The subpoenas authorized by section 2(b)(iii) must be "authorized by law" (i.e., some source independent of the Executive Order), and section 5(b) only directs the Attorney General to "review" withholding funds (i.e., it is not an authority for the Attorney General to withhold funds).

In their reply brief, Defendants appear to attempt to walk back their earlier understanding of section 2(e)(ii). Dkt. 113 at 16. Previously, Defendants emphasized that section 2(e)(ii) merely directs the Attorney General to "prioritize enforcement" of certain laws and that enforcement

PLAINTIFFS' SUPPLEMENTAL BRIEF
No. 2:25-cv-00602-JHC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-774

must still be consistent with applicable law. Dkt. 64 at 9, 24. Defendants do not disclaim that understanding in their reply brief; they simply disagree with Plaintiff States' articulation of their concession. Dkt. 113 at 16 ("Defendants note, however, that they did not 'concede that section 2(e)(ii) does not authorize the Attorney General to access nonpublic state records.'" (Quoting Dkt. 103 at 35)). Additionally, in Defendants' recent requests for access to confidential state voter information, Defendants have not relied on section 2(e)(ii) as an independent source of authority, instead relying on their interpretations of particular statutes. Accordingly, notwithstanding Defendants' posturing in their reply brief, Plaintiff States still agree to dismissal of their challenge to EO section 2(e)(ii). Plaintiff States do so without prejudice to their ability to oppose any future requests for confidential information, including any request which cites section 2(e)(ii) as an independent source of authority to access otherwise nonpublic state records.

### 7. This Court Can Issue Plaintiffs' Requested Relief Consistent With *CASA*

The relief requested by Plaintiff States on their challenges to sections 2(a) and (4)(b) is available and consistent with *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). The relief requested by Plaintiff States is available because it is necessary to provide complete relief to Plaintiff States. "The equitable tradition has long embraced the rule that courts generally 'may administer complete relief between the parties.'" *CASA*, 606 U.S. at 851 (emphasis omitted) (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)).

With respect to EO section 2(a), Defendants do not dispute that there is only a single Federal Form, Dkt. 113 at 20, nor could they, 52 U.S.C. §§ 20505(a), 20508(a)(2) (referring to "*a* mail voter registration form" and "*the* mail voter registration application form" (emphasis added)). Instead, Defendants suggest that Plaintiff States could receive complete relief if this Court ordered the EAC to implement the Executive Order by inserting the DPOC requirement in the state-specific instructions for the 48 other states. Dkt. 113 at 20. But the practical effect of such relief would be to create multiple state-specific forms in violation of the statutory scheme. And that would undermine the uniformity that Congress sought to achieve through the National

PLAINTIFFS' SUPPLEMENTAL BRIEF
No. 2:25-cv-00602-JHC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-774

Voter Registration Act (NVRA). *See* S. Rep. No. 103-6, at 3 (1993) ("This legislation will provide uniform national voter registration procedures for Federal elections[.]"); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 13 (2013) ("[T]he Federal Form provides a backstop: No matter what procedural hurdles a State's own form imposes, the Federal Form guarantees that a simple means of registering to vote in federal elections will be available."). Defendants' proposal is different in kind from providing state-specific instructions based on differing *state* law requirements; it would impose new federal requirements on some—but not all—states. That's not the purpose of the state-specific instructions. *See* 11 C.F.R. § 9428.3(b) (defining contents of state-specific instructions). Defendants' proposal would also still create voter confusion in Plaintiff States.[1] This would still require voter education and outreach by Plaintiff States. *See* Dkt. 42, ¶ 23; Dkt. 48, ¶ 24; Dkt. 43, ¶¶ 22, 25. A prohibition on adding an EO-mandated DPOC requirement to the Federal Form is necessary to provide complete relief to Plaintiff States and is therefore permissible under *CASA*. 606 U.S. at 851.

