The Honorable John H. Chun

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

STATE OF WASHINGTON; and
STATE OF OREGON,

                        Plaintiffs,

    v.

DONALD TRUMP, in his official
capacity as President of the United States
of America, et al.,

                        Defendants.

NO.  2:25-CV-00602-JHC

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
MAY 15, 2026

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS ..................................................................................... 1

        A.   Background on the Federal Post Card Application ................................... 1

        B.   The Executive Order Purports to Impose Significant Restrictions
             on Voter Registration by Military Servicemembers and U.S. Citizens
             Residing Overseas ................................................................................... 2

        C.   The Executive Order's Federal Post Card Application Requirements
             Will Impose Costs on Plaintiff States ...................................................... 4

III.    ARGUMENT ......................................................................................................... 4

        A.   Plaintiff States May Challenge the President's Constitutional
             Violations Through an Equitable Cause of Action .................................... 4

        B.   This Court Has Jurisdiction to Adjudicate Plaintiff States'
             Challenge to Section 3(d) ........................................................................ 6

             1.   Plaintiff States have standing to challenge section 3(d) ................... 6

             2.   Plaintiff States' claim is ripe ............................................................ 7

        C.   The President Lacks Authority to Dictate Requirements to Register to Vote .......... 8

        D.   This Court Should Permanently Enjoin Enforcement of Section 3(d) ................... 12

IV.     CONCLUSION .................................................................................................... 14

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*Advocate Health Care Network v. Stapleton*,
581 U.S. 468 (2017)............................................................................................ 10

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez* (*Snapp*),
458 U.S. 592 (1982)............................................................................................. 7

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)............................................................................................ 12

*Galvez v. Jaddou*,
52 F.4th 821 (9th Cir. 2022) .......................................................................... 12, 13

*League of United Latin Am. Citizens* (*LULAC*),
Civil Action No. 25-0946 (CK),
2026 WL 252420 (D.D.C. Jan. 30, 2026),
*appeal docketed*, No. 26-5102 (D.C. Cir. Apr. 2, 2026) .................................. 10, 11, 12, 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................................. 7

*Massachusetts v. EPA*,
549 U.S. 497 (2007)............................................................................................. 7

*Nken v. Holder*,
556 U.S. 418 (2009)............................................................................................ 13

*Nuclear Regul. Comm'n v. Texas (NRC)*,
605 U.S. 665 (2025)............................................................................................. 5

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024) ............................................................................ 8

*Thomas v. County of Humboldt*,
124 F.4th 1179 (9th Cir. 2024) ............................................................................ 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)............................................................................................. 6

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)....................................................................................... 12, 13

*Washington v. FDA*,
108 F.4th 1163 (9th Cir. 2024) ........................................................................ 6, 7

*Washington v. Trump*,
145 F.4th 1013 (9th Cir. 2025) ...................................................................... 12, 13

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## Constitutional Provisions

U.S. Const. art. I, § 4 .................................................................................................... 6

U.S. Const. art. I, § 4, cl. 1......................................................................................... 1, 8, 11

U.S. Const. art. II, § 1 .................................................................................................. 6

U.S. Const. art. II, § 1, cl. 2 ........................................................................................ 8

Or. Const. art. II, § 2 ................................................................................................... 3

## Statutes

Uniformed and Overseas Citizens Absentee Voting Act,
  Pub. L. No. 99-410, 100 Stat. 924 (Aug. 28, 1986), *codified as*
  52 U.S.C. § 20301 *et seq* ...................................................................................... passim
    §§ 20301-10............................................................................................................ 1
    § 20301 .................................................................................................................. 9
    § 20301(b) .......................................................................................................... 9, 10
    § 20301(b)(1)......................................................................................................... 2
    § 20301(b)(2)..................................................................................................... 1, 2, 13
    § 20301(b)(7)......................................................................................................... 9
    § 20302(a)(4) ...................................................................................................... 1, 2
    § 20302(a)(5) ...................................................................................................... 2, 9
    § 20302(i) ........................................................................................................... 2, 9

