The Honorable John H. Chun

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON and STATE OF OREGON, <br><br>                              Plaintiffs, <br><br>                       v. <br><br> DONALD J. TRUMP, *in his official capacity as President of the United States, et al.*, <br><br>                       Defendants. | CASE NO.  2:25-cv-602-JHC <br><br> DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 1

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD......................................................................................................... 4

ARGUMENT ..................................................................................................................... 4

I.   Plaintiffs' Challenge Is Not Justiciable................................................................ 4

II.  Plaintiffs Lack a Cause of Action. ....................................................................... 7

III. Section 3(d) Is Not *Ultra Vires*........................................................................... 9

IV.  Section 3(d) Does Not Violate State Sovereignty............................................... 13

V.   Plaintiffs Are Not Entitled To A Permanent Injunction. .................................... 14

     A.   There Is No Irreparable Injury. ................................................................. 15

     B.   The Equities And The Public Interest Do Not Favor An Injunction. ................... 16

VI.  If Plaintiffs Seek a Universal Injunction, That Injunction Is Overbroad.......................... 16

CONCLUSION.................................................................................................................. 17

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - i

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

**TABLE OF AUTHORITIES**

**CASES**

*Abbott v. Perez,*
585 U.S. 579 (2018).............................................................................................. 16

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
570 U.S. 1 (2013)................................................................................................. 13

*Ass'n of Cmty. Orgs. for Reform Now v. Miller,*
129 F.3d 833 (6th Cir. 1997) .............................................................................. 13

*Bldg. & Constr. Trades Dep't v. Allbaugh, AFL-CIO,*
295 F.3d 28 (D.C. Cir. 2002) .............................................................................. 10

*Caribbean Marine Servs. Co. v. Baldrige,*
844 F.2d 668 (9th Cir. 1988) .............................................................................. 15

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)............................................................................................... 4

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013)............................................................................................... 5

*Coons v. Lew,*
762 F.3d 891 (9th Cir. 2014) ................................................................................ 6

*Dalton v. Specter,*
511 U.S. 462 (1994)............................................................................................... 9

*Drakes Bay Oyster Co. v. Jewell,*
747 F.3d 1073 (9th Cir. 2014) ............................................................................ 15

*Edmo v. Corizon, Inc.,*
935 F.3d 757 (9th Cir. 2019) .............................................................................. 15

*Foster v. Love,*
522 U.S. 67 (1997)............................................................................................... 13

*Gonzalez v. Arizona,*
677 F.3d 383 (9th Cir. 2012) .............................................................................. 13

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)............................................................................................... 5

*Myers v. United States,*
272 U.S. 52 (1926)............................................................................................... 10

*Nuclear Regul. Comm'n v. Texas*,
    605 U.S. 665 (2025)........................................................................................ 7, 8

*Peralta v. Dillard*,
    744 F.3d 1076 (9th Cir. 2014) ............................................................................ 4

*Reeves v. Nago*,
    535 F. Supp. 3d 943 (D. Haw. 2021) ................................................................ 10

*Republican Nat'l Comm. v. Wetzel*,
    120 F.4th 200 (5th Cir. 2024) ........................................................................... 14

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020)..................................................................................... 10, 14

*Somerville Pub. Schs. v. McMahon*,
    139 F.4th 63 (1st Cir. 2025) ............................................................................. 16

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).............................................................................................. 4

*Stavrianoudakis v. U.S. Fish and Wildlife Serv.*,
    108 F.4th 1128 (9th Cir. 2024) ............................................................................ 5

*Stockton v. Brown*,
    152 F.4th 1124 (9th Cir. 2025) ........................................................................ 6, 7

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)............................................................................................. 5

*Texas v. United States*,
    523 U.S. 296 (1998)............................................................................................. 5

*Thomas v. Anchorage Equal Rts. Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ........................................................................ 6, 7

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)............................................................................................. 5

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025)................................................................................. 1, 16, 17

*U.S. Term Limits, Inc. v. Thornton*,
    514 U.S. 779 (1995)........................................................................................... 13

*United States v. Alabama*,
    778 F.3d 926 (11th Cir. 2015) ....................................................................... 2, 11

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - iii

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

*United States v. Alabama*,
998 F. Supp. 2d 1283 (M.D. Ala. 2014) ....................................................................... 11

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008).................................................................................................... 14, 15

**UNITED STATES CONSTITUTION**

U.S. Const. art. I, § 4................................................................................................ 13, 14

U.S. Const. art. II, § 1 .................................................................................................... 10

U.S. Const. art. III, § 1 .................................................................................................... 4

U.S. Const. art. III, § 2 .................................................................................................... 4

U.S. Const. art. VI.......................................................................................................... 16

**STATUTES**

2 U.S.C. § 7..................................................................................................................... 14

