The Honorable John H. Chun

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

STATE OF WASHINGTON; and
STATE OF OREGON,

                    Plaintiffs,

        v.

DONALD TRUMP, in his official
capacity as President of the United States
of America, et al.,

                    Defendants.

NO.  2:25-cv-00602-JHC

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
MAY 15, 2026

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................... 1

II.  ARGUMENT ...................................................................................................................... 1

     A.   Plaintiff States Have Standing and Their Claim is Ripe ............................................ 1

     B.   Plaintiffs States Appropriately Rely on an Equitable Cause of Action ..................... 5

     C.   The Executive Order's Post Card Application Requirements are *Ultra Vires* .......... 8

     D.   Plaintiff States are Entitled to a Permanent Injunction ............................................ 11

          1.   The post card application DPOC requirement creates
               an irreparable injury ......................................................................................... 11

          2.   The equities and public interest favor an injunction ....................................... 11

          3.   The requested injunction is consistent with *CASA* ......................................... 12

III. CONCLUSION ................................................................................................................. 13

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

i

# TABLE OF AUTHORITIES

## Cases

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967),
  *abrogated on other grounds by*
  *Califano v. Sanders*,
  430 U.S. 99 (1977)......................................................................................... 4

*Coons v. Lew*,
  762 F.3d 891 (9th Cir. 2014) ......................................................................... 3

*Dalton v. Specter*,
  511 U.S. 462 (1994)........................................................................................ 6

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006)...................................................................................... 11

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)........................................................................................ 7

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
  __ F. Supp. 3d __, No. 25-0946 (CKK), 2026 WL 252420
  (D.D.C. Jan. 30, 2026) ................................................................................... 6

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
  780 F. Supp. 3d 135 (D.D.C. 2025)................................................................ 8

*Murphy Co. v. Biden*,
  65 F.4th 1122 (9th Cir. 2023) ..................................................................... 5, 6

*Nuclear Regulatory Commission v. Texas*,
  605 U.S. 665 (2025)..................................................................................... 6, 7

*Pharm. Rsch. & Mfrs. of Am. v. Stolfi*,
  153 F.4th 795 (2025),
  *cert pet. docketed*, No. 25-1018 ..................................................................... 2

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  591 U.S. 197 (2020)........................................................................................ 8

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) ....................................................................... 6, 7

*Smiley v. Holm*,
  285 U.S. 355 (1932)........................................................................................ 9

*Somerville Pub. Schs. v. McMahon*,
  139 F.4th 63 (1st Cir. 2025)......................................................................... 12

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Stockton v. Brown,*
    152 F.4th 1124 (9th Cir. 2025) ................................................................ 4, 5

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................................. 2

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) ................................................................................. 5, 6

**Constitutional Provisions**

Const. art. I, § 4, cl. 1 ................................................................................ 9, 10

**Statutes**

52 U.S.C. § 20301(b)(2) .............................................................................. 9

52 U.S.C. § 20301(b)(7) .............................................................................. 9

52 U.S.C. § 20508(b)(2) .............................................................................. 9

**Other Authorities**

Fed. Voting Assistance Program,
    *2026-27 Voting Assistance Guide,*
    https://www.fvap.gov/uploads/FVAP/States/eVAG.pdf
    (last visited May 14, 2026) ..................................................................... 13

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## I.    INTRODUCTION

The Constitution assigns responsibility for regulating federal elections—including setting voter registration requirements—to States, subject only to alteration by Congress. The President has no constitutional power with respect to elections.

Despite the absence of constitutional authority, the President asserts the power to dictate the manner in which would-be voters may register to vote, imposing burdens that are required by neither Plaintiff States nor Congress. To do so, the President relies on alleged statutory authority. But no statute authorizes the President to require the "documentary proof of citizenship" or additional "proof of eligibility" that he purports to mandate through section 3(d) of the executive order.

Defendants' attempts to keep the Court from reaching this straightforward conclusion on justiciability grounds all fail. Plaintiff States face an injury that is certain to occur, satisfying the "certainly impending" requirements of the injury-in-fact and constitutional ripeness requirements. This case also presents a purely legal question about the scope of presidential authority, satisfying prudential ripeness requirements. And for reasons this Court has already recognized, Plaintiff States appropriately rely on an equitable cause of action in asserting their constitutional *ultra vires* claims.

