The Honorable John H. Chun

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON and STATE OF OREGON,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *in his official capacity as President of the United States, et al.*,<br><br>Defendants. | CASE NO.  2:25-cv-602-JHC<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 1

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 2

    I.     Plaintiffs' Challenge To Section 3(d) Is Not Justiciable. ...................................... 2

        A.   Plaintiffs Lack Standing.............................................................................. 2

        B.   Plaintiffs' Claim Is Not Ripe. ..................................................................... 3

    II.    Plaintiffs Do Not Have An Equitable Cause Of Action. ...................................... 4

    III.   Section 3(d) Is Not Ultra Vires. .......................................................................... 6

    IV.   The Court Should Not Permanently Enjoin Section 3(d). .................................... 9

    V.    Plaintiffs' Requested Injunction Is Overbroad. .................................................. 10

CONCLUSION............................................................................................................. 12

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - i

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

**TABLE OF AUTHORITIES**

**Cases**

*Boire v. Greyhound Corp.*,
376 U.S. 473 (1964) ................................................................................................ 6

*Coons v. Lew*,
762 F.3d 891 (9th Cir. 2014) ................................................................................. 2

*Doe v. San Diego Unified Sch. Dist.*,
19 F.4th 1173 (9th Cir. 2021) ................................................................................ 9

*Edmo v. Corizon, Inc.*,
935 F.3d 757 (9th Cir. 2019) ................................................................................. 9

*Foster v. Love*,
522 U.S. 67 (1997) ................................................................................................ 10

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) ........................................................................................... 5, 6

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007) ................................................................................. 3

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ............................................................................................... 3

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000) .............................................................................. 4

*Thomas v. Cnty. of Humboldt*,
124 F.4th 1179 (9th Cir. 2024) ............................................................................. 4

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ............................................................................... 1, 10, 11, 12

*Trump v. New York*,
592 U.S. 125 (2020) ........................................................................................... 3, 4

*Washington v. Trump*,
145 F.4th 1013 (9th Cir. 2025) ............................................................................ 12

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - ii

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

**U.S. Constitution**

U.S. Const. art. I, §4, cl. 1 ................................................................................................ 10

U.S. Const. art. VI, cl. 2 .................................................................................................... 10

**Statutes**

5 U.S.C. § 706(2) ............................................................................................................... 5

52 U.S.C. § 20301(b) ..................................................................................................... 6, 7

52 U.S.C. § 20302(i) .......................................................................................................... 7

52 U.S.C. § 20303(a) ......................................................................................................... 8

52 U.S.C. § 20310(1) ......................................................................................................... 8

52 U.S.C. § 20310(5) ......................................................................................................... 8

Federal Voting Assistance Act of 1955, Pub. L. No. 84-296, 69 Stat. 584 ...................... 8

Soldier Voting Act of 1942, Pub. L. No 77-712, 56 Stat. 753 .......................................... 8

**Regulations**

32 C.F.R. § 233.6(b) ......................................................................................................... 11

**Executive Orders**

Exec. Order No. 12,642, 53 Fed. Reg. 21,975 (June 8, 1988) .......................................... 6

Preserving and Protecting the Integrity of American Elections,
    Exec. Order No. 14,248, 90 Fed. Reg. 14,005 (Mar. 25, 2025) ....................... 1, 2, 4, 6, 8, 9, 10

**Other Authorities**

Ariz. Rev. Stat. § 16-166(F) ............................................................................................... 7

Federal Post Card Application (Rev. 01-2023),
    https://www.fvap.gov/uploads/fvap/forms/fpca.pdf ................................................. 8, 11

FVAP, *2026–27 Voting Assistance Guide* 23–455,
    https://www.fvap.gov/uploads/FVAP/States/eVAG.pdf ............................................ 11

H.R. Rep. No. 99-765 at 6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2009, 2010 ............ 9

*Notarize*, Black's Law Dictionary (12th ed. 2024) ......................................................... 7

*Postcard*, Am. Heritage Dictionary (5th ed. 2022),
https://perma.cc/QC9N-HLF3 ............................................................................................. 8