With respect to EO section 4(b), the relief Plaintiff States seek is an injunction prohibiting the EAC from "taking any steps to decertify voting systems in the manner required by section 4(b) or to revise the [VVSG] in the manner required by section 4(b)." Dkt. 37-1. Defendants offer an underdeveloped one-sentence proposal that this Court could instead direct the EAC to "amend the VVSG to have specific instructions for particular states or have state-specific voting system certifications." Dkt. 113 at 20. That does not provide relief to Plaintiff States. In that scenario, Plaintiff States face essentially the same dilemma. Plaintiff States must either use voting systems that are de-certified in 48 other states—undermining public confidence in their elections and requiring staff time and money to explain to voters that their voting systems are reliable and secure, Dkt. 39, ¶ 73; Dkt. 43, ¶ 46—or incur the prohibitive costs necessary to hand-count ballots, Dkt. 37 at 31. Providing complete relief to Plaintiff States requires enjoining

---

[1] While not relevant to whether the proposal provides complete relief to Plaintiff States it bears noting that the proposal would be disastrous to other states. Many applicants will, predictably, not carefully review the state-specific instructions, resulting in many rejected Federal Forms in other states.

PLAINTIFFS' SUPPLEMENTAL BRIEF
No. 2:25-cv-00602-JHC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-774

the President's *ultra vires* directive that the EAC amend its VVSG and de-certify its voting systems.

### 8. Take Care Clause Claim

Plaintiff States do not oppose dismissal of Claim 6, which asserts violations of the Take Care Clause. This does not affect which provisions of the Executive Order Plaintiff States are challenging, only the bases for the challenge. In agreeing to voluntarily dismiss this claim, Plaintiff States do not concede that the claim lacks merit or that they lack standing to bring the claim. Plaintiff States simply elect to rest on their other arguments.

### 9. Constitutional Right to Vote Claim

Plaintiff States do not oppose dismissal of Claim 3, which asserts violations of the constitutional right to vote. This does not affect which provisions of the Executive Order Plaintiff States are challenging, only the bases for the challenge. In agreeing to voluntarily dismiss this claim, Plaintiff States do not concede that the claim lacks merit or that they lack standing to bring the claim. Plaintiff States simply elect to rest on their other arguments.

DATED this 25th day of November, 2025.

I certify that this memorandum contains 3.187 words, in compliance with this Court's September 19, 2025 order.

NICHOLAS W. BROWN
  *Attorney General*
  *State of Washington*

NOAH G. PURCELL, WSBA 43492
  *Solicitor General*

*s/ Karl D. Smith*
KARL D. SMITH, WSBA 41988
  *Deputy Solicitor General*
WILLIAM MCGINTY, WSBA 41868
KELLY A. PARADIS, WSBA 47175
ALICIA O. YOUNG, WSBA 35553
  *Deputy Solicitors General*
FREEMAN E. HALLE, WSBA 61498
MICHELLE M. SAPERSTEIN, WSBA 55539
ZANE MULLER, WSBA 63777

PLAINTIFFS' SUPPLEMENTAL BRIEF
No. 2:25-cv-00602-JHC

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-774

*Assistant Attorneys General*
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
karl.smith@atg.wa.gov
noah.purcell@atg.wa.gov
william.mcginty@atg.wa.gov
kelly.paradis@atg.wa.gov
alicia.young@atg.wa.gov
freeman.halle@atg.wa.gov
michelle.saperstein@atg.wa.gov
zane.muller@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

DAN RAYFIELD
Attorney General
State of Oregon

*s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL*
CARLA A. SCOTT, WSBA #39947
*Senior Assistant Attorneys General*
KATE E. MORROW*
*Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
brian.s.marshall@doj.oregon.gov
carla.a.scott@doj.oregon.gov
kate.e.morrow@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*
*Admitted Pro hac vice

PLAINTIFFS' SUPPLEMENTAL BRIEF
No. 2:25-cv-00602-JHC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-774