Federal Voting Assistance Act of 1955,
  Pub. L. No. 84-296, 69 Stat. 584 ..................................................................... 2, 10, 11

Soldiers Voting Act of 1942,
  Pub. L. No. 77-712, 56 Stat. 753 ......................................................................... 2, 10

Or. Rev. Stat. § 247.171(3)(e) ..................................................................................... 6

Or. Rev. Stat. § 247.171(3)(f)...................................................................................... 6

Or. Rev. Stat. § 253.540(2)(b) ..................................................................................... 6

Wash. Rev. Code § 29A.08.010(1)............................................................................... 3

Wash. Rev. Code § 29A.08.010(1)(d) .......................................................................... 6

Wash. Rev. Code § 29A.08.010(1)(f)........................................................................... 6

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## Other Authorities

Executive Order 12,642,
  53 Fed. Reg. 21975 (June 8, 1988)...................................................................................... 2

H.R. Rep. No. 99-765 (1986)................................................................................... 2, 10, 11

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## I.    INTRODUCTION

The United States Constitution assigns the power to regulate federal elections to the States and to Congress. U.S. Const. art. I, § 4, cl. 1. As relevant to this motion, Congress has exercised its authority to simplify the voter registration process for members of the military, their families, and citizens living outside the United States to register to vote and request an absentee ballot. Specifically, Congress provided for the creation of "an official post card form" that States must accept and use for registering military and overseas voters and providing an absentee ballot. 52 U.S.C. § 20301(b)(2).

The President, evidently disagreeing with Congress's policy choice to provide voters with a simple and straightforward process for registering to vote, directed the Secretary of Defense to impose more burdensome requirements on U.S. citizens in the military and residing outside the United States. But the President has no authority to do so. The President has no constitutional authority to regulate elections, and his directives here are contrary to laws adopted by Congress. This Court should enter summary judgment in favor of Plaintiff States holding that section 3(d) of Executive Order 14,248 is unlawful and enter a permanent injunction preventing its enforcement.

## II.    STATEMENT OF FACTS

### A.    Background on the Federal Post Card Application

Federal law ensures that United States citizens who are associated with the military or reside outside the United States can easily register to vote and request a mail ballot. 52 U.S.C. §§ 20301-10. This statutory scheme requires that States accept and use an "official post card form" for this purpose (commonly referred to as the "Federal Post Card Application"). 52 U.S.C. § 20302(a)(4).

"Post card" applications to register to vote go back to at least 1942, when Congress adopted the Soldiers Voting Act. This 1942 law required that federal officials print and distribute "post cards which shall be used by" absent members of the military in requesting a ballot. Pub.

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

L. No. 77-712, § 3, 56 Stat. 753 (1942). That law defined what should be printed "[u]pon one side of such post card" and what should be printed "[u]pon the other side of such post card[.]" *Id.* In 1955, Congress replaced the Soldiers Voting Act of 1942 with the Federal Voting Assistance Act of 1955, Pub. L. No. 84-296, 69 Stat. 584. Congress again provided for a "post card application[,]" which it encouraged States to accept and again defined what would appear "[u]pon one side" and "[u]pon the other side of the card." *Id.* at §§ 101(3), 203-05.

Congress adopted the modern Federal Post Card Application requirements in 1986 with the passage of the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), Pub. L. No. 99-410, 100 Stat. 924 (Aug. 28, 1986), *codified as* 52 U.S.C. § 20301 *et seq*. In UOCAVA, Congress again maintained the requirement of "an official post card form[.]" 52 U.S.C. § 20301(b)(2). In order to "avoid the problem" of requiring an "act of Congress" to make any changes to the post card application, H.R. Rep. No. 99-765, at 16 (1986), Congress provided that a "Presidential designee" would "prescribe an official post card form" and required that the designee "consult State and local election officials in carrying out" that and other responsibilities, 52 U.S.C. § 20301(b)(1), (2). The President has designated the Secretary of Defense to fulfill these responsibilities. Executive Order 12,642, 53 Fed. Reg. 21975 (June 8, 1988).