3 U.S.C. § 1..................................................................................................................... 14

5 U.S.C. § 706................................................................................................................... 9

18 U.S.C. § 611............................................................................................................... 11

18 U.S.C. § 1015............................................................................................................. 11

44 U.S.C. §§ 3501–3521 .................................................................................................. 2

52 U.S.C. § 20301 .................................................................................... 1, 10, 11, 12, 14

52 U.S.C. § 20302 ........................................................................................................... 11

52 U.S.C. § 20310 ........................................................................................................... 11

52 U.S.C. § 20506 ........................................................................................................... 14

52 U.S.C. § 20508 ........................................................................................................... 14

Ariz. Rev. Stat. § 16-166 ............................................................................................... 11

**RULES**

Fed. R. Civ. P. 41............................................................................................................. 3

Fed. R. Civ. P. 56............................................................................................................. 4

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - iv

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

**REGULATIONS**

32 C.F.R. § 233.6 ........................................................................................................... 17

Uniformed and Overseas Citizens Absentee Voting Act,
    Exec. Order No. 12,642, 53 Fed. Reg. 21,975 (June 8, 1988) ............................... 1, 10

Preserving and Protecting the Integrity of American Elections,
    Exec. Order No. 14,248, 90 Fed. Reg. 14,005 (Mar. 25, 2025) ........................................ *passim*

**OTHER AUTHORITIES**

Agency Information Collection Activities; Proposals, Submissions, and Approvals,
    Regulations.gov (posted on Feb. 28, 2017),
    https://www.regulations.gov/document/DOD-2017-OS-0008-0001 .......................................... 2

Arizona, Voting Assistance Guide,
    https://www.fvap.gov/guide/chapter2/arizona .......................................................... 12

The Federalist No. 59 (Alexander Hamilton) (Ron P. Fairfield ed., 2d ed.1981) ....................... 13

FVAP, *2026–27 Voting Assistance Guide*,
    https://www.fvap.gov/uploads/FVAP/States/eVAG.pdf ............................................ 17

FVAP, *Federal Post Card Application (FPCA)*,
    https://www.fvap.gov/uploads/fvap/forms/fpca.pdf ............................................ 6, 12

FVAP, *Interpretation of the Help America Vote Act of 2002: Based on the Requirements
    for U.S. Citizens Covered by the Uniformed and Overseas Citizens Absentee Voting Act*
    (Aug. 2003),
    https://www.fvap.gov/uploads/FVAP/Policies/havamemo.pdf ............................................... 12

Proposed Collection, Comment Request (Federal Post Card Application (FPCA),
    Standard Form 76 (SF-76); OMB Control Number 0704-0503), Regulations.gov,
    https://www.regulations.gov/search?agencyIds=DOD&filter=%22SF-76%22 ......................... 2

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - v

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

**INTRODUCTION**

Plaintiffs Washington and Oregon challenge the President's March 25, 2025, Executive Order that seeks to preserve the integrity of American elections. The Court has already entered judgment on all challenged sections except for section 3(d), which directs the Secretary of Defense to update the Federal Post Card Application for uniformed and overseas voters to require documentary proof of citizenship (DPOC) from all applicants. Defendants seek summary judgment on that sole remaining provision at issue in this case. As with their previous challenges, Plaintiffs lack standing to challenge this section, and their claim against that section is not ripe. The Secretary has yet to take any action to implement section 3(d)'s directive, so Plaintiffs' asserted harms from that section remain too speculative to support justiciability. Regardless, Defendants are entitled to judgment as a matter of law because Plaintiffs lack a cause of action for their nonstatutory *ultra vires* claim. But even if Plaintiffs do have a cause of action, section 3(d) represents a permissible directive by the President to his designee on how to exercise Executive power. Finally, Plaintiffs are not entitled to permanent injunctive relief as to section 3(d) and, even if they were, the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), prevents this Court from enjoining section 3(d) nationwide.

**BACKGROUND**

In the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), Congress charged the President's designee[1] with developing "an official post card form, containing both an absentee voter registration application and an absentee ballot application, for use by the States." 52 U.S.C. § 20301(b)(2). The Department of Defense's Federal Voting Assistance Program

---

[1] The President selected the Secretary of Defense as the UOCAVA presidential designee by Executive Order in 1988. *See* Exec. Order No. 12,642, 53 Fed. Reg. 21,975 (June 8, 1988), *reprinted as amended in* 52 U.S.C. § 20301.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 1

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

(FVAP), the entity responsible for administering UOCAVA as delegated by the Secretary of Defense,[2] must similarly follow the Paperwork Reduction Act's notice-and-comment rule-making process to revise the federal post card application (FPCA).[3]