Because Plaintiff States also satisfy all of the required factors, this Court should enter a permanent injunction prohibiting Defendants from implementing section 3(d) of the executive order.

## II.    ARGUMENT

### A.    Plaintiff States Have Standing and Their Claim is Ripe

Defendants' motion for summary judgment confirms that Plaintiff States have standing to challenge section 3(d) of the executive order. Defendants do not dispute that the changes mandated by section 3(d) will injure Plaintiff States—in fact, they admit it: "Plaintiffs will suffer harms once the Secretary amends the [Federal Post Card Application (FPCA)] . . . ." Dkt. 138

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

1

at 13; *cf.* Dkt. 137 at 3-4 (establishing harms from section 3(d)'s requirements). Defendants also do not dispute that the executive order is the cause of those harms or that the injury would be redressed by judicial relief. *See* Dkt. 138 at 10-13. Instead, the essence of Defendants' standing argument is that the injury is not "certainly impending" or ripe. *Id.* at 12-13.

Defendants acknowledge that the changes directed by section 3(d) are certain. *See id.* at 13 ("Plaintiffs *will* suffer harms . . ." (emphasis added)). Defendants also carefully avoid suggesting any question as to *whether* the Secretary of Defense will make the changes required by section 3(d). *Id.* at 12 ("Nobody knows the details of *what* the Secretary will do to implement section 3(d)" (emphasis added)). Defendants' contentions essentially boil down to two arguments: (1) the Secretary has not *yet* begun implementing section 3(d), and (2) "the exact manner of implementation" is not yet known. *Id.* at 12-13. Neither argument undermines the conclusion that Plaintiff States have standing.

It is well established that a plaintiff need not wait until an injury is consummated in order to have standing. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-67 (2014) (discussing pre-enforcement challenges); *Pharm. Rsch. & Mfrs. of Am. v. Stolfi* (*Pharm. Rsch.*), 153 F.4th 795 (2025), *cert pet. docketed*, No. 25-1018 (holding that allegation of possible future release of trade secrets established injury in fact). As Defendants recognize, it is enough that the injury is "certainly impending." Dkt. 138 at 12-13. So, contrary to Defendants' implication, Dkt. 138 at 12, the fact that section 3(d) does not include a deadline for implementation does not mean that Plaintiff States lack standing.

This Court correctly recognized, in its previous summary judgment order, that the key inquiry in the "certainly impending" analysis is whether the action is sufficiently *certain* to occur. Dkt. 126 at 28. That decision is consistent with binding Ninth Circuit authority. *E.g.*, *Pharm. Rsch.*, 153 F.4th at 831 (concluding that "risk of future injury is sufficiently nonspeculative to establish an injury in fact" without identifying a specific date on which that risk of injury would occur). The only case that Defendants cite in support of their argument to

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

the contrary, *Coons v. Lew*, 762 F.3d 891 (9th Cir. 2014), is, in fact, entirely consistent with this Court's prior conclusion. In *Coons*, a physician challenged the creation of a federal advisory board, alleging that he could be harmed by reductions in Medicare payments he received. *Id.* at 896. But that was not certain to occur; it relied on a chain of speculative contingencies. In order for the harm to occur, first, the Chief Actuary of the Centers for Medicare and Medicaid would have to make a particular determination. *Id.* at 895. Next, the challenged advisory board would have to recommend lower Medicare reimbursements and specifically recommend lower Medicare reimbursements for the procedures the plaintiff provided. *Id.* at 895-96. And, even if the recommendation for lower reimbursements were made, Congress could veto it. *Id.* at 896. The Ninth Circuit unsurprisingly concluded that the alleged future financial harms were "not certainly impending." *Id.* at 898. That is in striking contrast to the certain harms in this case, which include financial costs, considerable staff time, and harm to Plaintiff States' sovereign right to administer elections. *See* Dkt. 136 at 11-12.