*Postcard*, Webster's New World College Dictionary 1124 (4th ed. 2008) .................................... 8

*Prohibition*, Webster's New World College Dictionary 1147 (4th ed. 2008) ............................... 6

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - iv

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

**INTRODUCTION**

Through Executive Order No. 14,248, "Preserving and Protecting the Integrity of American Elections," the President has endeavored to enforce and effectuate federal statutory mandates regarding the conduct of elections.  90 Fed. Reg. 14,005 (Mar. 25, 2025) (EO).  That effort includes a directive in Section 3(d) of the EO to the Secretary of Defense to update the Federal Post Card Application to require documentary proof of citizenship (DPOC) from overseas and military voters.  The motion for summary judgment as to Section 3(d) from Plaintiffs Washington and Oregon fundamentally misconstrues that provision as self-executing.  *See* Pls. Mot. for Summ. J., ECF No. 136 (Pls. Mot.).  It is not—Section 3(d) requires future action by the Secretary.  He has yet to take any such action, nullifying Plaintiffs' challenge to Section 3(d) for lack of standing and ripeness.  Plaintiffs also continue to ignore recent Supreme Court precedent foreclosing an equitable *ultra vires* cause of action when, as here, the Administrative Procedure Act (APA) provides an opportunity for meaningful review if and when the Secretary of Defense takes actions pursuant to Section 3(d).

Plaintiffs' merits arguments also continue to fail.  Section 3(d)'s directive is consistent with, and indeed enforces, a statutory mandate that Congress included in the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA).  Because their claims lack merit, Plaintiffs are not entitled to a permanent injunction against Section 3(d).  But even if they could succeed on the merits, Plaintiffs fail to meet the equitable factors justifying permanent injunctive relief.

For those reasons, the Court should deny Plaintiffs' Motion and grant Defendants' Motion for Partial Summary Judgment.  *See* Defs. Mot. for Partial Summ. J., ECF No. 138 (Defs. Mot.).  To the extent the Court disagrees and decides to issue injunctive relief, the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025), forecloses Plaintiffs' requested

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 1

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

nationwide injunction.  This Court can and should grant a narrower injunction that gives relief only to the two States in this lawsuit.

ARGUMENT[1]

**I.      Plaintiffs' Challenge To Section 3(d) Is Not Justiciable.**

      **A.  Plaintiffs Lack Standing.**

Section 3(d) directs the Secretary of Defense to update the Federal Post Card Application (FPCA) pursuant to UOCAVA to require documentary proof of U.S. citizenship "as defined by [EO] section 2(a)(ii)," and "proof of eligibility to vote in elections in the State in which the voter is attempting to vote."  EO § 3(d).

Plaintiffs' arguments about the justiciability of their claim suffer from a fatal flaw:  it is undisputed that the Secretary of Defense has taken no action to update the FPCA pursuant to the EO and that the EO lacks any deadline for him to do so.  Precisely because the Secretary has taken no action, there are no facts in the record to suggest what "proof of eligibility" might suffice for purposes of 3(d)(ii).  Thus, it remains to be seen how the Secretary will implement Section 3(d) and whether he will do so consistent with any statutory limitations.  In response, Plaintiffs assert injuries to their pocketbooks and their "sovereign capacities[,]" Pls. Mot. 6, but those alleged injuries might occur, if at all, only once the Secretary takes action to implement Section 3(d).  Since he has not done so, the various injuries claimed by Plaintiffs "are highly speculative and are not certainly impending," meaning Plaintiffs lack standing for their claim.  *Coons v. Lew*, 762 F.3d 891, 898 (9th Cir. 2014).

---

[1] Defendants again acknowledge that this Court denied their motion to dismiss and rejected arguments made in opposition to Plaintiffs' motion for summary judgment as to other provisions of the Executive Order.  As in their Motion for Partial Summary Judgment, Defendants respectfully submit that the Court's decision was error, and they re-raise many arguments for, among other things, preservation purposes.  *See* Defs. Mot. 4 n.5.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 2

In short, "the source of any injury to the plaintiffs is the action that the [government] *might* take in the future to" implement the Executive Order—"not the policy itself 'in the abstract[.]'" *Trump v. New York*, 592 U.S. 125, 133–34 (2020) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009)) (dismissing pre-implementation challenge to Presidential Memorandum on standing and ripeness grounds).  This suit must therefore fail because it challenges (and only could challenge) Section 3(d) itself.  The future implementation actions that Plaintiffs fear have not occurred as of the date of this filing.  And they certainly did not exist on the day this litigation began.  *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) ("The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint.").