UOCAVA requires that "[e]ach State shall . . . use the official post card form . . . for simultaneous voter registration application and absentee ballot application[.]" 52 U.S.C. § 20302(a)(4). States must "use the standard oath prescribed by the Presidential designee[,]" 52 U.S.C. § 20302(a)(5), and may not impose notarization requirements, 52 U.S.C. § 20302(i).

**B.    The Executive Order Purports to Impose Significant Restrictions on Voter Registration by Military Servicemembers and U.S. Citizens Residing Overseas**

Section 3(d) of the Executive Order directs the Secretary of Defense to make two changes to the Federal Post Card Application:

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

(d) The Secretary of Defense shall update the Federal Post Card Application, pursuant to the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. 20301, to require:
(i) documentary proof of United States citizenship, as defined by section 2(a)(ii) of this order; and
(ii) proof of eligibility to vote in elections in the State in which the voter is attempting to vote.

Dkt. 1-1, § 3(d). The language of the Executive Order is mandatory, directing that the "Secretary of Defense *shall*" take the required actions. *Id.* (emphasis added).

The first new requirement imposed by the Executive Order is that the Federal Post Card Application must require "documentary proof of United States citizenship[.]" Documentary Proof of Citizenship (DPOC), which is defined to mean "a copy of . . . a United States passport[,]" a REAL ID-compliant identification document "that indicates the applicant is a citizen of the United States[,]" "an official military identification card that indicates the applicant is a citizen of the United States[,]" "a valid Federal or State government-issued photo identification" that indicates United States citizenship or is "accompanied by proof of United States citizenship." Dkt. 1-1, §§ 2(a)(ii), (3)(d).

The second new requirement imposed by the Executive Order is that the Federal Post Card Application must require "proof of eligibility to vote in elections in the State[.]" Dkt. 1-1, § 3(d). The Executive Order requires that the Secretary "update" the Federal Post Card Application to "require" this information. *Id.* The existing Federal Post Card Application already includes fields for all of the information and verification required to register to vote in Plaintiff States. *Compare* Dkt. 1-5 (Federal Post Card Application), *with* Wash. Rev. Code § 29A.08.010(1) (defining the minimum required information for voter registration), *and* Or. Const. art. II, § 2 (providing minimum qualifications for electors).

Significantly, these mandatory changes are additions that the Federal Post Card Application must "require"; the text of the Executive Order makes clear that they are not merely optional fields.

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**C.      The Executive Order's Federal Post Card Application Requirements Will Impose Costs on Plaintiff States**

As required by federal law, Plaintiff States accept and use the Federal Post Card Application. Declaration of Stuart Holmes (Holmes Decl.) ¶ 5. The number of Federal Post Card Applications received by the Plaintiff States' election officials can vary depending on a variety of factors, including whether it is a presidential election year. *Id.* at ¶ 7. From 2016 to 2025, Washington received an average of over 5,200 Federal Post Card Applications per year, ranging 1,018 in 2023 to 14,232 in 2024. *Id.* at ¶ 8.

Federal Post Card Applications are handled by county election officials. *Id.* at ¶ 5. Those officials must determine whether the application contains all of the information required to register to vote. *Id.* Election officials would also have to adopt regulations and guidance and make changes to voter registration databases to allow for the recording and secure storage of the additional "proof of eligibility to vote" and copies of DPOC. *Id.* at ¶¶ 10-11. In Washington, these changes are estimated to require at least 160 hours of staff time and $237,000. *Id.* In addition, Washington election officials would have to engage in outreach efforts requiring 160 hours of staff time. *Id.* at ¶ 15.

## III.      ARGUMENT

**A.      Plaintiff States May Challenge the President's Constitutional Violations Through an Equitable Cause of Action**

Plaintiff States have a non-statutory equitable cause of action to challenge provisions of the Executive Order that violate the separation of powers. This Court has already reached that conclusion in the context of Plaintiff States' motion for partial summary judgment on challenges to other provisions of the Executive Order, Dkt. 126 at 40-45, and recent authority only confirms this point.