On March 25, 2025, President Trump issued Executive Order No. 14,248, titled "Preserving and Protecting the Integrity of American Elections," 90 Fed. Reg. 14,005 (Mar. 25, 2025) (Executive Order; sections cited as EO § n).  The Executive Order explains that "[f]ree, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic.  The right of American citizens to have their votes properly counted and tabulated, without illegal dilution, is vital to determining the rightful winner of an election." *Id.* § 1. "Under the Constitution, State governments must safeguard American elections in compliance with Federal laws that protect Americans' voting rights and guard against dilution by illegal voting, discrimination, fraud, and other forms of malfeasance and error." *Id.*  President Trump declared that "[i]t is the policy of [his] Administration to enforce Federal law and to protect the integrity of our election process." *Id.*

To achieve that end, the Executive Order "enforce[s] the Federal prohibition on foreign nationals voting in Federal elections" through a variety of provisions.  *Id.* § 2.  Specific to UOCAVA and of relevance to this motion, the Executive Order also directs "[t]he Secretary of Defense" to "update the Federal Post Card Application, pursuant to [UOCAVA], to

---

[2] "The Secretary administers its responsibilities through The Federal Voting Assistance Program ('FVAP')." *United States v. Alabama*, 778 F.3d 926, 930 n.2 (11th Cir. 2015) (citing Federal Voting Assistance Program (FVAP), 32 C.F.R. § 233 (2014)).

[3] *See* 44 U.S.C. §§ 3501–3521; Proposed Collection, Comment Request (Federal Post Card Application (FPCA), Standard Form 76 (SF-76); OMB Control Number 0704-0503), Regulations.gov, https://www.regulations.gov/search?agencyIds=DOD&filter=%22SF-76%22 (last visited Apr. 15, 2026) (listing FPCA-specific notice-and-comment dockets); Agency Information Collection Activities; Proposals, Submissions, and Approvals, Regulations.gov (posted on Feb. 28, 2017), https://www.regulations.gov/document/DOD-2017-OS-0008-0001 (example of information collection notice for FCPA revisions).

require . . . documentary proof of United States citizenship . . . [and] proof of eligibility to vote in elections in the State in which the voter is attempting to vote." *Id*. § 3(d).

On April 4, 2025, the States of Washington and Oregon (collectively, Plaintiffs) filed a Complaint in this Court challenging 11 provisions in the Executive Order, including section 3(d). *See* ECF No. 1 (Compl.). The Complaint brought eight counts, *see id.* ¶¶ 196–260, all relying "on an equitable cause of action under which courts may enjoin governmental conduct that is *ultra vires* or violates the Constitution," ECF No. 123 at 1. Plaintiffs subsequently moved for partial summary judgment, seeking permanent injunctive relief against sections 2(a), 4(a), 4(b), 7(a), and 7(b) of the Executive Order. *See* ECF No. 37. Defendants cross-moved to dismiss Plaintiffs' claims as to all challenged sections. *See* ECF No. 64.

On January 9, 2026, this Court granted both motions in part and denied them in part. *See* ECF No. 126 (SJ Order). The Court granted the motion for summary judgment and permanently enjoined Defendants from taking any actions to enforce sections 2(a), 4(a), 4(b), 7(a), and 7(b).[4] *See id.* at 73–74. The Court also granted Defendants' motion to dismiss claims against sections 2(b)(iii), 2(d), 2(e)(ii), and 5(b). *See id.* at 20, 26–27. The Court denied the motion to dismiss as to claims challenging section 3(d) regarding UOCAVA, *see id.* at 53–54, and section 4(d) regarding compliance with certain voting system security standards, *see id.* at 59–60.

For those two remaining sections, the parties informed the Court in their joint discovery plan that the challenge to section 4(d) would be dismissed under Federal Rule of Civil Procedure 41. *See* ECF No. 133 at 2; *see also* ECF No. 135 (notice of voluntary and stipulated dismissal). The parties also jointly proposed a summary-judgment briefing schedule as to section 3(d). *See*

---

[4] That order is currently on appeal. *See* No. 26-1429 (9th Cir.).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 3

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

ECF No. 133 at 4.  The Court entered the proposed schedule, *see* ECF No. 134, and Defendants hereby submit this motion pursuant to that briefing schedule.

## LEGAL STANDARD

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate if a party "make[s] a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court is not bound by its earlier ruling denying the Government's motion to dismiss as to section 3(d), particularly in light of the different standards that apply at the summary judgment stage.  *See Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (en banc) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case.").

## ARGUMENT[5]

### I.      Plaintiffs' Challenge Is Not Justiciable.

Article III restricts federal court jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  This limitation on "[t]he judicial Power of the United States" is fundamental to the judiciary's role within the constitutional separation of powers. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, § 1).  Two of the limitation's manifestations are the justiciability doctrines of standing and ripeness, both of which are implicated here.