Defendants also miss the mark in again arguing that Plaintiff States' injuries are speculative because "the exact manner of implementation by the Secretary remains unknown at this time[.]" Dkt. 138 at 12. But the exact manner of implementation is not material. No matter how the Secretary implements section 3(d), the FPCA must "require" both "documentary proof of United States citizenship" and "proof of eligibility to vote in elections in the State[.]" Dkt. 1-1, § 3(d). Under the executive order, "documentary proof of United States citizenship" is defined to mean "*a copy* of" specified documents." *Id.*, § 2(a)(ii) (emphasis added). In addition, section 3(d) would "require" some type of additional "proof of eligibility[.]" *Id.*, § 3(d). Neither the precise words nor the formatting the Secretary may choose alter the fact that requiring additional information would require that Plaintiff States undertake costly software upgrades, considerable staff time to implement, and a significant public education effort. Dkt. 137 at 3-4.

Defendants' ripeness argument blends constitutional and prudential ripeness doctrines. Dkt. 138 at 12-13 (citing the constitutional portion of *Thomas v. Anchorage Equal Rts. Comm'n*,

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT No. 2:25-cv-00602-JHC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

220 F.3d 1134, 1138 (9th Cir. 2000), and the prudential portion of *Stockton v. Brown*, 152 F.4th 1124, 1149 (9th Cir. 2025)). Plaintiff States' challenge to section 3(d) is constitutionally ripe for the same reasons that they have established an injury in fact. *Stockton*, 152 F.4th at 1142 ("[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." (Brackets in original) (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022)).

Plaintiff States' challenge also satisfies prudential ripeness requirements. Prudential ripeness turns on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quoting *Project Veritas v. Schmidt*, 125 F.4th 929, 941(9th Cir. 2025) (en banc)). The fitness prong is satisfied here because, as this Court previously recognized, "the 'issues raised are primarily legal' and 'do not require further factual development.'" Dkt. 126 at 37 (quoting *Stavrianoudakis v. Fish & Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024)). That legal issue is whether the President has constitutional or statutory authority to order section 3(d)'s additions to the FPCA. Further factual development is not necessary because the executive order is final and the manner of implementation will not affect whether the President had authority to require the changes. In addition, withholding review of section 3(d) imposes a hardship on Plaintiff States because it has a "direct effect on the day-to-day business[.]"*Abbott Lab'ys v. Gardner*, 387 U.S. 136, 152 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Plaintiff States are actively preparing for the 2026 primary and general elections. Section 3(d) casts a pall over state voter registration requirements and is already creating voter confusion. Dkt. 137 at ¶ 12; *see also* Dkt. 42 at ¶¶ 13, 21 (discussing confusion from the documentary proof of citizenship (DPOC) requirements collectively); Dkt. 43 at ¶¶ 22-24 (same); Dkt. 44 at ¶ 7 (same); Dkt. 48 at ¶¶ 20-21. Addressing voter confusion is an integral aspect of the day-to-day business of election officials. Dkt. 40 at ¶ 15; Dkt. 42 at ¶¶ 22-23; Dkt. 43 at ¶ 23; Dkt. 44 at ¶ 7; Dkt. 48 at ¶ 20.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT No. 2:25-cv-00602-JHC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Defendants' reliance on *Stockton* does not support their prudential ripeness argument. In *Stockton*, the Ninth Circuit held that "further factual development would not just be helpful; it would be necessary." 152 F.4th at 1149. Here, by contrast, no such factual development would be helpful or necessary to adjudicate Plaintiffs' claims. For the reasons discussed above, the specific implementation is not material to the legal issues presented in this case.

In sum, Plaintiffs have standing to challenge section 3(d) of the executive order, and the challenge is ripe.

## B.     Plaintiffs States Appropriately Rely on an Equitable Cause of Action

The Supreme Court and Ninth Circuit have recognized the existence of an equitable cause of action to challenge executive orders. *See* Dkt. 126 at 40 & n.45. Defendants do not directly dispute the existence of this cause of action. *See* Dkt. 138 at 13-15. Instead, Defendants advance two arguments, contending that an equitable cause of action is unavailable because (1) "Plaintiffs' complaint alleges *statutory* violations . . . as to section 3(d)[,]" and (2) an existing statutory review scheme purportedly provides a meaningful and adequate opportunity for review. *Id.* Neither argument has merit.