At the very least, the Court should not rely on any asserted pocketbook injury to the State of Oregon as a basis for standing (and thus relief as to that State).  Plaintiffs have presented a declaration from Washington's Director of Elections asserting certain financial injuries from Section 3(d), but that declaration makes no assertions or representations about financial costs to Oregon.  *See* Second Decl. of Stuart Holmes ¶¶ 2–3, 10–14, ECF No. 137.

Because Plaintiffs' injuries are speculative, they are not traceable to the EO.  *Contra* Pls. Mot. 7.  Plaintiffs say that there is "no requirement for Plaintiff States to process and securely retain DPOC in connection with [FPCAs] nor is there a requirement for any additional 'proof of eligibility[,]'" but that fact helps *Defendants'* arguments.  *Id.*  There is still no such requirement precisely because the Secretary has not acted under Section 3(d) in any way.  *Id.*

**B.  Plaintiffs' Claim Is Not Ripe.**

For similar reasons, Plaintiffs' claim is not ripe either.  Plaintiffs neither present nor even forecast the details of what the Secretary will do to implement Section 3(d).  Nor could they since, again, the Secretary has not done anything yet or given any indication whether and when he might

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 3

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

act. "At present, this case is riddled with contingencies and speculation that imped[e] judicial review." *Trump*, 592 U.S. at 131; *see also Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) (concluding that case which was "devoid of any specific factual context" was not ripe). In that sense, this case is unlike the case cited by Plaintiffs where the Ninth Circuit held that a challenge to a municipal fine system was ripe. *See Thomas v. Cnty. of Humboldt*, 124 F.4th 1179, 1190–91 (9th Cir. 2024). The plaintiffs there were "the object of a government action"—and the case was therefore ripe—because a municipality had actually imposed penalties on them. *Id.* at 1190 (citation modified). By contrast, the Secretary has not subjected Plaintiffs to any action under Section 3(d), nor has there been any similar "coercive force" requiring Plaintiffs to "modify their behavior." *Id.* (citation modified). And although Plaintiffs emphasize that "[t]here is no delay to the effective date of Section 3(d)[,]" Pls. Mot. 7–8, they do not dispute that there is no deadline for that section either. The Secretary therefore need not act imminently, and until he does, the dispute over Section 3(d)'s validity remains too "abstract" for Plaintiffs' claim to be ripe. *Anchorage Equal Rts. Comm'n*, 220 F.3d at 1138. Instead, the Court should "[l]et[] the Executive Branch's decisionmaking process run its course," *Trump*, 592 U.S. at 134, without prejudice to the possibility of exercising judicial review later, if necessary, over any final agency action that Plaintiffs allege causes them injury.

## II.      Plaintiffs Do Not Have An Equitable Cause Of Action.

Even if there were jurisdiction, Defendants are entitled to summary judgment because Plaintiffs lack a cause of action to challenge Section 3(d). Plaintiffs restate their reliance on "a non-statutory equitable cause of action" that supposedly gives them an opportunity to seek judicial review now, Pls. Mot. 4, but they continue to misapprehend how the EO works. It is not self-executing but rather directs future agency actions "consistent with applicable law and subject to the availability of appropriations." EO § 11(b). Those future actions include the Secretary's steps

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 4

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

to update the FPCA, which in turn requires even more action by the Department of Defense. Whether those actions are future or present matters because a non-statutory *ultra vires* cause of action applies only if no other avenue for judicial review exists.