"[T]he Supreme Court and the Ninth Circuit[] have repeatedly held that a plaintiff may challenge an executive order or other executive act using an implied, equitable cause of action." Dkt. 126 at 40 (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *Free*

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582-89 (1952); *Murphy Co. v. Biden*, 65 F.4th 1122, 1129-30 (9th Cir. 2023); *Sierra Club v. Trump*, 963 F.3d 874, 888-93 (9th Cir. 2020), *vacated on other grounds*, *Biden v. Sierra Club*, 210 L. Ed. 2d 982 (2021); *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327-30 (D.C. Cir. 1996)). There have been no material changes in controlling precedent since this Court's earlier decision, and there is no reason for this Court to reach a different conclusion here.

And no limitations on equitable causes of action apply here to circumscribe the scope of the Plaintiff States' right to relief in federal court. As this Court already recognized, "there is no statutory review scheme that would provide Plaintiffs with a 'meaningful and adequate opportunity for judicial review[.]'" Dkt. 126 at 42 (quoting *Nuclear Regul. Comm'n v. Texas* (*NRC*), 605 U.S. 665, 681 (2025)). The President's executive order commands violations of the separation of powers, and it is undisputed that Plaintiff States cannot challenge the executive order under the Administrative Procedure Act. *See* Dkt. 64 at 17 (citing *Franklin v. Massachusetts*, 505 U.S. 788 (1992)).

Plaintiff States' equitable challenge is also not barred by *NRC*'s requirement that the challenged action be "'contrary to a *specific prohibition*' in a statute." 605 U.S. at 681 (quoting *Ry. Clerks v. Ass'n for Benefit of Non-Contracts Emps.*, 380 U.S. 650, 660 (1965)). As discussed below, section 3(d) is contrary to UOCAVA's specific requirement that the Presidential designee create a "post card form." Moreover, as this Court previously recognized, *NRC* is distinguishable on multiple bases, including that the plaintiffs there "(1) had attempted to 'dress up a typical statutory-authority argument as an ultra vires claim'; and (2) had a guaranteed 'alternative path to judicial review.'" Dkt. 126 at 42 (quoting *NRC*, 605 U.S. at 682). This case is markedly different. *Id.*

In short, Plaintiff States may rely on an equitable cause of action to challenge the President's violation of the separation of powers in EO section 3(d).

<table>
<tr><td>PLAINTIFFS' MOTION FOR<br>SUMMARY JUDGMENT<br>No. 2:25-cv-00602-JHC</td><td>5</td><td>ATTORNEY GENERAL OF WASHINGTON<br>Complex Litigation Division<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA  98104-3188<br>(206) 464-7744</td></tr>
</table>

**B.    This Court Has Jurisdiction to Adjudicate Plaintiff States' Challenge to Section 3(d)**

**1.    Plaintiff States have standing to challenge section 3(d)**

Plaintiff States have standing to challenge the Executive Order's attempt to add substantive requirements to the Federal Post Card Application. To establish standing Plaintiff States "must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The requirement of DPOC and additional proof of eligibility on the Federal Post Card Application creates concrete and imminent injuries for Plaintiff States. These requirements injure Plaintiff States in their proprietary capacities because it creates classic "pocketbook injur[ies]." *Washington v. FDA*, 108 F.4th 1163, 1175 (9th Cir. 2024) (quoting *California v. Texas*, 593 U.S. 659, 674 (2021)). Specifically, creating additional requirements will necessitate additional staff time to process the thousands of Federal Post Card Applications that Plaintiff States receive each year, require costly changes to voter registration databases to securely retain the new information received with Federal Post Card Applications, and involve a time-consuming public education effort. Holmes Decl. ¶¶ 10-11, 15.