To establish Article III standing, a plaintiff must demonstrate that it (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely

---

[5] Defendants acknowledge that this Court denied their motion to dismiss and rejected arguments made in opposition to Plaintiffs' motion for summary judgment as to other provisions of the Executive Order. Defendants respectfully submit that the Court's decision was error, and they re-raise many arguments for, among other things, preservation purposes.

to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact must be "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Id.* (citation omitted). "An allegation of future injury may suffice" only if "the threatened injury is 'certainly impending,' or [if] there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). But if the future injury is "too speculative for Article III purposes[,]" then there is no standing to sue. *Clapper*, 568 U.S. at 409. Standing requires a plaintiff to have a "personal stake" in the case, and to "be able to sufficiently answer the question: 'What's it to you?'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted).

While standing seeks to keep federal courts out of disputes involving conjectural injuries, the ripeness doctrine seeks to prevent the adjudication of claims relating to "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). "There are two ripeness considerations: constitutional and prudential." *Stavrianoudakis v. U.S. Fish and Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024). "Constitutional ripeness overlaps with the injury-in-fact element of Article III standing, and therefore the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." *Id*. (citation omitted). "Prudential ripeness concerns the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. (citation omitted). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id*. (citation omitted). "As to hardship, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Id*. (citation omitted).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 5

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

Plaintiffs' challenge to section 3(d) fails on both standing and ripeness grounds. It is undisputed that the Secretary, via FVAP, has taken no action to update the Federal Post Card Application (FPCA) and that the EO lacks any deadline for him to do so. *See* EO § 3(d); *contra* SJ Order at 27 (describing Plaintiffs' argument that changes to FPCA "must begin to be made well in advance of the 2026 election" (citation omitted)). The FPCA available on the FVAP website as of the date of this filing is still the 01-2023 revision. *See* FVAP, *Federal Post Card Application (FPCA)*, https://www.fvap.gov/uploads/fvap/forms/fpca.pdf (last visited Apr. 16, 2026) ("Post Card Form"). Thus, even though section 3(d) contains "mandatory language," SJ Order at 28, it does not dictate the particular actions that the Secretary must take to fulfill section 3(d)'s mandate, much less when that mandate must be effectuated. Without knowing what is required to establish proof of eligibility to vote in elections in the state in which the voter is attempting to vote, which could vary among States, Plaintiffs (and the Court) can only speculate about whether section 3(d) as implemented would violate UOCAVA. Plaintiffs cannot assert that the changes allegedly required by section 3(d) are certainly impending when they don't know when the Secretary will take any actions pursuant to the section. And given that the exact manner of implementation by the Secretary remains unknown at this time, Plaintiffs' asserted future injuries from section 3(d) "are highly speculative and are not certainly impending." *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014).

Plaintiffs' challenge is not ripe for many of the same reasons. The ripeness doctrine "prevent[s] the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citation omitted). At this stage, the disagreement is almost entirely abstract. Nobody knows the details of what the Secretary will do to implement section 3(d), meaning that the dispute about the provision is "devoid of any specific factual context." *Stockton v. Brown*, 152 F.4th 1124, 1149

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 6

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

(9th Cir. 2025) (citation omitted), *petition for cert. filed*, No. 25-606 (U.S. Nov. 24, 2025).  As a prudential matter, then, this Court should await the resolution of future action before wading into this dispute.  The Court disagreed at the pleading stage because Plaintiffs' harms supposedly "stem from the EO's mandate that certain federal officials add voter eligibility requirements to the . . . FPCA, not from the hypothetical outcome of a future agency [action]."  SJ Order at 37. Respectfully, that is incorrect.  Plaintiffs will suffer harms once the Secretary amends the FPCA or at least takes some actions to do so, not before.  All agree he has not taken any such action and, until then, Plaintiffs can only speculate.  And because there is no "real or imminent" injury, Plaintiffs will suffer no harm if the Court withholds jurisdiction.  *Thomas*, 220 F.3d at 1142.

## II.     Plaintiffs Lack a Cause of Action.

Even if there were jurisdiction, Defendants are entitled to summary judgment because Plaintiffs lack a cause of action to challenge section 3(d).  Plaintiffs rely only on an equitable *ultra vires* cause of action, *see* ECF No. 123 at 1, but that type of review is unavailable "if, as is usually the case, a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review, or if a statutory review scheme forecloses all other forms of judicial review." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citation omitted).