Defendants' argument about allegations of statutory violations significantly misunderstands this Court's earlier order and the nature of Plaintiffs' claims. This Court did not hold or suggest "that any time the President allegedly violates statutory prohibitions he has" violated the separation of powers. Dkt. 138 at 14. Instead, this Court simply held that Plaintiff States had adequately pleaded an equitable cause of action challenging *ultra vires* presidential acts. Dkt. 126. This Court's holding was clearly correct. Under well-stablished case law, a plaintiff may rely on an equitable cause of action to challenge presidential acts that are *ultra vires* (i.e., acts for which the President has neither constitutional nor statutory authority). *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585-88 (1952). Plaintiff States pleaded that the President lacked both constitutional

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT No. 2:25-cv-00602-JHC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

and statutory authority for certain provisions of the executive order. *See, e.g.*, Dkt. 1 at 39 (¶¶ 226-33).

Plaintiff States' specific allegations that the challenged provisions of the executive order not only lacked authorization but were affirmatively *contrary* to laws adopted by Congress, *see* Dkt. 1 at 40 (¶ 243), is directly relevant to one of the core factors in challenges to *ultra vires* presidential action—whether the President's acts are "incompatible with the express or implied will of Congress[.]" *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring). Defendants' suggestion that alleging statutory violations precludes a plaintiff from relying on an equitable cause of action is inconsistent with *Youngstown* and its progeny. *See id.* at 586 (allowing equitable cause of action challenging law that was not justified by statute); *see also, e.g.*, *Murphy Co.*, 65 F.4th at 1130. While alleging a statutory violation may not be *sufficient* to justify an equitable cause of action, *Dalton v. Specter*, 511 U.S. 462, 471-74 (1994), neither is it a bar, *Sierra Club v. Trump*, 929 F.3d 670, 696-97 (9th Cir. 2019) ("The [*Dalton*] Court did not say . . . that action in excess of statutory authority can *never* . . . give rise to a constitutional claim."). Here, Plaintiff States alleged that the President's executive order is unconstitutional because the President possesses *neither* constitutional *nor* statutory authority to direct the specific challenged provisions of the executive order. An equitable cause of action is available for precisely this type of claim. *See Sierra Club*, 929 F.3d at 696-97 (9th Cir. 2019) (holding that plaintiffs could bring constitutional claim based on absence of statutory authorization and absence of "any background constitutional authority").

Defendants also incorrectly assert that *Nuclear Regulatory Commission v. Texas* (*NRC*), 605 U.S. 665 (2025), precludes an equitable cause of action here. The limitations discussed in *NRC* apply when plaintiffs bring strictly statutory *ultra vires* claims; they do not apply to an equitable cause of action asserting that the President's actions are *ultra vires* and violate the Constitution. *See League of United Latin Am. Citizens v. Exec. Off. of the President*, __ F. Supp. 3d __, No. 25-0946 (CKK), 2026 WL 252420, at *24-25 (D.D.C. Jan. 30, 2026) (contrasting a

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

"claim . . . based on a defendant's alleged violation of a federal statute" with a claim "seeking equitable relief from a *constitutional* violation, rather than a statutory one").

Even if *NRC* did apply, Defendants are simply incorrect in asserting that the Administrative Procedure Act provides "a means of adequately challenging section 3(d)[.]" Dkt. 138 at 13. As Defendants themselves previously pointed out, Plaintiff States "cannot sue the President under the APA." Dkt. 64 at 17 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). The challenged act in this case is the President's executive order and, because "the President is not an agency within the meaning of the [APA] . . . there is no final agency action that may be reviewed under the APA standards." *Franklin*, 505 U.S. at 796. The APA does not provide "a meaningful and adequate opportunity for judicial review" of the challenged provisions of the executive order. *NRC*, 605 U.S. at 681 (quoting *Bd. of Governors, FRS v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)).

Defendants ask this Court to adopt a novel limitation on constitutional challenges to *ultra vires* presidential action. Specifically, they contend that such challenges are not available unless the President's action is "self-executing." Dkt. 138 at 14. Tellingly, Defendants provide no authority for this proposition. The only case Defendants cite is *NRC*, which involved neither a presidential action nor a constitutional challenge. Defendants' argument is also inconsistent with *Sierra Club*, which held that a plaintiff may bring a "challenge through an equitable action to enjoin unconstitutional official conduct, or under the judicial review provisions of the [APA] . . . or both." 929 F.3d at 694. This makes clear that a presidential directive may be challenged through an equitable action even where a plaintiff can also challenge implementation of the unlawful directive under the APA.