An avenue for judicial review does exist here. Plaintiffs will be able to challenge under the APA any actions taken pursuant to Section 3(d) once they occur, either on statutory or constitutional grounds. *See* 5 U.S.C. § 706(2)(B)–(C) (allowing a court to "hold unlawful and set aside agency action" as "contrary to constitutional right," "in excess of statutory jurisdiction," or "short of statutory right"); *see also* Defs. Mot. 7–8. A challenge to an executive order in the abstract may not be cognizable under the APA, *see* Pls. Mot. 5, but a challenge against final agency actions taken in response to an executive order is. And it is those indeterminate, future actions which Plaintiffs speculate will violate the law. *See* Compl. ¶ 243, ECF No. 1 (alleging that various sections of the EO including Section 3(d) "direct actions that conflict with" various legal authorities). In such circumstances where the APA "provides aggrieved persons with a meaningful and adequate opportunity for judicial review," non-equitable *ultra vires* review is unavailable. *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citation omitted).

Plaintiffs dispute the applicability of *Nuclear Regulatory Commission*, saying it is "markedly different" from this case. Pls. Mot. 5. Defendants have already explained why *Nuclear Regulatory Commission* applies and why the Court's previous ruling to the contrary was in error. *See* Defs. Mot. 8. Plaintiffs are also wrong to argue that their challenge somehow fits into *Nuclear Regulatory Commission*'s framework. *See* Pls. Mot. 5. There, the Supreme Court held that *ultra vires* review is available only when an agency acts "contrary to a *specific prohibition*." *Nuclear Regul. Comm'n*, 605 U.S. at 681. Plaintiffs have identified no prohibition—*i.e.*, a legal requirement that the President or the agency can*not*, must *not*, or shall *not* take a certain action. Rather, they identify a "specific *requirement*" that Defendants supposedly violated, Pls. Mot. 5

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 5

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

(emphasis added), namely that the Secretary "shall . . . prescribe an official post card form," 52 U.S.C. § 20301(b)(2).  That is not "an order or law that *forbids*" something, but rather a law that requires something.  *Prohibition*, Webster's New World College Dictionary 1147 (4th ed. 2008).  *Ultra vires* review is unavailable to challenge such a requirement.  As the Supreme Court said explicitly, the exception permitting *ultra vires* review of agency actions "does not apply simply because an agency has arguably reached a conclusion which does not comport with the law." *Nuclear Regul. Comm'n*, 605 U.S. at 681 (quoting *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964)).  It must be a "*specific prohibition*" that is allegedly violated.  *Id.*  Although Plaintiffs identify plenty of laws (like UOCAVA's post-card requirement) with which they say the EO and the actions it authorizes "do[] not comport," *id.*, they do not identify a specific prohibition, *see* Pls. Mot. 5.  Accordingly, they lack an equitable *ultra vires* cause of action for their claim.  *Accord* Defs. Mot. 7–9.

**III.    Section 3(d) Is Not Ultra Vires.**

Turning to the merits, Plaintiffs fail to show why Section 3(d) is *ultra vires*.  Plaintiffs begin by stating that "[t]he Constitution does not authorize the President to require DPOC or additional proof of eligibility." Pls. Mot. 8.  But as explained in Defendants' motion, the Executive Power vested in the President allows him to direct subordinates on how to exercise that power. *See* Defs. Mot. 10.  And because the Secretary is the presidential designee for purposes of UOCAVA, *see* Exec. Order No. 12,642, 53 Fed. Reg. 21,975 (June 8, 1988), the President can direct the Secretary how to wield executive power so long as doing so is "consistent with applicable law," EO § 11(b).

The directive in both subsections of Section 3(d) is consistent with UOCAVA, which does not limit the kind of document requirements the Secretary of Defense may "prescribe" on the "official post card form."  52 U.S.C. § 20301(b)(2); *see* Defs. Mot. 10–12.  In arguing otherwise,