In addition, the DPOC and proof-of-eligibility requirements also injure Plaintiff States in their sovereign capacities. The Constitution expressly recognizes the States' sovereign interest in regulating "[t]he Times, Places and Manner" of holding elections for federal office. U.S. Const. art. I, § 4 (senators and representatives); *see also id.* art. II, § 1 (presidential electors). The Executive Order directly interferes with that sovereign interest by regulating elections. Under Washington and Oregon law, any voter—including military and overseas voters—may verify citizenship by sworn attestation and provide all the proof of eligibility required through the existing Federal Post Card Application. Wash. Rev. Code § 29A.08.010(1)(d), (f); Or. Rev. Stat. § 253.540(2)(b) (overseas voters); Or. Rev. Stat. § 247.171(3)(e)-(f) (all other voters). For

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

6

military and overseas voters using the Federal Post Card Application, the Executive Order purports to preempt these laws by requiring DPOC and additional "proof of eligibility[.]" Dkt. 1-1, § 3(d). This type of interference with Plaintiff States' own laws and sovereign interests in regulating the manner of verifying citizenship suffices to establish standing. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez* (*Snapp*), 458 U.S. 592, 601 (1982) (recognizing sovereign interest that includes "the power to create and enforce a legal code, both civil and criminal"); *FDA*, 108 F.4th at 1176 (holding that injury to a sovereign interest "is sufficient to convey standing to . . . challenge a federal statute that preempts or nullifies state law").

The injury to Plaintiff States is directly caused by the Executive Order. The causation requirement is satisfied where the injury is " 'fairly traceable to the challenged action of the defendant.' " *Lujan*, 504 U.S. at 560 (source alterations accepted) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)). Currently, there is no requirement for Plaintiff States to process and securely retain DPOC in connection with Federal Post Card Applications nor is there a requirement for any additional "proof of eligibility." Section 3(d) of the Executive Order mandates the imposition of such requirements. The harms are therefore fairly traceable to the Executive Order.

The injury will also be redressed by an injunction prohibiting implementation of section 3(d). The redressability requirement is satisfied where a favorable judicial decision will relieve the plaintiff of a discrete injury. *See Massachusetts v. EPA*, 549 U.S. 497, 525 (2007).

For each of these reasons, Plaintiff States have standing to challenge the Executive Order's mandate to require DPOC and additional proof of eligibility when registering to vote using the Federal Post Card Application.

### 2.    Plaintiff States' claim is ripe

Plaintiff States' challenge to section 3(d) is ripe, as this Court determined on Defendants' motion to dismiss. Dkt. 126 at 37-38. Section 3(d) directs unambiguous action. It directs that the Secretary of Defense "*shall* update the Federal Post Card Application[.]" Dkt. 1-1, § 3(d). There

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

is no delay to the effective date of section 3(d). With respect to the DPOC requirement, the Executive Order identifies what is required through its DPOC definition. *See* Dkt. 1-1, § 2(a)(ii). With respect to the additional "proof of eligibility[,]" the Executive Order does not precisely identify what will be required, but that is not necessary. Any additional requirement is unlawful for the reasons discussed below. The legality of the requirement of additional proof does not depend on *what* additional proof is required. Accordingly, this claim presents a purely legal issue and is fit for review. *See Thomas v. County of Humboldt*, 124 F.4th 1179, 1190 (9th Cir. 2024) (stating that purely legal questions are fit for review); *see also Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024) (identifying that fitness for decision depends on whether the issues are primarily legal and do not require additional factual development).

## C.      The President Lacks Authority to Dictate Requirements to Register to Vote

The President has no constitutional or statutory authority to require DPOC or additional proof of eligibility in order to register to vote using the Federal Post Card Application. As this Court correctly recognized, "whenever the President issues an executive order, the power 'to issue the order must stem either from an act of Congress or from the Constitution itself." Dkt. 126 at 47 (quoting *Youngstown*, 343 U.S. at 585).