Plaintiffs here have a means of adequately challenging section 3(d) without resorting to nonstatutory review: the Administrative Procedure Act (APA).  That statute provides Plaintiffs with a meaningful opportunity for judicial review against agencies implementing final agency action in response to presidential directives.  Thanks to the APA, Plaintiffs' rights would not be effectively lost absent judicial review.  This Court should not allow Plaintiffs' request for "ultra vires review" to make "an easy end-run around the limitations of . . . judicial-review statutes," like the APA, simply because Plaintiffs filed their complaint too early to use the "statutory avenue" that Congress provided.  *Id.* at 681–82.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 7

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

This Court held to the contrary when it denied Defendants' motion to dismiss. *See* SJ Order at 40–43. The Court declined to apply the Supreme Court's decision in *Nuclear Regulatory Commission* because "Plaintiffs' challenges are aimed at the contents of the EO, not at any potential actions taken by executive agencies pursuant to the EO." *Id.* at 42. This is incorrect. The Executive Order is not self-executing—rather, it directs agencies to take future action "consistent with applicable law and subject to the availability of appropriations." EO § 11(b). And specifically, that future action includes the Secretary of Defense's steps to update the FPCA, which requires further agency action to be effectuated. In that circumstance, and contrary to the Court's conclusion, the APA gives Plaintiffs a "meaningful and adequate opportunity" to challenge section 3(d) once the Secretary takes action to implement that section. *Nuclear Regul. Comm'n*, 605 U.S. at 681 (citation omitted). Plaintiffs simply filed their Complaint too soon, before any such claim could have materialized. That strategic decision to file early does not mean that the APA would not, if and when Plaintiffs actually have a ripe claim against an agency for taking some final action pursuant to the EO (or otherwise), provide Plaintiffs with an opportunity for judicial review. *Id.* at 681–82.[6]

The Court also determined that Plaintiffs have a nonstatutory cause of action because their claims are "rooted in the argument that the President exceeded his delegated powers and contravened specific prohibitions in the applicable statutes, thereby violating the Constitution's allocation of authority over elections to the states and Congress." SJ Order at 41. That argument cannot be accurate as a matter of law because it would mean that any time the President allegedly violates statutory prohibitions he has "violat[ed] the Constitution's allocation of authority" between the various branches of government. *Id.* The Supreme Court has directly rejected this

---

[6] Recognizing the APA's applicability, plaintiffs in related cases (such as *LULAC* in D.D.C.) have—unlike Plaintiffs here—brought APA claims.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 8

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

argument, noting that "if every claim alleging that the President exceeded his statutory authority were considered a constitutional claim," it would "broaden[] beyond recognition" the exception permitting direct review of presidential actions outside the APA. *Dalton v. Specter*, 511 U.S. 462, 474 (1994). Moreover, Plaintiffs' Complaint alleges *statutory* violations, at least as to section 3(d).[7] Indeed, claim 5 is predicted on Plaintiffs' theory that the Executive Order and the actions it authorizes "run[] afoul of a statute or the legislative intent of Congress." Compl. ¶ 239. And Plaintiffs aver that section 3(d) violates specific statutes, like UOCAVA and the National Voter Registration Act (NVRA). *See id.* Prayer for Relief ¶ A.5.

### III.    Section 3(d) Is Not *Ultra Vires*.

In the counts that remain before the Court, Plaintiffs appear to assert that section 3(d) violates multiple authorities. For example, in Count 4, Plaintiffs say that section 3(d) is "beyond the President's constitutional and statutory authority." Compl. ¶ 233. And in Count 5, Plaintiffs list section 3(b) as one of multiple provisions that "conflict[s] with the Elections Clause, the Electors Clause, the NVRA, UOCAVA, HAVA, the [APA], and Congressional statutes establishing conditions on federal funding." *Id.* ¶ 243. It is unclear how section 3(d) violates the NVRA or the Help America Vote Act of 2002 (HAVA). Section 3(d) also does not implicate congressional appropriations in a way that might violate "Congressional statutes establishing conditions on federal funding." *Id.* Therefore, Plaintiffs' main argument is that section 3(d) is *ultra vires* because it exceeds the President's authority and violates UOCAVA. Neither argument succeeds.

---

[7] The APA itself provides a cause of action when a plaintiff wishes to challenge final agency actions as "contrary to constitutional right." 5 U.S.C. § 706(2)(B). So even if Plaintiffs' claims are constitutional, not statutory, the APA still provides adequate judicial review once the agencies take final action under each challenged section. Plaintiffs do not have a cause of action until then.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 9

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

The President has the authority to direct the Secretary of Defense to "update the Federal Post Card Application." EO § 3(d). Article II, section 1 of the Constitution provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. "[T]he President's power necessarily encompasses 'general administrative control of those executing the laws,' . . . throughout the Executive Branch of government, of which he is the head." *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926)); *see Myers*, 272 U.S. at 135 (the President "may properly supervise and guide [agency officials'] construction of the statutes under which they act in order to secure that unitary and uniform execution of the laws which [A]rticle [II] of the Constitution evidently contemplated in vesting general executive power in the President alone"). The President thus may permissibly direct his subordinates as to how they should exercise Executive power because all exercises of that power are subject to his supervisory authority. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213 (2020) ("The entire executive Power belongs to the President alone.").