In denying Defendants' motion to dismiss, this Court correctly concluded that Plaintiff States "have an equitable cause of action to support their separation-of-powers challenge[ ]" to section 3(d) of the executive order. Dkt. 126 at 41. That remains true.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

7

**C.      The Executive Order's Post Card Application Requirements are *Ultra Vires***

The President has no constitutional or statutory authority to add additional substantive requirements for members of the military or overseas citizens to register to vote using the Federal Post Card Application. *See* Dkt. 136 at 13-17. Each of Defendants' arguments to the contrary is wrong.

Defendants first argue that the President may direct the manner in which his subordinates exercise executive authority. Dkt. 138 at 16. That is a far more dubious proposition than Defendants suggest. While the Supreme Court has recognized a broad power for the president to *remove* executive officers, *see Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 213-17 (2020), it has not recognized an absolute power to dictate the manner in which executive officers perform duties assigned by Congress, *see League of United Latin American Citizens v. Executive Office of the President*, 780 F. Supp. 3d 135 (D.D.C. 2025) (rejecting nearly identical argument as "unsupported by even a maximalist view of 'the executive power' under our Constitution"). That approach would hollow out the Administrative Procedure Act, rendering its public-notice-and-comment requirements empty gestures where the President has dictated a result of the rulemaking process. But this Court need not resolve the full scope of the President's authority here because Defendants acknowledge that the President cannot direct his subordinates to act in a manner that is inconsistent with federal law. Dkt. 138 at 16.

The key problem for Defendants is that section 3(d) is inconsistent with statutory requirements. Contrary to Defendants' suggestion, Congress *did* impose limits on the contents of the FPCA. As explained in Plaintiff States' summary judgment motion, section 3(d) is inconsistent with the verification method—an oath—chosen by Congress, Congress's directive that it is to be a "post card form," and the very purpose underlying UOCAVA. Dkt. 136 at 14-17.

Defendants' arguments regarding the oath are unpersuasive. Defendants state that the oath requirement "does not expressly relate to citizenship[.]" Dkt. 138 at 17. That's only half true. It is true that the clause in which the oath requirement appears does not use the word

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

"citizenship." 52 U.S.C. § 20301(b)(7). But the oath requirement undeniably *applies* to the FPCA and its contents (including the citizenship requirement); indeed the oath requirement appears in the same subsection as the requirement to "prescribe an official post card form." 52 U.S.C. § 20301(b)(2), (7). So the oath requirement *does* expressly relate to the FPCA and its contents, including citizenship. Notably, this method of citizenship verification is the same method of verification Congress required for the Federal "mail voter registration form" that all states must accept and use for federal elections, 52 U.S.C. § 20508(b)(2), which confirms that Congress intended a signed oath to be the required method of verification. *See* Dkt. 126 at 48-49 (concluding that the DPOC requirement for Federal mail voter registration form "cannot be said to stem directly from the NVRA").

Defendants also inappropriately discount the importance of Congress's choice of the term "post card form." *See* Dkt. 138 at 18. Defendants acknowledge that "[r]equiring a 'post card' might place some limit on the form of the voter registration application." *Id.* But they also contend that because the current FPCA is a double-sided "8 ½ x 11" form, the statute must also permit an FPCA that meets section 3(d)'s requirements. *Id.* But accepting the validity of the current FPCA—and Plaintiff States do not challenge it—does not undermine the argument that section 3(d)'s requirements are inconsistent with UOCAVA. While no party contends that "post card" requires a particular size, it necessarily denotes a form that can be completed and returned without any attachments or enclosures. Section 3(d) is squarely incompatible with that statutory directive, requiring "a copy" of specified documents. Dkt. 1-1 at § 2(a)(ii) (defining "documentary proof of United States citizenship").