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 6

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

Plaintiffs read too much into the "standard oath" required by 52 U.S.C. § 20301(b)(7). *See* Pls. Mot. 9. That provision does not relate expressly to citizenship. Instead, it creates a mechanism to hold applicants accountable for the truthfulness of all statements made in the application documents. Accountability, however, is not the same as proof of eligibility, and Congress requiring the former does not preclude requiring the latter. Similarly, prohibiting States from refusing to accept an application due to "[n]otarization requirements" does not foreclose a DPOC requirement. 52 U.S.C. § 20302(i)(1) (cited at Pls. Mot. 9). A notarization requirement would require an applicant to attest before a third party "to the authenticity of . . . a signature." *Notarize*, Black's Law Dictionary (12th ed. 2024). DPOC fulfills an entirely different purpose—attesting to a person's eligibility to vote. As with the standard oath, a prohibition on requirements that serve a function different from establishing eligibility to vote does not prohibit requiring DPOC. Indeed, at least one State already requires DPOC with the FPCA, notwithstanding the congressional prohibition on notarization requirements. *See* Ariz. Rev. Stat. § 16-166(F).

A DPOC requirement also is not "inconsistent with Congress's use of the term 'post card form'" in 52 U.S.C. § 20301(b). Pls. Mot. 10. The term "post card" might place some limit on the form of the voter registration application, but it would preclude a DPOC requirement only if there is no way to provide DPOC within the confines of a "post card form." Plaintiffs have provided no facts upon which this Court could rely to reach that conclusion except to suggest that requiring "at least two discrete items" is somehow impermissible. *Id.* But as noted above, at least one State requires DPOC along with the FPCA, *see* Ariz. Rev. Stat. § 16-166(F), and Plaintiffs make no argument that Arizona's law violates UOCAVA. And again, until the Secretary prescribes an FPCA that requires DPOC, the Court lacks indicia to conclude whether it would be a "post card" or not.

Plaintiffs' citation of two historical statutes also does not help them. *See* Pls. Mot. 10. In

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 7

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

one example, Congress directed the exact content of applications, and that content was short enough to fit on a traditional post card. *See Postcard*, Am. Heritage Dictionary (5th ed. 2022), https://perma.cc/QC9N-HLF3 (defining a post card as something containing a "short" message); *Postcard*, Webster's New World College Dictionary 1124 (4th ed. 2008) (same). The Soldier Voting Act of 1942 directed one side of the application to contain an application statement of no more than 14 lines and on the other side only three lines of text. *See* Pub. L. No 77-712 § 3, 56 Stat. 753, 753–54. UOCAVA imposes no similar limits on the contents of the FPCA. And today's FPCA is not a traditional post card nor does it contain a "short" message. *See* Federal Post Card Application (Rev. 01-2023), https://www.fvap.gov/uploads/fvap/forms/fpca.pdf. As for the other statute, it specifies the extent of Congress's authority and, by extension, reinforces how UOCAVA does not require a particular form of mail. In the Federal Voting Assistance Act of 1955, Congress directed that the application should be "approximately nine and one-half by four and one-eighth inches in size." Pub. L. No. 84-296 § 204(a), 69 Stat. 584, 586. If Congress wished to specify the form of the "mail piece" that ultimately became the FPCA, Pls. Mot. 10, it could have done so in UOCAVA, as it had done in 1955. But it did not, and UOCAVA therefore allows for greater flexibility than the rigid interpretation of "post card form" that Plaintiffs proffer.

The EO also does not conflict with "Congress's purpose in adopting the 'post card form' requirement." *Id.* at 11. Plaintiffs would have the Court believe that anything which makes voting even slightly more difficult conflicts with UOCAVA's purpose. *See id.* ("Section 3(d) of the Executive Order imposes burdens that will act to prevent qualified persons from registering to vote and receiving a ballot, which is the precise opposite of UOCAVA's purpose."). Not so. Congress limited UOCAVA's provisions to "absent uniformed services voters" and "overseas voters." 52 U.S.C. § 20303(a)(1). However, those voters must be "qualified to vote" in the United States, *i.e.* have U.S. citizenship. *See id.* § 20310(1), (5) (defining "absent uniformed services voter" and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 8