The Constitution does not authorize the President to require DPOC or additional proof of eligibility. The Constitution assigns authority for regulating federal elections to the States in the first instance and, second, to Congress. U.S. Const. art. I, § 4, cl. 1; *see also* U.S. Const. art. II, § 1, cl. 2. The Constitution provides no authority over federal elections to the President, as this Court has already held. Dkt. 126 at 53 ("The President's power to issue § 3(d) thus cannot stem from the Constitution itself.").

In addition, no act of Congress authorizes the President to require DPOC or additional proof of eligibility with the Federal Post Card Application. In fact, the President's requirements are contrary to statutes adopted by Congress. Congress addressed the Federal Post Card Application in the UOCAVA. Pub. L. No. 99-410, § 101, 100 Stat. 924. Under UOCAVA, the

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

President "shall designate the head of an executive department to have primary responsibility for Federal functions under [UOCAVA]." 52 U.S.C. § 20301. As relevant here, UOCAVA directs that designee to:

> (1) consult State and local election officials in carrying out [UOCAVA] . . .;
> (2) prescribe an official post card form, containing both an absentee voter registration application and an absentee ballot application, for use by the States as required under section 20302(a)(4) of this title; [and]
> . . .
> (7) prescribe a standard oath for use with any document under this chapter affirming that a material misstatement of fact in the completion of such a document may constitute grounds for a conviction for perjury;
> . . . .

52 U.S.C. § 20301(b). States must accept and process the Federal Post Card Application and may not refuse to do so based on notarization requirements or restrictions on paper or envelope type. 52 U.S.C. § 20302(i). Other than appointing a designee, these UOCAVA provisions assign no role to the President.

The Executive Order upends Congress's statutory directions in UOCAVA and cannot be lawfully implemented.

Section 3(d)'s directive "to require . . . documentary proof of United States citizenship" (Dkt. 1-1) is inconsistent with UOCAVA in three ways. First, it is inconsistent with the manner that Congress selected for verifying voter eligibility. In UOCAVA, Congress determined that the appropriate verification method is the voter's attestation to a "standard oath" that "affirm[s] that a material misstatement of fact . . . may constitute grounds for a conviction for perjury." 52 U.S.C. § 20301(b)(7); *see also* 52 U.S.C. § 20302(a)(5) (requiring that States "use the standard oath"). Congress also prohibited States from imposing notarization requirements. 52 U.S.C. § 20302(i). While the President may prefer a more burdensome verification process, "[t]hese provisions show that Congress made deliberate choices about how voter eligibility should be verified in connection with the Federal Post Card Application, favoring self-certification by voters over burdensome documentation requirements." *League of United Latin Am. Citizens*

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

(*LULAC*), Civil Action No. 25-0946 (CK), 2026 WL 252420, at *40 (D.D.C. Jan. 30, 2026), *appeal docketed*, No. 26-5102 (D.C. Cir. Apr. 2, 2026).

Second, requiring DPOC is inconsistent with Congress's requirement of a "post card form." 52 U.S.C. § 20301(b). As two district courts have recognized, the term *post card* "connotes a simple mail piece designed to be sent without an envelope." *LULAC*, 2026 WL 252420, at *41 (citing *California v. Trump*, 786 F. Supp. 3d 359, 383 (D. Mass. June 13, 2025)). That is confirmed by the statutory history of the "post card form" requirement. UOCAVA's post card requirement originated with the Soldier Voting Act of 1942, and the Federal Voting Assistance Act of 1955, which set out the precise contents of the post card application. Pub. L. No. 84-296, § 204(b); Pub. L. No. 77-712, § 3. In both acts, Congress directed the specific contents, which made clear that Congress meant what it said when it used the term "post card." The Solider Voting Act of 1942 defined what would be printed "[u]pon one side" and "[u]pon the other side." Pub. L. No. 77-712, § 3. The Federal Voting Assistance Act of 1955 required that the post card application include the phrase "FILL OUT BOTH SIDES OF THE CARD[.]" Pub. L. No. 84-296, § 204(b). While UOCAVA removed the precise contents from statute in order to "avoid the problem" of requiring "an Act of Congress . . . to accommodate . . . changes," H.R. Rep. No. 99-765, at 16, Congress retained the use of the term "post card."