Section 3(d) is clearly an exercise of that direction to a subordinate. That provision directs the Secretary to take certain actions "pursuant to [UOCAVA]," EO § 3(d), a statute that requires the President to select a designee, *see* 52 U.S.C. § 20301(a). The President has chosen the Secretary of Defense as his designee, *see* Exec. Order No. 12,642, 53 Fed. Reg. 21,975. Thus, UOCAVA itself establishes that the Secretary of Defense exercises the Executive authority of the President. The President can direct his designee to wield that power in a particular manner, provided that manner is "consistent with applicable law." EO § 11(b).

And Section 3(d)'s directive is consistent with "UOCAVA's statutory text and purpose." SJ Order at 54. That statute "facilitate[s] absentee voting by United States citizens, both military and civilian, who are overseas." *Reeves v. Nago*, 535 F. Supp. 3d 943, 948 (D. Haw. 2021). To

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 10

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

that end, the Secretary of Defense must, in consultation with State and local election officials, "prescribe an official post card form, containing both an absentee voter registration application and an absentee ballot application." 52 U.S.C. § 20301(b)(1), (2). Nothing in UOCAVA *limits* what kind of document requirements the Secretary of Defense may "prescribe" on the "official post card form." *Id.* § 20301(b)(2). Congress itself has made clear that UOCAVA voters must be "qualified to vote" in their "place[s] of residence" or "the last place in which [they were] domiciled before leaving the United States." *See, e.g.*, *id.* § 20310(1), (5). Being "qualified to vote" necessarily requires U.S. citizenship under federal law. *Id.* § 20310(1), (5); 18 U.S.C. §§ 611, 1015(f) (unlawful for any alien to vote in Federal elections); *see United States v. Alabama*, 998 F. Supp. 2d 1283, 1290 (M.D. Ala. 2014) (it "is an obvious given" "that UOCAVA is aimed at only federal elections"), *aff'd*, 778 F.3d 926 (11th Cir. 2015). Therefore, a directive that the Secretary of Defense update the FPCA to require "documentary proof of United States citizenship" and "proof of eligibility to vote in elections in the State in which the voter is attempting to vote" does not conflict with, and in fact aligns with and appropriately implements, UOCAVA's requirements. EO § 3(d). Any contrary suggestion is incorrect, particularly because at least one State, Arizona, already requires DPOC with the FPCA to receive a full ballot for state elections. *See* Ariz. Rev. Stat. § 16-166(F). There is no contention that Arizona's requirement violates UOCAVA.

The provision in 52 U.S.C. § 20301(b)(7) requiring the Secretary to "prescribe a standard oath for use with any document under this chapter affirming that a material misstatement of fact in the completion of such a document may constitute grounds for a conviction for perjury," does not suggest otherwise. That provision does not expressly relate to citizenship and does not implicitly forbid the Secretary from requiring DPOC under § 20301(b)(2). UOCAVA instructs States to "use the standard oath" if a "State requires an oath or affirmation to accompany any document," *id.* § 20302(a)(5), but that oath is not a substitute for proof of eligibility; it is a

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 11

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

mechanism to hold applicants accountable for the veracity of *all* statements they make in required application documents.[8]

Congress's instruction that the application be in "post card form" also does not preclude a DPOC requirement. *Id.* § 20301(b)(2). Requiring a "post card" might place some limit on the form of the voter registration application, but it precludes a DPOC requirement only if there is no way to provide DPOC within the confines of a "post card form." *Id.* There are no facts upon which this Court could rely to reach that conclusion. Indeed, the current FPCA is not a traditional "postcard" at all, but a two-page 8 ½ x 11 form which explains that applicants can either "[r]emove the adhesive liner from the top and sides" of the form and "[f]old and seal tightly," or, in the alternative, they may "print[ out] the form, fold it and seal it in an envelope." Post Card Form at 2. If § 20301(b)(2) requires a traditional post card, then the current FPCA is inconsistent with that statute regardless of the EO.

Finally, a DPOC requirement would not render the FPCA unusable for its intended purpose, *i.e.*, to facilitate absentee voting by United States citizens, both military and civilian, who are overseas. The FPCA already contemplates the submission of additional information or documents in the case of Arizona, Vermont, and Puerto Rico.[9] And visual inspection of the current FPCA reveals that it is no longer a traditional postcard. Because U.S. citizenship and voter eligibility are already required for UOCAVA voters, and UOCAVA does not prohibit including a DPOC requirement on the FPCA, section 3(d)'s directive does not violate UOCAVA.

---

[8] FVAP, *Interpretation of the Help America Vote Act of 2002: Based on the Requirements for U.S. Citizens Covered by the Uniformed and Overseas Citizens Absentee Voting Act*, at 14 (Aug. 2003), https://www.fvap.gov/uploads/FVAP/Policies/havamemo.pdf (stating the oath).