Defendants' reference to Arizona, Vermont, and Puerto Rico is a red herring. The FPCA does not require additional information for those jurisdictions; the jurisdictions *themselves* require additional information. This is not wordplay; instead, it reflects the Constitution's allocation of authority to States to set voter registration requirements in the first instance. *See* Const. art. I, § 4, cl. 1; *see also Smiley v. Holm*, 285 U.S. 355, 366 (1932) (recognizing that

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

delegation to States in Elections Clause "embrace[s] authority to provide a complete code for congressional elections, not only as to times and places, but in relation to . . . registration . . .”). It is one thing for States to require additional information, as authorized by the Elections Clause; it is quite another for the President, who has no constitutional election authority, to attempt to do so. Moreover, none of these require that voters include additional documentation with the FPCA. The instructions for Vermont and Puerto Rico simply involve additional writing on the form itself. Dkt. 1-5 at 3. Arizona doesn't require anything additional to use the FPCA; returning the FPCA is sufficient to register to vote for federal elections in Arizona. While voters may provide additional documentation to vote in Arizona's *state* elections, that says nothing about what the FPCA itself requires.[1]

Defendants' arguments about section 3(d)(ii)'s requirement are also wrong. True, the form can require the information necessary to determine whether a voter registration applicant is eligible to vote in the jurisdiction, including the U.S. address at which the applicant seeks to register, which is generally the applicant's last address or domicile before moving from the state of residence. *See* Dkt. 138 at 17 (citing 52 U.S.C. § 20310(1), (5)). The FPCA already requires that information. Dkt. 1-5 at 2. Section 3(d) purports to mandate that the FPCA require something more, issuing a mandatory directive that the Secretary of Defense "shall update" the form "to require" additional "proof of eligibility to vote in elections in the State in which the voter is attempting to vote." Dkt. 1-1, § 3(d)(ii). UOCAVA does not give the President or the Secretary the power to impose additional substantive requirements in order to register to vote when using the FPCA.

The President has no authority to impose the voter registration mandates set forth in section 3(d) of the executive order. The Constitution provides no authority for the President to

---

[1] As a related point, *allowing* voters to return the FPCA in an envelope that can hold additional documentation is entirely consistent with Congress's use of the term "post card form"; that phrase only prohibits the Secretary of Defense from *requiring* a non-post card format.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

regulate elections, and the changes in section 3(d) are not authorized by any federal statute. It follows that section 3(d) is *ultra vires*.

### D.    Plaintiff States are Entitled to a Permanent Injunction

This Court should enter a permanent injunction prohibiting the Secretary of Defense from implementing the changes mandated by section 3(d) of the executive order. Plaintiff States have established actual success on the merits for the reasons discussed above, and Defendants do not expressly contest "that remedies available at law . . . are inadequate to compensate for" the injuries imposed. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The only factors challenged by Defendants are the existence of an irreparable injury and whether the equities and public interest justify an injunction. Plaintiff States have made both showings. In addition, the scope of the injunction is necessary to provide complete relief to Plaintiff States.

#### 1.    The post card application DPOC requirement creates an irreparable injury

Plaintiff States have demonstrated irreparable injuries in the form of sovereign and financial harms from section 3(d) of the executive order. Dkt. 136 at 17. Contrary to Defendants' position, Dkt. 138 at 21, those harms are not speculative. As discussed above in the context of standing and ripeness, there is no dispute that those harms are certain to occur. No matter how the Secretary of Defense implements the DPOC and additional proof-of-eligibility requirements on the FPCA, those changes will require costly updates to voter registration databases and additional staff time to implement procedures, engage in public education efforts, and process FPCA forms. Dkt. 137 at 3-4. Those are financial injuries. There are also sovereign injuries. Dkt. 136 at 11-12. Defendants' argument that section 3(d) only "enforce[s] a statutory mandate that Congress has already enacted," Dkt. 138 at 22, is incorrect because, as discussed above, section 3(d) is actually *inconsistent* with statutory requirements.