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

"overseas voter" for purposes of UOCAVA).  In other words, although Congress wanted to make voting easier, it still required eligibility to vote.  *See also* H.R. Rep. No. 99-765 at 6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2009, 2010 (UOCAVA House report noting that "[t]o be eligible to use" the FPCA, a voter "*must* be eligible to vote and be registered, or exempt from registration, under State law").  The EO simply seeks to ensure that UOCAVA voters are qualified by directing the Secretary to add a DPOC requirement to the FPCA.  That directive does not "override Congress's policy decision" to make voting easier, Pls. Mot. 11, just as it does not override Congress's policy decision to require eligibility to vote.  Instead, the EO's directive ensures that the population Congress wished to benefit from UOCAVA—overseas and military voters qualified to vote in the United States—is actually the one benefitting from it.[2]

**IV.    The Court Should Not Permanently Enjoin Section 3(d).**

As discussed above, Plaintiffs have not demonstrated "actual success on the merits" of their claim, which is required before they can obtain a permanent injunction.  *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019).  Plaintiffs also have not demonstrated irreparable injury.  They assert "classic pocketbook injuries," Pls. Mot. 6 (citation modified), but all of those injuries are speculative at this point.  *See supra* at 2–4.  The Secretary has taken no action to update the FPCA, making the supposed pocketbook injuries that Plaintiffs proffer too speculative to constitute irreparable harm.  *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 n.7 (9th Cir. 2021) (noting that "[s]peculative injury does not constitute irreparable injury").

Plaintiffs also cannot rely on putative injuries to their "sovereign right[s] to administer elections." Pls. Mot. 12.  Not only are those injuries speculative until the Secretary actually takes

---

[2] To reiterate, the arguments for why Section 3(d) is not *ultra vires* apply to both subsections of that provision.  *Contra* Pls. Mot. 11 (arguing that Section 3(d)(ii) violates the Elections Clause).  Defendants also refer the Court to the arguments in their Motion for why Section 3(d) does not violate state sovereignty. *See* Defs. Mot. 13–14.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 9

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

some action to implement Section 3(d)—and therefore insufficient for irreparable harm—they are not even cognizable harms. As Defendants have discussed, Section 3(d) directs the Secretary to enforce a statutory mandate that Congress enacted; namely, that only those persons qualified to vote use the FPCA. *See supra* at 8–9; Defs. Mot. 11, 16. There is no "interference with Plaintiff States' own laws and sovereign interests in regulating the manner of verifying citizenship" beyond what Congress has already mandated in UOCAVA. Pls. Mot. 7. And the Elections Clause of the Constitution permits Congress to "alter" State regulations over elections. U.S. Const. art. I, § 4, cl. 1. Congress did so when it enacted UOCAVA, thereby superseding "state legislative choices" as the Elections Clause permits. *Foster v. Love*, 522 U.S. 67, 69 (1997) (explaining the Elections Clause); *see also* Defs. Mot. 13–14. There cannot be harm to sovereign state interests over elections when the President directs a subordinate to enforce Congress's constitutionally permissible decision to regulate elections. *Accord* U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land[.]").

As for the remaining equitable factors, Plaintiffs' arguments rest on the incorrect premise that Defendants intend to "act[] in a manner contrary to federal law." Pls. Mot. 13. Again, Section 3(d) directs action consistent with Congress's mandate in UOCAVA. To block Defendants from "effectuating" that mandate, "enacted by representatives of [the] people," would subject Defendants to "a form of irreparable injury" not in the public interest. *CASA*, 606 U.S. at 861.

## V.    Plaintiffs' Requested Injunction Is Overbroad.

For all the reasons already given, Plaintiffs should not receive a permanent injunction against Section 3(d). But if the Court disagrees, any injunction should not "enjoin Section 3(d) in its entirety." Pls. Mot. 13. The Supreme Court's decision in *CASA* affirmed the "general rule" that "an injunction [can]not bind one who was not a party to the cause," and that courts should "rebuff[] requests for relief that extend[] beyond the parties." 606 U.S. at 842–43 (citation

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 10

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

omitted); *see id.* at 844 (noting "the party-specific principles that permeate our understanding of equity"); *id.* at 851 ("the complete-relief principle" does not "justif[y] the award of relief to nonparties"). *CASA* requires this Court to enjoin Section 3(d) only as to these Plaintiffs, not other States that chose not to join this litigation, unless it is "all but impossible" to provide party-specific relief. *Id.* at 852 n.12.