The Executive Order's requirement that the Federal Post Card Application require a copy of "a United States passport[,]" a REAL ID Act-compliant "identification document[,]" or a similar tangible document, Dkt. 1-1 at § 2(a)(ii), is inconsistent with Congress's use of the term "post card form." *See Advocate Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017) (recognizing "surplusage canon" under which there is a "presumption that each word Congress uses is there for a reason"). Requiring an additional tangible document is incompatible with Congress's use of the term "post card," because it would require at least two discrete items instead of a single, simple registration form as Congress intended.

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Third, the DPOC requirement is inconsistent with Congress's purpose in adopting the "post card form" requirement. In the Federal Voting Assistance Act of 1955, Congress identified the purpose of the post card application as being part of an effort "[t]o afford ample opportunity for" covered persons "to vote for Federal, State, and local officials and to use the absentee balloting procedures to the greatest extent possible[.]" Pub. L. No. 84-296, § 102. When Congress replaced the Federal Voting Assistance Act with UOCAVA, the "primary purpose" was, similarly, "to facilitate absentee voting by United States citizens, both military and civilian, who are overseas." H.R. Rep. No. 99-765, at 5. This was "in direct response to the 'severe difficulties' that military and overseas voters have historically faced when attempting to exercise their fundamental right to vote." *LULAC*, 2026 WL 252420, at *41 (quoting *United States v. Alabama*, 778 F.3d 926, 928 (11th Cir. 2015)). The Executive Order is contrary to this purpose. Section 3(d) of the Executive Order imposes burdens that will act to prevent qualified persons from registering to vote and receiving a ballot, which is the precise opposite of UOCAVA's purpose. To the extent the President is dissatisfied with Congress's decision to facilitate voting by military and overseas voters, his remedy is with Congress; he cannot override Congress's policy decision through an executive order.

The additional "proof of eligibility to vote" requirement created by section 3(d)(ii) of the Executive Order also finds no support whatsoever in UOCAVA. Again, the Constitution assigns States the primary authority to determine "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const. art. I, § 4, cl. 1. Congress may alter those regulations by exercising its Elections Clause authority, as it did when adopting UOCAVA. But UOCAVA does not alter state proof of eligibility requirements or purport to offer the President authority to do so. Even if UOCAVA authorized the presidential designee to design a form that includes a space to provide additional information, it does not authorize the presidential designee to *require* additional proof of eligibility. Section 3(d)(ii) is, therefore, also incompatible with UOCAVA.

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

In short, section 3(d)'s directive to require DPOC and additional proof of eligibility on the Federal Post Card Application is contrary to the will of Congress as expressed in UOCAVA. The President therefore has no statutory authority to impose the requirements. Because the President lacks both constitutional and statutory authority, section 3(d) attempts to exercise a power of elections that the Constitution reserves to the States and Congress. Section 3(d), therefore, is ultra vires, violates the separation of powers, and cannot be enforced.

**D.    This Court Should Permanently Enjoin Enforcement of Section 3(d)**

Plaintiff States are entitled to a permanent injunction. To warrant a permanent injunction,

"[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The final two factors merge when the United States is the opposing party. *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022).

Here, section 3(d) will result in irreparable harm to Plaintiff States because it will impose substantial sovereign and financial harms if it is enforced. *See supra* Section B.1. Infringing on Plaintiff States' sovereign right to administer elections is an irreparable injury for which money damages is no recompense. *See Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025) (holding that the improper intrusion "on 'a coordinate branch of Government'" constitutes irreparable harm (quoting *INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers))); *see also LULAC*, 2026 WL 252420, at *44 (holding that "separation-of-powers injuries" were irreparable harm sufficient to support a permanent injunction). Even the proprietary pocket-book injuries associated with the cost of implementing section 3(d) warrant a permanent injunction because the United States has sovereign immunity and Plaintiff States therefore cannot recover monetary damages. *See Washington v. Trump*, 145 F.4th 1013, 1036-37 (9th Cir. 2025) (citing *Ledbetter v. Baldwin*, 479 U.S. 1309, 1310 (1986) (Powell, J., in chambers)).