[9] Post Card Form at 1 (specifying in section 6 that Puerto Rico and Vermont require more information, providing a link to additional state guidelines, and indicating that the form may be used to clarify voter information); *see also* Arizona, Voting Assistance Guide at Section 6, https://www.fvap.gov/guide/chapter2/arizona (requiring DPOC for a full ballot).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 12

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

**IV.    Section 3(d) Does Not Violate State Sovereignty.**

Plaintiffs allege that section 3(d) deprives Plaintiff States of their authority under the Elections Clause. *See* Compl. ¶¶ 207, 213. But the "Elections Clause establishes a unique relationship between the state and federal governments." *Gonzalez v. Arizona*, 677 F.3d 383, 390 (9th Cir. 2012) (en banc), *aff'd sub nom.*, *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013). Article I, section 4 of the Constitution provides that State governments may choose "[t]he Times, Places and Manner of holding" federal elections, unless "Congress . . . make[s] or alter[s] such Regulations." U.S. Const. art. I, § 4, cl. 1. The Clause, in other words, "invests the States with responsibility for the mechanics of congressional elections, . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997). The Framers granted the federal government oversight over federal-election procedures to guard against potential state abuse. *Gonzalez*, 677 F.3d at 390 (explaining that "[n]othing can be more evident, than that an exclusive power of regulating elections for the national government, in the hands of the State legislatures, would leave the existence of the Union entirely at their mercy" (quoting The Federalist No. 59, at 168 (Alexander Hamilton) (Ron P. Fairfield ed., 2d ed.1981))). Additionally, "the Elections Clause requires states to implement Congress's superseding regulations without compensation from the federal government." *Id*. at 391. "Thus, unlike virtually all other provisions of the Constitution, the Elections Clause gives Congress the power to 'conscript state agencies to carry out' federal mandates." *Id*. (citation omitted); *see also Foster*, 522 U.S. at 69; *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 836 (6th Cir. 1997). The Elections Clause differs from the Supremacy Clause because it "affects only an area in which the states have no inherent or reserved power: the regulation of federal elections." *Gonzalez*, 677 F.3d at 392; *see also U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 805 (1995); *Arizona*, 570 U.S. at 13–14 (noting that the presumption against preemption does not apply to Elections Clause legislation).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 13

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

As part of its Elections Clause authority, Congress has established the EAC and charged it with "prescrib[ing] . . . regulations . . . necessary to . . . develop a mail voter registration application form for elections for Federal office." 52 U.S.C. § 20508(a)(1)–(2). It enacted the NVRA and directed states to "designate agencies for the registration of voters in elections for Federal office," including "Federal . . . offices." *Id*. § 20506(a)(1), (a)(3)(B)(ii). Congress also set forth in UOCAVA the requirement that the President's designee "shall . . . prescribe an official post card form, containing both an absentee voter registration application and an absentee ballot application, for use by the States." *Id*. § 20301(b)(2). Congress further enacted the Election Day statutes, specifying a "day for the election," 2 U.S.C. § 7; 3 U.S.C. § 1, which historically meant ballots should be cast and received on that date, *Republican Nat'l Comm. v. Wetzel*, 120 F.4th 200, 209 (5th Cir. 2024) ("History confirms that 'election' includes both ballot casting and ballot receipt."), *cert. granted sub nom. Watson v. Republican Nat'l Comm.*, 146 S. Ct. 355 (2025). All of these enactments preempt to some extent states' decisions regarding the times, places, and manner of holding federal elections. *See* U.S. Const. art. I, § 4, cl. 1. And as explained above, the President's directive to his designee in section 3(d) is consistent with and in furtherance of UOCAVA, which is one such enactment.

Because the Constitution vests "[t]he entire 'executive Power'" in the "President alone," he properly oversees and controls those who execute the laws. *Seila Law*, 591 U.S. at 213. Accordingly, the President acted within his authority to direct the Secretary of Defense to "update the Federal Post Card Application . . . to require . . . documentary proof of United States citizenship." EO § 3(d). Section 3(d) does not unlawfully commandeer Plaintiffs' personnel, infrastructure, and funds to implement a presidential decree.