#### 2.    The equities and public interest favor an injunction

Defendants make only a very narrow argument about the balance of hardships and the public interest, arguing that the federal government is injured by its supposed "inability to

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

effectuate statutes enacted by representatives of the people." Dkt. 138 at 22 (quoting *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 74 (1st Cir. 2025)). But that is based on Defendants' mistaken view that section 3(d) effectuates the UOCAVA. *See id.* In fact, for the reasons discussed above, the requirements in section 3(d) do no such thing; section 3(d) actually *undermines* UOCAVA by imposing new requirements that are inconsistent with that law. In that light, the *Somerville* case on which Defendants rely strongly supports Plaintiff States. In *Somerville Public Schools*, the federal government defendants made a very similar argument to the one made here, and the First Circuit aptly pointed out that "[t]hey cite no authority . . . to support the contention that the Executive Branch suffers irreparable harm by being required to carry out Congress's duly enacted statutes." 139 F.4th at 74. Ensuring that the federal government continues to faithfully carry out its duties required by UOCAVA would be the result of an injunction against enforcement of section 3(d) of the executive order.

### 3. The requested injunction is consistent with *CASA*

An injunction against implementing section 3(d) is necessary to afford complete relief to Plaintiff States. Dkt. 136 at 18. There is only a single "Federal Post Card Application"; Defendants cannot make a separate application available to individuals who intend to register to vote in Plaintiff States because they will not know, in advance, in which state a particular person accessing the application intends to register to vote.

Defendants propose a creative but ultimately inadequate alternative remedy that is specific to Plaintiff States. Defendants suggest that this "Court could . . . prohibit the Secretary of Defense from adding a DPOC requirement to the State-specific instructions" in the Voting Assistance Guide "for these two Plaintiff States without prohibiting the addition of such a requirement in the instructions for the remaining States that chose not to join this lawsuit." Dkt. 138 at 23. There is, however, a very basic problem with that suggestion. Section 3(d) does not direct the Secretary of Defense to update the "Voting Assistance Guide"—it directs the Secretary to "update the *Federal Post Card Application*[.]" Dkt. 1-1, § 3(d) (emphasis added).

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT No. 2:25-cv-00602-JHC

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

These are distinct documents. The Federal Post Card Application is a double-sided single-page document. Dkt. 1-5; 52 U.S.C. § 20301(c)(2). The Voting Assistance Guide is a 498 page book. *See* Fed. Voting Assistance Program, *2026-27 Voting Assistance Guide*, https://www.fvap.gov/uploads/FVAP/States/eVAG.pdf (last visited May 14, 2026). Not all persons completing the Federal Post Card Application will review the Voting Assistance Guide.

Because section 3(d) requires updating the Federal Post Card Application itself, an injunction against implementing section 3(d) of the executive order is necessary to provide Plaintiff States complete relief.[2]

### III.    CONCLUSION

Because section 3(d) of the executive order is entirely beyond the President's authority, this Court should grant summary judgment to Plaintiff States and enjoin Defendants from implementing it. As reflected in Plaintiff States' proposed order, *see* Dkt. 136-1 at 2, this injunction should be limited to implementing the unconstitutional executive order and not prohibit Defendants from making any other lawful changes authorized by Congress.

DATED this 15th day of May, 2026.

I certify that this memorandum contains 4,426 words, in compliance with the Local Civil Rules

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*

NOAH G. PURCELL, WSBA 43492
*Solicitor General*

*s/ Karl D. Smith*
KARL D. SMITH, WSBA 41988
*Deputy Solicitor General*

---

[2] This relief would not, of course, prevent the Secretary of Defense from independently making changes to the Voting Assistance Guide or even the FPCA. To the extent those independent actions were unlawful, Plaintiff States' relief would lie outside the injunction.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

WILLIAM MCGINTY, WSBA 41868
KELLY A. PARADIS, WSBA 47175
ALICIA O. YOUNG, WSBA 35553
  *Deputy Solicitors General*
FREEMAN E. HALLE, WSBA 61498
ZANE MULLER, WSBA 63777
  *Assistant Attorneys General*
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
karl.smith@atg.wa.gov
noah.purcell@atg.wa.gov
william.mcginty@atg.wa.gov
kelly.paradis@atg.wa.gov
alicia.young@atg.wa.gov
freeman.halle@atg.wa.gov
zane.muller@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

DAN RAYFIELD
Attorney General
State of Oregon

*s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL*
CARLA A. SCOTT, WSBA #39947
*Senior Assistant Attorneys General*
KATE E. MORROW*
*Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
brian.s.marshall@doj.oregon.gov
carla.a.scott@doj.oregon.gov
kate.e.morrow@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*
*Admitted Pro hac vice

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
No. 2:25-cv-00602-JHC

14