But as Defendants argue in their Motion, party-specific relief is possible. *See* Defs. Mot. 16–17. Regulations governing the FPCA contemplate that States will have "State-specific instructions" accompanying the FPCA. 32 C.F.R. § 233.6(b)(1)(iv)(D). In that sense, there is not "only one Federal Post Card Application." Pls. Mot. 13. This is clear from the face of the FPCA. It notifies applicants that "[a]dditional [S]tate guidelines" might apply and directs applicants to a website to find them. *See* Federal Post Card Application at 1 (emphasis omitted). The FPCA also says that "Puerto Rico and Vermont require more information." *Id.* The obvious conclusion from such language is that each State's application is different. After all, an applicant from Vermont must provide information that an applicant from Virginia need not. And each State has its own specific instructions. *See* FVAP, *2026–27 Voting Assistance Guide* 23–455; https://www.fvap.gov/uploads/FVAP/States/eVAG.pdf. The Court could, then, consistent with the regulations, prohibit the Secretary from adding a DPOC requirement to the State-specific instructions for these two Plaintiff States without prohibiting the addition of such a requirement in the instructions for the remaining States that chose not to join this lawsuit.

Plaintiffs also argue that they will suffer certain administrative burdens without a nationwide injunction in the form of changes to the statewide voter registration database, new guidance on how counties would need to respond to incoming DPOC, and a public education

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 11

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

campaign about the EO's requirements. *See* Second Holmes Decl. ¶¶ 10–12.[3]  None of these administrative costs requires a nationwide injunction because they depend in no way on the law or practices of other States.  If the Court were to enjoin Section 3(d) as to Plaintiffs but not as to their neighbor Idaho, Plaintiffs would suffer none of the burdens they assert now.[4]  Thus, "complete relief" of the administrative burdens asserted by these Plaintiffs can be achieved by enjoining Section 3(d) as to these Plaintiffs only.  *CASA*, 606 U.S. at 852.

Plaintiffs have not established entitlement to a permanent injunction, much less a nationwide injunction.  If the Court disagrees and enters an injunction, *CASA* requires that it enjoin Section 3(d) only as to these Plaintiffs, not other States.

## CONCLUSION

The Court should grant Defendants' motion for summary judgment and deny Plaintiffs' motion for summary judgment as to Section 3(d).

---

[3] Defendants reiterate that the State of Oregon makes no effort to quantify or otherwise present its administrative burdens. *See supra* at 3.

[4] Plaintiffs do not argue, for example, that complete relief requires a nationwide injunction because they need to somehow account for people who move into Washington and Oregon from States that, under a narrower injunction, would require DPOC. *See, e.g.*, *Washington v. Trump*, 145 F.4th 1013, 1038 (9th Cir. 2025) (providing "uniform relief" in form of nationwide injunction based on how a narrow injunction would affect new state residents moving across state lines), *petition for cert. filed*, No. 25-364 (U.S. Sep. 29, 2025).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 12

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980

Dated: May 15, 2026                    Respectfully submitted,

                                       BRETT A. SHUMATE
                                       Assistant Attorney General

                                       JOSEPH E. BORSON
                                       Assistant Director
                                       Civil Division, Federal Programs Branch

                                       */s/ Christian Dibblee*
                                       MARIANNE F. KIES
                                       CHRISTIAN DIBBLEE
                                       Trial Attorney
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, NW
                                       Washington, D.C. 20005
                                       (202) 353-5980
                                       Christian.r.dibblee@usdoj.gov

                                       *Attorneys for Defendants*

CERTIFICATE OF SERVICE

I, Christian Dibblee, hereby certify that I served a true copy of the above document upon all counsel of record via this court's electronic filing system and upon any non-registered participants via first class mail. I further certify that this motion contains 3,992 words.

Dated: May 15, 2026                                              /s/ *Christian Dibblee*
                                                                CHRISTIAN DIBBLEE
                                                                Trial Attorney

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-602-JHC - 14

U.S. Department of Justice
1100 L STREET, NW
WASHINGTON, D.C. 20005
(202) 353-5980