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

And the public interest and balance of hardships also weigh strongly in favor of Plaintiff States. Because Defendants here are federal officials and agencies, the balance-of-equities and public-interest factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Galvez*, 52 F.4th at 831. For the reasons discussed above, section 3(d) will impose sovereign and financial hardships on Plaintiff States. There are no countervailing governmental interests outweighing those hardships. Defendants have no interest in acting in a manner contrary to federal law, as reflected in Congress's requirements in UOCAVA. *See Washington*, 145 F.4th at 1037 (9th Cir. 2025) (holding injunctive relief served the public interest where it enjoined government action that was " 'beyond its authority' " (citation omitted)).

The appropriate scope of relief is to enjoin section 3(d) in its entirety. This is necessary to provide complete relief to Plaintiff States. As the Ninth Circuit has recognized, nationwide relief may be proper where necessary to provide complete relief to the plaintiffs before the Court. *Id.* at 1038-39 ("[T]he district court did not abuse its discretion in issuing a universal injunction in order to give the States complete relief."); *see also CASA*, 606 U.S. at 853 (recognizing that "[t]he complete-relief inquiry is more complicated" for states where injuries may be caused to the states themselves by inconsistent federal policy nationwide). That is exactly the case here. If the Defendants are allowed to institute their "update[d]" post card application anywhere, then the States will suffer the administrative burdens outlined above because they will be forced to develop processes to accept them.

Moreover, anything less than a nationwide injunction would frustrate the intent of Congress because there is only one Federal Post Card Application. *See* 52 U.S.C. § 20301(b)(2) (directing the presidential designee to "prescribe *an* official post card form" (emphasis added)). UOCAVA does not permit an application specific to Washington and Oregon and a different one for the rest of the country. For this reason, "any attempt to craft a narrower remedy would significantly disrupt the uniform administration of the absentee voting system that Congress established in UOCAVA." *LULAC*, 2026 WL 252420, at *44.

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### IV.    CONCLUSION

Section 3(d) of the Executive Order seeks to interfere with the voting rights of qualified United States citizens in the military or residing outside the country. The President has no authority to direct these limitations, which are contrary to federal law. Plaintiff States are entitled to summary judgment that section 3(d) of the executive order is ultra vires and a permanent injunction forbidding its enforcement.

DATED this 17th day of April, 2026.

I certify that this memorandum contains _____ words, in compliance with the Local Civil Rules

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*

NOAH G. PURCELL, WSBA 43492
*Solicitor General*

*s/ Karl D. Smith*
KARL D. SMITH, WSBA 41988
*Deputy Solicitor General*
WILLIAM MCGINTY, WSBA 41868
KELLY A. PARADIS, WSBA 47175
ALICIA O. YOUNG, WSBA 35553
*Deputy Solicitors General*
FREEMAN E. HALLE, WSBA 61498
ZANE MULLER, WSBA 63777
*Assistant Attorneys General*
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
karl.smith@atg.wa.gov
noah.purcell@atg.wa.gov
william.mcginty@atg.wa.gov
kelly.paradis@atg.wa.gov
alicia.young@atg.wa.gov
freeman.halle@atg.wa.gov
zane.muller@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

DAN RAYFIELD
Attorney General
State of Oregon

_s/ Brian Simmonds Marshall_
BRIAN SIMMONDS MARSHALL*
CARLA A. SCOTT, WSBA #39947
_Senior Assistant Attorneys General_
KATE E. MORROW*
_Assistant Attorney General_
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
brian.s.marshall@doj.oregon.gov
carla.a.scott@doj.oregon.gov
kate.e.morrow@doj.oregon.gov

_Attorneys for Plaintiff State of Oregon_
*Admitted Pro hac vice

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744