**V.     Plaintiffs Are Not Entitled To A Permanent Injunction.**

An injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res.*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 14

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

*Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain permanent injunctive relief, Plaintiffs "must demonstrate (1) actual success on the merits; (2) that [they have] suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (citation omitted). The last two factors merge when, as here, the Government is the opposing party. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

For all the reasons given above, Plaintiffs have not shown success on the merits of their challenge to section 3(d) and thus are not entitled to permanent injunctive relief. Moreover, Plaintiffs have failed to meet the equitable factors for permanent injunctive relief as well, at least as of this writing.[10]

A.    There Is No Irreparable Injury.

Although Plaintiffs have not yet made any arguments about irreparable injury as to section 3(d) specifically, they will likely emphasize the same "substantial sovereign and financial injuries" that this Court found were sufficient to permanently enjoin other EO provisions. SJ Order at 70–71. However, as argued already, all of these supposed injuries are speculative at this point. *See supra* at 6–7. The Secretary of Defense has taken no action to update the FPCA, and until he does, Plaintiffs can only guess at the scale and type of harms they might suffer. "Speculative injury does not constitute irreparable injury[.]" *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Defendants also contest the "injuries to [Plaintiffs'] sovereign interests" as insufficient for a showing of irreparable harm. SJ Order at 23. Sovereign interests can create irreparable injury,

---

[10] Defendants reserve all rights to respond to any forthcoming arguments by Plaintiffs that their challenge of section 3(d) meets the equitable factors for permanent injunctive relief.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 15

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

*see, e.g., Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018), but section 3(d) simply directs the Secretary of Defense to enforce a statutory mandate that Congress has already enacted. *See supra* at 11. The Executive Order therefore does not impair Plaintiffs' sovereign interests any more than a duly enacted federal law would. *See* U.S. Const. art VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land[.]"). And to the extent that the relevant sovereign interest is "in regulating the Times, Places and Manner" of federal elections, SJ Order at 23 (citation modified), section 3(d) does not impair that interest beyond what the Constitution already allows, *see supra* at 13–14.

### B. The Equities And The Public Interest Do Not Favor An Injunction.

The Government's "inability to effectuate statutes enacted by representatives of the people" constitutes an injury to the Government and to the people who elected those representatives. *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 74 (1st Cir. 2025) (citation modified). As explained above, the Executive Order effectuates the mandate laid out by Congress in UOCAVA. The public interest therefore counsels against blocking the EO's lawful directive that the Executive Branch follow the law. *See CASA*, 606 U.S. at 861 ("[A]ny time [the Government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (citation omitted)).

## VI. If Plaintiffs Seek a Universal Injunction, That Injunction Is Overbroad.

Plaintiffs will likely ask the Court to enjoin section 3(d) nationwide, *i.e.*, to prohibit the Secretary from amending *any* of the 50 State-specific instructions on the FPCA to include a DPOC requirement, even though this litigation was brought by only two States. *See* ECF No. 123 at 8–10 (seeking a universal injunction against similar EO provisions).

That injunction would be inconsistent with *CASA*, which affirmed the "general rule" that "an injunction [can]not bind one who was not a party to the cause," and that courts should "rebuff[]

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 16

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

requests for relief that extend[] beyond the parties." 606 U.S. at 842–43 (citation omitted); *see id.* at 844 (noting "the party-specific principles that permeate our understanding of equity"); *id.* at 851 ("the complete-relief principle" does not "justif[y] the award of relief to nonparties"). The Court thus should not grant injunctive relief to States that chose not to join this litigation unless that indivisible relief is "all but impossible." *Id.* at 852 n.12.

But party-specific relief is possible here. Regulations governing the FPCA expressly require certain offices to provide applicants with "the State-specific instructions from the Voting Assistance Guide." 32 C.F.R. § 233.6(b)(1)(iv)(D); *see also* FVAP, *2026–27 Voting Assistance Guide* 23–455; https://www.fvap.gov/uploads/FVAP/States/eVAG.pdf (including instructions for each of the 50 States and the District of Columbia). In other words, the regulations acknowledge that the FPCA will be different depending on the State. The Court could, then, consistent with the regulations, prohibit the Secretary of Defense from adding a DPOC requirement to the State-specific instructions for these two Plaintiff States without prohibiting the addition of such a requirement in the instructions for the remaining States that chose not to join this lawsuit. That injunction would respect *CASA*'s admonition that courts can offer at most "complete relief *to the plaintiffs before the court*." 606 U.S. at 852.

## CONCLUSION

Defendants are entitled to summary judgment as to section 3(d).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 17

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

Dated: April 17, 2025                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         JOSEPH E. BORSON
                                         Assistant Director
                                         Civil Division, Federal Programs Branch

                                         */s/ Christian Dibblee*
                                         MARIANNE F. KIES
                                         CHRISTIAN DIBBLEE
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, NW
                                         Washington, D.C. 20005
                                         (202) 353-5980
                                         Christian.r.dibblee@usdoj.gov

                                         *Attorney for Defendants*

CERTIFICATE OF SERVICE

I, Christian Dibblee, hereby certify that I served a true copy of the above document upon all counsel of record via this court's electronic filing system and upon any non-registered participants via first class mail. I further certify that this motion contains 5,671 words.

Dated: April 17, 2026

/s/ *Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 19

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980